**District Court Case No. 4:21-cv-01031-JST**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

---

**IN RE**

**VIKRAM SRINIVASAN,**

*Debtor—Appellant,*

---

Appeal from the United States Bankruptcy Court,

Northern District of California (Case No. 20-51735)

---

**APPELLEES' APPENDIX IN SUPPORT OF BRIEF**

---

Summit Legal, PC
Elaine Yang Soong, Esq.
(CA Bar No. 285318)
2015 Manhattan Beach Blvd., Suite 111
Redondo Beach, CA 90278
Tel: (310) 426-8988 • Fax: (310) 356-3862
Elaine.Soong@summitlegal.pro
*Attorneys for Wedgewood, LLC, solely as
administrator of the Civic Holdings III Trust
and Civic Real Estate Holdings III, LLC*

1

# APPELLEE'S APPENDIX OF EXHIBITS

## TABLE OF CONTENTS

| | Description of Documents | Pages |
|---|---|---|
| 1 | Chapter 11 Voluntary Petition [DOCKET ENTRY #1] | 1-9 |
| 2 | Notice of Chapter 11 Bankruptcy Case [DOCKET ENTRY #4] | 10-13 |
| 3 | Order to File Required Documents and Notice of Automatic Dismissal [DOCKET ENTRY #5] | 14-16 |
| 4 | Order for Payment State and Federal Taxes [DOCKET ENTRY #9] | 17-18 |
| 5 | Motion for Relief from Stay [DOCKET ENTRY #16] | 19-29 |
| 6 | Motion for Relief from Stay - Declaration of Karissa Shute in Support of Motion [DOCKET ENTRY #16-2] | 30-36 |
| 7 | Motion for Relief from Stay - Exhibit A, Note [DOCKET ENTRY #16-3] | 37-88 |
| 8 | Motion for Relief from Stay - Exhibit B, Order Dismissing Case with 90-Day Bar [DOCKET ENTRY #16-4] | 89-92 |
| 9 | Motion for Relief from Stay - Exhibit C - Trustee's Deed Upon Sale [DOCKET ENTRY #16-5] | 93-97 |
| 10 | Motion for Relief from Stay - Exhibit D - Quit Claim Deed [DOCKET ENTRY #16-6] | 98-102 |
| 11 | Motion for Relief from Stay - Exhibit E - First Amended Complaint [DOCKET ENTRY #16-7] | 103-216 |
| 12 | Motion for Relief from Stay - Exhibit F - Ruling on Hearing to Expunge Lis Pendens [DOCKET ENTRY #16-8] | 217-224 |
| 13 | Motion for Relief from Stay - Certificate of Service [DOCKET ENTRY #16-9] | 225-228 |

| 14 | Notice of Hearing on Motion for Relief from Stay [DOCKET ENTRY #17] | 229-232 |
|----|---|---|
| 15 | Summary of Assets and Liabilities for Individual [DOCKET ENTRY #18] | 233-267 |
| 16 | Order and Notice to Pay Filing Fee [DOCKET ENTRY #22] | 268-270 |
| 17 | Motion to Extend Automatic Stay [DOCKET ENTRY #23] | 271-388 |
| 18 | Ex Parte Motion to Shorten Time on Debtor's Motion to Extend Automatic Stay [DOCKET ENTRY #24] | 389-394 |
| 19 | Order Denying Shortening Time [DOCKET ENTRY #26] | 395-398 |
| 20 | Amended Motion to Shorten Time on Debtor's Motion to Extend Automatic Stay [DOCKET ENTRY #28] | 399-407 |
| 21 | Brief/Memorandum in Opposition to Amended Motion to Shorten Time on Debtor's Motion to Extend Automatic Stay [DOCKET ENTRY #29] | 408-410 |
| 22 | Declaration of Amelia Valenzuela [DOCKET ENTRY #29-1] | 411-420 |
| 23 | Order on Application to Set Matter for Hearing and for an Order Shortening Time for Notice [DOCKET ENTRY #30] | 421-424 |
| 24 | Notice Regarding Debtor's Motion to Extend Full Stay as to All Creditors [DOCKET ENTRY #31] | 425-427 |
| 25 | Brief/Memorandum In Opposition to Motion To Extend Automatic Stay [DOCKET #40] | 428-455 |
| 26 | Declaration of Karissa Shute [DOCKET #40-1] | 456-461 |
| 27 | Certificate of Service [DOCKET #40-2] | 462-464 |
| 28 | Order Denying Motion to Extend Automatic Stay [DOCKET ENTRY #41] | 465-473 |
| 29 | Motion to Reconsider Court's Order on Debtor's Motion to Extend Automatic Stay [DOCKET ENTRY #43] | 474-483 |

3

| 30 | Declaration of Vikram Srinivasan [DOCKET ENTRY #43-1] | 484-488 |
|----|----|----|
| 31 | Declaration of Renzi [DOCKET ENTRY #43-2] | 489-491 |
| 32 | Notice of Hearing on Motion to Reconsider [DOCKET ENTRY #44] | 492-495 |
| 33 | Motion to Reconsider Court's Order on Debtor's Motion to Extend Automatic Stay (corrective entry) [DOCKET ENTRY #45] | 496-498 |
| 34 | Notice of Appeal re Order on Motion to Extend Automatic Stay [DOCKET ENTRY #47] | 499-511 |
| 35 | Order Denying Motion to Reconsider [DOCKET ENTRY #52] | 512-515 |
| 36 | Statement of Issues on Appeal [DOCKET ENTRY #66] | 516-519 |
| 37 | Appellant Designation of Contents for Inclusion in Record on Appeal [DOCKET ENTRY #67] | 520-523 |
| 38 | Notice of Transfer of Appeal to District Court [DOCKET ENTRY #69] | 524-525 |
| 39 | Appellees' Designation of Contents for Inclusion in Record of Appeal [DOCKET ENTRY #74] | 526-533 |
| 40 | Order Denying Motion for In Rem Relief [DOCKET ENTRY #75] | 534-540 |

# APPELLEE'S APPENDIX OF EXHIBITS OF RELEVANT DOCKET

# ENTRIES IN CASE NO. 20-51735

| Filing Date | Docket No. | Docket Text |
|---|---|---|
| 12/10/2020 | 1 | Chapter 11 Voluntary Petition |
| 12/11/2020 | 4 | Notice of Chapter 11 Bankruptcy Case |
| 12/11/2020 | 5 | Order to File Required Documents and Notice of Automatic Dismissal |
| 12/11/2020 | 9 | Order for Payment State and Federal Taxes |
| 12/24/2020 | 16-1 | Motion for Relief from Stay |
| 12/24/2020 | 16-2 | Motion for Relief from Stay - Declaration of Karissa Shute in Support of Motion |
| 12/24/2020 | 16-3 | Motion for Relief from Stay - Exhibit A, Note |
| 12/24/2020 | 16-4 | Motion for Relief from Stay - Exhibit B, Order Dismissing Case with 90-Day Bar |
| 12/24/2020 | 16-5 | Motion for Relief from Stay - Exhibit C - Trustee's Deed Upon Sale |
| 12/24/2020 | 16-6 | Motion for Relief from Stay - Exhibit D - Quit Claim Deed |
| 12/24/2020 | 16-7 | Motion for Relief from Stay - Exhibit E - First Amended Complaint |
| 12/24/2020 | 16-8 | Motion for Relief from Stay - Exhibit F - Ruling on Hearing to Expunge Lis Pendens |
| 12/24/2020 | 16-9 | Motion for Relief from Stay - Certificate of Service |
| 12/24/2020 | 17 | Notice of Hearing on Motion for Relief from Stay |
| 12/24/2020 | 18 | Summary of Assets and Liabilities for Individual |
| 12/28/2020 | 22 | Order and Notice to Pay Filing Fee |
| 12/29/2020 | 23 | Motion to Extend Automatic Stay |

| 12/29/2020 | 24 | Ex Parte Motion to Shorten Time on Debtor's Motion to Extend Automatic Stay |
| 12/30/2020 | 26 | Order Denying Shortening Time |
| 1/2/2021 | 28 | Amended Motion to Shorten Time on Debtor's Motion to Extend Automatic Stay |
| 1/4/2021 | 29 | Brief/Memorandum in Opposition to Amended Motion to Shorten Time on Debtor's Motion to Extend Automatic Stay |
| 1/4/2021 | 29-1 | Declaration of Amelia Valenzuela |
| 1/4/2021 | 30 | Order on Application to Set Matter for Hearing and for an Order Shortening Time for Notice |
| 1/4/2021 | 31 | Notice Regarding Debtor's Motion to Extend Full Stay as to All Creditors |
| 1/7/2021 | 40 | Brief/Memorandum In Opposition to Motion To Extend Automatic Stay |
| 1/7/2021 | 40-1 | Declaration of Karissa Shute |
| 1/7/2021 | 40-2 | Certificate of Service |
| 1/8/2021 | 41 | Order Denying Motion to Extend Automatic Stay |
| 1/19/2021 | 43 | Motion to Reconsider Court's Order on Debtor's Motion to Extend Automatic Stay |
| 1/19/2021 | 43-1 | Declaration of Vikram Srinivasan |
| 1/19/2021 | 43-2 | Declaration of Renzi |
| 1/19/2021 | 44 | Notice of Hearing on Motion to Reconsider |
| 1/20/2021 | 45 | Motion to Reconsider Court's Order on Debtor's Motion to Extend Automatic Stay (corrective entry) |
| 1/22/2021 | 47 | Notice of Appeal re Order on Motion to Extend Automatic Stay |

| 1/25/2021 | 52 | Order Denying Motion to Reconsider |
| 2/08/2021 | 66 | Statement of Issues on Appeal |
| 2/08/2021 | 67 | Appellant Designation of Contents for Inclusion in Record on Appeal |
| 2/08/2021 | 69 | Notice of Transfer of Appeal to District Court |
| 2/19/2021 | 74 | Appellees' Designation of Contents for Inclusion in Record of Appeal |
| 2/23/2021 | 75 | Order Denying Motion for In Rem Relief |

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

AT THE TIME OF SERVICE, I WAS OVER 18 YEARS OF AGE AND NOT A PARTY TO THIS ACTION. I AM EMPLOYED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA. MY BUSINESS ADDRESS IS 2015 MANHATTAN BEACH BLVD., SUITE 100, REDONDO BEACH, CALIFORNIA 90278.

On April 28, 2021, I serve the following document(s) described as: **APPELLEES' APPENDIX IN SUPPORT OF BRIEF**

on the parties listed on the Court's ECF docket via electronic service.

**BY US MAIL:**

Geoffrey Eugene Wiggs
THE LAW OFFICES OF GEOFF WIGGS
1900 S. Norfolk Street
San Mateo, CA 94403

**BY OVERNIGHT DELIVERY:**

Hon. Jon S. Tigar
Oakland Courthouse
1301 Clay Street
Oakland, CA 94612

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 28, 2021 at Redondo Beach, CA

/s/Daniel Marcus

1

# EXHIBIT 1

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

NORTHERN DISTRICT OF CALIFORNIA

Case number *(if known)* _____

Chapter you are filing under:

☐ Chapter 7

■ Chapter 11

☐ Chapter 12

☐ Chapter 13

☐ Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

04/20

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
| --- | --- |

|  | | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
| --- | --- | --- | --- |
| **1.** | **Your full name** Write the name that is on your government-issued picture identification (for example, your driver's license or passport). Bring your picture identification to your meeting with the trustee. | **Vikram** <br> First name <br><br> Middle name <br><br> **Srinivasan** <br> Last name and Suffix (Sr., Jr., II, III) | First name <br><br> Middle name <br><br> Last name and Suffix (Sr., Jr., II, III) |
| **2.** | **All other names you have used in the last 8 years** Include your married or maiden names. | | |
| **3.** | **Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx-xx-6812 | |

Official Form 101     Voluntary Petition for Individuals Filing for Bankruptcy     page 1

CIVIC APP PAGE NO. 2

Debtor 1   **Vikram Srinivasan**                                         Case number *(if known)* _____

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years** <br><br> Include trade names and *doing business as* names | ■ I have not used any business name or EINs. <br><br> Business name(s) <br><br> EIN | ☐ I have not used any business name or EINs. <br><br> Business name(s) <br><br> EIN |
| **5. Where you live** | **440 Dixon Landing Road G201** <br> **Milpitas, CA 95035** <br> Number, Street, City, State & ZIP Code <br><br> **Santa Clara** <br> County <br><br> **If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address. <br><br><br> Number, P.O. Box, Street, City, State & ZIP Code | **If Debtor 2 lives at a different address:** <br><br><br> Number, Street, City, State & ZIP Code <br><br><br> County <br><br> **If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address. <br><br><br> Number, P.O. Box, Street, City, State & ZIP Code |
| **6. Why you are choosing *this district* to file for bankruptcy** | *Check one:* <br><br> ■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district. <br><br> ☐ I have another reason. <br> Explain. (See 28 U.S.C. § 1408.) | *Check one:* <br><br> ☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district. <br><br> ☐ I have another reason. <br> Explain. (See 28 U.S.C. § 1408.) |

Official Form 101                   Voluntary Petition for Individuals Filing for Bankruptcy                   page 2
                                                                                            **CIVIC APP PAGE NO. 3**

Debtor 1   **Vikram Srinivasan**                                    Case number *(if known)*

| Part 2: | **Tell the Court About Your Bankruptcy Case** |

**7.   The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)).* Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7
☒ Chapter 11
☐ Chapter 12
☐ Chapter 13

**8.   How you will pay the fee**

☒ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9.   Have you filed for bankruptcy within the last 8 years?**

☐ No.
☒ Yes.

| District | USBC California Northern District | When | 12/02/19 | Case number | 19-42729 |
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

**10.  Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☒ No
☐ Yes.

| Debtor | _____ | | | Relationship to you | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |
| Debtor | _____ | | | Relationship to you | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |

**11.  Do you rent your residence?**

☒ No.   Go to line 12.
☐ Yes.   Has your landlord obtained an eviction judgment against you?

   ☐ No. Go to line 12.
   ☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it as part of this bankruptcy petition.

Official Form 101                     Voluntary Petition for Individuals Filing for Bankruptcy                     page 3

**CIVIC APP PAGE NO. 4**

Debtor 1   **Vikram Srinivasan**                                    Case number *(if known)*

---

**Part 3:**   **Report About Any Businesses You Own as a Sole Proprietor**

**12.** **Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

■ No.   Go to Part 4.

☐ Yes.   Name and location of business

_____
Name of business, if any

_____

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐   Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐   Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐   Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐   Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐   None of the above

---

**13.** **Are you filing under Chapter 11 of the Bankruptcy Code, and are you a *small business debtor or a debtor as defined by 11 U.S.C. § 1182(1)?***

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor or a debtor choosing to proceed under Subchapter V so that it can set appropriate deadlines. If you indicate that you are a small business debtor or you are choosing to proceed under Subchapter V, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

☐ No.   I am not filing under Chapter 11.

■ No.   I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.   I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes.   I am filing under Chapter 11, I am a debtor according to the definition in § 1182(1) of the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

---

**Part 4:**   **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention**

**14.** **Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ No.

☐ Yes.

What is the hazard?          _____

If immediate attention is    _____
needed, why is it needed?

Where is the property?       _____

                             _____
                             Number, Street, City, State & Zip Code

---

Official Form 101          Voluntary Petition for Individuals Filing for Bankruptcy          page 4

**CIVIC APP PAGE NO. 5**

Debtor 1   **Vikram Srinivasan**

Case number *(if known)*

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |
|---|---|

| | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

■ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Official Form 101     Voluntary Petition for Individuals Filing for Bankruptcy     page 5

**CIVIC APP PAGE NO. 6**

Debtor 1   **Vikram Srinivasan**                                    Case number *(if known)*

**Part 6:**   **Answer These Questions for Reporting Purposes**

**16. What kind of debts do you have?**

16a.   **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☑ No. Go to line 16b.

☐ Yes. Go to line 17.

16b.   **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☑ Yes. Go to line 17.

16c.   State the type of debts you owe that are not consumer debts or business debts

---

**17. Are you filing under Chapter 7?**

☑ No.   I am not filing under Chapter 7. Go to line 18.

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐ Yes.   I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

---

**18. How many Creditors do you estimate that you owe?**

| | | |
|---|---|---|
| ☑ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

---

**19. How much do you estimate your assets to be worth?**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☑ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

**20. How much do you estimate your liabilities to be?**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☑ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

**Part 7:**   **Sign Below**

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Vikram Srinivasan**

**Vikram Srinivasan**                                    Signature of Debtor 2
Signature of Debtor 1

Executed on   **December 10, 2020**          Executed on _____
                    MM / DD / YYYY                                        MM / DD / YYYY

---

Official Form 101          Voluntary Petition for Individuals Filing for Bankruptcy          page 6

**CIVIC APP PAGE NO. 7**

Debtor 1    **Vikram Srinivasan**                                                    Case number *(if known)*

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible.  I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

**/s/ Geoffrey E. Wiggs**                    Date        **December 10, 2020**
Signature of Attorney for Debtor                        MM / DD / YYYY

**Geoffrey E. Wiggs**
Printed name

**Law Offices of Geoff Wiggs**
Firm name

**1900 S. Norfolk St, Suite 350**
**San Mateo, CA 94403-1171**
Number, Street, City, State & ZIP Code

Contact phone    **650-577-5952**              Email address    **Geoff@wiggslaw.com**

**SBN 276041 CA**
Bar number & State

---

Official Form 101    **Voluntary Petition for Individuals Filing for Bankruptcy**    page 7
**CIVIC APP PAGE NO. 8**

```
Civic Financial
2015 Manhattan Beach Blvd
Redondo Beach, CA 90278


Franchise Tax Board
PO BOX 942867
Sacramento, CA 94267


Internal Revenue Service
Centralized Insolvency Operation
PO Box 21126
Philadelphia, PA 19114-0326
```

CIVIC APP PAGE NO. 9

# EXHIBIT 2

Debtors may request to receive Court notices and orders by email instead of U.S. mail. Sign Up at www.canb.uscourts.gov

**Information to identify the case:**

| | | |
|---|---|---|
| Debtor 1 | **Vikram Srinivasan** | Social Security number or ITIN  **xxx–xx–6812** |
| | First Name    Middle Name    Last Name | EIN  _ _–_ _ _ _ _ _ _ |
| Debtor 2 (Spouse, if filing) | First Name    Middle Name    Last Name | Social Security number or ITIN  _ _ _ _ |
| | | EIN  _ _–_ _ _ _ _ _ _ |
| United States Bankruptcy Court  **California Northern Bankruptcy Court** | | Date case filed for chapter  **11   12/10/20** |
| Case number:   **20–51735 SLJ 11** | | |

## Official Form 309E1 (For Individuals or Joint Debtors)
## Notice of Chapter 11 Bankruptcy Case

02/20

**For the debtors listed above, a case has been filed under chapter 11 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors and debtors, including information about the meeting of creditors and deadlines. Read both pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

Confirmation of a chapter 11 plan may result in a discharge of debt. Creditors who assert that the debtors are not entitled to a discharge of any debts or who want to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadlines specified in this notice. (See line 10 below for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at www.pacer.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**To help creditors correctly identify debtors, debtors submit full Social Security or Individual Taxpayer Identification Numbers, which may appear on a version of this notice. However, the full numbers must not appear on any document filed with the court.**

**Do not file this notice with any proof of claim or other filing in the case. Do not include more than the last four digits of a Social Security or Individual Taxpayer Identification Number in any document, including attachments, that you file with the court.**

| | | About Debtor 1: | About Debtor 2: |
|---|---|---|---|
| **1.** | **Debtor's full name** | Vikram Srinivasan | |
| **2.** | **All other names used in the last 8 years** | | |
| **3.** | **Address** | 440 Dixon Landing Road G201 Milpitas, CA 95035 | |
| **4.** | **Debtor's attorney** Name and address | Geoff Wiggs Law Offices of Geoff Wiggs 1900 South Norfolk St. #350 San Mateo, CA 94403–1171 None | Contact phone  (650)577–5952 |
| **5.** | **Bankruptcy clerk's office** Documents in this case may be filed at this address.  You may inspect all records filed in this case online at www.pacer.gov. | **Mailing Address:** U.S. Bankruptcy Court 280 South First Street Room 3035 San Jose, CA 95113 | Hours open: Monday – Friday 9:00 am to 4:30 pm  Contact phone  (888) 821–7606  Date: 12/11/20 |

**For more information, see page 2 >**

Debtor  **Vikram Srinivasan**                                                                 Case number **20–51735**

| | | |
|---|---|---|
| **6.** | **Meeting of creditors** <br> Debtors must attend the meeting to be questioned under oath. In a joint case, both spouses must attend. Creditors may attend, but are not required to do so. | **January 19, 2021 at 10:00 AM** <br><br> The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | **Via Tele/Videoconference** <br><br> Call in number/URL: 1–877–991–8832 <br> Passcode: 4101242 |

**Important Notice to Individual Debtors:**  The United States Trustee requires all debtors who are individuals to provide government–issued photo identification and proof of social security number to the trustee at the meeting of creditors. If a debtor fails to appear, your case may be dismissed without further notice.

| | | |
|---|---|---|
| **7.** | **Deadlines** <br> The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines. | **File by the deadline to object to discharge or to challenge whether certain debts are dischargeable:** | First date set for hearing on confirmation of plan. The court will send you a notice of that date later. |
| | | **You must file a complaint:** <br> • if you assert that the debtor is not entitled to receive a discharge of any debts under 11 U.S.C. § 1141(d)(3) or <br> • if you want to have a debt excepted from discharge under 11 U.S.C § 523(a)(2), (4), or (6). | **Filing deadline for dischargeability complaints: 3/22/21** |
| | **For a bankruptcy case pending in the Northern District of California, a Proof of Claim may be filed electronically online at www.canb.uscourts.gov** In the Quick Links section, click on "File an Electronic Proof of Claim." | **Deadline for filing proof of claim:** <br> **For all creditors (except a governmental unit):** 4/19/21 <br> A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be obtained at www.uscourts.gov or any bankruptcy clerk's office. <br><br> Your claim will be allowed in the amount scheduled unless: <br> • your claim is designated as *disputed*, *contingent*, or *unliquidated*; <br> • you file a proof of claim in a different amount; or <br> • you receive another notice. <br><br> If your claim is not scheduled or if your claim is designated as *disputed*, *contingent*, or *unliquidated*, you must file a proof of claim or you might not be paid on your claim and you might be unable to vote on a plan. You may file a proof of claim even if your claim is scheduled. <br><br> You may review the schedules at the bankruptcy clerk's office or online at www.pacer.gov. <br><br> Secured creditors retain rights in their collateral regardless of whether they file a proof of claim. Filing a proof of claim submits a creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial. | |
| | | **Deadline to object to exemptions:** <br> The law permits debtors to keep certain property as exempt. If you believe that the law does not authorize an exemption claimed, you may file an objection. | **Filing Deadline:** <br> 30 days after the *conclusion* of the meeting of creditors |
| **8.** | **Creditors with a foreign address** | If you are a creditor receiving mailed notice at a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |
| **9.** | **Filing a Chapter 11 bankruptcy case** | Chapter 11 allows debtors to reorganize or liquidate according to a plan. A plan is not effective unless the court confirms it. You may receive a copy of the plan and a disclosure statement telling you about the plan, and you may have the opportunity to vote on the plan. You will receive notice of the date of the confirmation hearing, and you may object to confirmation of the plan and attend the confirmation hearing. Unless a trustee is serving, the debtor will remain in possession of the property and may continue to operate the debtor's business. | |
| **10.** | **Discharge of debts** | Confirmation of a chapter 11 plan may result in a discharge of debts, which may include all or part of a debt. See 11 U.S.C. § 1141(d). However, unless the court orders otherwise, the debts will not be discharged until all payments under the plan are made. A discharge means that creditors may never try to collect the debt from the debtors personally except as provided in the plan. If you believe that a particular debt owed to you should be excepted from the discharge under 11 U.S.C. § 523 (a)(2), (4), or (6), you must file a complaint and pay the filing fee in the bankruptcy court's office by the deadline. If you believe that the debtors are not entitled to a discharge of any of their debts under 11 U.S.C. § 1141 (d)(3), you must file a complaint and pay the filing fee in the clerk's office by the first date set for the hearing on confirmation of the plan. The court will send you another notice telling you of that date. | |
| **11.** | **Exempt property** | The law allows debtors to keep certain property as exempt. Fully exempt property will not be sold and distributed to creditors, even if the case is converted to chapter 7. Debtors must file a list of property claimed as exempt. You may inspect that list at the bankruptcy clerk's office or online at www.pacer.gov. If you believe that the law does not authorize an exemption the debtors claim, you may file an objection. The bankruptcy clerk's office must receive the objection by the deadline to object to exemptions in line 7. | |

Case: 20-51735   Doc# 4   Filed: 12/11/20   Entered: 12/11/20 09:59:53   Page 2 of 2

**CIVIC APP PAGE NO. 12**

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0971−5 | User: rasingh | Date Created: 12/11/2020 |
| Case: 20−51735 | Form ID: 309E1 | Total: 11 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | |
|---|---|---|
| db | Vikram Srinivasan        440 Dixon Landing Road G201        Milpitas, CA 95035 | |
| ust | Office of the U.S. Trustee / SJ        U.S. Federal Bldg.        280 S 1st St. #268        San Jose, CA 95113−3004 | |
| aty | Geoff Wiggs        Law Offices of Geoff Wiggs        1900 South Norfolk St. #350        San Mateo, CA 94403−1171 | |
| smg | IRS        P.O. Box 7346        Philadelphia, PA 19101−7346 | |
| smg | State Board of Equalization        Attn: Special Procedures Section, MIC:55        P.O. Box 942879        Sacramento, CA 94279 | |
| smg | CA Employment Development Dept.        Bankruptcy Group MIC 92E        P.O. Box 826880        Sacramento, CA 94280−0001 | |
| smg | CA Franchise Tax Board        Attn: Special Procedures        P.O. Box 2952        Sacramento, CA 95812−2952 | |
| smg | IRS        P.O. Box 7346        Philadelphia, PA 19101−7346 | |
| 15245899 | Civic Financial        2015 Manhattan Beach Blvd        Redondo Beach, CA 90278 | |
| 15245900 | Franchise Tax Board        PO BOX 942867        Sacramento, CA 94267 | |
| 15245901 | Internal Revenue Service        Centralized Insolvency Operation        PO Box 21126        Philadelphia, PA 19114−0326 | |

TOTAL: 11

# EXHIBIT 3

Form OFRDI

### UNITED STATES BANKRUPTCY COURT
### California Northern Bankruptcy Court

| | |
|---|---|
| In Re:   Vikram Srinivasan | Case No.: 20–51735 SLJ 11 |
| Debtor(s) | Chapter:  11 |

### ORDER FOR INDIVIDUALS IN CHAPTER 11 CASE TO
### FILE REQUIRED DOCUMENTS AND NOTICE OF AUTOMATIC DISMISSAL

The debtor(s) named above failed to file the documents listed below when the case was commenced:

☑  Summary of Your Assets and Liabilities and Certain Statistical Information (Official Form 106Sum)
☑  Declaration About an Individual Debtor's Schedules (Official Form 106Dec)
☑  Schedule A/B: Property (Official Form 106A/B)
☑  Schedule C: The Property You Claim as Exempt (Official Form 106C)
☑  Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D)
☑  Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 106E/F)
☑  Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G)
☑  Schedule H: Your Codebtors (Official Form 106H)
☑  Schedule I: Your Income (Official Form 106I)
☑  Schedule J: Your Expenses (Official Form 106J)
☑  Schedule J–2: Expenses for Separate Household of Debtor 2 (Official Form 106J–2)
☑  Statement of Financial Affairs for Individuals Filing for Bankruptcy (Official Form 107)
☑  Chapter 11 Statement of Your Current Monthly Income (Official Form 122B)
☑  List of Creditors Who Have the 20 Largest Unsecured Claims Against You and Are Not Insiders
    (Official Form 104)

   IT IS HEREBY ORDERED that unless, within 14 days of the petition date, the debtor(s) file each document listed above, the court may dismiss this case without further notice or a hearing.  11 U.S.C. § 521(a), Fed. R. Bankr. P. 1007(b)(1), (c).

   The debtor(s) may request an extension of time to file the documents noted above, but must do so before 14 days from the petition date, or the expiration of any extension previously granted.  The request may be filed electronically, mailed, or delivered in person to the address stated below, but it must be received by the court before the 14 days or any extension previously granted have expired.  If an extension is granted and the documents are not filed, the case may be dismissed.

**Mailing Address:**
U.S. Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

**In person filing via Drop Box:**
U.S. Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

Dated: 12/11/20

By the Court:

Stephen L. Johnson
United States Bankruptcy Judge

CIVIC APP PAGE NO. 15

# Notice Recipients

District/Off: 0971–5        User: rasingh        Date Created: 12/11/2020

Case: 20–51735        Form ID: OFRDI        Total: 3

**Recipients of Notice of Electronic Filing:**

ust      Office of the U.S. Trustee / SJ      USTPRegion17.SJ.ECF@usdoj.gov

aty      Geoff Wiggs      ECF@wiggslaw.com

                                                                          TOTAL: 2

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

db      Vikram Srinivasan      440 Dixon Landing Road G201      Milpitas, CA 95035

                                                                            TOTAL: 1

# EXHIBIT 4

Form OFP

## UNITED STATES BANKRUPTCY COURT
### California Northern Bankruptcy Court

| In Re: | Vikram Srinivasan | Case No.: 20–51735 SLJ 11 |
|---|---|---|
| | Debtor(s) | Chapter: 11 |

## ORDER FOR PAYMENT OF STATE AND FEDERAL TAXES

The debtor above–named, during the period it is permitted to remain in possession of its estate, is hereby ordered:

1. To segregate and hold separate and apart from all other funds, all withholding, social security (both employees', and employer's portions), excise and agricultural taxes or other monies collected, received or withheld for or on behalf of the United States or the State of California.

2. To submit proof of timely payment of amounts owing in paragraph 1 above to the Internal Revenue Service, an agency of the United States, as follows:

    A. Debtor shall pay taxes arising out of the payment of wages or salaries within seven days after debtor has paid such salaries or wages.

    B. Debtor shall pay all other taxes within seven days after the last day of each calendar month, or within such shorter period as the court may order upon ex–parte application of the United States.

    C. The proof of payment shall be made to the Internal Revenue Service, Attention: Insolvency – HQ5420, 55 So. Market St., San Jose, CA 95113, FAX: 408–817–6545.

3. To make timely payments to the State of California, Department of Benefit Payments, of all unemployment insurance, disability insurance and withheld State of California personal income taxes within seven days after the debtor has paid wages or salaries creating the tax obligations. Payment of the taxes shall be made to Employment Development Department, Bankruptcy Unit–MIC 92E, P.O. Box 826880, Sacramento, CA 94280–0001.

4. To make timely payment to the California Department of Tax and Fee Administration, of all sales and use taxes which are due to it, at the time required by law, and to make timely payment to the State of California, Franchise Tax Board, of all income taxes which are due to it, at the time required by law.

5. To file all Federal and State tax returns on a timely basis. The Federal returns shall be filed with the Internal Revenue Service, Attention: Insolvency – HQ5420, 55 So. Market St., San Jose, CA 95113, FAX: 408–817–6545. The returns to be filed with the State of California, California Department of Benefit Payments, shall be filed at the address shown above. The returns to be filed with the California Department of Tax and Fee Administration and the Franchise Tax Board shall be filed where required by law.

6. To file with the Court on or before the 20th day of each month a verified statement for the preceding calendar month showing (1) the amounts collected, received or deducted for each taxing agency; (2) the total amount expended for gross payroll; (3) the amount received from gross sales; and (4) the amount paid to each taxing agency and dates of payments. Upon filing, a copy of each such monthly statement shall be transmitted to the Internal Revenue Service and the California Department of Benefit Payments at the addresses shown above.

7. The provisions of the foregoing paragraphs shall be effective as of the date of the petition initiating this proceeding. If the debtor fails to comply with this order; this proceeding may be dismissed or an order may be entered converting the proceeding to a Chapter 7 liquidation.

Dated: <u>12/11/20</u>

By the Court:

Stephen L. Johnson
United States Bankruptcy Judge

CIVIC APP PAGE NO. 18

# Notice Recipients

District/Off: 0971−5          User: admin                Date Created: 12/11/2020
Case: 20−51735               Form ID: OFP               Total: 9

**Recipients of Notice of Electronic Filing:**
ust      Office of the U.S. Trustee / SJ          USTPRegion17.SJ.ECF@usdoj.gov
aty      Geoff Wiggs          ECF@wiggslaw.com
aty      Jason Brill Shorter          jason.b.shorter@usdoj.gov

<div align="right">TOTAL: 3</div>

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db       Vikram Srinivasan          440 Dixon Landing Road G201          Milpitas, CA 95035
smg      IRS          P.O. Box 7346          Philadelphia, PA 19101−7346
smg      State Board of Equalization          Attn: Special Procedures Section, MIC:55          P.O. Box
         942879          Sacramento, CA 94279
smg      CA Employment Development Dept.          Bankruptcy Group MIC 92E          P.O. Box 826880          Sacramento,
         CA 94280−0001
smg      CA Franchise Tax Board          Attn: Special Procedures          P.O. Box 2952          Sacramento, CA 95812−2952
smg      IRS          P.O. Box 7346          Philadelphia, PA 19101−7346

<div align="right">TOTAL: 6</div>

# EXHIBIT 5

1  WEDGEWOOD
   Office of the General Counsel
2  DAVID M. POITRAS P.C. (SBN 141309)
   dpoitras@wedgewood-inc.com
3  AMELIA VALENZUELA (SBN 320428)
   avalenzuela@wedgewood-inc.com
4  2015 Manhattan Beach Blvd., Suite 100
   Redondo Beach, CA 90278
5  Telephone:    (310) 640-3070
   Facsimile:     (310) 640-3090
6
   Attorneys for Moving Parties,
7  *WEDGEWOOD, LLC, solely as Administrator*
   *of the Civic Holdings III Trust; and Civic Real*
8  *Estate Holdings III, LLC*

9
10              **UNITED STATES BANKRUPTCY COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
11                      **SAN JOSE DIVISION**

12  In re                           | CASE NO.     20-51735

    VIKRAM SRINIVASAN,              | RS NO.       ABV-1
13
                        Debtor.      | Chapter 11
14

15                                   | Date:     February 2, 2021
                                     | Time:     10:00 a.m.
16                                   | Place:    U.S. Courthouse, Crtrm 9
                                     |           280 South First Street
17                                   |           San Jose, CA 95113
18
                                     | Judge:  The Hon. Stephen L. Johnson
19

20  **WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III
    TRUST AND CIVIC REAL ESTATE HOLDINGS III, LLC'S MOTION FOR ORDER
21  CONFIRMING NO STAY IS IN EFFECT OR, IN THE ALTERNATIVE, FOR STAY
    RELIEF, WITH *IN REM* AND PROSPECTIVE RELIEF AND
22  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

23
24        This Motion is filed by Wedgewood, LLC, solely as Administrator of the Civic Holdings III
25  Trust and Civic Real Estate Holdings III, LLC (together, "**Movants**") parties-in-interest in the above-
26  captioned Chapter 11 case of VIKRAM SRINIVASAN (the "**Debtor**").   Pursuant to Bankruptcy
27  Code § 362(d)(1)-(d)(2) and (d)(4), Fed. R. Bankr. P. 4001(a), and Local Bankruptcy Rules 4001-1,
    9013-1, and 9014-1, Movants respectfully requests that the Court enter an order (i) confirming no
28  automatic stay is in place as to the real property generally described as 1666 (or 1648) Summitridge

CIVIC APP PAGE NO. 21

1   Drive, Beverly Hills, CA 90210 the ("**Property**") or that otherwise prevents a state court forum from

2   entering an order expunging a lis pendens wrongfully recorded against the Property or, in the

3   alternative, (ii) terminating the automatic stay concerning the (a) Debtor, (b) the Property and (c) the

4   state court action filed by the Debtor against Movants, (iii) granting *in rem* and prospective relief

5   whereby the order granting the Motion will be binding and effective in any bankruptcy case

6   commenced by or against any debtor who claims any interest in the Property for a period of 180 days

7   from the hearing of the Motion without further notice, and (iv) waiving the 14-day stay prescribed by

8   FRBP 4001(a)(3).

9                                              **JURISDICTION**

10          1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

11   This is a core matter within the meaning of 28 U.S.C. § 157(b).

12          2.      Venue for this matter and the Motion is proper before this Court pursuant to 28 U.S.C.

13   §§ 1408 and 1409.

14                          **MEMORANDUM OF POINTS & AUTHORITIES**

15          **The Debtor's Serial Filings**

16          3.      On December 10, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for

17   relief under Chapter 11 of the Bankruptcy Code at Case No. 20-51735 (the "**Bankruptcy Case**").

18          4.      The instant Bankruptcy Case is a bare bones petition and the Debtor has been ordered

19   to file his required documents by December 24, 2020.

20          5.      This is the second personal bankruptcy case filed by the Debtor within a preceding

21   one-year period.  Specifically, on December 2, 2019, the Debtor filed a voluntary petition for relief

22   under Chapter 11 of the Bankruptcy Code at Case No. 19-42729 (the "**First Bankruptcy Case**").

23   The First Bankruptcy Case was also a bare bones filing.  The Debtor failed to timely file his required

24   documents and on January 8, 2020, the First Bankruptcy Case was dismissed.

25          **The Loan, the Forbearance Agreement, and the Foreclosure Sale**

26          6.      Prior to the Petition Date, on or around September 11, 2018, non-debtor Summitridge

27   Venture Group, LLC ("**Summitridge**") executed a promissory note (the "**Note**") in the original

28   principal amount of $3,500,000, in favor of Civic Financial Services, LLC ("**Original Lender**").

- 2 -

Declaration of Karissa Shute (the "**Shute Dec.**"), ¶ 3.  The Note was secured by a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "**DOT**" and together with the Note, the "**Loan**").  Shute Dec., ¶ 3, a true and correct copy of the Loan documents are attached to the Shute Dec. collectively as Exhibit A.  The DOT was a first position lien on real property commonly known as 1666 (or 1648) Summitridge Drive, Beverly Hills, CA 90210 (the "**Property**").  (*Id.*)

7.    Summitridge entered into the Loan in order to finance the purchase of the Property. Shute Dec., ¶ 4.

8.    Upon the closing of the Loan, Summitridge, not the Debtor, was the 100% owner of the Property. Shute Dec., ¶ 5.

9.    Upon information and belief, the Debtor is the sole member-manager of Summitridge. Shute Dec., ¶ 6.

10.    On or around October 19, 2018, an Assignment of Deed of Trust was recorded as instrument number 2018-1067508 with the Los Angeles County Recorder's Office, assigning the beneficial interest under the DOT to Movant Civic Holdings III Trust ("**Civic Holdings Trust**"). Shute Dec., ¶ 7.

11.    On or around January 7, 2019, an Assignment of Deed of Trust was recorded as instrument number 2019-0017373 with the Los Angeles County Recorder's Office, assigning the beneficial interest under the DOT to DLJ Mortgage Capital, Inc. Shute Dec., ¶ 8.

12.    On or around February 12, 2019, an Assignment of Deed of Trust was recorded as instrument number 2019-0128721, assigning the beneficial interest under the DOT to Civic Holdings Trust. Shute Dec., ¶ 9.

13.    Summitridge defaulted under the Loan by, among other things, failing to make the monthly contractual payments due under the Loan and as such, pursuant to its rights under the DOT, on or around May 14, 2019, Civic Holdings Trust caused to be recorded a Notice of Default and Election to Sell Under Deed of Trust ("**NOD**"). Shute Dec., ¶ 10.

14.    Summitridge continued in its default and on or around June 14, 2019, Civic Holdings Trust caused to be recorded a Notice of Trustee's Sale ("**NOS**").  The foreclosure sale date was

1     originally set for September 13, 2019. Shute Dec., ¶ 11.

2          15.     One day prior to the September 13, 2019 foreclosure sale date, Summitridge filed a

3     voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code as Case No. 19-

4     51885 (the "**Summitridge Bankruptcy Case**"). Shute Dec., ¶ 12.

5          16.     As such, the September 13, 2019 foreclosure sale date was postponed due to the

6     automatic stay. Shute Dec., ¶ 13.

7          17.     On November 12, 2019, the Bankruptcy Court for the Northern District of California

8     entered its Order Dismissing Case with 90-Day Bar (the "**Summitridge Dismissal Order**"), which

9     dismissed the Summitridge Bankruptcy Case and barred Summitridge from re-filing for bankruptcy

10    until February 10, 2020. Shute Dec., ¶ 14, a true and correct copy of the Summitridge Dismissal Order

11    is attached to the Shute Dec. as Exhibit B.

12         18.     After the dismissal of the Bankruptcy Case, Summitridge and Civic Holdings Trust

13    entered into that certain Forbearance Agreement dated as of November 27, 2019. Shute Dec., ¶ 15.

14         19.     Under the Forbearance Agreement, Summitridge agreed that, among other things,

15    multiple events of default had occurred under the Loan and that as of November 13, 2019, the

16    outstanding balance owed under the Loan was $4,107,823.87. Shute Dec., ¶ 16.

17         20.     Civic Holdings Trust agreed to forbear from exercising its remedies under the Loan so

18    long as there was no additional event of default under the Loan and Summitridge did not default under

19    the terms of the Forbearance Agreement. Shute Dec., ¶ 17.

20         21.     The Debtor is not a party to the Forbearance Agreement. Shute Dec., ¶ 18.

21         22.     Summitridge defaulted under the terms of the Forbearance Agreement by, among other

22    things, failing to pay the amounts due thereunder. Shute Dec., ¶ 19.

23         23.     After Summitridge defaulted under the terms of the Forbearance Agreement, the

24    Debtor filed his First Bankruptcy Case.  Summitridge, not the Debtor, was the owner of the Property

25    at the time the First Bankruptcy Case was filed.  Shute Dec., ¶ 20.

26         24.     On December 4, 2019, Civic Holdings Trust held and completed a foreclosure sale of

27    the Property. Shute Dec., ¶ 21.

28

25.     Civic Holdings Trust was the winning bidder at the foreclosure sale and received a Trustee's Deed Upon Sale to the Property. Shute Dec., ¶ 22, a true and correct copy of the Trustee's Deed Upon Sale is attached to the Shute Dec. as Exhibit C.

26.     On or around January 3, 2020, Civic Holdings Trust transferred the Property to Movant Civic Real Estate Holdings, LLC ("**Civic Real Estate**") via a Quit Claim Deed. Shute Dec., ¶ 23, a true and correct copy of the Quit Claim Deed is attached to the Shute Dec. as Exhibit D.

**The State Court Lawsuit**

*i.*     *The Complaints and the Demurrers*

27.     On February 20, 2020, Summitridge filed a Verified Complaint against, among other parties, Movants in the Superior Court of the State of California County of Los Angeles as Case No. 20SMCV00278 (the "**State Court Lawsuit**").  Shute Dec., ¶ 24.

28.     In the State Court Lawsuit, Summitridge alleges it is the rightful owner of the Property and asserted causes of action for breach of contract, promissory estoppel, negligent misrepresentation, wrongful foreclosure, quiet title, declaratory relief, accounting, and unjust enrichment.  Summitridge did not allege that the Debtor holds any ownership interest in the Property. Shute Dec., ¶ 25.

29.     On April 17, 2020, Movants filed their Demurrer to the Complaint. Shute Dec., ¶ 26.

30.     On October 1, 2020, the State Court sustained Movants' Demurrer with leave to amend as to the causes of action for breach of contract, promissory estoppel, negligent misrepresentation, and wrongful foreclosure.  The State Court sustained Movants' Demurrer without leave to amend as to the causes of action for quiet title, declaratory relief, accounting, and unjust enrichment.  In its ruling, the State Court also held that "[Summitridge] may amend its complaint only as authorized by the court's order." Shute Dec., ¶ 27.

31.     On October 27, 2020, Summitridge and the Debtor filed a First Amended Complaint ("**FAC**") for breach of contract, promissory estoppel, negligent misrepresentation, and wrongful foreclosure.  Summitirdge was not granted leave to amend its Complaint to add the Debtor as a plaintiff to the action.  In the FAC, Summitridge and the Debtor allege that Summitridge is the rightful owner of the Property.  Neither plaintiff alleges that the Debtor holds any ownership interest in the

- 5 -

Property. Shute Dec., ¶ 28, a true and correct copy of the FAC is attached to the Shute Dec. as Exhibit E.

32.     On November 17, 2020, Movants filed a Demurrer to the FAC and a Motion to Strike the improper addition of the Debtor as a plaintiff to the State Court Lawsuit.  The hearing on the Demurrer and Motion to Strike is September 9, 2021. Shute Dec., ¶ 29.

### ii.     The Motion to Expunge and the State Court Order

33.     On May 21, 2020, Movants filed their Motion to Expunge the Lis Pendens ("**Motion to Expunge**"), seeking an order from the State Court to expunge a lis pendens that had been wrongfully recorded against the Property by Summitridge on February 28, 2020 (the "**Lis Pendens**"). Summitridge filed an opposition in which it again asserted it was the rightful owner of the Property, not the Debtor.  Shute Dec., ¶ 30.

34.     On December 11, 2020, the Court held a hearing on the Motion to Expunge.  At the hearing, counsel for Summitridge and the Debtor asserted to the State Court and counsel for Movants, for the first time, that the Debtor had filed the instant Bankruptcy Case the day before the hearing. Shute Dec., ¶ 31.

35.     In light of this last minute filing, the State Court entered an order <u>granting</u> the Motion to Expunge (**State Court Order**"), however, stated that,

> [T]his ruling is STAYED, pending confirmation from the Bankruptcy Court: (1) that the automatic stay does not apply to Summitridge Venture Group, LLC; or (2) if, in fact, the automatic stay does apply to Summitridge Venture Group, LLC, that it does not apply to this Motion to Expunge Lis Pendens; or (3) moving parties obtain relief from the automatic stay from the Bankruptcy Court.

Shute Dec., ¶ 32, a true and correct copy of the State Court Order is attached to the Shute Dec. as Exhibit F.

### iii.     The Sale of the Property to Third Parties

36.     On or around September 21, 2020, Civic Real Estate and Anthony Nadalin and Lisa Nadalin (together, "**Buyers**") entered into that certain Residential Purchase Agreement and Joint Escrow Instructions ("**Purchase Contract**") for the sale of the Property.  Shute Dec., ¶ 33.

37.     On or around October 22, 2020, escrow closed and the sale of the Property to the Buyers was finalized.  Shute Dec., ¶ 34.

CIVIC APP PAGE NO. 26

38.     Upon information and belief, this Bankruptcy Case was filed in bad faith as it was filed solely to forestall the State Court's entry of an order granting the Motion to Expunge.  The Debtor has no ownership in the Property and has never alleged or asserted otherwise. Shute Dec., ¶ 35.

39.     Pursuant to the Motion, Movants request entry of an order (i) confirming no automatic stay is in place as to the Property or that otherwise prevents the State Court forum from entering its Order granting the Motion to Expunge or, in the alternative, (ii) terminating the automatic stay concerning the (a) Debtor, (b) the Property and (c) the State Court Lawsuit filed by the Debtor against Movants, (iii) granting *in rem* and prospective relief whereby the order granting the Motion will be binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of the Motion without further notice, and (iv) waiving the 14-day stay prescribed by FRBP 4001(a)(3).

## BASIS FOR RELIEF

**A.  There is No Automatic Stay in Effect as to the Property or that Otherwise Prevents the State Court from Entering its Order Granting the Motion to Expunge**

Movant respectfully requests that the Court enter an order confirming that no automatic stay is in place as to the Property or that otherwise prevents the State Court from entering the State Court Order.  As a matter of law, there is no automatic stay in place that pertains to the Property, which was sold to the Buyers prior to the filing of this Bankruptcy Case.  Accordingly, the Debtor has no legal or equitable interest in the Property.  The automatic stay extends to property of the bankruptcy estate, which is property owned by the Debtor, not property owned by the third party Buyers (or Summitridge for that matter).  11 U.S.C. § 362(a); *In re Chugach Forest Prod., Inc.,* 23 F.3d 241, 246 (9th Cir. 1994) (the automatic stay "protects only the debtor, property of the debtor, or property of the estate . . . .it does not protect non-debtors or their property.")  Accordingly, there is no automatic stay as to the Property or that prevents the State Court from entering the State Court Order.

Further, there is longstanding authority that holds defending a pre-petition court action is not a violation of the automatic stay.  For example, the Court in *Gordon v. Whitmore (In re Merrick)* 175 BR 333, 336 (9th Cir. BAP 1994) held that there is no authority for the proposition that the automatic

- 7 -

stay prevents a defendant from continuing to defend themselves against a pre-bankruptcy lawsuit. Additionally, California decisional authority holds, "based on the plain language of section 362(a)(1), the automatic stay is **inapplicable to superior court actions initiated by the debtor**." *Shah v. Glendale Fed. Bank* (1996) 44 Cal.App.4th 1371, 1375 (2d Dist.) (emphasis added) (citing *Shorr v. Kind* (1991) 1 Cal.App.4th 249, 254-255 [the automatic stay provision is inapplicable to an action brought by the debtor]; *A. Groppe & Sons Glass Co., Inc. v. Fireman's Fund Ins. Co.* (1991) 232 Cal. App. 3d 220, 226-227 ["a cause of action brought by the debtor is not tolled by the Bankruptcy Act"]; *Lauriton v. Carnation Co.* (1989) 215 Cal. App. 3d 161, 164 ["a debtor's cause of action is not tolled by the filing of a bankruptcy petition"]; *Danielson v. ITT Industrial Credit Co.* (1988) 199 Cal. App. 3d 645, 652 ["nothing in the Bankruptcy Act tolls a debtor's cause of action"]).  Accordingly, there is no automatic stay in effect as to the Property or that otherwise prevents the State Court from entering the State Court Order.  Movant respectfully requests an order stating as such.

**B.   In the Alternative, Under Section 362(d)(1) and (2), the Automatic Stay Should Be Terminated**

Under 11 U.S.C. section 362(d)(1), a party may seek relief from the automatic stay for "cause."  Cause for lifting and/or terminating the automatic stay has no clear definition and is determined on a case-by-case basis.  *See In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990).  The term "for cause" is construed broadly.  *See In re Garber*, 221 F.3d 1347 (9th Cir. 2000).  Court have commonly held that a finding that the bankruptcy case was commenced in bad faith is "cause" for lifting and/or terminating the automatic stay.  *See In re Duvar Apt., Inc.*, 205 B.R. 196 (9th Cir. BAP 1996).  Likewise, a party may seek relief from the automatic stay under 11 U.S.C. section 362(d)(2) where the debtor does not have equity in the subject property and the subject property is not necessary to an effective reorganization.

As set forth above, neither the Debtor nor Summitridge have any ownership interest in the Property.  Movant solely seeks relief so that the State Court may enter its State Court Order and expunge the Lis Pendens that was wrongfully recorded against the Property.  Such is "cause" for stay relief.  Further, under section 362(d)(2), stay relief is warranted as the Property is not necessary to an effective reorganization because the Debtor does not own the Property and it cannot be included in any attempt to reorganize.

- 8 -

CIVIC APP PAGE NO. 28

1      **C.  Under Section 362(d)(4), *In Rem* Relief Should Be Granted Because this Bankruptcy**

2            **Case Was Filed in Bad Faith**

3           The instant Bankruptcy Case is at least the third time in the past year that the Debtor has

4    abused the bankruptcy process in order to hinder and delay Movant; first to prevent Movant from

5    exercising its rights to foreclose the Property and now to prevent Movant from expunging the Lis

6    Pendens.   Based on the bad faith filings, including the instant Bankruptcy Case, by the Debtor

7    affecting the Property, Movant requests that any order granting the Motion include provisions which

8    provide that the order is binding and effective in any bankruptcy case commenced by or against any

9    debtor who claims an interest in the Property for a period of 180 days from the hearing of this Motion

10   without further notice.  Based upon the Debtor's bad faith, the Motion seeks *in rem* and/or prospective

11   relief.  Movant submits that the relief is appropriate based on the facts presented, as well as 11 U.S.C.

12   §§ 105(a) and 362(d)(4), as further analyzed by the case of *In re 4th Street East Investors, Inc.*, 474

13   B.R. 709 (Bankr. C.D. Cal. 2012).

14         **D.  The Stay Under 4001(a)(3) Should Be Waived**

15          Based on the bad faith filing of this Bankruptcy Case, Movant requests that the stay under

16   4001(a)(3) be waived.

17                              **CONCLUSION**

18          Movant prays for relief in accordance with the foregoing, and for such other and further relief

19   as this Court may deem just and proper.

20

21                              Respectfully submitted,

22   DATED:  December 24, 2020              WEDGEWOOD
                                           OFFICE OF THE GENERAL COUNSEL
23

24                                    By: */s/ Amelia Valenzuela_____*
                                          DAVID M. POITRAS
25                                        AMELIA B. VALENZUELA
                                     WEDGEWOOD, LLC, solely as Administrator of the
26                                   Civic Holdings III Trust and Civic Real Estate
                                     Holdings III, LLC
27

28

CIVIC APP PAGE NO. 29

# EXHIBIT 6

1  WEDGEWOOD
   Office of the General Counsel
2  DAVID M. POITRAS P.C. (SBN 141309)
   dpoitras@wedgewood-inc.com
3  AMELIA VALENZUELA (SBN 320428)
   avalenzuela@wedgewood-inc.com
4  2015 Manhattan Beach Blvd., Suite 100
   Redondo Beach, CA 90278
5  Telephone:    (310) 640-3070
   Facsimile:     (310) 640-3090
6
   Attorneys for Moving Parties,
7  *WEDGEWOOD, LLC, solely as Administrator*
   *of the Civic Holdings III Trust; and Civic Real*
8  *Estate Holdings III, LLC*

9
                **UNITED STATES BANKRUPTCY COURT**
10                **NORTHERN DISTRICT OF CALIFORNIA**
                        **SAN JOSE DIVISION**
11

| 12 | In re | CASE NO.  20-51735 |
| --- | --- | --- |
| 13 | VIKRAM SRINIVASAN, | RS NO.  ABV-1 |
| 14 | Debtor. | Chapter 11 |

11
12  In re                            CASE NO.      20-51735

13  VIKRAM SRINIVASAN,               RS NO.        ABV-1

14                    Debtor.        Chapter 11

15                                   Date:       February 2, 2021
                                     Time:       10:00 a.m.
16                                   Place:      U.S. Courthouse, Crtrm 9
                                                 280 South First Street
17                                                 San Jose, CA 95113

18                                   Judge:  The Hon. Stephen L. Johnson
19

20  **DECLARATION OF KARISSA SHUTE IN SUPPORT OF WEDGEWOOD, LLC, SOLELY**
    **AS ADMINISTRATOR OF THE CIVIC HOLDINGS III TRUST AND CIVIC REAL**
21  **ESTATE HOLDINGS III, LLC'S MOTION FOR ORDER CONFIRMING NO STAY IS IN**
    **EFFECT OR, IN THE ALTERNATIVE, FOR STAY RELIEF, WITH *IN REM* AND**
22                          **PROSPECTIVE RELIEF**

23
           I, Karissa Shute, declare:
24
           1.  I have personal knowledge of the matters set forth in this declaration and, if called
25
    upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have
26
    knowledge regarding Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust and
27
    Civic Real Estate Holdings III, LLC's (together, "**Movants**"), interest in the real property that is the
28

1    subject of the above Motion in my capacity as an authorized agent of Movants.

2        2.   I am authorized to submit this Declaration.  In my capacity as an authorized agent for

3    Movants, I have custody and control of Movant's files with respect to the real property located at

4    1666 (or 1648) Summitridge Drive, Beverly Hills, CA 90210 (the "**Property**") which is the subject

5    of the instant Motion.  I have personally worked on the books, records and files, and as to the

6    following facts, I know them to be true of my own knowledge or I have gained knowledge of them

7    from the business records of Movants on behalf of Movants.  These books, records and files were

8    made at or about the times of the events recorded, and are maintained in the ordinary course of

9    Movants' business at or near the time of the actions, conditions or events to which they relate.  Any

10   such document was prepared in the ordinary course of business of Movants by a person who had

11   personal knowledge of the event being recorded and had or has a business duty to record accurately

12   such event.  The business records of Movants applicable to the Property are available for inspection

13   and copies can be submitted to the Court if required.  The documents, records, information and other

14   things referred to herewith were prepared and/or maintained in the ordinary course of business by

15   Movants or their authorized agents.  The sources of the information and method of preparation of the

16   records referred herein were such as to indicate their trustworthiness.

17                    **The Loan, the Forbearance Agreement, and the Foreclosure Sale**

18       3.   On or around September 11, 2018, non-debtor Summitridge Venture Group, LLC

19   ("**Summitridge**") executed a promissory note (the "**Note**") in the original principal amount of

20   $3,500,000, in favor of Civic Financial Services, LLC ("**Original Lender**").  The Note was secured

21   by a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the

22   "**DOT**" and together with the Note, the "**Loan**").  True and correct copies of the Loan documents are

23   attached hereto collectively as **"Exhibit A"**.    The DOT was a first position lien on the Property.

24       4.   Summitridge entered into the Loan in order to finance the purchase of the Property.

25       5.   Upon the closing of the Loan, Summitridge, not the Debtor, was the 100% owner of

26   the Property.

27       6.   Upon information and belief, the Debtor is the sole member-manager of Summitridge.

28                                             - 2 -

CIVIC APP PAGE NO. 32

7.  On or around October 19, 2018, an Assignment of Deed of Trust was recorded as instrument number 2018-1067508 with the Los Angeles County Recorder's Office, assigning the beneficial interest under the DOT to Movant Civic Holdings III Trust ("**Civic Holdings Trust**").

8.  On or around January 7, 2019, an Assignment of Deed of Trust was recorded as instrument number 2019-0017373 with the Los Angeles County Recorder's Office, assigning the beneficial interest under the DOT to DLJ Mortgage Capital, Inc.

9.  On or around February 12, 2019, an Assignment of Deed of Trust was recorded as instrument number 2019-0128721, assigning the beneficial interest under the DOT to Civic Holdings Trust.

10. Summitridge defaulted under the Loan by, among other things, failing to make the monthly contractual payments due under the Loan and as such, pursuant to its rights under the DOT, on or around May 14, 2019, Civic Holdings Trust caused to be recorded a Notice of Default and Election to Sell Under Deed of Trust ("**NOD**").

11. Summitridge continued in its default and on or around June 14, 2019, Civic Holdings Trust caused to be recorded a Notice of Trustee's Sale ("**NOS**").  The foreclosure sale date was originally set for September 13, 2019.

12. One day prior to the September 13, 2019 foreclosure sale date, Summitridge filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code as Case No. 19-51885 (the "**Summitridge Bankruptcy Case**").

13. As such, the September 13, 2019 foreclosure sale date was postponed due to the automatic stay.

14. On November 12, 2019, the Bankruptcy Court for the Northern District of California entered its Order Dismissing Case with 90-Day Bar (the "**Summitridge Dismissal Order**"), which dismissed the Summitridge Bankruptcy Case and barred Summitridge from re-filing for bankruptcy until February 10, 2020.  A true and correct copy of the Summitridge Dismissal Order is attached hereto as **"Exhibit B"**.

15. After the dismissal of the Bankruptcy Case, Summitridge and Civic Holdings Trust

- 3 -

CIVIC APP PAGE NO. 33

entered into that certain Forbearance Agreement dated as of November 27, 2019.

16. Under the Forbearance Agreement, Summitridge agreed that, among other things, multiple events of default had occurred under the Loan and that as of November 13, 2019, the outstanding balance owed under the Loan was $4,107,823.87.

17. Civic Holdings Trust agreed to forbear from exercising its remedies under the Loan so long as there was no additional event of default under the Loan and Summitridge did not default under the terms of the Forbearance Agreement.

18. The Debtor is not a party to the Forbearance Agreement.

19. Summitridge defaulted under the terms of the Forbearance Agreement by, among other things, failing to pay the amounts due thereunder.

20. After Summitridge defaulted under the terms of the Forbearance Agreement, the Debtor filed his First Bankruptcy Case.  Summitridge, not the Debtor, was the owner of the Property at the time the First Bankruptcy Case was filed.

21. On December 4, 2019, Civic Holdings Trust held and completed a foreclosure sale of the Property.

22. Civic Holdings Trust was the winning bidder at the foreclosure sale and received a Trustee's Deed Upon Sale to the Property.  A true and correct copy of the Trustee's Deed Upon Sale is attached hereto as **"Exhibit C"**.

23. On or around January 3, 2020, Civic Holdings Trust transferred the Property to Civic Real Estate Holdings III, LLC ("**Civic Real Estate**") via a Quit Claim Deed.  A true and correct copy of the Quit Claim Deed is attached hereto as **"Exhibit D"**.

**The State Court Lawsuit**

*i.      The Complaints and the Demurrers*

24. On February 20, 2020, Summitridge filed a Verified Complaint against, among other parties, Movants in the Superior Court of the State of California County of Los Angeles as Case No. 20SMCV00278 (the "**State Court Lawsuit**").

25. In the State Court Lawsuit, Summitridge alleges it is the rightful owner of the Property

- 4 -

CIVIC APP PAGE NO. 34

1  and asserted causes of action for breach of contract, promissory estoppel, negligent misrepresentation,

2  wrongful foreclosure, quiet title, declaratory relief, accounting, and unjust enrichment. Summitridge

3  did not allege that the Debtor holds any ownership interest in the Property.

4       26. On April 17, 2020, Movants filed their Demurrer to the Complaint.

5       27. On October 1, 2020, the State Court sustained Movants' Demurrer with leave to amend

6  as to the causes of action for breach of contract, promissory estoppel, negligent misrepresentation,

7  and wrongful foreclosure. The State Court sustained Movants' Demurrer without leave to amend as

8  to the causes of action for quiet title, declaratory relief, accounting, and unjust enrichment. In its

9  ruling, the State Court also held that "[Summitridge] may amend its complaint only as authorized by

10  the court's order."

11       28. On October 27, 2020, Summitridge and the Debtor filed a First Amended Complaint

12  ("**FAC**") for breach of contract, promissory estoppel, negligent misrepresentation, and wrongful

13  foreclosure. Summitirdge was not granted leave to amend its Complaint to add the Debtor as a

14  plaintiff to the action. In the FAC, Summitridge and the Debtor allege that Summitridge is the rightful

15  owner of the Property. Neither plaintiff alleges that the Debtor holds any ownership interest in the

16  Property. A true and correct copy of the FAC is attached hereto as **Exhibit E"**.

17       29. On November 17, 2020, Movants filed a Demurrer to the FAC and a Motion to Strike

18  the improper addition of the Debtor as a plaintiff to the State Court Lawsuit. The hearing on the

19  Demurrer and Motion to Strike is September 9, 2021.

20            ***ii.    The Motion to Expunge and the State Court Order***

21       30. On May 21, 2020, Movants filed their Motion to Expunge the Lis Pendens ("**Motion**

22  **to Expunge**"), seeking an order from the State Court to expunge a lis pendens that had been

23  wrongfully recorded against the Property by Summitridge on February 28, 2020 (the "**Lis Pendens**").

24  Summitridge filed an opposition in which it again asserted it was the rightful owner of the Property,

25  not the Debtor.

26

27

28                                             - 5 -

CIVIC APP PAGE NO. 35

31. On December 11, 2020, the Court held a hearing on the Motion to Expunge. At the hearing, counsel for Summitridge and the Debtor asserted to the State Court and counsel for Movants, for the first time, that the Debtor had filed the instant Bankruptcy Case the day before the hearing.

32. In light of this last minute filing, the State Court entered an order <u>granting</u> the Motion to Expunge (**State Court Order**"), however, stated that,

> [T]his ruling is STAYED, pending confirmation from the Bankruptcy Court: (1) that the automatic stay does not apply to Summitridge Venture Group, LLC; or (2) if, in fact, the automatic stay does apply to Summitridge Venture Group, LLC, that it does not apply to this Motion to Expunge Lis Pendens; or (3) moving parties obtain relief from the automatic stay from the Bankruptcy Court.

A true and correct copy of the State Court Order is attached hereto as **"Exhibit F"**.

### iii. The Sale of the Property to Third Parties

33. On or around September 21, 2020, Civic Real Estate and Anthony Nadalin and Lisa Nadalin (together, "**Buyers**") entered into that certain Residential Purchase Agreement and Joint Escrow Instructions ("**Purchase Contract**") for the sale of the Property.

34. On or around October 22, 2020, escrow closed and the sale of the Property to the Buyers was finalized

35. Upon information and belief, this Bankruptcy Case was filed in bad faith as it was filed solely to forestall the State Court's entry of an order granting the Motion to Expunge. The Debtor has no ownership in the Property and has never alleged or asserted otherwise.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed this 24th day of December 2020 in Redondo Beach, California.

KARISSA SHUTE

- 6 -

# EXHIBIT 7

# EXHIBIT A

CIVIC APP PAGE NO. 38

Certified to be a true &
correct copy of the original

By: _____

# Note

September 11, 2018

Loan Number: ███████
Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA 90278

Address of Property(ies):

1666 Summitridge Drive

Beverly Hills, CA 90210

## 1.  Secured Note

In addition to the protections under this Note given to the Note Holder (as defined below), a Mortgage, Deed of Trust, Assignment of Rents and Fixture Filing, Security Deed or other comparable security instrument (the "**Security Instrument**"), dated the same date as this Note, protects the Note Holder from possible losses which might result if Borrower does not keep the promises which Borrower makes in this Note.  All of the terms, covenants and conditions contained in the Security Instrument are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein.  In the event of a conflict or inconsistency between the terms of the Security Instrument and this Note, the terms and provisions of the Security Instrument shall govern.

## 2.  Property

"**Property**" means the property that the Security Instrument describes under its heading "Transfer of Rights in the Property".

## 3.  Borrower's Promise to Pay

In return for a loan that Borrower has received, Borrower promises to pay US$ 3,500,000.00 (this amount is called "**Principal**"), plus interest, to the order of the Lender. The "**Lender**" is Civic Financial Services, LLC, a California limited liability company. Borrower will make all payments under this Note by automatic clearing house (ACH) transfer, or any other form agreed by the parties.

Borrower understands that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "**Note Holder**".

1

**4.  Interest**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. Subject to adjustment pursuant to Section 8.2, Borrower will pay interest at a yearly rate of 8.990%.  Interest shall be computed on the basis of a 30-day month and 360-day year, provided however, as to the amount due for each of the first and final month, interest shall be computed for the actual number of days elapsed in the month over a 365 day or 366 day year, as applicable, including the first such day and the date of Note Holder's receipt of any relevant payment.

**5.  Payments**

5.1 Time and Place of Payments

Borrower will make a payment every month. This payment will be for interest only for 12 months (the "**Interest Only Period**"). After the Interest Only Period, Borrower will make a balloon payment that will include the principal and any outstanding interest.

Borrower will make its monthly interest payment on the 1 day of each month beginning on 11/01/2018.  Borrower will make these payments every month through the Maturity Date. On 10/01/2019 (the "**Maturity Date**"), Borrower shall pay to Lender an amount equal to the Principal, plus any outstanding interest thereon.

Borrower will make its monthly payments, without notice and without offset or deduction, at 2015 Manhattan Beach Blvd, Suite 106, Redondo Beach, CA 90278 or at a different place if required by the Note Holder.

5.2 Amount of Monthly Payments

Borrower's monthly payment will be in the amount of US$26,220.83 for 12 months of this Note, adjusted to reflect (a) Section 8.2, (b) Prepayments as contemplated in Section 6, and (c) any other payments in excess of interest then due, which payments Lender may apply to principal.

**6.  Borrower's Right to Prepay**

Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "**Prepayment**". When Borrower makes a Prepayment, Borrower will tell the Note Holder in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the Note.

The Note Holder will apply a full or partial Prepayment in the following order: (i) first to any accrued and unpaid interest on the Prepayment amount, then (ii) next to reduce the amount of Principal owed under the Note.  Partial Prepayments do not affect timing or amount of monthly payments or Maturity Date.

**A Prepayment may carry a charge**, which will be calculated in accordance with the following schedule:

(a)     **For Notes with a one year term,** no minimum interest must be collected on the Principal, irrespective of when the Note is prepaid.

(b)     **For Notes with a two year term,** a minimum of eight months' interest must be collected on the Principal, irrespective of when the Note is prepaid.

2

(c)  **For Notes with a four year term,** a minimum of eighteen months' interest must be collected on the Principal, irrespective of when the Note is prepaid.

## 7.  Loan Charges

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits (and for purposes of making any such determination as to whether any interest exceeds the lawful maximum, it is understood and agreed that, insofar as the law permits, all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Note Holder), then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the maximum permitted limit; and (b) any sums already collected from Borrower which exceeded maximum permitted limits will be refunded to Borrower. The Note Holder may choose to make this refund by reducing the Principal Borrower owes under this Note or by making a direct payment to Borrower. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 8.  Default; Acceleration; Borrower's Failure to Pay as Required

### 8.1 Default

A "**default**" means and shall occur upon:

(a)  any failure of Borrower (or any Affiliate of Borrower) to pay Note Holder (or any affiliate of Note Holder) any amount due that remains delinquent as of the next payment date hereunder;

(b)  any failure of Borrower to perform any of its other obligations under this Note that is not cured within ten (10) days following Note Holder's delivery of notice thereof;

(c)  any failure of Borrower to perform any of its obligations under any other agreement to which Borrower and Lender or Note Holder are parties; and/or,

(d)  the making or furnishing by Borrower of any warranty, representation or statement to Lender or Note Holder in connection with this Note or any other agreement to which Borrower and Lender or Note Holder are parties, which is false or misleading in any material respect when made or furnished.

"**Affiliate**" means, with respect to any person or entity, any other person or entity that Controls, is under common Control with or is Controlled by such person or entity (and "**Control**" or "**Controlling**" means possession of the direct or indirect power to direct or cause the direction of the management and policies of a person or entity).

Upon the occurrence of a default hereunder, then all amounts hereunder shall, at the option of Lender, without notice or demand except as the Security Instrument may otherwise provide, become immediately due and payable for all purposes.

### 8.2 Late Payment

Borrower acknowledges that the late payment of any amount payable by Borrower hereunder will cause Note Holder to incur administrative costs and other damages, the exact amount of

3

which would be impracticable or extremely difficult to ascertain, and the late charge described below provides a reasonable estimate thereof.

Subject to Section 7 above,

(a)     if Borrower fails to pay any amount required to be paid by Borrower hereunder on the date such payment is due (a "**delinquency**"), a late charge equal to fifteen percent (15%) of the delinquent amount will be assessed no earlier than the fifteenth day of delinquency;

(b)     upon the occurrence of a default, the interest rate will increase to the lesser of:  (i) eighteen percent (18%) and (ii) the maximum rate permitted by applicable law; provided that if any such default is cured on or before the date the next payment is due, subject to clause (c) below, the interest rate shall be reset to the applicable interest rate (established by Section 4) effective at the next payment date); and,

(c)     if any default continues without cure beyond the next succeeding payment date (*i.e.*, the first payment date after the date on which the applicable default occurred), then Borrower shall have no right to cause the interest rate to revert to the applicable interest rate (established by Section 4), and at Lender's discretion, for the life of the loan the interest rate will remain at the lesser of: (i) eighteen percent (18%) and (ii) the maximum rate permitted by applicable law (cure of the applicable default will NOT reset the interest rate to the rate specified in Section 4).

If the Principal and any unpaid interest is not paid in full on or before the Maturity Date, the interest rate will increase to the lesser of:  (a) eighteen percent (18%) and (b) the maximum rate permitted by applicable law.  Such default interest is not curable and will remain in effect until the Principal and all interest is repaid in full.

8.3 No Waiver By Note Holder
Even if, at a time when Borrower is in default, the Note Holder does not require Borrower to pay immediately in full as described above, the Note Holder will still have the right to do so if Borrower is in default at a later time, as described above.

8.4 Payment of Note Holder's Costs and Expenses
If the Note Holder has required Borrower to pay immediately in full as described in Section 8.1 above, the Note Holder will have the right to be paid back by Borrower for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, attorney's fees.

**9.   Giving of Notices**
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the address of Borrower specified beneath Borrower's signature below, or at a different address if Borrower gives the Note Holder a notice of Borrower's different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 5.1 above or at a different address if Borrower is given a notice of that different address.

4

### 10. Obligations of Persons under This Note

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of such persons together.  This means that any one of such persons may be required to pay all of the amounts owed under this Note.

### 11. Waivers

Borrower and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "**Presentment**" means the right to require the Note Holder to demand payment of amounts due. "**Notice of Dishonor**" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 12. Use of Proceeds

BORROWER AND ANY OTHER PERSON WHO HAS OBLIGATIONS UNDER THIS NOTE WILL USE THE PROCEEDS OF THE LOAN THAT BORROWER HAS RECEIVED SOLELY FOR THE PURPOSE OF ACQUIRING OR REFINANCING, AND IF APPLICABLE, IMPROVING, REAL PROPERTY FOR INVESTMENT PURPOSES, AND BORROWER WARRANTS AND REPRESENTS TO THE NOTE HOLDER THAT ALL LOAN PROCEEDS WILL BE SOLELY USED TO ACQUIRE OR REFINANCE, AND IF APPLICABLE, IMPROVE, REAL PROPERTY FOR INVESTMENT PURPOSES, AND THAT NO LOAN PROCEEDS WILL BE USED FOR A CONSUMER, FAMILY OR HOUSEHOLD PURPOSE.

**BORROWER FURTHER WARRANTS AND REPRESENTS TO NOTE HOLDER THAT BORROWER WILL AT NO TIME DURING THE TERM OF THE LOAN INHABIT THE PROPERTY.**

### 13. Intended Construction

(a)     Borrower has declared in writing to Lender in the loan application all contemplated construction and/or renovations to the Property.   If Borrower contemplates construction and/or renovations to the Property, Borrower shall execute and deliver to Lender a completed Construction and Renovations:   Reserve and Disbursement Agreement, in Exhibit A attached hereto.

(b)     Borrower will obtain authorization from the loan servicer for all future construction and/or renovations requiring major construction, including, but not limited to, remodeling of the kitchen or bathroom, installation of a new roof or new windows, and additions to the property. For purposes of this paragraph, "**major construction**" is defined as any alteration to the Property that requires demolition, partial or otherwise, of the same, and reasonably expected to cost over US$10,000.

(c)     Borrower will diligence all third parties that Borrower retains in connection with any construction on, or renovation to, the Property, whether such third party be a contractor or other vendor, and Borrower will ensure that all such parties are at all times properly licensed as required under applicable law, and adequately insured and bonded.

5

(d)     Borrower shall obtain from all applicable governmental authorities any and all applicable building and other permits and approvals (collectively, "**Permits**") necessary or required for Borrower to commence, perform and fully complete construction and/or renovations to the Property (and to permit the Property to be legally occupied upon completion thereof).  Borrower shall deliver a copy of all such Permits to Lender upon Lender's request therefor.

## 14. Financial Information

Any financial information Borrower provides in connection with Borrower's application for a loan, or at any point thereafter and during the term of the loan, will be prepared by, or certified by, Borrower, a certified public accountant, or other professional with comparable qualifications.

## 15. Due on Sale

Notwithstanding any provision of this Note to the contrary, if all or any part of the Property or any Interest in the Property (as defined in the Security Instrument) is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums payable under this Note in accordance with Section 3.17 of the Security Instrument.  If Lender exercises such option, Lender shall give Borrower notice of acceleration in accordance with the Security Instrument, and in such event the Maturity Date shall be deemed to occur on the date on which payment in full is so required.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

## 16. Release of Collateral

Lender is without obligation to release all or any portion of the Property from the lien of the Security Instrument unless and until all amounts due Lender from Borrower, including without limitation this Note, the Security Instrument, or any document executed in connection with this Note or the Security Instrument, have been indefeasibly paid in full.  Should Lender in its discretion choose to release any portion of the Property from the lien of the Security Instrument prior to such indefeasible payment in full, Borrower acknowledges that:  Lender may maintain such ratio as Lender deems appropriate of value of the Property remaining subject to the lien of the Security Instrument relative to Borrower's obligations to Lender; and, Lender in its assessment of the formulation of such ratio may in its discretion re-assess its valuation of the relevant Property, the expense of such re-assessment at the charge of Borrower.

## 17. Guarantee

In the event that the Lender determines, in its sole and absolute discretion, that a guarantee is required, Borrower shall provide a guarantee by Vikram Srinivasan of Borrower's obligations in connection with this Note, the Security Instrument, and any document executed in connection with this Note or the Security Instrument, in the form of Exhibit B attached hereto, and deliver such executed Guarantee to Lender.

6

THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO ORAL AGREEMENTS BETWEEN THE PARTIES.

7

CIVIC APP PAGE NO. 45

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**SUMMITRIDGE VENTURE GROUP, LLC, a California Limited Liability Company**

By: _Vikram [signature]_ _____ Date: _9/12/18_
Name: Vikram Srinivasan
Title: Managing Member

By: _[signature]_ _____ Date: _8-14-18_
Name: Matthew Bahrami
Title: Member

---

### ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

State of California

County of ___Alameda___ )

On ___Sept. 12, 2018___ before me, ___Mansoor Fazel, Notary Public___
(insert name and title of the officer)

Personally appeared ___Vikram Srinivasan___, who proved

to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

MANSOOR FAZEL
COMM. # 2188609
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires April 11, 2021

---

8

# CALIFORNIA ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California _____ }

County of Orange _____ }

On 9/14/18 before me, Miguel A Chavez, Notary Public
(Here insert name and title of the officer)

personally appeared Matthew Bahrami _____ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

MIGUEL A. CHAVEZ
COMM. #2176924
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Jan. 20, 2021

_____ Notary Public Signature          (Notary Public Seal)

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

### CAPACITY CLAIMED BY THE SIGNER

☐ Individual (s)
☐ Corporate Officer
_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

2015 Version www.NotaryClasses.com 800-873-9865

### INSTRUCTIONS FOR COMPLETING THIS FORM

*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

Certified to be a true & correct copy of the original

By: _____

# Exhibit B

# Guarantee

Loan Number: ▮▮▮▮▮▮

The undersigned, Vikram Srinivasan, an individual & Matthew Bahrami, an individual ("**Guarantor**"), at solicitation of SUMMITRIDGE VENTURE GROUP, LLC , a California Limited Liability Company ("**Borrower**"), requests Civic Financial Services, LLC, a California limited liability company ("**Lender**"), to extend Borrower Credit. As inducement, Guarantor agrees:

1. The term "**Credit**" in this Guarantee ("**Guarantee**") includes, without limitation, any amount Borrower owes Lender, heretofore, now, or hereafter incurred, arising from any of that certain Note of Borrower to Lender, dated as of the date hereof (with any amendment, the "**Note**"), and any Mortgage, Deed of Trust, Assignment of Rents and Fixture Filing, Security Deed or other comparable security instrument (with any amendment, the "**Security Instrument**"), by and between Borrower and Lender (the Note, Security Instrument, and any document executed in connection therewith, collectively, the "**Loan Documents**").

2. (a) If there is more than a single entity or person included in the terms "Guarantor" or "Borrower," respectively, each reference herein to such terms shall mean any and all, and one or more of such entities and persons both jointly and severally, and (b) if more than one person or entity executes this Guarantee, the obligations and liabilities hereunder of Guarantors are and shall be joint and several.

3. Guarantor's liability hereunder is unlimited. Guarantor is liable to Lender for interest and expenses enumerated in Section 11. Any payment received by Lender from Borrower, any other person or proceeds of collateral granted by Borrower or any other shall not reduce Guarantor's liability. Notwithstanding any foreclosure, Guarantor shall remain liable to Lender for any Credit remaining unpaid.

4. Guarantor unconditionally guarantees and agrees to pay Lender, on demand following any default (as defined in the Note), an amount equal to the Credit, and to otherwise perform any Borrower obligations undertaken pursuant to any Credit. This Guarantee is a Guarantee of payment and not of collection.

5. Guarantor authorizes Lender at its sole discretion, with or without notice, and without affecting Guarantor's continuing liability, to change the time or manner of payment of any Credit by waiver, modification, renewal, extension, acceleration, or otherwise. Guarantor waives all presentments, demands for performance, and notices and demands of any kind or nature whatsoever.

6. Guarantor represents and warrants to Lender that: (a) Lender has made no representation to Guarantor in regard to Borrower, the Credit, or any related matters; and (b) Guarantor assumes responsibility to be informed of Borrower's financial condition, and of any circumstances bearing upon risk of nonpayment of the Credit, and Lender has no duty to advise Guarantor of any information known to Lender.

7. In addition to all liens upon and rights of setoff against monies, securities, or other property

1

of Guarantor given to Lender by law or otherwise as security hereunder, Guarantor pledges Lender and grants Lender a security interest in, and Lender shall have a right of setoff against, all monies, securities, and other property of Guarantor now or hereafter in the possession of, or on deposit with, Lender, whether held in a general or special account or deposit or for safekeeping or otherwise; and each such security interest, or right of setoff, may be enforced or exercised without demand upon, or notice to, Guarantor. The security interests here created shall secure all of Guarantor's obligations to Lender under this Guarantee and any subsequent guarantee by Guarantor. This Guarantee is not secured by real property.

8. Any indebtedness of Borrower now or hereafter owed Guarantor and all claims of Guarantor against Borrower, whenever arising, are subordinated to the Credit and assigned to Lender as additional collateral. If Borrower is an entity, Guarantor will not withdraw or accept, without Lender's prior written consent, any return of any capital invested or equity interest in Borrower.

9. Should one or more provisions of this Guarantee be determined illegal or unenforceable, all other provisions shall remain effective.

10. This Guarantee shall inure to the benefit of Lender, its successors and assigns, and shall bind Guarantor and Guarantor's heirs, executors, administrators, representatives, successors, and assigns.

11. Guarantor agrees to pay Lender, on demand, reasonable attorneys' fees and all other costs and expenses which Lender may incur in collection, or attempted collection, from Borrower of any of the Credit and/or in interpretation, enforcement, or attempted enforcement by Lender of this Guarantee or any collateral therefor, together with interest thereon at the rate applicable to the Credit, including, without limitation, attorneys' fees and related costs of enforcement of any judgments and awards and upon any appeal.

12. Guarantor warrants and represents to Lender that:

(a) All financial statements and other financial information furnished, or to be furnished, to Lender by Guarantor are, and will be, true and correct, and do and will fairly represent the financial condition of Guarantor as of the dates thereof; and

(b) There has been no material adverse change in Guarantor's financial condition since the dates of the financial statements and other information furnished to Lender, except as previously disclosed to Lender in writing.

13. Lender may declare Guarantor in default under this Guarantee upon any of the following:

(a) Guarantor fails to pay or perform any of Guarantor's obligations under this Guarantee; or

(b) Any representation or warranty of Guarantor to Lender proves false or misleading; or

(c) A petition or action for relief shall be filed by or against Guarantor, pursuant to the Federal Bankruptcy Code, or under any other law relating to bankruptcy, insolvency, reorganization, moratorium, creditor composition, arrangement, or other relief from debts; the appointment of a receiver, trustee, custodian, or liquidator of or for any property of Guarantor; or upon death, incapacity, insolvency, dissolution, or termination of the business of Guarantor; or

(d) Guarantor revokes or attempts to revoke this Guarantee.

2

CIVIC APP PAGE NO. 49

14. Rights, remedies, powers, and benefits granted Lender under this Guarantee, the Credit, any oral or other written agreement or applicable law whether express, implied in law or otherwise, are cumulative.

15. Lender shall not be deemed to have expressly or impliedly waived any security interest granted hereunder or rights, powers, and/or remedies hereunder (including any right of setoff) unless such waiver is written and signed by an authorized officer of Lender. A waiver by Lender on any one occasion shall not be construed as waiver on any future occasion. Failure by Lender to file or enforce a claim against the estate (in administration, bankruptcy, probate, or other proceeding) of Borrower or of any other, shall not affect Guarantor's liability.

16. Each of this Guarantee and any related document may be amended only by written agreement signed by an authorized officer of Lender.

17. This is a continuing Guarantee of the Credit. Revocation of this Guarantee, if permitted by applicable law, shall be effective only upon the close of the next business day after written notice thereof is received by an officer of Lender by certified or registered mail, return receipt requested at 2015 Manhattan Beach Blvd, Suite 106, Redondo Beach, CA 90278, Attention: Civic Financial Services, Inc. Any such revocation shall be effective only as to the revoking party and shall not affect that party's obligations with respect to Credit existing before the revocation became effective.

18. State Specific Provisions-California

(a) A married person who signs this Guarantee expressly agrees that recourse may be had against his or her separate property and all community property over which that person has a power of management and control, for all of his or her obligations hereunder.

(b) Guarantor waives Guarantor's rights of subrogation, reimbursement, indemnification, and contribution, and any other rights and defenses that are, or may become, available to Guarantor pursuant to any of CALIFORNIA CIVIL CODE §§2787-2855.

(c) Guarantor unconditionally and irrevocably waives all rights and defenses, including, but not limited to, any rights or defenses directly or indirectly based upon CALIFORNIA CODE OF CIVIL PROCEDURE ("CALCAP") §§ 580a, 580b, 580d, or 726, that Guarantor may have because real property secures Borrower's debt.

(d) Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though such election, *e.g.* a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the principal by operation of CAL CCP §580d or otherwise.

(e) To the maximum extent permitted by law, Guarantor waives the benefit of the statute of limitations affecting Guarantor's liability hereunder or enforcement hereof, or collection of any of the Credit, including, without limiting the foregoing, any and all special statutes of limitations arising out of CAL CCP §§ 580a or 726(b). Any partial payment by Borrower which tolls any statute of limitations as to Borrower shall likewise toll the statute of limitations as to Guarantor.

(f) Guarantor waives all rights to interpose setoffs or counterclaims of any nature in any action or proceeding instituted by Lender with respect to this Guarantee, the collateral therefor, or any matter arising therefrom or relating thereto, and the posting of any bond which may

3

otherwise be required, and waives any and all benefits of cross-demands pursuant to CAL CCP §431.70.

(g) Guarantor irrevocably submits and consents to jurisdiction of any federal or state court of competent jurisdiction within California in connection with any action or proceeding arising out of, or relating to, this Guarantee, and consents to service of process by any means allowed by California or federal law.

(h) California law, without reference to its choice of law rules, governs this Guarantee.

(i) JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY. NOTWITHSTANDING SECTION 21 BELOW TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GUARANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS, HIS OR HER BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

19. This Guarantee constitutes the parties' entire agreement regarding its subject matter.

20. Guarantor consents to Lender's (a) sale, transfer, pledge or assignment of this Guarantee and/or any of the Loan Documents, or any servicing rights thereto, and/or (b) sale or transfer of any participation interest in the loan here guaranteed ("**Loan**"). Lender may provide to any such actual or prospective purchasers any information Lender may have about Guarantor, Borrower or any other matter relating to the Loan or this Guarantee, and Guarantor waives any relevant rights to privacy.

21. WAIVER OF RIGHT TO TRIAL BY JURY. GUARANTOR HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING UNDER THIS GUARANTEE, OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (2) IN ANY WAY CONNECTED WITH, OR RELATED OR INCIDENTAL TO, THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS GUARANTEE, OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED

4

CIVIC APP PAGE NO. 51

OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND GUARANTOR HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY.  GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY.

SUMMITRIDGE VENTURE GROUP, LLC , a California Limited Liability Company

By: _____  Date: 9/12/18
Name: Vikram Srinivasan
Title: Managing Member

By: _____  Date: 9-14-18
Name: Matthew Bahrami
Title: Member




**This page is part of your document - DO NOT DISCARD**

# 20180977267





**Pages:**
**0035**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/25/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 186.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 186.00 |






**L E A D S H E E T**



**201809253300018**

**00015762442**



**009361350**

**SEQ:**
**02**

SECURE - 8:00AM





**THIS FORM IS NOT TO BE DUPLICATED**



E08_180924_6552291

USA-NTC

RECORDING REQUESTED BY

*Civic Financial Services, LLC*

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME   Civic Financial Services, LLC

STREET
ADDRESS   2015 Manhattan Beach Blvd., Ste. 106

CITY, STATE &
ZIP CODE   Redondo Beach, CA 90278

SPACE ABOVE FOR RECORDER'S USE ONLY

---

Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

   Exempt from the fee per GC 27388.1 (a) (2); This document is subject to Documentary Transfer Tax

☑ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

CIVIC APP PAGE NO. 54

USA-NTC

**Recording Requested by:**
Civic Financial Services, LLC

**And After Recording Return To:**
Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA  90278



# Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing

Loan Number:

### 1.  Definitions

Words used in multiple sections of this document are defined below and other words are defined in Sections 3.3, 3.10, 3.12, 3.17, 3.18, and 3.19.  Certain rules regarding the usage of words used in this document are also provided in Section 3.15.

"**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

"**Borrower**" is SUMMITRIDGE VENTURE GROUP, LLC , a California Limited Liability Company; BORROWER'S ADDRESS IS 1102 WRIGLEY WAY, Milpitas, CA 95035; Borrower is the trustor under this Security Instrument.

"**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

"**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfer initiated by telephone, wire transfers, and automated clearinghouse transfers.

"**Escrow Items**" means those items that are described in Section 3.3.

"**Lender**" is CIVIC FINANCIAL SERVICES, LLC; Lender is a LIMITED LIABILITY COMPANY organized and existing under the laws of CALIFORNIA; Lender's address is 2015 MANHATTAN BEACH BLVD

CIVIC APP PAGE NO. 55

STE 106, REDONDO BEACH, CALIFORNIA 90278; Lender is the beneficiary under this Security Instrument.

**"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverage described in Section 3.5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**"Note"** means the promissory note signed by Borrower and dated  September 11, 2018.  The Note states that Borrower owes Lender Three Million Five Hundred Thousand Dollars and Zero Cents Dollars (US$3,500,000.00) plus interest; Borrower has promised to pay interest on this debt in regular Periodic Payments and to pay the debt in full not later than October 01, 2019.

**"Periodic Payment"** means the regularly scheduled amount due for (i) interest under the Note, plus (ii) any amounts payable under Section 3.3 of this Security Instrument.

**"Property"** means the property that is described below under the heading "Transfer of Rights in the Property".

**"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation that governs the same subject matter. As used in this Security Instrument, **"RESPA"** refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not quality as a "federally related mortgage loan" under RESPA.

**"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower:

[] Condominium Rider                       [] Planned Unit Development Rider
[] Revocable Trust Rider                    [] Other:
[] Other:                                          [] Other:

**"Security Instrument"** means this document, which is dated  September 11, 2018 together with all Riders to this document.

**"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**"Trustee"** is USA National Title Company, Inc.

1901 Orange Tree Lane # 220RedlandsSan Bernardino92374

CIVIC APP PAGE NO. 56

## 2. Transfer of Rights in the Property
This Security Instrument secures to Lender:

- (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and,

- (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

STATE: CA

COUNTY: Los Angeles

| Type of Recording Jurisdiction | Name of Recording Jurisdiction | A.P.N. |
|---|---|---|
| County | Los Angeles | 4355-009-012 |

Which currently has the address of: 1666 Summitridge Drive, Beverly Hills, CA 90210

more fully described by the legal description attached as Exhibit A. *SEE ATTACHED HERETO AND made apart hereof Exhibit A*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the **"Property"**.

BORROWER REPRESENTS, WARRANTS AND COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

## 3. Uniform Covenants
Borrower and Lender covenant and agree as follows:

### 3.1 Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges
Borrower shall pay when due the Principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3.3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b)

money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 3.14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but except as required by Applicable Law, Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

### 3.2 Application of Payments or Proceeds

Except as otherwise described in this Section 3.2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

### 3.3 Funds for Escrow Items

Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the **"Funds"**) to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property,

if any; (c) premiums for any and all insurance required by Lender under Section 3.5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 3.9. These items are called "**Escrow Items**." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and if so required, such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3.3. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 3.8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 3.8 and pay such amount and Borrower shall then be obligated under Section 3.8 to repay to Lender any such amount so paid by Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 3.14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.3. Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in

escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

### 3.4 Charges; Liens

Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 3.4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

### 3.5 Property Insurance

Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a onetime charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

CIVIC APP PAGE NO. 60

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained by Lender might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 3.5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, to the extent permitted by Applicable Law, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 3.2.

If Borrower fails to do so in a timely manner, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate

CIVIC APP PAGE NO. 61

and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 5.1 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

### 3.6 Preservation, Maintenance and Protection of the Property; Inspections

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or permit waste to be committed on the Property. Notwithstanding the fact that Borrower is not residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 3.5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

### 3.7 Borrower's Loan Application

Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning the ABSENCE OF ANY OCCUPANCY OR USE OF THE PROPERTY AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER.

### 3.8 Protection of Lender's Interest in the Property and Rights Under this Security Instrument

If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has permitted the Property to remain vacant, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing

CIVIC APP PAGE NO. 62

and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 3.8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 3.8.

Any amounts disbursed by Lender under this Section 3.8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement, and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground or master lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**3.9 Mortgage Insurance**

(a)     If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect, and Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. To the fullest extent permitted by Applicable Law, such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay

the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 3.9 affects Borrower's obligation to pay interest at the rate provided in the Note.

(b)  Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

(c)  Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

(d)  As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance". Further:

(1)  **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(2)  **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**3.10 Assignment of Miscellaneous Proceeds; Forfeiture**

(a)  To the fullest extent permitted by Applicable Law, all Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

(b)  If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity

to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. To the fullest extent permitted by Applicable Law, Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, then to the fullest extent permitted by Applicable Law, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 3.2.

(c)   In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

(d)   In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

(e)   In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, to the fullest extent permitted by Applicable Law, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

(f)   If Borrower fails to pursue recovery of Miscellaneous Proceeds in a diligent manner, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. **"Opposing Party"** means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

(g)    Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default if acceleration has not occurred by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

(h)    All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 3.2.

**3.11 Borrower Not Released; Forbearance By Lender Not a Waiver**
Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**3.12 Joint and Several Liability; Co-signers; Successors and Assigns Bound**
Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a **"co-signer"**):

(a)    is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument;

(b)    is not personally obligated to pay the sums secured by this Security Instrument; and

(c)    agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 3.17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 3.18) and benefit the successors and assigns of Lender.

**3.13 Loan Charges**

2300-1002 / 501712.10                             12

Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, Property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits (and for purposes of making any such determination as to whether any interest exceeds the lawful maximum, it is understood and agreed that all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender), then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

### 3.14 Notices

All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the address designated in the Note unless Borrower has designated a substitute notice address by no less than ten (10) days prior notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

### 3.15 Governing Law; Severability; Rules of Construction

This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such

CIVIC APP PAGE NO. 67

silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument:

(a)     words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender;

(b)     words in the singular shall mean and include the plural and vice versa; and

(c)     the word "may" gives sole discretion without any obligation to take any action.

### 3.16 Borrower's Copy
Borrower shall be given one copy of the Note and of this Security Instrument.

### 3.17 Transfer of the Property or a Beneficial Interest in Borrower
As used in this Section 3.17, **"Interest in the Property"** means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 3.14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### 3.18 Sale of Note; Change of Loan Servicer; Notice of Grievance
The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "**Loan Servicer**") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

CIVIC APP PAGE NO. 68

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 3.14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 5.1 and the notice of acceleration given to Borrower pursuant to Section 3.17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 3.18.

### 3.19 Hazardous Substances

As used in this Section 3.19: (a) **"Hazardous Substances"** are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) **"Environmental Law"** means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) **"Environmental Cleanup"** includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an **"Environmental Condition"** means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

CIVIC APP PAGE NO. 69

### 3.20 Additional Property Subject to the Security Instrument

In addition to the Property elsewhere herein described, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.

### 3.21 Use of Property; Compliance with Law

Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

### 3.22 Subordinate Liens

Except as permitted by Applicable Law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

### 3.23 Rent Loss Insurance

Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 3.5.

### 3.24 Assignment of Leases

Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this Section 3.24, the word "**lease**" shall mean "**sublease**" if the Security Instrument is on a leasehold.

### 3.25 Assignment of Rents; Appointment of Receiver; Lender in Possession

Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("**Rents**") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 5.1 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the

CIVIC APP PAGE NO. 70

Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless Applicable Law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 3.8.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

### 3.26 Security Agreement

This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property. By executing and delivering this Security Instrument, Borrower hereby grants to Lender and Trustee, as security for Borrower's performance of its obligations under the Note, this Security Instrument and all of the other loan documents, a security interest in the items described in Section 3.20 above to the fullest extent that such items may be subject to the Uniform Commercial Code.

### 3.27 Pledge of Monies Held

Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender, including, without limitation, any sums deposited in the escrow as provided in Section 3.3 above, insurance proceeds as provided in Section 3.5 above and Miscellaneous Proceeds as provided in Section 3.10 above, as additional security for Borrower's performance of its obligations under the Note, this Security Instrument and all of the other loan documents, until expended or applied as provided in this Security Instrument.

### 3.28 Cross-Default Provision

Any breach or default by Borrower or any Affiliate of Borrower under any note or agreement to which Lender or any Affiliate of Lender is also a party (or has an interest) shall be a breach under this Security Instrument, and Lender may invoke any of the remedies permitted by this Security Instrument.

### 4.   Balloon Payment Covenant

Borrower and Lender further covenant and agree as follows:

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER WITH WHICH BORROWER HAS THIS LOAN, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

### 5.   Non-Uniform Covenants

Borrower and Lender further covenant and agree as follows:

### 5.1 Acceleration; Remedies

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 3.17 unless Applicable Law provides otherwise) or in the Note. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand, and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 5.1, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

CIVIC APP PAGE NO. 72

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

This Section 5.1 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Section 6 below.

**5.2 Reconveyance**
Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

This Section 5.2 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Section 6 below.

**5.3 Substitute Trustee**
Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**5.4 Statement of Obligation Fee**
Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**5.5 Use of Property**
BORROWER WILL AT NO TIME DURING THE TERM OF THE LOAN INHABIT THE PROPERTY. THE PROPERTY IS OWNED AND HELD BY BORROWER AS AN INVESTMENT PROPERTY. NONE OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER NOW OCCUPIES OR USES THE PROPERTY, AND NONE OF THEM HAS ANY PRESENT INTENTION TO OCCUPY OR USE THE PROPERTY IN THE FUTURE AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER. EACH OF BORROWER AND ITS OWNERS, EMPLOYEES AND OTHER AFFILIATES NOW OCCUPIES AND USES

CIVIC APP PAGE NO. 73

OTHER PROPERTY OR PROPERTIES AS SUCH PERSON'S PRINCIPAL OFFICE, RESIDENCE AND/OR SECOND HOME.

### 6.  State Specific Provisions-California

The representations,  warranties and covenants in this Section 6 shall be continuing representations, warranties and covenants that shall be deemed to be made by Borrower throughout the term of the Loan, until paid in full.

(a) The notice of acceleration pursuant to Section 5.1 shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

(b) In addition to the provisions of the Note, Borrower further agrees that, if Lender accepts a Guarantee of only a portion of the Loan, Borrower waives its right under California Civil Code Section 2822(a) to designate the portion of the Loan which shall be satisfied by a guarantor's partial payment.

(c) Except for matters covered by a duly established and implemented O&M Plan in respect of asbestos-containing materials, Borrower shall not cause or permit any lien (whether or not such lien has priority over the lien created by this Security Instrument) upon the Property imposed pursuant to any Environmental Laws.

(d) Borrower represents and warrants to Lender that, except as previously disclosed by Borrower to Lender in writing:

   (1) at the time of acquiring the Property, Borrower undertook all appropriate inquiry into the previous ownership and uses of the Property consistent with good commercial or customary practice and no evidence or indication came to light which would suggest that the Property is subject to any Environmental Condition or Environmental Cleanup; and

   (2) at least one of the following is true: (A) the Property is not located within 2,000 feet of a significant disposal of Hazardous Substances; or (B) if the Property is located within 2,000 feet of a significant disposal of Hazardous Substances, such Hazardous Substances do not constitute a significant existing or potential hazard to present or future public health or safety on the Property. In any case, Borrower agrees to immediately disclose to Lender any significant disposal of Hazardous Substances that occurs or exists within 2,000 feet of the Mortgaged Property.

(e) Without limiting any of the remedies provided in this Security Instrument, Borrower acknowledges and agrees that each of the provisions in this Section 6 is an environmental provision (as defined in Section 736(f)(2) of the California Code of Civil Procedure) made by Borrower relating to real property security (the "**Environmental Provisions**"), and that to the extent applicable, Borrower's failure to comply with any of the Environmental Provisions will be a breach of contract that will entitle Lender to pursue the remedies provided by Section 736 of the California Code of Civil Procedure for the recovery of damages and for the enforcement of the Environmental Provisions.

CIVIC APP PAGE NO. 74

(f) **Remedies Not Exclusive; Waiver**.  Trustee and Lender shall have all powers, rights and remedies under Applicable Law whether or not specifically or generally granted or described in this Security Instrument.  Nothing contained herein shall be construed to impair or to restrict such powers, rights and remedies or to preclude any procedures or process otherwise available to trustees or beneficiaries under deeds of trust in the State of California.  Trustee and Lender, and each of them, shall be entitled to enforce the payment and performance of any indebtedness or obligations secured hereby and to exercise all rights and powers under this Security Instrument or other agreement or any laws now or hereafter in force, notwithstanding the fact that some or all of the indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise.  Neither the acceptance of this Security Instrument nor its enforcement, whether by court action or pursuant to the power of sale or other powers contained herein, shall prejudice or in any manner affect Trustee's or Lender's right to realize upon or enforce any other rights or security now or hereafter held by Trustee or Lender.  Trustee and Lender, and each of them, shall be entitled to enforce this Security Instrument and any other rights or security now or hereafter held by Lender or Trustee in such order and manner as they or either of them may in their absolute discretion determine.   No remedy herein conferred upon or reserved to Trustee or Lender is intended to be exclusive of any other remedy contained herein or by law provided or permitted, but each shall be cumulative and in addition to every other remedy given hereunder or now or hereafter existing at law or in equity.  Every power or remedy given by any of this Security Instrument to Trustee or Lender, or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Lender, and either of them may pursue inconsistent remedies.  By exercising or by failing to exercise any right, option or election hereunder, Lender shall not be deemed to have waived any provision hereof or to have released Borrower from any of the obligations secured hereby unless such waiver or release is in writing and signed by Lender.  The waiver by Lender of Borrower's failure to perform or observe any term, covenant or condition referred to or contained herein to be performed or observed by Borrower shall not be deemed to be a waiver of such term, covenant or condition or of any subsequent failure of Borrower to perform or observe the same or any other such term, covenant or condition referred to or contained herein, and no custom or practice which may develop between Borrower and Lender during the term hereof shall be deemed a waiver of or in any way affect the right of Lender to insist upon the performance by Borrower of the obligations secured hereby in strict accordance with the terms hereof.

(g) **Power of Sale**

    (1) Should Lender elect to foreclose by exercise of the power of sale contained herein, Lender shall notify Trustee and shall, if required, deposit with Trustee the Note, the original or a certified copy of this Security Instrument, and such other documents, receipts and evidences of expenditures made and secured hereby as Trustee may require.   Upon receipt of such notice from Lender, Trustee shall cause to be recorded and delivered to Borrower such notice as may then be required by law and

CIVIC APP PAGE NO. 75

by this Security Instrument.  Trustee shall, without demand on Borrower, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale has been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate lots or parcels or items as Trustee shall deem expedient, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale.  Trustee shall deliver to the purchaser or purchasers at such sale its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including, without limitation, Borrower, Trustee or Lender, may purchase at such sale, and Borrower hereby covenants to warrant and defend the title of such purchaser or purchasers.

(2) After deducting all costs, fees and expenses of Trustee and of this Security Instrument, including, without limitation, costs of evidence of title and actual and customary attorneys' fees of Trustee or Lender in connection with a sale as provided in subparagraph (1) above, Trustee shall apply the proceeds of such sale (a) first, to the payment of all sums expended by Lender under the terms of this Security Instrument and not yet repaid, together with interest on such sums at the rate of interest set forth in Section 6.1 of the Note, (b) second, to the payment of all sums expended under the terms hereof not then repaid, with accrued interest at the rate of interest equal to the rate then in effect under the Note, or if the Note has been repaid, the rate that would have been in effect under the Note, (c) third, to the payment of all other sums then secured hereby, and (d) fourth, the remainder, if any, to the person or persons legally entitled thereto.

(h) **Right of Rescission**.  Lender may from time to time rescind any notice of default or notice of sale before any Trustee's sale in accordance with the laws of the State of California.  The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default to satisfy the obligations of this Security Instrument or secured hereby, nor otherwise affect any provision, covenant or condition of this Security Instrument or any of the rights, obligations or remedies of Trustee or Lender hereunder or thereunder.

(i) **Full Reconveyance**.  Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder.  The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(j) **Fixture Filing**.  This Security Instrument constitutes a fixture filing under the fixture filing provisions of the UCC, Sections 9-313 and 9-402(6) as enacted and under the equivalent

CIVIC APP PAGE NO. 76

statutes in the State of California, as amended or recodified from time to time.   For purposes of the fixture filing, the "debtor" is the Borrower which has as its principal place of business the address listed in the first paragraph of this Security Instrument and the "Secured Party" is Lender.

(k) **Border Zone Property.**  Borrower represents and warrants that the Property has not been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq. or any regulation adopted in accordance therewith, and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Property that is reasonably likely to cause the Property or any part thereof to be designated as Border Zone Property.

(l) JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY. NOTWITHSTANDING SECTION 8.2(f) BELOW TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GUARANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE.  PURSUANT TO SUCH JUDICIAL REFERENCE, GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS, HIS OR HER BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE.  IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL.   GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN.   GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

**7 Obligations and Reliance; Further Assurances**

**7.1 Obligations and Reliance**

(a) **Relationship of Borrower and Lender.**  The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Note, this Security Instrument and the other loan documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

(b) **No Reliance on Lender.**  The members, general partners, principals and (if Borrower is a trust) beneficial owners of Borrower are experienced in the ownership and operation of

properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

(c)     **No Lender Obligations.** By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Note or the other loan documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

(d)     **Reliance.** Borrower recognizes and acknowledges that in accepting the Note, this Security Instrument and the other loan documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations made by Borrower herein and therein without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof; that the warranties and representations are a material inducement to Lender in accepting the Note, this Security Instrument and the other loan documents; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth herein and therein.

**7.2 Further Assurances**

(a)     **Recording of Security Instrument, etc.** Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other loan documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other loan documents, any note or deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

**(b)**    **Further Acts, etc.**   Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender and Trustee the Property and rights hereby deeded, mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Applicable Law.  Borrower, on demand, will execute and deliver and hereby authorizes Lender, following 10 days' notice to Borrower, to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements (including, without limitation, initial financing statements, amendments thereto and continuation statements) with or without the signature of Borrower as authorized by Applicable Law, chattel mortgages or other instruments, to evidence more effectively the security interest of Lender in the Property. Borrower also ratifies its authorization for Lender to have filed any like initial financing statements, amendments thereto and continuation statements, if filed prior to the date of this Security Instrument.  Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender pursuant to this Section 7.2(b).  To the extent not prohibited by Applicable Law, Borrower hereby ratifies all acts Lender has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

**(c)**    **Changes in Tax, Debt Credit and Documentary Stamp Laws**

  **(1)**    If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any.  If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the debt immediately due and payable.

  **(2)**    Borrower will not claim or demand or be entitled to any credit or credits on account of the debt for any part of the taxes or other charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the debt.  If such claim, credit or deduction shall be required by law, Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the debt immediately due and payable.

CIVIC APP PAGE NO. 79

(3)     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other loan documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

**(d)     Replacement Documents.** Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other loan document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other loan document, Borrower will issue, in lieu thereof, a replacement Note or other loan document, dated the date of such lost, stolen, destroyed or mutilated Note or other loan document in the same principal amount thereof and otherwise of like tenor.

## 8 Indemnification; Waivers
### 8.1 Indemnification

**(a)     General Indemnification.** Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties (defined below) from and against any and all Losses (defined below) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following: (a) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (b) any use, nonuse or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (d) any failure of the Property to be in compliance with any Applicable Law; (e) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; or (f) the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the Loan evidenced by the Note and secured by this Security Instrument. Any amounts payable to Lender by reason of the application of this Section 8.1(a) shall become immediately due and payable and shall bear interest at the default rate from the date loss or damage is sustained by Lender until paid.

**(b)     The term "Losses"** shall mean any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense). The term **"Indemnified Parties"** shall mean (a) Lender, (b) any prior owner or holder of the Note, (c) any servicer or prior servicer of the Loan, (d) the officers, directors, shareholders, partners, members, employees and trustees of any of the foregoing, and (e) the heirs, legal representatives, successors and assigns of each of the foregoing.

(c)     **Mortgage and/or Intangible Tax.**  Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument, the Note or any of the other loan documents.

(d)     **Duty to Defend; Attorneys' Fees and Other Fees and Expenses.**  Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties.  Notwithstanding the foregoing, any Indemnified Parties may, in their sole discretion, engage their own attorneys and other professionals to defend or assist them, and, at the option of Indemnified Parties, their attorneys shall control the resolution of any claim or proceeding.  Upon demand, Borrower shall pay or, in the sole discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

**8.2 Waivers**

(a)     **Waiver of Counterclaim.**  Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Note, any of the loan documents, or any of Borrower's obligations thereunder.

(b)     **Marshalling and Other Matters.**  To the extent permitted by law, Borrower hereby expressly waives:

    (1)     the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein; and,

    (2)     any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all persons to the extent permitted by Applicable Law.

(c)     **Waiver of Notice.**  Borrower shall not be entitled to any notices of any nature whatsoever from Lender or Trustee except (a) with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Lender or Trustee to Borrower and (b) with respect to matters for which Lender or Trustee is required by Applicable Law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender or Trustee with respect to any matter for which

CIVIC APP PAGE NO. 81

this Security Instrument does not specifically and expressly provide for the giving of notice by Lender or Trustee to Borrower.

(d) **Waiver of Statute of Limitations.** Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the debt or performance of its other obligations under this Security Instrument, the Note and the other loan documents.

(e) **Sole Discretion of Lender.** Wherever pursuant to this Security Instrument (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole discretion of Lender, except as may be otherwise expressly and specifically provided herein.

(f) **WAIVER OF RIGHT TO TRIAL BY JURY.** BORROWER HEREBY EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THE NOTE, THIS SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY.

## 9 Miscellaneous Provisions

### 9.1 No Oral Change

This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

### 9.2 Liability

If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

### 9.3 Inapplicable Provisions

CIVIC APP PAGE NO. 82

If any term, covenant or condition of the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Note and this Security Instrument shall be construed without such provision.

**9.4 Duplicate Originals; Counterparts**

This Security Instrument may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original.  This Security Instrument may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Security Instrument.   The failure of any party hereto to execute this Security Instrument, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower al the address set forth above.

SUMMITRIDGE VENTURE GROUP, LLC , a California Limited Liability Company

By: _Vikram fu~_____ Date: _9/12/18_
Name: Vikram Srinivasan
Title: Managing Member

By: _Matthew BC_____ Date: _9-14-18_
Name: Matthew Bahrami
Title: Member

---

### ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

State of California

County of _Alameda_____

On _Sept.12,2018_ before me, _Mansoor Fazel, Notary Public_
(insert name and title of the officer)

Personally appeared _Vikram Srinivasan_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

MANSOOR FAZEL
COMM. # 2188609
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires April 11, 2021

---



**PETER ALDANA**
**COUNTY OF RIVERSIDE**
**ASSESSOR-COUNTY CLERK-RECORDER**

**Recorder**
P.O. Box 751
Riverside, CA 92502-0751
(951) 486-7000

www.riversideacr.com

# NOTARY CLARITY

Under the provisions of Government Code 27361.7, I certify under the penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary:     Manroor Fazel

Commission #:     2188609

Place of Execution:     Alameda  CA

Date Commission Expires:     April 11, 2021

Vendor In: 5101

Date:     9-24-18

Signature:

Print Name:     Peggy Layke

ACR 186 (Rev. 07/2013)          Available In Alternate Formats

# CALIFORNIA ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California _____ }

County of _Orange_ }

On _9/14/18_ before me, _Miguel A Chavez, Notary Public_
(Here insert name and title of the officer)
personally appeared _Matthew Bahrami_ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature          (Notary Public Seal)

**MIGUEL A. CHAVEZ**
COMM. #2176924
NOTARY PUBLIC• CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Jan. 20, 2021

---

**ADDITIONAL OPTIONAL INFORMATION**

DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

CAPACITY CLAIMED BY THE SIGNER
☐ Individual (s)
☐ Corporate Officer
_____
     (Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

2015 Version www.NotaryClasses.com 800-873-9865

INSTRUCTIONS FOR COMPLETING THIS FORM
*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

**Exhibit A**
**Legal Description**

Loan Number: ███████████

That portion of Lot 5, of Tract No. 7996, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 186, Pages 4 through 7 inclusive of Maps, in the office of the County Recorder of said county, described as follows:

Beginning at the Southeast corner of said Lot 5; thence along the Southerly line of said Lot 5, South 87' 16' 45" West 254.19 feet to the Easterly line of Summitridge Drive; thence along said last mentioned Easterly line North 4' 27' 36" West 3.93 feet to the beginning of a 157.67 foot radius tangent curve concave to the Southwest; thence Northwesterly along the arc of said curve through a central angle of 46' 34' 30" distance of 128.17 feet; thence North 63' 8' 41" East 346.05 feet to an angle point in the Easterly line of said Lot 5; thence along said last mentioned Easterly line South 0' 46' 53" East 258.53 feet to the point of beginning.

APN: 4355-009-012                     1666 Summitridge Drive, Beverly Hills, CA 90210

# EXHIBIT 8

**EXHIBIT B**

**Entered on Docket**
**November 12, 2019**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1   WEDGEWOOD
    Office of the General Counsel
2   DAVID M. POITRAS P.C. (SBN 141309)   **The following constitutes the order of the Court.**
    dpoitras@wedgewood-inc.com              **Signed: November 12, 2019**
3   AMELIA VALENZUELA (SBN 320428)
    avalenzuela@wedgewood-inc.com
4   2015 Manhattan Beach Blvd., Suite 100
    Redondo Beach, CA 90278                 **M. Elaine Hammond**
5   Telephone:   (310) 640-3070            **U.S. Bankruptcy Judge**
    Facsimile:   (310) 640-3090

6

7   Attorneys for Moving Party,
    HMC Assets, LLC, solely as Administrator
    for the Civic Holdings III Trust

8

9                   **UNITED STATES BANKRUPTCY COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
10                          **SAN JOSE DIVISION**

11  In re                                  CASE NO.   19-51855

12  SUMMITRIDGE VENTURE GROUP, LLC,        Chapter 7

13          Debtor.
                                           Date:    November 7, 2019
14                                         Time:    10:30 a.m.
                                           Place:   U.S. Courthouse, Crtrm 11
15                                                  280 South First Street
                                                   San Jose, CA 95113
16

17                                         Judge:  The Hon. M. Elaine Hammond

18              **ORDER DISMISSING CASE WITH 90-DAY BAR**

19

20

21

22          This matter came before the Court pursuant to the *Motion to Dismiss Bankruptcy Case and*

23  *to Bar the Debtor from Re-Filing for 180 Days and Request for* In Rem *and Prospective Relief*

24  (Docket No. 9) (the "**Motion**"), filed by HMC Assets, LLC, solely as Administrator of the Civic

25  Holdings III Trust ("**Movant**"), a secured creditor and party-in-interest in the above-captioned

26  Chapter 7 bankruptcy case (the "**Bankruptcy Case**").   On November 7, 2019, the Court held a

27  hearing on the Motion. Based on the Motion, the record before the Court, all motion papers, no

28  opposition having been filed thereto, and the argument of counsel, the Court having determined that

the relief requested in the Motion is in the best interests of the Debtor, its estate and creditors, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

1.   Pursuant to 11 U.S.C. § 707(a) of the Bankruptcy Code, the Debtor's Bankruptcy Case is dismissed, effective upon entry of this Order; and

2.   The Debtor is barred from re-filing for a period of ninety (90) days, effective upon the entry of this Order.

**\*\*\* END OF ORDER \*\*\***

CIVIC APP PAGE NO. 91

*Summitridge Venture Group, LLC (19-51855)*

## COURT SERVICE LIST:

Registered ECF Participants will receive an electronically mailed copy of the foregoing document.

Non-registered parties, and/or those not represented by a registered ECF participant:

NONE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 9

# EXHIBIT C

CIVIC APP PAGE NO. 94

 

**This page is part of your document - DO NOT DISCARD**



## 20191417929



Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/19/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 93.00 |



**L E A D S H E E T**



201912190210004

**00017635719**



010378529

**SEQ:**
**01**

SECURE - 8:00AM




**THIS FORM IS NOT TO BE DUPLICATED**

E441968

91214068-JW

RECORDING REQUESTED BY:
**ENTRA DEFAULT SOLUTIONS, LLC**

AND WHEN RECORDED TO:
**CIVIC HOLDINGS III TRUST**
**c/o FAY SERVICING LLC**
**425 S. FINANCIAL PLACE, SUITE 2000**
**CHICAGO, IL 60605**
**Forward Tax Statements to**
**the address given above**

---

SPACE ABOVE LINE FOR RECORDER'S USE

TS #: **2019-04632**                                 Order #: **91214068**
A.P.N.: **4355-009-012**

# TRUSTEE'S DEED UPON SALE

A.P.N.: **4355-009-012**                     Transfer Tax: **$0.00**
THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE,
SECTION 480.3
The Grantee Herein was the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was **$4,356,406.73**
The Amount Paid by the Grantee was **$2,380,000.00**
Said Property is in the City of **BEVERLY HILLS**, County of **Los Angeles**

**ENTRA DEFAULT SOLUTIONS, LLC**, as Trustee, (whereas so designated in the Deed of Trust hereunder more
particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

# CIVIC HOLDINGS III TRUST

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed
to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Los
Angeles**, State of California, described as follows:

THAT PORTION OF LOT 5, OF TRACT NO. 7996, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 186, PAGES 4 THROUGH 7 INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF SAID LOT 5; THENCE ALONG THE SOUTHERLY LINE OF SAID LOT 5,
SOUTH 87° 16' 45" WEST 254.19 FEET TO THE EASTERLY LINE OF SUMMITRIDGE DRIVE; THENCE ALONG SAID LAST
MENTIONED EASTERLY LINE NORTH 4° 27' 36" WEST 3.93 FEET TO THE BEGINNING OF A 157.67 FOOT RADIUS
TANGENT CURVE CONCAVE TO THE SOUTHWEST; THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE
THROUGH A CENTRAL ANGLE OF 46° 34' 30" DISTANCE OF 128.17 FEET; THENCE NORTH 63° 8' 41" EAST 346.05 FEET TO
AN ANGLE POINT IN THE EASTERLY LINE OF SAID LOT 5; THENCE ALONG SAID LAST MENTIONED EASTERLY LINE
SOUTH 0° 46' 53" EAST 258.53 FEET TO THE POINT OF BEGINNING.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by
**SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY** as
Trustor, dated **9/11/2018** and recorded on **9/25/2018**, instrument number **20180977267**, Book , Page  of Official
Records in the office of the Recorder of **Los Angeles**, California under the authority and powers vested in the

# TRUSTEE'S DEED UPON SALE

TS #: **2019-04632**
Order #: **91214068**

Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **12/4/2019**. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$2,380,000.00**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **ENTRA DEFAULT SOLUTIONS, LLC**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date: **12/4/2019**

               **ENTRA DEFAULT SOLUTIONS, LLC**

By: _____

               **Marisa Vidrine, Foreclosure Specialist**

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

STATE OF California
COUNTY OF Contra Costa

On 12/4/2019 before me, Katie Milnes  Notary Public, Personally appeared, Marisa Vidrine, Foreclosure Specialist who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Name

               (Seal)

KATIE MILNES
Notary Public - California
Contra Costa County
Commission # 2189413
My Comm. Expires Apr 29, 2021

# EXHIBIT 10

CIVIC APP PAGE NO. 98

# EXHIBIT D

CIVIC APP PAGE NO. 99

 

**This page is part of your document - DO NOT DISCARD**

# 20200005464





**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/03/20 AT 08:00AM**

| | |
|---|---:|
| FEES: | 30.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 105.00 |





**L E A D S H E E T**



202001033350003

**00017696623**



010411324

**SEQ:**
**01**

SECURE - 8:00AM





**THIS FORM IS NOT TO BE DUPLICATED**

0888003889 QOB

E269820

Recording requested by and
When recorded, please mail
Tax Statements to:
Civic Real Estate Holdings III, LLC
2015 Manhattan Beach Blvd #200
Redondo Beach, CA 90278
Prepared by:
Paula Chastain
Civic Real Estate Holdings III, LLC
2015 Manhattan Beach Blvd #200
Redondo Beach, CA 90278
Reference ID: 0888003889

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# QUIT CLAIM DEED

*The grantors and the grantees in this conveyance are comprised of the same parties who continue to hold the same proportionate interest in the property, R & T 11925(d). The undersigned Grantor declares Documentary Transfer Tax is $0.00, computed on full value of interest or property conveyed.*

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**This Quit Claim Deed** is made between, **Civic Holdings III Trust,** whose post office address is 2015 Manhattan Beach Blvd., #200, Redondo Beach, CA 90278, (hereinafter, referred to as **Grantor**), and **Civic Real Estate Holdings III, LLC** whose post office address is 2015 Manhattan Beach Blvd., #200, Redondo Beach, CA 90278, (hereinafter, referred to as **Grantee**):

(Whenever used herein, the terms "Grantor' and "Grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

**Witnesseth**, that said Grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to said Grantor in hand paid by said Grantee, the receipt whereof is hereby acknowledged, does hereby remise, release, and quitclaim to the said Grantee, and Grantee's heirs and assigns forever, all the right, title, interest, claim, and demand which Grantor has in and to the following described land, situate, lying, and being in **Los Angeles County, CA** to-wit:

**Property Address:**      **1666 Summitridge Drive, Beverly Hills, CA 90210**
**APN:**                            **4355-009-012**

**As further described as follows:**

Quit Claim Deed/1666 Summitridge Drive, Beverly Hills, CA 90210

That portion of Lot 5, of Tract No. 7996, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 186, Pages 4 through 7 inclusive of Maps, in the office of the County Recorder of said county, described as follows:

Beginning at the Southeast corner of said Lot 5; thence along the Southerly line of said Lot 5, South 87' 16' 45" West 254.19 feet to the Easterly line of Summitridge Drive; thence along said last mentioned Easterly line North 4' 27' 36" West 3.93 feet to the beginning of a 157.67 foot radius tangent curve concave to the Southwest; thence Northwesterly along the arc of said curve through a central angle of 46' 34' 30" distance of 128.17 feet; thence North 63' 8' 41" East 346.05 feet to an angle point in the Easterly line of said Lot 5; thence along said last mentioned Easterly line South 0' 46' 53" East 258.53 feet to the point of beginning.

APN: 4355-009-012                    1666 Summitridge Drive, Beverly Hills, CA 90210

Have and to hold, the same together with all and singular the appurtenances thereto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity, and claim whatsoever of Grantors, either in law or equity, for the use, benefit, and profit of the said Grantee forever.

IN WITNESS WHEREOF, Grantor and Grantee have hereunto set their hands and seal the day and year written.

Dated: 12/30/2019

Civic Holdings II Trust

By: _____
James A. Helfrich, Member

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of          California           ) ss
County of         Los Angeles         )

On 12/30/19 _____, before me, **Jacqueline O'Connor**, Notary Public, personally appeared **James A. Helfrich**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____  (Seal)

JACQUELINE O'CONNOR
Notary Public - California
Los Angeles County
Commission # 2293552
My Comm. Expires Jun 17, 2023

Quit Claim Deed/1666 Summitridge Drive, Beverly Hills, CA 90210

# EXHIBIT 11

# EXHIBIT E

CIVIC APP PAGE NO. 104

Josué Cristóbal Guerrero, Esq. (SBN 289039)
Edna Fok, Esq. (SBN 320599)
GOMEZ & SIMONE, APLC
3055 Wilshire Boulevard., Suite 550
Los Angeles, CA 90010
Telephone (855) 219-3333
Facsimile (818) 574-6730

Attorneys for Plaintiffs, Summitridge Venture Group, LLC and Vikram Srinivasan

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| SUMMITRIDGE VENTURE GROUP, LLC, a California Limited Liability Company; and VIKRAM SRINIVASAN, an individual.<br><br>Plaintiff,<br><br>vs.<br><br>FAY SERVICING, LLC, a Delaware Limited Liability Company; CIVIC HOLDINGS III TRUST; CIVIC REAL ESTATE HOLDINGS III, LLC, a Delaware Limited Liability Company; DOES 1 through 20, inclusive,<br><br>Defendant. | Case No.: 20SMCV00278<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br>**(2) PROMISSORY ESTOPPEL;**<br>**(3) NEGLIGENT MISREPRESENTATION; and**<br>**(4) WRONGFUL FORECLOSURE;** |

Plaintiffs, SUMMITRIDGE VENTURE GROUP, LLC and VIKRAM SRINIVASAN (collectively, "Plaintiffs") by and through their counsel, hereby brings the instant First Amended Complaint against Defendants FAY SERVICING, LLC, CIVIC HOLDINGS III TRUST, CIVIC REAL ESTATE HOLDINGS III, LLC, and DOES 1 through 20, inclusive (collectively, "Defendants"), and alleges as follows:

-1-
FIRST AMENDED COMPLAINT

## THE NATURE OF THE ACTION

1.     This Complaint arises from a series of breaches of several forbearance agreements and an option to purchase agreement entered between the parties in regard to a the real property located at 1648 Summitridge Dr., Beverly Hills, CA 90210 and also known as 1666 Summitridge Dr., Beverly Hills, CA 90210, APN: 4355-009-012 (the "Subject Property"), which is legally described as follows:

> That portion of Lot 5, of Tract No. 7996, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 186, Pages 4 through 7 inclusive of Maps, in the office of the County Recorder of said county, described as follows:
>
> Beginning at the Southeast corner of said Lot 5; thence along the Southerly line of said Lot 5, South 87° 16' 45" West 254.19 feet to the Easterly line of Summitridge Drive; thence along said last mentioned Easterly line North 4° 4027' 36" West 3.93 feet to the beginning of a 157.67 foot radius tangent curve concave to the Southwest; thence Northwesterly along the arc of said curve through a central angle of 46° 34' 30" distance of 128.17 feet; thence North 630 8' 41" East 346.05 feet to an angle point in the Easterly line of said Lot 5; thence along said last mentioned Easterly line South 0 46' 53" East 258.53 feet to the point of beginning.

2. Defendants, and each of them, have committed wrongful acts which resulted in the wrongful foreclosure of the Subject Property, despite entering into a series of forbearance agreements with Plaintiffs.

3.   Through this action, Plaintiffs seek damages resulting from Defendants' negligent and unlawful conduct.

## THE PARTIES

4. Plaintiff, SUMMITRIDGE VENTURE GROUP, is a California Limited Liability Company headquartered in the County of Los Angeles, State of California.

5. Plaintiff, VIKRAM SRINIVASAN, is an individual residing in the County of Alameda, State of California and the Sole Member of Summitridge Venture Group, LLC.

6. Upon information and belief, Defendant FAY SERVICING, LLC, as Servicer for Civic Holdings III Trust, is a Delaware Limited Liability Company doing business in the County of Los Angeles, State of California.

7. Upon information and belief, Defendant CIVIC HOLDINGS III TRUST is a Delaware statutory trust.

8. Upon information and belief, Defendant CIVIC REAL ESTATE HOLDINGS III, LLC, is a Delaware Limited Liability Company doing business in the County of Los Angeles, State of California.

9. Plaintiffs are unaware of the true names and capacities, whether individual, associate, partnership, corporate or otherwise, of Defendants fictitiously designated herein as DOES 1 through 20, inclusive, and therefore sues those Defendants by such fictitious names. Plaintiffs will seek leave from the Court to amend this Complaint when the true names and capacities of such fictitiously designated Defendants have been ascertained. Plaintiffs is informed and believes and based thereon alleges that each fictitiously designated Defendant, in some way as yet unknown to Plaintiff, is and was in some manner responsible for, or a party to, the acts alleged herein.

10. Plaintiffs are informed and believe and thereon alleges that at all times mentioned herein, each of the Defendants  were acting as an agent, servant, or employee of the remaining defendants and were all times acting within the course and scope of the agency, service, or employment.

11. Plaintiffs are further informed and believe, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the events alleged herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

12. On or about September 25, 2018, Plaintiff SUMMITRIDGE VENTURE GROUP, LLC (hereinafter, "Plaintiff SVG") purchased the Subject Property from Civic Holdings V-N Trust, a Delaware statutory trust.

Case: 20-51735   Doc# 16-7   Filed: 12/24/20   Entered: 12/24/20 10:46:28   Page 4 of 113
CIVIC APP PAGE NO. 107

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>The Underlying Loan</u>

13. The purchase of the Subject Property was partially financed by a loan in the principal sum of $3,500,000 from Civic Financial Services, LLC (hereinafter, the "Subject Loan"), and secured by a Deed of Trust recorded on September 25, 2018 as Document Number 20180977267 in the Official Records of the Recorder's Office in Los Angeles County (hereinafter, the "Deed of Trust"). A true and correct copy of the said Deed of Trust is attached hereto as **<u>Exhibit A</u>**.

14. On or about October 19, 2018, an Assignment of Deed of Trust was recorded as Document Number 20181067508 in the Official Records of the Recorder's Office in Los Angeles County, whereby Civic Financial Services, LLC re-assigned its rights, title, and interest in the Deed of Trust to Defendant CIVIC HOLDINGS III TRUST. A true and correct copy of the said Assignment of Deed of Trust is attached hereto as **<u>Exhibit B</u>**.

15. On or about January 7, 2019, a second Assignment of Deed of Trust was recorded as Document Number 20190017373 in the Official Records of the Recorder's Office in Los Angeles County, whereby Defendant CIVIC HOLDINGS III TRUST re-assigned its rights, title, and interest in the Deed of Trust to DLJ Mortgage Capital, Inc. A true and correct copy of the said Assignment of Deed of Trust is attached hereto as **<u>Exhibit C</u>**.

16. On or about February 12, 2019, a third Assignment of Deed of Trust was recorded as Document Number 20190128721 in the Official Records of the Recorder's Office in Los Angeles County, whereby DLJ Mortgage Capital, Inc. re-assigned its rights, title, and interest in the Deed of Trust to Defendant CIVIC HOLDINGS III TRUST. A true and correct copy of the said Assignment of Deed of Trust is attached hereto as **<u>Exhibit D</u>**.

17. On or about May 14, 2019, Defendant CIVIC HOLDINGS III TRUST caused a Notice of Default to be recorded against the Subject Property in the amount of $219,323.87 (hereinafter, the "NOD").  A true and correct copy of the said Notice of Default is attached hereto as **<u>Exhibit E</u>**.

18. On or about August 19, 2019, Defendant CIVIC HOLDINGS III TRUST caused a Notice of Trustee's Sale to be recorded against the Subject Property in the amount of $3,891,080.78 and setting a foreclosure sale date of September 13, 2019 (hereinafter, the

FIRST AMENDED COMPLAINT

Case: 20-51735   Doc# 16-7   Filed: 12/24/20   Entered: 12/24/20 10:46:28   Page 5 of 113

CIVIC APP PAGE NO. 108

"NTS").  A true and correct copy of the said Notice of Default is attached hereto as **Exhibit F**.

19. In or about September 2019, Plaintiff SVG filed for Chapter 7 Bankruptcy, Case No 19-51885, before the United States Bankruptcy Court, Northern District of California, San Jose Division ("Bankruptcy"), which suspended the impending foreclosure sale date of September 13, 2019.

### The First Forbearance Agreement

20. In or about November 27, 2019, Plaintiff SVG and Defendant FAY SERVICING, LLC, as servicer and attorney in fact for Defendant, CIVIC HOLDINGS III TRUST (collectively, "Lenders"), entered into a written forbearance agreement, whereby Lenders agreed to forebear from foreclosing on the Subject Property until May 1, 2020, if Plaintiff SVG makes a payment in the sum of $712,823.87 on or before November 26, 2019, and monthly interest payments commencing from December 1, 2019 in the amount of $52,500.00 (hereinafter, the "First Forbearance Agreement"). A true and correct copy of the said Forbearance Agreement is attached hereto as **Exhibit G**.

21. As a result, on November 15, 2019, Plaintiff, VIKRAM SRINIVASAN (hereinafter, "Plaintiff Srinivasan"), who is Plaintiff SVG's managing member, personally wired the sum of $250,000.00 to Defendant FAY SERVICING, LLC from his own personal bank account. See **Exhibit H**.

22. Plaintiff Srinivasan had no obligation to personally contribute any funds to SVG or Defendants and was specifically induced to do so by Defendants.

23. However, at that time, Plaintiff SVG was unable to pay the remaining sum of $462,823.87 by November 26, 2019 as Plaintiff SVG's corporate bank account was frozen due to an unrelated matter.

### The Second Forbearance Agreement

24. On or about December 2, 2019, Plaintiff Srinivasan, personally filed for Chapter 11 Bankruptcy, Case No 19-42729, before the United States Bankruptcy Court, Northern

Case: 20-51735   Doc# 16-7   Filed: 12/24/20   Entered: 12/24/20 10:46:28   Page 6 of 113
CIVIC APP PAGE NO. 109

District of California, San Jose Division ("Member Bankruptcy"), which, again, suspended the impending foreclosure sale to December 4, 2019.

25. On December 3, 2019, Mr. David M. Poitras, counsel for Lenders, proposed a new forbearance agreement to Plaintiff SVG via email that if payment in the sum of $515,323.87 is received by 5:00 p.m. on December 3, 2019, along with a dismissal of the pending Chapter 11 Bankruptcy case, Defendant Civic Holdings III Trust would agree to forbear on conducting a trustee's sale in accordance to the terms and conditions set forth in the November 27, 2019 Forbearance Agreement. See **Exhibit I**.

26. While Plaintiff SVG generally agreed with Mr. Poitras' proposition to enter into a new forbearance agreement through the payment of the sum of $515,323.87, Plaintiff SVG informed Mr. Poitras that the said funds could not be wired no later than December 5, 2019. See **Exhibit I**.

27. That day, Mr. Poitras subsequently represented that if the $515,323.87 payment is received on or before 11:00 a.m. on Wednesday December 4, 2019 and that an *ex parte* Motion to Dismiss the Chapter 11 Bankruptcy case is filed on or before 12:00 p.m. on December 5, 2019, Defendant Civic Holdings III Trust would forbear from conducting a trustee's sale until the later of December 6, 2019, or the date of entry of an order dismissing the Chapter 11 Bankruptcy, but, in no event later than December 13, 2019. See **Exhibit I**.

28. Thereafter, a telephone conference occurred between the parties, whereas the Lenders agreed to briefly forbear from conducting a trustee's sale until the later of December 6, 2019 to continue discussions, if a payment of $112,823.87 is received on or before 11:00 a.m. on December 4, 2019, the same day of the impending foreclosure (hereinafter, the "Second Forbearance Agreement").

29. As a result, in the morning of December 4, 2019 before 11:00 a.m., Plaintiff Srinivasan, wired an additional sum of $112,823.87 to Defendant FAY SERVICING, LLC from his own personal bank account. See **Exhibit J**.

30. Plaintiff Srinivasan had no obligation to personally contribute any funds to SVG or Defendants and was specifically induced to do so by Defendants' representations.

31. Despite the Plaintiffs' compliance with the Second Forbearance Agreement and the existence of the pending Chapter 11 Member Bankruptcy, on December 4, 2019, Defendant CIVIC HOLDINGS III TRUST proceeded with the foreclosure and caused a Trustee's Deed upon Sale to be recorded against the Subject Property in the amount of $4,356,406.73 in unpaid debt (hereinafter, the "TDUS").  A true and correct copy of the said Trustee's Deed upon Sale is attached hereto as **Exhibit K**.

32. The foreclosure on December 4, 2019 was in violation of the Chapter 11 Member Bankruptcy stay and is void as a matter of law.

### Representations and Events Following the Second Forbearance Agreement

33. On December 4, 2019, after the foreclosure of the Subject Property, Mr. Poitras represented to Plaintiff SVG that if the remaining balance of $402,500.00 is received and a Motion to Dismiss the Chapter 11 Bankruptcy case is filed on or before December 6, 2019, Defendant Civic Holdings III Trust would forbear from recording the TDUS to allow for further discussion on the matter. See **Exhibit I**.

34. On or about January 3, 2020, a Quitclaim Deed was recorded as Document Number 20200005464 in the Official Records of the Recorder's Office in Los Angeles County, whereby Defendant CIVIC HOLDINGS III TRUST conveyed its rights, title, and interest in the Subject Property to Defendant CIVIC REAL ESTATE HOLDINGS III, LLC. A true and correct copy of the said Assignment of Deed of Trust is attached hereto as **Exhibit L**.

35. On or about January 8, 2020, the Chapter 11 Bankruptcy case was dismissed, and Plaintiff SVG was informed that its corporate bank account would be unfrozen, and as a result, would be able to make the $402,500.00 payment to Lenders.

### The Option to Purchase Agreement

36.  On or about January 9, 2020, a phone call was initiated between Plaintiff SVG and Tom French, the asset manager for the Lenders and purportedly Defendant CIVIC REAL ESTATE HOLDINGS III, LLC, wherein Defendants agreed to effectively rescind

the trustee's sale by re-selling the Subject Property from Defendant CIVIC REAL ESTATE HOLDINGS III, LLC to Plaintiff SVG for: (i) the amount in default of $454,000.00, and (ii) the reinstatement or refinance of the $3,500,000 loan (hereinafter, the "Option to Purchase Agreement").

37. However, on January 23, 2020, the Lenders and Defendant CIVIC REAL ESTATE HOLDINGS III, LLC reneged on the Option to Purchase Agreement despite Plaintiff SVG's willingness and ability to perform all conditions as set forth in the Option to Purchase Agreement by making a payment of $454,000.00 and refinancing the $3,500,000 loan.

38. Moreover, despite receiving the sum of $362,823.87 from Plaintiffs, Lenders have failed to apply these payments to the outstanding balance on the Subject Loan. Upon information and belief, the said sum was sufficient to bring the Subject Loan out of default and was sufficient to cover approximately 7 monthly payments under the Subject Loan.

39. Most egregiously, Lenders have refused to return the sum of $362,823.87 to Plaintiff Srinivasan, which was paid to Defendants from his own personal funds rather than from Plaintiff SVG.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
### (Against All Defendants)

40. Plaintiffs realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

41. The elements of a cause of action for breach of contract are: (1) existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach. *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008).

42. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying,

-8-
FIRST AMENDED COMPLAINT

or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement. *Moreland Development Co. v. Gladstone Holmes, Inc.* (1982) 186 Cal.Rptr. 6, 135 Cal.App.3d 973; *Matzen v. Horwitz* (1951) 228 P.2d 841, 102 Cal.App.2d 884; *Brown v. Superior Court in and for Los Angeles County* (1950) 212 P.2d 878, 34 Cal.2d 559.

<u>Breach of the Second Forbearance Agreement</u>

43. On or about December 3, 2019, Plaintiff SVG, on the one hand, and Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST (collectively, "Lenders"), through its attorney, Mr. David M. Poitras, on the other hand, entered into the Second Forbearance Agreement, wherein the Lenders agreed to briefly forbear from conducting a trustee's sale until the later of December 6, 2019, if a payment of $112,823.87 is received on or before 11:00 a.m. on December 4, 2019, the same day of the impending foreclosure.

44. In the morning of December 4, 2019 before 11:00 a.m., Plaintiff Srinivasan, wired the sum of $112,823.87 to Defendant FAY SERVICING, LLC from his own personal bank account. See **<u>Exhibit J</u>**.

45. As a result, Plaintiffs have performed all of the terms and conditions of the Second Forbearance Agreement by submitting a payment of $112,823.87 prior to 11:00 a.m. on December 4, 2019.

46. Despite the Plaintiffs' full compliance with the Second Forbearance Agreement, on December 4, 2019, Defendant CIVIC HOLDINGS III TRUST proceeded with the foreclosure and caused a Trustee's Deed upon Sale to be recorded against the Subject Property in the amount of $4,356,406.73 in unpaid debt (hereinafter, the "TDUS"). A true and correct copy of the said Trustee's Deed upon Sale is attached hereto as **<u>Exhibit K</u>**.

47. As a result, the Lenders breached the Second Forbearance Agreement by proceeding with the foreclosure and causing a Trustee's Deed upon Sale to be recorded against the Subject Property.

### Breach of the Option to Purchase Agreement

48. On or about January 9, 2020, Plaintiff SVG, on the one hand, and Defendants FAY SERVICING, LLC, CIVIC HOLDINGS III TRUST and CIVIC REAL ESTATE HOLDINGS III, LLC, through their asset manager, Tom French, agreed to effectively rescind the trustee's sale by re-selling the Subject Property from Defendant CIVIC REAL ESTATE HOLDINGS III, LLC to Plaintiff SVG for: (i) the amount in default of $454,000.00, and (ii) the reinstatement or refinance of the $3,500,000 loan.

49. On or about January 23, 2020, Plaintiff SVG attempted to perform all terms and conditions as set forth in the Option to Purchase Agreement by making a payment of $454,000.00 and starting the process of refinancing the $3,500,000 loan.

50. However, the Lenders and Defendant CIVIC REAL ESTATE HOLDINGS III, LLC breached the Option to Purchase Agreement by reneging on terms of the Option to Purchase Agreement and refused to perform.

### Breach of the Underlying Loan Agreement

51. In or about September 25, 2018, Defendant, CIVIC HOLDINGS III TRUST's predecessor, Civic Financial Services, LLC, entered into an agreement with Plaintiff SVG wherein it would loan Plaintiff the principal sum of $3,500,000 in exchange for monthly interest and principal payments (hereinafter, the "Loan Agreement").

52. In or about February 12, 2019, the rights, title, and interest in the Subject Loan were re-assigned to Defendant CIVIC HOLDINGS III TRUST.

53. Upon information and belief, since February 12, 2019, Defendant FAY SERVICING, LLC, acted as the loan servicer and attorney in fact for Defendant, CIVIC HOLDINGS III TRUST.

54. As lenders, Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST owed a duty of good faith and fair dealing under the Loan Agreement to provide an accurate account of the Subject Loan and to properly apply loan payments made by the Plaintiffs.

55. Between November of 2019 to January of 2020, the Lenders have received the sum of $362,823.87 directly from Plaintiff Srinivasan's personal funds in reliance on the aforementioned agreements with Plaintiff SVG.

56. Upon information and belief, the sum of $362,823.87 paid to Lenders was sufficient to bring the Subject Loan out of default and was sufficient to cover approximately 7 monthly payments under the Subject Loan

57. Upon information and belief, the Lenders have breached the Loan Agreement by failing to properly apply these payments to the outstanding balance on the Subject Loan.

58. As a result of Lenders' breach of the Second Forbearance Agreement, Option to Purchase Agreement, and the underlying Loan Agreement, Plaintiff SVG has suffered general and special damages in an amount to be determined at trial.

59. Additionally, Plaintiff Srinivasan has suffered general and special damages in an amount to be determined at trial, but not less than $362,823.87, which was paid from his personal funds, to which Lenders had no right to keep or withhold from Plaintiff Srinivasan, individually.

## SECOND CAUSE OF ACTION
### PROMISSORY ESTOPPEL
#### (Against All Defendants)

60. Plaintiffs realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

61. The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel

FIRST AMENDED COMPLAINT

CIVIC APP PAGE NO. 115

must be injured by his reliance. *Flintco Pacific, Inc. v. TEC Management Consultants, Inc.* (2016) 1 Cal.App.5th 727.

62. Courts have held that promissory estoppel claims in this context are exempt from the statute of frauds.  See *Postlewaite v. Wells Fargo Bank N.A.,* 2013 WL 2443257, at *4 (N.D. Cal. June 4, 2013); *Secrest v. Sec. Nat'l Mrtg. Loan Trust 2002-2*, 1167 Cal. App. 4th 544 (2008).

63. Between November of 2019 to January of 2020, Defendants FAY SERVICING, LLC, CIVIC HOLDINGS III TRUST, and CIVIC REAL ESTATE HOLDINGS III, LLC made the following representations and promises to Plaintiffs:

   a. "First Forbearance Agreement" - On or about November 27, 2019, Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST agreed to forebear from foreclosing on the Subject Property until May 1, 2020, if Plaintiff SVG makes a payment in the sum of $712,823.87 on or before November 26, 2019, and monthly interest payments commencing from December 1, 2019 in the amount of $52,500.00;

   b. "Second Forbearance Agreement" - On or about December 3, 2019, Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST, through its attorney, Mr. David M. Poitras, agreed to briefly forbear from conducting a trustee's sale until the later of December 6, 2019, if a payment of $112,823.87 is received on or before 11:00 a.m. on December 4, 2019;

   c. "Option to Purchase Agreement" - On or about January 9, 2020, Defendants FAY SERVICING, LLC, CIVIC HOLDINGS III TRUST, and CIVIC REAL ESTATE HOLDINGS III, LLC, through its asset manager, Mr. Tom French, represented to Plaintiff SVG that it would agree to effectively rescind the trustee's sale by re-selling the Subject Property from Defendant CIVIC REAL ESTATE HOLDINGS III, LLC to Plaintiff SVG for: (i) the amount in default of $454,000.00, and (ii) the reinstatement or refinance of the $3,500,000 loan.

64. Plaintiffs relied on the above-referenced representations and promises by:

a. Tendering the sum of $250,000.00 to Defendant FAY SERVICING, LLC from Plaintiff Srinivasan's own personal funds on November 15, 2019 as partial performance pursuant to the First Forbearance Agreement;

b. Tendering the sum of $112,823.87 to Defendant FAY SERVICING, LLC from Plaintiff Srinivasan's own funds on December 4, 2019 as full performance pursuant to the Second Forbearance Agreement; and

c. Foregoing other actions to avoid foreclosure, such as selling the Subject Property at a private sale or attempting to obtain a refinance of the Subject Loan with other lenders.

65. Defendants have made the above referenced representations without reasonable grounds of believing it to be true.

66. The purpose of the Defendants' promises was to provide Plaintiff SVG with an opportunity to cure the default on the Subject Loan.  However, the Defendants never intended to provide Plaintiff SVG with a forbearance as evidenced by the subsequent foreclosure of the Subject Property despite Plaintiffs' tender of a payment in the sum of $112,823.87 pursuant to the Second Forbearance Agreement and the Defendants' knowledge that Plaintiff SVG was ready and willing to fully perform under the Option to Purchase Agreement.

67. Plaintiffs are informed and believes and thereon alleges that at the time Defendants made said representations, Defendants made such representations with the intent to induce Plaintiffs' reliance into making a total of $362,823.87 in payments without applying these payments to the outstanding balance on the Subject Loan and foregoing other actions to avoid foreclosure.

68. The actions of Defendants and its agents caused Plaintiffs to justifiably believe that their submission of payments would be accepted, and that the sale date would be postponed or that the trustee's sale would be rescinded, such that they had foregone other actions to avoid foreclosure available to them.

69. Plaintiffs did indeed rely on said misrepresentations, by providing Lenders with a total of $362,823.87 in payments from Plaintiff Srinivasan's own personal funds, to which

Lenders had no right to keep or withhold from Plaintiff Srinivasan, individually, with the belief that the foreclosure of the Subject Property would be suspended. Had Plaintiffs known of the falsity of the Defendants' representations and omissions, they would have taken other actions to avoid such harms as set forth herein.

70. Plaintiffs' reliance upon the Defendants' misrepresentations was reasonable by the repeated oral statements and omissions of material fact by Defendants throughout the entire process, and Plaintiffs' belief that no foreclosure sale could occur while the forbearance agreements were in place.

71. As a result of Defendants' breach of the Second Forbearance Agreement and the Option to Purchase Agreement, Plaintiff SVG has suffered general and special damages in an amount to be determined at trial.

72. Additionally, Plaintiff Srinivasan has suffered general and special damages in an amount to be determined at trial, but not less than $362,823.87, which was paid from his personal funds, to which Lenders had no right to keep or withhold from Plaintiff Srinivasan, individually.

### THIRD CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
#### (Against All Defendants)

73. Plaintiff realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

74. The elements of negligent misrepresentation are: (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damages. *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC,* 158 Cal.App4th 226 (2d Dist. 2007); *Century Sur. Co. v. Crosby Ins. Inc.,* 124 Cal.App4th 116 (4th Dist. 2004).

Case: 20-51735     Doc# 16-7     Filed: 12/24/20     Entered: 12/24/20 10:46:28     Page 15 of 113

CIVIC APP PAGE NO. 118

75. Between November of 2019 to January of 2020, Defendants FAY SERVICING, LLC, CIVIC HOLDINGS III TRUST, and CIVIC REAL ESTATE HOLDINGS III, LLC made the following representations and promises to Plaintiffs:

    a. "First Forbearance Agreement" - On or about November 27, 2019, Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST agreed to forebear from foreclosing on the Subject Property until May 1, 2020, if Plaintiff SVG makes a payment in the sum of $712,823.87 on or before November 26, 2019, and monthly interest payments commencing from December 1, 2019 in the amount of $52,500.00;

    b. "Second Forbearance Agreement" - On or about December 3, 2019, Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST, through its attorney, Mr. David M. Poitras, agreed to briefly forbear from conducting a trustee's sale until the later of December 6, 2019, if a payment of $112,823.87 is received on or before 11:00 a.m. on December 4, 2019;

    c. "Option to Purchase Agreement" - On or about January 9, 2020, Defendants FAY SERVICING, LLC, CIVIC HOLDINGS III TRUST, and CIVIC REAL ESTATE HOLDINGS III, LLC, through its asset manager, Mr. Tom French, represented to Plaintiff SVG that it would agree to effectively rescind the trustee's sale by re-selling the Subject Property from Defendant CIVIC REAL ESTATE HOLDINGS III, LLC to Plaintiff SVG for: (i) the amount in default of $454,000.00, and (ii) the reinstatement or refinance of the $3,500,000 loan.

76. Plaintiffs relied on the above-referenced representations and promises by:

    a. Tendering the sum of $250,000.00 to Defendant FAY SERVICING, LLC from Plaintiff Srinivasan's own personal funds on November 15, 2019 as partial performance pursuant to the First Forbearance Agreement;

    b. Tendering the sum of $112,823.87 to Defendant FAY SERVICING, LLC from Plaintiff Srinivasan's own funds on December 4, 2019 as full performance pursuant to the Second Forbearance Agreement; and

-15-
FIRST AMENDED COMPLAINT

c. Foregoing other actions to avoid foreclosure, such as selling the Subject Property at a private sale or attempting to obtain a refinance of the Subject Loan with other lenders.

77. Defendants have made the above referenced representations without reasonable grounds of believing it to be true.

78. The purpose of the Defendants' promises was to provide Plaintiff SVG with an opportunity to cure the default on the Subject Loan. However, the Defendants never intended to provide Plaintiff SVG with a forbearance as evidenced by the subsequent foreclosure of the Subject Property despite Plaintiffs' tender of a payment in the sum of $112,823.87 pursuant to the Second Forbearance Agreement and the Defendants' knowledge that Plaintiff SVG was ready and willing to fully perform under the Option to Purchase Agreement.

79. Plaintiffs are informed and believes and thereon alleges that at the time Defendants made said representations, Defendants made such representations with the intent to induce Plaintiffs' reliance into making a total of $362,823.87 in payments without applying these payments to the outstanding balance on the Subject Loan and foregoing other actions to avoid foreclosure.

80. The actions of Defendants and its agents caused Plaintiffs to justifiably believe that their submission of payments would be accepted, and that the sale date would be postponed or that the trustee's sale would be rescinded, such that they had foregone other actions to avoid foreclosure available to them.

81. Plaintiffs did indeed rely on said misrepresentations, by providing Lenders with a total of $362,823.87 in payments from Plaintiff Srinivasan's own personal funds, to which Lenders had no right to keep or withhold from Plaintiff Srinivasan, individually, with the belief that the foreclosure of the Subject Property would be suspended. Had Plaintiffs known of the falsity of the Defendants' representations and omissions, they would have taken other actions to avoid such harms as set forth herein.

82. Plaintiffs' reliance upon the Defendants' misrepresentations was reasonable by the repeated oral statements and omissions of material fact by Defendants throughout the

entire process, and Plaintiffs' belief that no foreclosure sale could occur while the forbearance agreements were in place.

83. As a result of Defendants' breach of the Second Forbearance Agreement and the Option to Purchase Agreement, Plaintiff SVG has suffered general and special damages in an amount to be determined at trial.

84. Additionally, Plaintiff Srinivasan has suffered general and special damages in an amount to be determined at trial, but not less than $362,823.87, which was paid from his personal funds, to which Lenders had no right to keep or withhold from Plaintiff Srinivasan, individually.

## FOURTH CAUSE OF ACTION
## WRONGFUL FORECLOSURE
### (Against Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST)

85. Plaintiffs realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

86. The elements of a wrongful foreclosure cause of action are: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering. *Citrus El Dorado, LLC v. Chicago Title Co.* (2019) 32 Cal.App.5th 943.

Wrongful Foreclosure due to Breach of the Second Forbearance Agreement

87. On or about December 3, 2019, Plaintiff SVG, on the one hand, and Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST (collectively, "Lenders"), through its attorney, Mr. David M. Poitras, on the other hand, entered into the Second Forbearance Agreement, wherein the Lenders agreed to briefly forbear from conducting a trustee's sale until the later of December 6, 2019, if a payment of $112,823.87 is received on or before 11:00 a.m. on December 4, 2019, the same day of the impending foreclosure.

88. In the morning of December 4, 2019 before 11:00 a.m., Plaintiff Srinivasan, wired the sum of $112,823.87 to Defendant FAY SERVICING, LLC from his own personal bank account. See **Exhibit J**.

89. As a result, Plaintiffs have performed all of the terms and conditions of the Second Forbearance Agreement by submitting a payment of $112,823.87 prior to 11:00 a.m. on December 4, 2019.

90. Despite the Plaintiffs' full compliance with the Second Forbearance Agreement, on December 4, 2019, Defendant CIVIC HOLDINGS III TRUST proceeded with the foreclosure and caused a Trustee's Deed upon Sale to be recorded against the Subject Property in the amount of $4,356,406.73 in unpaid debt (hereinafter, the "TDUS").  A true and correct copy of the said Trustee's Deed upon Sale is attached hereto as **Exhibit K**.

91. As a result, the Lenders breached the Second Forbearance Agreement by proceeding with the foreclosure and causing a Trustee's Deed upon Sale to be recorded against the Subject Property.

<u>Wrongful Foreclosure due to Violation of 11 U.S. Code § 362</u>

92. Moreover, the TDUS was wrongfully recorded against the Subject Property at a time while the Member Bankruptcy was still pending and an automatic stay prohibiting foreclosure of a mortgage or deed of trust pursuant to 11 U.S. Code § 362 was still in full force and effect.

93. Upon information and belief, the Defendants' wrongful recording of the TDUS was willfully and maliciously done with full knowledge of the automatic stay and the Member Bankruptcy as the Defendants had expressly requested the Plaintiffs to file an *ex parte* Motion to Dismiss the Chapter 11 Bankruptcy case on or about December 3, 2019.

<u>Wrongful Foreclosure due to Invalid Credit Bid</u>

94. On December 4, 2019, Defendant CIVIC HOLDINGS III TRUST proceeded with the foreclosure and caused a Trustee's Deed upon Sale to be recorded against the Subject Property in the amount of $4,356,406.73 in unpaid debt (hereinafter, the "TDUS").  A true and correct copy of the said Trustee's Deed upon Sale is attached hereto as **Exhibit K**.

95. Upon information and belief, the Defendants have failed to apply the sum of $362,823.87 received from Plaintiffs to the outstanding balance on the Subject Loan, which resulted in an credit bid, that was in actuality $362,823.87 higher than other potential purchasers at  public auction.

96. As a result, Defendant CIVIC HOLDINGS III TRUST effectively conducted the sale in a way calculated to chill the bidding or depress the prices offered at the trustee's sale as they made an invalid credit bid.

97. Accordingly, Plaintiffs are informed and believes and thereon alleges that the foreclosure sale process was fraudulent, and/or willfully oppressive due to the invalid bid.

98. Accordingly, the foreclosure of the Subject Property on December 4, 2019 was illegal, fraudulent, or willfully oppressive given the fact that Plaintiff complied with the terms as set forth in the Second Forbearance Agreement, the TDUS was recorded in violation of 11 U.S. Code § 362, and due to the invalid credit bid made by Defendant CIVIC HOLDINGS III TRUST.

99. As a result of Defendants' tortious conduct, Plaintiff SVG has suffered general and special damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs prays for judgment against the Defendants, and each of them, as follows:

1. For the Trustee's Deed upon Sale recorded against the Subject Property on December 4, 2019 as Document Number 20191417929 in the Official Records of the County of Los Angeles to be rescinded;

2. For the Quitclaim Deed recorded against the Subject Property on January 3, 2020 as Document Number 20200005464 in the Official Records of the County of Los Angeles to be rescinded;

3. For title to the Subject Property be restored to Plaintiff SVG;

4. For compensatory, special and general damages in an amount according to proof at trial, but not less than $362,823.87;

-19-
FIRST AMENDED COMPLAINT

5.  For punitive and exemplary damages in an amount to be determined by the Court;

6.  For an order compelling Defendants to disgorge the sum of $362,823.87 wrongfully taken from Plaintiff Srinivasan and returning to him the same, plus interest thereon at the statutory rate from the date the funds were first received from Plaintiff Srinivasan;

7.  For an imposition of a constructive trust on the Subject Property;

8.  For the imposition of a constructive trust in the sum of $362,823.87 paid to Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST by Plaintiff Srinivasan;

9.  For reasonable attorney fees and costs in this action; and

10. For such other and further relief as the Court may deem proper.

Dated:  October ___27___, 2020

**GOMEZ & SIMONE, APLC**

_Edna Fok_

Josué Cristóbal Guerrero, Esq.
Edna Fok, Esq.
Attorney for Plaintiffs,
SUMMITRIDGE VENTURE GROUP, LLC and
VIKRAM SRINIVASAN

-20-
FIRST AMENDED COMPLAINT

# EXHIBIT A

 **This page is part of your document - DO NOT DISCARD** 



## 20180977267



**Pages: 0035**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**09/25/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 186.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| | |
| PAID: | 186.00 |



**L E A D S H E E T**



201809253300018

**00015762442**



009361350

**SEQ:**
**02**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

*E492668*

E08_180924_6002201

RECORDING REQUESTED BY

Civic Financial Services, LLC

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME   Civic Financial Services, LLC

STREET ADDRESS   2015 Manhattan Beach Blvd., Ste. 106

CITY, STATE & ZIP CODE   Redondo Beach, CA 90278

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing

**Title of Document**

**Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).**

Exempt from the fee per GC 27388.1 (a) (2); This document is subject to Documentary Transfer Tax

☑ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

**USA-NTC**

**Recording Requested by:**
Civic Financial Services, LLC

**And After Recording Return To:**
Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA  90278

*091402235*

# Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing

Loan Number: 0118072548

### 1. Definitions

Words used in multiple sections of this document are defined below and other words are defined in Sections 3.3, 3.10, 3.12, 3.17, 3.18, and 3.19.  Certain rules regarding the usage of words used in this document are also provided in Section 3.15.

"**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

"**Borrower**" is SUMMITRIDGE VENTURE GROUP, LLC , a California Limited Liability Company; BORROWER'S ADDRESS IS 1102 WRIGLEY WAY, Milpitas, CA 95035; Borrower is the trustor under this Security Instrument.

"**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

"**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfer initiated by telephone, wire transfers, and automated clearinghouse transfers.

"**Escrow Items**" means those items that are described in Section 3.3.

"**Lender**" is CIVIC FINANCIAL SERVICES, LLC; Lender is a LIMITED LIABILITY COMPANY organized and existing under the laws of CALIFORNIA; Lender's address is 2015 MANHATTAN BEACH BLVD

2300-1002 / 501712.10

1

STE 106, REDONDO BEACH, CALIFORNIA 90278; Lender is the beneficiary under this Security Instrument.

"**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

"**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverage described in Section 3.5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

"**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

"**Note**" means the promissory note signed by Borrower and dated September 11, 2018. The Note states that Borrower owes Lender Three Million Five Hundred Thousand Dollars and Zero Cents Dollars (US$3,500,000.00) plus interest; Borrower has promised to pay interest on this debt in regular Periodic Payments and to pay the debt in full not later than October 01, 2019.

"**Periodic Payment**" means the regularly scheduled amount due for (i) interest under the Note, plus (ii) any amounts payable under Section 3.3 of this Security Instrument.

"**Property**" means the property that is described below under the heading "Transfer of Rights in the Property".

"**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 *et seq*.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation that governs the same subject matter. As used in this Security Instrument, "**RESPA**" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not quality as a "federally related mortgage loan" under RESPA.

"**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower:

| | |
|---|---|
| [] Condominium Rider | [] Planned Unit Development Rider |
| [] Revocable Trust Rider | [] Other: |
| [] Other: | [] Other: |

"**Security Instrument**" means this document, which is dated September 11, 2018 together with all Riders to this document.

"**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

"**Trustee**" is USA National Title Company, Inc.

1901 Orange Tree Lane # 220RedlandsSan Bernardino92374

2

Case: 20-51735    Doc# 16-7    Filed: 12/24/20    Entered: 12/24/20 10:46:28    Page 26 of 113

CIVIC APP PAGE NO. 129

## 2. Transfer of Rights in the Property
This Security Instrument secures to Lender:

    (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and,

    (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

STATE: CA

COUNTY: Los Angeles

| Type of Recording Jurisdiction | Name of Recording Jurisdiction | A.P.N. |
|---|---|---|
| County | Los Angeles | 4355-009-012 |

Which currently has the address of: 1666 Summitridge Drive, Beverly Hills, CA 90210

more fully described by the legal description attached as Exhibit A. *SEE ATTACHED HERETO AND made a part thereof exhibit A*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "**Property**".

BORROWER REPRESENTS, WARRANTS AND COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

## 3. Uniform Covenants
Borrower and Lender covenant and agree as follows:

### 3.1 Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges
Borrower shall pay when due the Principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3.3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b)

3

CIVIC APP PAGE NO. 130

money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 3.14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but except as required by Applicable Law, Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

### 3.2 Application of Payments or Proceeds

Except as otherwise described in this Section 3.2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

### 3.3 Funds for Escrow Items

Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the **"Funds"**) to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property,

CIVIC APP PAGE NO. 131

if any; (c) premiums for any and all insurance required by Lender under Section 3.5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 3.9. These items are called **"Escrow Items."** At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and if so required, such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3.3. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 3.8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 3.8 and pay such amount and Borrower shall then be obligated under Section 3.8 to repay to Lender any such amount so paid by Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 3.14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.3. Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires Lender to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in

escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

### 3.4 Charges; Liens

Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 3.4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

### 3.5 Property Insurance

Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a onetime charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

CIVIC APP PAGE NO. 133

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained by Lender might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 3.5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, to the extent permitted by Applicable Law, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 3.2.

If Borrower fails to do so in a timely manner, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate

CIVIC APP PAGE NO. 134

and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 5.1 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

### 3.6 Preservation, Maintenance and Protection of the Property; Inspections
Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or permit waste to be committed on the Property. Notwithstanding the fact that Borrower is not residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 3.5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

### 3.7 Borrower's Loan Application
Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning the ABSENCE OF ANY OCCUPANCY OR USE OF THE PROPERTY AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER.

### 3.8 Protection of Lender's Interest in the Property and Rights Under this Security Instrument
If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has permitted the Property to remain vacant, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing

CIVIC APP PAGE NO. 135

and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 3.8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 3.8.

Any amounts disbursed by Lender under this Section 3.8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement, and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground or master lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

### 3.9 Mortgage Insurance

(a)     If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect, and Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. To the fullest extent permitted by Applicable Law, such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay

CIVIC APP PAGE NO. 136

the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 3.9 affects Borrower's obligation to pay interest at the rate provided in the Note.

(b)     Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

(c)     Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

(d)     As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance". Further:

    (1)     **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

    (2)     **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

## 3.10 Assignment of Miscellaneous Proceeds; Forfeiture

(a)     To the fullest extent permitted by Applicable Law, all Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

(b)     If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity

10

CIVIC APP PAGE NO. 137

to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. To the fullest extent permitted by Applicable Law, Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, then to the fullest extent permitted by Applicable Law, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 3.2.

(c) In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

(d) In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

(e) In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, to the fullest extent permitted by Applicable Law, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

(f) If Borrower fails to pursue recovery of Miscellaneous Proceeds in a diligent manner, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. **"Opposing Party"** means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

2300-1002 / 501712.10

11

CIVIC APP PAGE NO. 138

(g)   Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default if acceleration has not occurred by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender' s interest in the Property are hereby assigned and shall be paid to Lender.

(h)   All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 3.2.

### 3.11 Borrower Not Released; Forbearance By Lender Not a Waiver

Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

### 3.12 Joint and Several Liability; Co-signers; Successors and Assigns Bound

Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"):

(a)   is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument;

(b)   is not personally obligated to pay the sums secured by this Security Instrument; and

(c)   agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 3.17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 3.18) and benefit the successors and assigns of Lender.

### 3.13 Loan Charges

CIVIC APP PAGE NO. 139

Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, Property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits (and for purposes of making any such determination as to whether any interest exceeds the lawful maximum, it is understood and agreed that all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender), then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**3.14 Notices**
All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the address designated in the Note unless Borrower has designated a substitute notice address by no less than ten (10) days prior notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**3.15 Governing Law; Severability; Rules of Construction**
This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such

CIVIC APP PAGE NO. 140

silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument:

(a)     words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender;

(b)     words in the singular shall mean and include the plural and vice versa; and

(c)     the word "may" gives sole discretion without any obligation to take any action.

### 3.16 Borrower's Copy

Borrower shall be given one copy of the Note and of this Security Instrument.

### 3.17 Transfer of the Property or a Beneficial Interest in Borrower

As used in this Section 3.17, **"Interest in the Property"** means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 3.14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### 3.18 Sale of Note; Change of Loan Servicer; Notice of Grievance

The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the **"Loan Servicer"**) that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

CIVIC APP PAGE NO. 141

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party' s actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 3.14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 5.1 and the notice of acceleration given to Borrower pursuant to Section 3.17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 3.18.

### 3.19 Hazardous Substances

As used in this Section 3.19: (a) **"Hazardous Substances"** are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) **"Environmental Law"** means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) **"Environmental Cleanup"** includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an **"Environmental Condition"** means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

### 3.20 Additional Property Subject to the Security Instrument

In addition to the Property elsewhere herein described, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument:  building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.

### 3.21 Use of Property; Compliance with Law

Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

### 3.22 Subordinate Liens

Except as permitted by Applicable Law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

### 3.23 Rent Loss Insurance

Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 3.5.

### 3.24 Assignment of Leases

Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this Section 3.24, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

### 3.25 Assignment of Rents; Appointment of Receiver; Lender in Possession

Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 5.1 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the

CIVIC APP PAGE NO. 143

Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless Applicable Law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 3.8.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

### 3.26 Security Agreement

This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code.  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property.  By executing and delivering this Security Instrument, Borrower hereby grants to Lender and Trustee, as security for Borrower's performance of its obligations under the Note, this Security Instrument and all of the other loan documents, a security interest in the items described in Section 3.20 above to the fullest extent that such items may be subject to the Uniform Commercial Code.

### 3.27 Pledge of Monies Held

Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender, including, without limitation, any sums deposited in the escrow as provided in Section 3.3 above, insurance proceeds as provided in Section 3.5 above and Miscellaneous Proceeds as provided in Section 3.10 above, as additional security for Borrower's performance of its obligations under the Note, this Security Instrument and all of the other loan documents, until expended or applied as provided in this Security Instrument.

Case: 20-51735   Doc# 16-7   Filed: 12/24/20   Entered: 12/24/20 10:46:28   Page 41 of 113

CIVIC APP PAGE NO. 144

### 3.28 Cross-Default Provision

Any breach or default by Borrower or any Affiliate of Borrower under any note or agreement to which Lender or any Affiliate of Lender is also a party (or has an interest) shall be a breach under this Security Instrument, and Lender may invoke any of the remedies permitted by this Security Instrument.

### 4.   Balloon Payment Covenant

Borrower and Lender further covenant and agree as follows:

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER WITH WHICH BORROWER HAS THIS LOAN, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

### 5.   Non-Uniform Covenants

Borrower and Lender further covenant and agree as follows:

### 5.1 Acceleration; Remedies

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 3.17 unless Applicable Law provides otherwise) or in the Note. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand, and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 5.1, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

CIVIC APP PAGE NO. 145

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

This Section 5.1 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Section 6 below.

**5.2 Reconveyance**
Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

This Section 5.2 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Section 6 below.

**5.3 Substitute Trustee**
Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**5.4 Statement of Obligation Fee**
Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**5.5 Use of Property**
BORROWER WILL AT NO TIME DURING THE TERM OF THE LOAN INHABIT THE PROPERTY. THE PROPERTY IS OWNED AND HELD BY BORROWER AS AN INVESTMENT PROPERTY. NONE OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER NOW OCCUPIES OR USES THE PROPERTY, AND NONE OF THEM HAS ANY PRESENT INTENTION TO OCCUPY OR USE THE PROPERTY IN THE FUTURE AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER. EACH OF BORROWER AND ITS OWNERS, EMPLOYEES AND OTHER AFFILIATES NOW OCCUPIES AND USES

OTHER PROPERTY OR PROPERTIES AS SUCH PERSON'S PRINCIPAL OFFICE, RESIDENCE AND/OR SECOND HOME.

**6. State Specific Provisions-California**

The representations, warranties and covenants in this Section 6 shall be continuing representations, warranties and covenants that shall be deemed to be made by Borrower throughout the term of the Loan, until paid in full.

(a) The notice of acceleration pursuant to Section 5.1 shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

(b) In addition to the provisions of the Note, Borrower further agrees that, if Lender accepts a Guarantee of only a portion of the Loan, Borrower waives its right under California Civil Code Section 2822(a) to designate the portion of the Loan which shall be satisfied by a guarantor's partial payment.

(c) Except for matters covered by a duly established and implemented O&M Plan in respect of asbestos-containing materials, Borrower shall not cause or permit any lien (whether or not such lien has priority over the lien created by this Security Instrument) upon the Property imposed pursuant to any Environmental Laws.

(d) Borrower represents and warrants to Lender that, except as previously disclosed by Borrower to Lender in writing:

  (1) at the time of acquiring the Property, Borrower undertook all appropriate inquiry into the previous ownership and uses of the Property consistent with good commercial or customary practice and no evidence or indication came to light which would suggest that the Property is subject to any Environmental Condition or Environmental Cleanup; and

  (2) at least one of the following is true: (A) the Property is not located within 2,000 feet of a significant disposal of Hazardous Substances; or (B) if the Property is located within 2,000 feet of a significant disposal of Hazardous Substances, such Hazardous Substances do not constitute a significant existing or potential hazard to present or future public health or safety on the Property. In any case, Borrower agrees to immediately disclose to Lender any significant disposal of Hazardous Substances that occurs or exists within 2,000 feet of the Mortgaged Property.

(e) Without limiting any of the remedies provided in this Security Instrument, Borrower acknowledges and agrees that each of the provisions in this Section 6 is an environmental provision (as defined in Section 736(f)(2) of the California Code of Civil Procedure) made by Borrower relating to real property security (the **"Environmental Provisions"**), and that to the extent applicable, Borrower's failure to comply with any of the Environmental Provisions will be a breach of contract that will entitle Lender to pursue the remedies provided by Section 736 of the California Code of Civil Procedure for the recovery of damages and for the enforcement of the Environmental Provisions.

(f) **Remedies Not Exclusive; Waiver**. Trustee and Lender shall have all powers, rights and remedies under Applicable Law whether or not specifically or generally granted or described in this Security Instrument. Nothing contained herein shall be construed to impair or to restrict such powers, rights and remedies or to preclude any procedures or process otherwise available to trustees or beneficiaries under deeds of trust in the State of California. Trustee and Lender, and each of them, shall be entitled to enforce the payment and performance of any indebtedness or obligations secured hereby and to exercise all rights and powers under this Security Instrument or other agreement or any laws now or hereafter in force, notwithstanding the fact that some or all of the indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance of this Security Instrument nor its enforcement, whether by court action or pursuant to the power of sale or other powers contained herein, shall prejudice or in any manner affect Trustee's or Lender's right to realize upon or enforce any other rights or security now or hereafter held by Trustee or Lender. Trustee and Lender, and each of them, shall be entitled to enforce this Security Instrument and any other rights or security now or hereafter held by Lender or Trustee in such order and manner as they or either of them may in their absolute discretion determine. No remedy herein conferred upon or reserved to Trustee or Lender is intended to be exclusive of any other remedy contained herein or by law provided or permitted, but each shall be cumulative and in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. Every power or remedy given by any of this Security Instrument to Trustee or Lender, or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Lender, and either of them may pursue inconsistent remedies. By exercising or by failing to exercise any right, option or election hereunder, Lender shall not be deemed to have waived any provision hereof or to have released Borrower from any of the obligations secured hereby unless such waiver or release is in writing and signed by Lender. The waiver by Lender of Borrower's failure to perform or observe any term, covenant or condition referred to or contained herein to be performed or observed by Borrower shall not be deemed to be a waiver of such term, covenant or condition or of any subsequent failure of Borrower to perform or observe the same or any other such term, covenant or condition referred to or contained herein, and no custom or practice which may develop between Borrower and Lender during the term hereof shall be deemed a waiver of or in any way affect the right of Lender to insist upon the performance by Borrower of the obligations secured hereby in strict accordance with the terms hereof.

(g) **Power of Sale**

    (1) Should Lender elect to foreclose by exercise of the power of sale contained herein, Lender shall notify Trustee and shall, if required, deposit with Trustee the Note, the original or a certified copy of this Security Instrument, and such other documents, receipts and evidences of expenditures made and secured hereby as Trustee may require. Upon receipt of such notice from Lender, Trustee shall cause to be recorded and delivered to Borrower such notice as may then be required by law and

CIVIC APP PAGE NO. 148

by this Security Instrument. Trustee shall, without demand on Borrower, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale has been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate lots or parcels or items as Trustee shall deem expedient, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale.   Trustee shall deliver to the purchaser or purchasers at such sale its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Borrower, Trustee or Lender, may purchase at such sale, and Borrower hereby covenants to warrant and defend the title of such purchaser or purchasers.

(2) After deducting all costs, fees and expenses of Trustee and of this Security Instrument, including, without limitation, costs of evidence of title and actual and customary attorneys' fees of Trustee or Lender in connection with a sale as provided in subparagraph (1) above, Trustee shall apply the proceeds of such sale (a) first, to the payment of all sums expended by Lender under the terms of this Security Instrument and not yet repaid, together with interest on such sums at the rate of interest set forth in Section 6.1 of the Note, (b) second, to the payment of all sums expended under the terms hereof not then repaid, with accrued interest at the rate of interest equal to the rate then in effect under the Note, or if the Note has been repaid, the rate that would have been in effect under the Note, (c) third, to the payment of all other sums then secured hereby, and (d) fourth, the remainder, if any, to the person or persons legally entitled thereto.

(h) **Right of Rescission**.  Lender may from time to time rescind any notice of default or notice of sale before any Trustee's sale in accordance with the laws of the State of California. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default to satisfy the obligations of this Security Instrument or secured hereby, nor otherwise affect any provision, covenant or condition of this Security Instrument or any of the rights, obligations or remedies of Trustee or Lender hereunder or thereunder.

(i) **Full Reconveyance**.  Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder.  The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(j) **Fixture Filing**.  This Security Instrument constitutes a fixture filing under the fixture filing provisions of the UCC, Sections 9-313 and 9-402(6) as enacted and under the equivalent

22

CIVIC APP PAGE NO. 149

statutes in the State of California, as amended or recodified from time to time. For purposes of the fixture filing, the "debtor" is the Borrower which has as its principal place of business the address listed in the first paragraph of this Security Instrument and the "Secured Party" is Lender.

(k) **Border Zone Property.** Borrower represents and warrants that the Property has not been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq. or any regulation adopted in accordance therewith, and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Property that is reasonably likely to cause the Property or any part thereof to be designated as Border Zone Property.

(l) JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY. NOTWITHSTANDING SECTION 8.2(f) BELOW TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GUARANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS, HIS OR HER BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

**7 Obligations and Reliance; Further Assurances**

**7.1 Obligations and Reliance**

(a) **Relationship of Borrower and Lender.** The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Note, this Security Instrument and the other loan documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

(b) **No Reliance on Lender.** The members, general partners, principals and (if Borrower is a trust) beneficial owners of Borrower are experienced in the ownership and operation of

properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

(c)     **No Lender Obligations.** By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Note or the other loan documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

(d)     **Reliance.** Borrower recognizes and acknowledges that in accepting the Note, this Security Instrument and the other loan documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations made by Borrower herein and therein without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof; that the warranties and representations are a material inducement to Lender in accepting the Note, this Security Instrument and the other loan documents; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth herein and therein.

**7.2 Further Assurances**

(a)     **Recording of Security Instrument, etc.** Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other loan documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other loan documents, any note or deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

CIVIC APP PAGE NO. 151

**(b)** **Further Acts, etc.** Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender and Trustee the Property and rights hereby deeded, mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Applicable Law. Borrower, on demand, will execute and deliver and hereby authorizes Lender, following 10 days' notice to Borrower, to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements (including, without limitation, initial financing statements, amendments thereto and continuation statements) with or without the signature of Borrower as authorized by Applicable Law, chattel mortgages or other instruments, to evidence more effectively the security interest of Lender in the Property. Borrower also ratifies its authorization for Lender to have filed any like initial financing statements, amendments thereto and continuation statements, if filed prior to the date of this Security Instrument. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender pursuant to this Section 7.2(b). To the extent not prohibited by Applicable Law, Borrower hereby ratifies all acts Lender has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

**(c)** **Changes in Tax, Debt Credit and Documentary Stamp Laws**

(1) If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the debt immediately due and payable.

(2) Borrower will not claim or demand or be entitled to any credit or credits on account of the debt for any part of the taxes or other charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the debt. If such claim, credit or deduction shall be required by law, Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the debt immediately due and payable.

Case: 20-51735   Doc# 16-7   Filed: 12/24/20   Entered: 12/24/20 10:46:28   Page 49 of 113
CIVIC APP PAGE NO. 152

(3)     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other loan documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

**(d)     Replacement Documents.** Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other loan document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other loan document, Borrower will issue, in lieu thereof, a replacement Note or other loan document, dated the date of such lost, stolen, destroyed or mutilated Note or other loan document in the same principal amount thereof and otherwise of like tenor.

## 8 Indemnification; Waivers
## 8.1 Indemnification

**(a)     General Indemnification.** Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties (defined below) from and against any and all Losses (defined below) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following:  (a) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (b) any use, nonuse or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (d) any failure of the Property to be in compliance with any Applicable Law; (e) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; or (f) the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the Loan evidenced by the Note and secured by this Security Instrument.  Any amounts payable to Lender by reason of the application of this Section 8.1(a) shall become immediately due and payable and shall bear interest at the default rate from the date loss or damage is sustained by Lender until paid.

**(b)     The term "Losses"** shall mean any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense).  The term **"Indemnified Parties"** shall mean (a) Lender, (b) any prior owner or holder of the Note, (c) any servicer or prior servicer of the Loan, (d) the officers, directors, shareholders, partners, members, employees and trustees of any of the foregoing, and (e) the heirs, legal representatives, successors and assigns of each of the foregoing.

CIVIC APP PAGE NO. 153

(c) **Mortgage and/or Intangible Tax.** Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument, the Note or any of the other loan documents.

(d) **Duty to Defend; Attorneys' Fees and Other Fees and Expenses.** Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties. Notwithstanding the foregoing, any Indemnified Parties may, in their sole discretion, engage their own attorneys and other professionals to defend or assist them, and, at the option of Indemnified Parties, their attorneys shall control the resolution of any claim or proceeding. Upon demand, Borrower shall pay or, in the sole discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

**8.2 Waivers**

(a) **Waiver of Counterclaim.** Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Note, any of the loan documents, or any of Borrower's obligations thereunder.

(b) **Marshalling and Other Matters.** To the extent permitted by law, Borrower hereby expressly waives:

   (1) the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein; and,

   (2) any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all persons to the extent permitted by Applicable Law.

(c) **Waiver of Notice.** Borrower shall not be entitled to any notices of any nature whatsoever from Lender or Trustee except (a) with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Lender or Trustee to Borrower and (b) with respect to matters for which Lender or Trustee is required by Applicable Law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender or Trustee with respect to any matter for which

Case: 20-51735   Doc# 16-7   Filed: 12/24/20   Entered: 12/24/20 10:46:28   Page 51 of 113

CIVIC APP PAGE NO. 154

this Security Instrument does not specifically and expressly provide for the giving of notice by Lender or Trustee to Borrower.

(d)     **Waiver of Statute of Limitations.**  Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the debt or performance of its other obligations under this Security Instrument, the Note and the other loan documents.

(e)     **Sole Discretion of Lender.**  Wherever pursuant to this Security Instrument (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole discretion of Lender, except as may be otherwise expressly and specifically provided herein.

(f)     **WAIVER OF RIGHT TO TRIAL BY JURY.**  BORROWER HEREBY EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THE NOTE, THIS SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.  BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.  ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY.

## 9 Miscellaneous Provisions
### 9.1 No Oral Change
This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

### 9.2 Liability
If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.  This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

### 9.3 Inapplicable Provisions

Case: 20-51735   Doc# 16-7   Filed: 12/24/20   Entered: 12/24/20 10:46:28   Page 52 of 113

CIVIC APP PAGE NO. 155

If any term, covenant or condition of the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Note and this Security Instrument shall be construed without such provision.

**9.4 Duplicate Originals; Counterparts**
This Security Instrument may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Security Instrument may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Security Instrument. The failure of any party hereto to execute this Security Instrument, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower al the address set forth above.

SUMMITRIDGE VENTURE GROUP, LLC , a California Limited Liability Company

By: _Vikram fu._____ Date: _9/12/18_
Name: Vikram Srinivasan
Title: Managing Member

By: _____ Date: _9-14-18_
Name: Matthew Bahrami
Title: Member

---

## ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

State of California

County of ___Alameda___ )

On __Sept.12, 2018__ before me, ___Mansoor Fazel, Notary Public___
(insert name and title of the officer)

Personally appeared ___Vikram Srinivasan___ , who proved

to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____ (Seal)

MANSOOR FAZEL
COMM. # 2188609
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires April 11, 2021

---

2800-1002 / 501712.10

30



**PETER ALDANA**
**COUNTY OF RIVERSIDE**
**ASSESSOR-COUNTY CLERK-RECORDER**

Recorder
P.O. Box 751
Riverside, CA 92502-0751
(951) 486-7000

www.riversideacr.com

# NOTARY CLARITY

Under the provisions of Government Code 27361.7, I certify under the penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary:  Manroor Fazel

Commission #:  2188609

Place of Execution:  Alameda  CA

Date Commission Expires:  April 11. 2021

Vendor In: 5 1 0 1

Date:  9-24-18

Signature:

Print Name:  Peggy Layte

ACR 186 (Rev. 07/2013)          Available in Alternate Formats

# CALIFORNIA ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California    }

County of Orange    }

On 9/14/18 before me, Miguel A Chavez, Notary Public
(Here insert name and title of the officer)

personally appeared Matthew Bahrami,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____    (Notary Public Seal)
Notary Public Signature

MIGUEL A. CHAVEZ
COMM. #2176924
NOTARY PUBLIC• CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Jan. 20, 2021

## ADDITIONAL OPTIONAL INFORMATION

**DESCRIPTION OF THE ATTACHED DOCUMENT**

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

**CAPACITY CLAIMED BY THE SIGNER**
- ☐ Individual (s)
- ☐ Corporate Officer
  _____
  (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

2015 Version www.NotaryClasses.com 800-873-9865

### INSTRUCTIONS FOR COMPLETING THIS FORM

*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

Exhibit A
Legal Description

Loan Number: 0118072548

That portion of Lot 5, of Tract No. 7996, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 186, Pages 4 through 7 inclusive of Maps, in the office of the County Recorder of said county, described as follows:

Beginning at the Southeast corner of said Lot 5; thence along the Southerly line of said Lot 5, South 87' 16' 45" West 254.19 feet to the Easterly line of Summitridge Drive; thence along said last mentioned Easterly line North 4' 27' 36" West 3.93 feet to the beginning of a 157.67 foot radius tangent curve concave to the Southwest; thence Northwesterly along the arc of said curve through a central angle of 46' 34' 30" distance of 128.17 feet; thence North 63' 8' 41" East 346.05 feet to an angle point in the Easterly line of said Lot 5; thence along said last mentioned Easterly line South 0' 46' 53" East 258.53 feet to the point of beginning.

APN: 4355-009-012                    1666 Summitridge Drive, Beverly Hills, CA 90210

# EXHIBIT B

CIVIC APP PAGE NO. 161




**This page is part of your document - DO NOT DISCARD**

## 20181067508




**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**10/19/18 AT 01:16PM**

| | |
|---|---|
| FEES: | 23.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |



**L E A D S H E E T**



**201810190130027**

**00015858037**

009412721

**SEQ:**
**01**

SECURE - Daily



**THIS FORM IS NOT TO BE DUPLICATED**

E534013

0118072548 S GES

**Recording Requested by**:
Civic Financial Services, LLC

**And After Recording Return To:**
Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA 90278
Loan No. 0118072548

# Assignment of Deed of Trust

Loan Number: 0118072548

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

Civic Holdings III Trust

all its rights, title and interest in and to the Deed of Trust dated 09/11/2018  executed by SUMMITRIDGE VENTURE GROUP, LLC, a California Limited Liability Company  , and recorded either concurrently herewith;  or on 09/25/2018  as Instrument No. in  20180977267  book    N/A,   page N/A , in the Official Records in the County Recorder's office of Los Angeles County, CA, describing land therein as:

That portion of Lot 5, of Tract No. 7996, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 186, Pages 4 through 7 inclusive of Maps, in the office of the County Recorder of said county, described as follows:

Beginning at the Southeast corner of said Lot 5; thence along the Southerly line of said Lot 5, South 87' 16' 45" West 254.19 feet to the Easterly line of Summitridge Drive; thence along said last mentioned Easterly line North 4' 27' 36" West 3.93 feet to the beginning of a 157.67 foot radius tangent curve concave to the Southwest; thence Northwesterly along the arc of said curve through a central angle of 46' 34' 30" distance of 128.17 feet; thence North 63' 8' 41" East 346.05 feet to an angle point in the Easterly line of said Lot 5; thence along said last mentioned Easterly line South 0' 46' 53" East 258.53 feet to the point of beginning.

A.P.N.: 4355-009-012

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust. The original principal amount due under this note(s) is $3,500,000.00.

1

**CIVIC FINANCIAL SERVICES, LLC , a California
Limited Liability Company**

By: Gary W. McCarthy, Authorized Agent

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of          California          ) ss
County of         Los Angeles        )

On _____**SEP 0 7 2018**_____, before me, **Gina Castillo,** Notary Public, personally appeared **Gary W.
McCarthy** , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /
are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/
her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal

Signature _____ ( Seal )


GINA CASTILLO
Notary Public - California
Los Angeles County
Commission # 2238519
My Comm. Expires Apr 19, 2022

# EXHIBIT C



**This page is part of your document - DO NOT DISCARD**

## 20190017373





**Pages:
0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/07/19 AT 11:14AM**

| | |
|---|---|
| FEES: | 80.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 305.00 |



**L E A D S H E E T**



201901073330043

00016141564



009557387

**SEQ:
01**

SECURE - Daily



**THIS FORM IS NOT TO BE DUPLICATED**

E502068

0888003889 ACM-SH3 to I

Document prepared by: Paula Chastain
Recording requested by and
When recorded, please return to:
HMC Assets, LLC
2015 Manhattan Beach Blvd., Suite 200
Redondo Beach, CA 90278
Reference ID0118072548
APN: 4355-009-012

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF DEED OF TRUST

For value received, the undersigned hereby grants, assigns and transfers to

### DLJ Mortgage Capital, Inc.

all beneficial interest under that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated 09/11/2018, executed by SUMMITRIDGE VENTURE GROUP, LLC, a California Limited Liability Company, Trustor(s), to Civic Financial Services, LLC, as Beneficiary, recorded on 09/25/2018, as Doc # 20180977267 of Official Records in the office of the County Recorder of Los Angeles County, State of California (hereinafter, the "Deed of Trust"), together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust and Promissory Note.

Property Address: 1666 Summitridge Drive, Beverly Hills, CA 90210
Dated: 01/04/2019

> Civic Holdings III Trust
> By: HMC Assets, LLC as Administrator
>
> By: Aaron Wright, Authorized Agent

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of      California        ) ss
County of     Los Angeles       )

On **01/04/2019**, before me, **P.M Chastain**, Notary Public, personally appeared **Aaron Wright**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

P. M. CHASTAIN
Commission # 2097847
Notary Public - California
Orange County
My Comm. Expires Feb 20, 2019

# EXHIBIT D

CIVIC APP PAGE NO. 168



**This page is part of your document - DO NOT DISCARD**



## 20190128721



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/12/19 AT 01:04PM**

**Pages:
0002**

| | |
|---|---|
| FEES: | 20.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 95.00 |



**L E A D S H E E T**



**201902120110068**

**00016259004**



**009626896**

**SEQ:
01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

E442318

0888003889 ASM-BLJ to C

Document prepared by: Laura Collins
Record and return to: HMC Assets, LLC
2015 Manhattan Beach Suite 200
Redondo Beach, CA 90278
Reference ID: 0118072548
APN ID: 4355-009-012

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

### ASSIGNMENT OF DEED OF TRUST

For value received, the undersigned hereby grants, assigns and transfers to

**Civic Holdings III Trust**

all beneficial interest under that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated 9/11/2018 executed by SUMMITRIDGE VENTURE GROUP, LLC, a California Limited Liability Company, Trustor(s), to Civic Financial Services, LLC, as Beneficiary, recorded on 9/25/2018 as Doc # 20180977267 of Official Records in the office of the County Recorder of Los Angeles County, State of CA (hereinafter, the "Deed of Trust"), together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust and Promissory Note.

Property Address: 1666 Summitridge Drive, Beverly Hills CA 90210

**Dated : February 1, 2019**

DLJ Mortgage Capital Inc.

By: _____
Title: David Neugebauer
**Vice President**

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of _____ *New York* _____ ) ss
County of _____ *New York* _____ )

On _2/1/2019_ before me, _Gloria Johnson_ Notary Public, personally appeared Aaron Wright, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ *New York* _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

GLORIA JOHNSON
Notary Public, State of New York
No. 01JO6015595
Qualified in Bronx County
Certificate Filed in New York County
Commission Expires January 9, 2023

Page 1 of 1

# EXHIBIT E

CIVIC APP PAGE NO. 171




**This page is part of your document - DO NOT DISCARD**



# 20190436848



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**05/14/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 30.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 105.00 |

**Pages: 0003**



**L E A D S H E E T**



**201905140120004**

**00016604485**



**009819932**

**SEQ:
01**

**SECURE - 8:00AM**

**THIS FORM IS NOT TO BE DUPLICATED**

*E464772*

**91214068-JW**

RECORDING REQUESTED BY:

Simplifile

WHEN RECORDED MAIL TO:
**Entra Default Solutions, LLC**
**1355 Willow Way, Suite 115**
**Concord, California 94520**

\# 91214068

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: **4355-009-012**
TS No.: **2019-04632**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**[PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.]**

## IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$219,323.87** as of **5/10/2019** and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

CIVIC HOLDINGS III TRUST
C/O FAY SERVICING LLC
425 S. FINANCIAL PLACE, SUITE 2000
CHICAGO, IL 60605
Phone: 800-495-7166

**If you have any questions, you should contact a lawyer or the governmental agency that may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That **ENTRA DEFAULT SOLUTIONS, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **9/11/2018**, executed by **SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**, as Trustor, to secure certain obligations in favor of **CIVIC FINANCIAL SERVICES LLC**, as beneficiary, recorded **9/25/2018**, as Instrument No. **20180977267**, in Book , Page ,  of Official Records in the Office of the Recorder of **Los Angeles** County, California describing land therein as: As more fully described on said Deed of Trust.

Including One Note FOR THE ORIGINAL sum of **$3,500,000.00** , that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:
   **Failure to pay the installment of principal and interest plus impounds and/or advances which became due on 2/1/2019 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

   That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written request to commence foreclosure, and has deposited with said duly appointed Trustee, copies of such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: 5/10/2019

Entra Default Solutions, LLC

BY: _____
Katie Milnes, Vice President

# EXHIBIT F

 **This page is part of your document - DO NOT DISCARD** 



## 20190828169



**Pages: 0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/19/19 AT 08:00AM**

| | |
|---|---:|
| FEES: | 30.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 105.00 |



**L E A D S H E E T**



**201908190130007**

**00017017705**



**010050359**

**SEQ:
01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E534013

91214068-JW

RECORDING REQUESTED BY
**Entra Default Solutions, LLC**

AND WHEN RECORDED MAIL TO:
**Entra Default Solutions, LLC**
**1355 Willow Way, Suite 115**
**Concord, California 94520**

APN: 4355-009-012

T.S. No.: 2019-04632
A.P.N.: 4355-009-012
# 91214068

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**[PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE
IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES
PROVIDED TO THE TRUSTOR.]**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 9/11/2018. UNLESS
YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A
PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE
PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

**A PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH, CASHIER'S
CHECK/CASH EQUIVALENT** or other form of payment authorized by 2424h(b), (payable at the time of
sale in lawful money of the United States), will be held by the duly appointed trustee as shown below, of all right,
title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant
to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied,
regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed
of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of
Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial
publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day
of sale.

CIVIC APP PAGE NO. 177

Trustor: **SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**
Duly Appointed Trustee: **ENTRA DEFAULT SOLUTIONS, LLC 1355 Willow Way, Suite 115, Concord, California 94520 Phone: (925)272-4993**
Deed of Trust Recorded **9/25/2018** as Instrument No. **20180977267** in book , page   of Official Records in the office of the Recorder of **Los Angeles** County, California,
Date of Sale: **9/13/2019** at **11:00 AM**
Place of Sale:     **By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766**
Amount of unpaid balance and other charges: **$3,891,080.78**
Street Address or other common designation of real property:     **1666 SUMMITRIDGE DRIVE (BEVERLY HILLS AREA)LOS ANGELES , CA 90210**

to be sold:
A.P.N.: **4355-009-012**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. **We are attempting to collect a debt and any information we obtain will be used for that purpose.**

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 or visit this Internet Web site www.servicelinkASAP.com, using the file number assigned to this case 2019-04632. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

Date: 8/15/2019                                ENTRA DEFAULT SOLUTIONS, LLC

                                Katie Milnes, Vice President

# EXHIBIT G

CIVIC APP PAGE NO. 179

# FORBEARANCE AGREEMENT

       **THIS FORBEARANCE AGREEMENT** dated as of November 2*l*, 2019 (this **"Agreement"**), is made by (i) Fay Servicing, LLC (**"Fay"**) as servicer for Civic Holdings III Trust (**"Trust"**), (Trust and Fay are collectively referred to hereinafter as the **"Lender"**); and (ii) Summitridge Venture Group, LLC, a California limited liability company (the **"Borrower"**), with reference to and in consideration of the facts set forth in the following paragraphs lettered A through H below (collectively, the **"Recitals"**).  The Lender and the Borrower are collectively referred to hereinafter as the **"Parties"**).

## RECITALS

### A.    LOAN AND NOTE.

       1.    Loan. On 9/24/18 the Lender's predecessor, Civic Financial Services, LLC (the **"Original Lender"**), made a loan to the Borrower in the amount of $3,500,000 (the **"Loan"**). The Loan is internally referenced by the Trust as Loan No. 0118072548 and by Fay as Loan No. 0888003889.

       2.    Note. To evidence and govern the Loan, the Borrower made and delivered to the Original Lender the *Note* dated 9/11/18 (the **"Loan Date"**), in that original principal amount, payable to the order of the Original Lender (the **"Note"**).

       3.    Disbursement and Maturity Date. The Loan was disbursed on 09/25/18. The maturity date of the Note is/was 10/1/2019 (the **"Maturity Date"**).

### B.    DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING; PERFECTION.

       1.    Deed of Trust. In order to secure repayment of the Loan, the Note, and all other then-existing or thereafter incurred indebtedness of the Borrower to the Original Lender, the Borrower made and delivered to the Original Lender a *Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing* dated the Loan Date (collectively the **"Security Agreement"**), which, *inter alia*, granted the Lender a lien against and first priority security interest in the Collateral (as defined therein) and generally described as 1666 Summitridge Drive Beverly Hills, California 90210 (the **"Property"**).

       2.    Perfection. The liens and security interests granted the Original Lender by the Borrower under the Security Agreement were perfected by the recording of the Deed of Trust in the OFFICIAL RECORDS OF LOS ANGELES COUNTY, CALIFORNIA (the **"Official Records"**) identifying the Borrower as the debtor thereunder, the Original Lender as the secured party

*Summitridge Forbearance Agreement*

thereunder, the Collateral as the collateral covered thereby, on September 25, 2018, as Document No. 20180977267.

        **C.**     **SUCCESSOR LENDER.** On 1/7/19, the Original Lender sold the Loan to DLJ MORTGAGE CAPITAL, INC. On 2/12/19, the DLJ MORTGAGE CAPITAL, INC sold the Loan to the Trust, and the Lender thereby succeeded to all the rights and interests of the Original Lender to, under, and with respect to (i) the Loan, the Note and all other indebtedness; and (ii) the Security Agreement (collectively, the **"Existing Loan Documents"**; and all amounts due by the Borrower as of any time under or with respect to the Existing Loan Documents, the **"Borrower Indebtedness"**), and is now the holder of all the foregoing.

        **D.**     **EVENTS OF DEFAULT.** Multiple Events of Default have occurred under the Existing Loan Documents, including (i) multiple failures of the Borrower timely to pay, or to pay in full, monthly installments of interest payable to the Lender and the failure to pay real property taxes; (ii) the failure of the Borrower to pay the outstanding principal of and all accrued but unpaid interest under the Note, and all other amounts due under the Existing Loan Documents made by the Borrower, on the Maturity Date (these Events of Default, collectively, the **"Designated Events of Default"**).

        **E.**     **LENDER EXPENSES.** In connection with the Events of Default, including the formulation, negotiation, preparation, and implementation of this Agreement, the Lender has incurred and expects to continue to incur fees, costs, and expenses, including attorneys' fees and costs in connection with those matters, for all of which the Borrower is indebted to the Lender pursuant to the Existing Loan Documents and will be indebted to the Lender pursuant to this Agreement (all those actual fees, costs, and expenses, whether incurred prior to, on, or after the Effective Date (defined below), and as set forth below (collectively, the **"Lender Expenses"**).

        **F.**     **AMOUNTS OUTSTANDING.** As of November 13, 2019 (the **"Statement Date"**), the Borrower Indebtedness consisted of the following:

        1.     Outstanding Principal. The principal amount outstanding under the Note of $3,500,000;

        2.     Accrued Interest. The amount of accrued but unpaid interest due under the Note at the applicable rates of interest thereof of $521,470.83 (for the avoidance of doubt, interest has accrued and will continue to accrue on the Note from time to time applicable from the Statement Date);

        3.     Property Tax. The amount of accrued but unpaid property tax due of $71,699.34; and

        4.     Lender Expenses. The amount of Lender Expenses incurred or agreed to be incurred by the Lender of $14,653.70.

        **G.**     **LOAN PRESENTLY PAYABLE; RIGHT TO ENFORCE EXISTING LOAN DOCUMENTS.** As a result of, *inter alia*, the Designated Events of Default, (i) all amounts

*Summitridge Forbearance Agreement*

due by the Borrower under the Note and the other Existing Loan Documents made by the Borrower (that is, the Borrower Indebtedness); are presently immediately payable in full to the Lender; and (ii) the Lender is entitled, under the Existing Loan Documents and applicable law, to proceed to enforce the Existing Loan Documents with respect to the Borrower Indebtedness and the Collateral under the Security Agreement, and to exercise all rights and remedies available to it under applicable law and the Existing Loan Documents to collect the Borrower Indebtedness and to realize on the Collateral, including to foreclose on the real property collateral described in the Deed of Trust (all rights and remedies the Lender has or may have under the Existing Loan Documents and applicable law or with respect thereto, the **"Existing Remedies"**).

      **H.**    **REQUEST FOR FORBEARANCE.** The Borrower has requested that the Lender forbear from exercising the Existing Remedies for a period of time. As is more specifically set forth in this Agreement, the Lender is willing so to forbear on the terms and conditions of this Agreement.

<div align="center">

**TERMS**

</div>

      **THEREFORE,** the Parties agree as follows:

      **1.**    **TRUTH OF RECITALS.** The Borrower acknowledges and agrees that (i) the Recitals are true and correct in every respect; and (ii) the Lender is relying on that acknowledgment and agreement with respect to the Recitals in entering into this Agreement pursuant.

      **2.**    **CONTINUING FORCE AND REAFFIRMATION OF EXISTING LOAN DOCUMENTS.**

      2.1.    Continuing Force. Except as specifically modified, amended, replaced, or supplemented by this Agreement, all the terms, conditions, and provisions of the Existing Loan Documents existing immediately prior to the Effective Date are and will remain in full force and effect as originally written and theretofore modified, amended, replaced, or supplemented as set forth in the Recitals.

      2.2.    Borrower Reaffirmation. The Borrower reaffirms, confirms, ratifies, agrees, and acknowledges (i) it signed and delivered to the Original Lender each of the Existing Loan Documents that purport to be made by it; (ii) all its obligations and all the grants of security interests in or liens on the Collateral as set forth in those Existing Loan Documents; and (iii) that all those obligations, as and to the extent modified by this Agreement, and all those grants of security interests and liens, are now owing to and held by the Lender.

      2.3.    No Defenses. The Borrower acknowledges and agrees that, as of the Effective Date, it has (i) no claims, setoffs, defenses, or causes of action of any kind or nature whatsoever that can be asserted against the Lender or the Original Lender, including to reduce or eliminate all or any part of its liability, under the Existing Loan Documents or this Agreement; and (ii) no legal rights or theories whatsoever on which to invoke legal or equitable relief, whether injunctive relief or otherwise, in order to abate, postpone, or terminate enforcement by the Lender

*Summitridge Forbearance Agreement*

of its obligations under the Existing Loan Documents or exercise of any Existing Remedies by the Lender (other than to the extent that the Lender agrees pursuant hereto to forbear therefrom).

        **3.**    **ACKNOWLEDGMENTS.** The Borrower hereby unconditionally acknowledges and agrees that, as of the Effective Date—

        3.1.    Indebtedness. The amounts set out in Recital Paragraph F (Amounts Outstanding) above are part of the Borrower Indebtedness and owed by the Borrower to the Lender in accordance with the Existing Loan Documents; and the amounts that constitute or will constitute the Lender Expenses are or will be part of the Borrower Indebtedness and are or will be owed by the Borrower to the Lender in accordance with the Existing Loan Documents;

        3.2.    Certain Default and Other Matters. (i) The Existing Designated Events of Default exist, are continuing, and have not been cured or waived; and (ii) there is no agreement currently existing to extend any further credit or other financial accommodations to or for the benefit of the Borrower, or, except as set forth in this Agreement, to restructure, extend, or otherwise modify the terms of the Existing Loan Documents;

        3.3.    Lender's Right to Immediate Exercise of Existing Remedies. But for this Agreement, as a result of the Existing Designated Events of Default, the Lender has the right under the Existing Loan Documents and applicable law immediately to exercise any or all of the Existing Remedies (subject to compliance with applicable law and rules of court in so doing);

        3.4.    No Modification of Existing Loan Documents. The Existing Loan Documents are not modified, amended, replaced, or supplemented by this Agreement except as expressly set forth herein, and have not heretofore been modified, amended, replaced, or supplemented except as set forth in the Recitals;

        3.5.    No Waiver of Other Defaults. Other than the Existing Designated Events of Default, no other Events of Default and no other defaults of the Borrower under or breaches by the Borrower of the Existing Loan Documents made by the Borrower are cured or waived by this Agreement except as expressly set forth herein, and none of those other Events of Default, defaults, or breaches have heretofore been cured or waived; and

        3.6.    No Other Agreement to Forebear. The Lender has not agreed to forbear or further forbear from exercising any Existing Remedy, or exercising or taking any other right, remedy, or action with respect to the Existing Loan Documents, the Collateral, the Borrower Indebtedness, or the Borrower, except as expressly set forth in this Agreement.

        **4.**    **FORBEARANCE TERMS.**

        4.1.    Forbearance During Forbearance Period. The Lender shall forebear from exercising any Remedies during the period (i) commencing on the Effective Date; and ending on the earlier of (A) 5/1/2020, so long as there is no post Effective Date event of default under the Continuing Loan Documents (defined below) or this Agreement (the **"Forbearance Termination Date"**); or (B) the occurrence of a Forbearance Event of Default (defined in Section 8 (Forbearance

*Summitridge Forbearance Agreement*

Events of Defaults) below) (that period, the **"Forbearance Period"**; the last day of the Forbearance Period, the **"Forbearance Termination Date"**; and that forbearance, the **"Forbearance"**).

    4.2.    <u>Interest</u>. During the Forbearance Period, interest will continue to accrue under the Note at the rate set forth in the Note.

    4.3.    <u>Forbearance Agreements and Payments</u>.

    4.3.1.  <u>Amounts and Schedule</u>. During the Forbearance Period, the Borrower shall make the following payments to the Lender (collectively, the **"Forbearance Payments"**):

    (1)    On or before November 26, 2019, Borrower shall pay Lender, through Fay, the sum of $712,823.87, which sum represents late charges, lender expenses, delinquent property taxes, extension fee, non-refundable forbearance fee and the accrued and unpaid interest under the Loan at the default rate under the Note from the date of default through 11/13/2019;

    (2)    Thereafter, commencing 12/1/2019 and throughout the Forbearance Period, Borrower will make monthly interest payments to Lender, through Fay, in the amount of $52,500 on the first day of each month, which sum represents interest under the Loan at the non-default rate. Any interest payment due under this Agreement which is not received by Fay in good funds by the fifth day of any month during the Forbearance Period shall be an event of default under this Agreement and the Continuing Loan Documents;

    (3)    On the Effective Date of this Agreement, an extension fee of one percent (1%) of the unpaid principal balance of the Loan and a non-refundable forbearance fee of two percent (2%) of the unpaid principal balance of the Loan will be added to the Borrower Indebtedness;

    (4)    During the Forbearance Period (i) interest will continue to accrue under the Loan at the default rate of interest (18% per annum)(**"Default Interest"**), and (ii) Lender Expenses will continue to accrue; and

    (5)    On the Forbearance Termination Date, pay the entire remaining amount of the Borrower Indebtedness, if any, including all remaining principal outstanding under the Note, all accrued unpaid interest due under the Note, all accrued but unpaid late charges on the Note, and all unpaid Lender Expenses.

    4.3.2.  <u>Application of Payments</u>. The Forbearance Payments will be applied by the Lender to the Borrower Indebtedness in the order and manner determined by the Lender in its discretion; provided, however, that in the absence of an election of the Lender to

*Summitridge Forbearance Agreement*

apply any Forbearance Payment differently, each Forbearance Payment will be applied to the Borrower Indebtedness in the following order:

> (1) First, to accrued unpaid interest due under the Note, as may be modified herein;

> (2) Next, to the principal outstanding under the Note;

> (3) Next, to accrued but unpaid late charges on the Note, and

> (4) Last, to accrued but unpaid Lender Expenses.

## 5. RELEASE OF CLAIMS.

5.1. <u>Release of Borrower Claims</u>. Effective as of the Effective Date, the Borrower; and each of its managers, members and respective predecessors, successors, and assigns (collectively, the **"Releasors"**), hereby forever, finally, fully, and completely releases, relieves, acquits, remises, and discharges Lender, DLJ MORTGAGE CAPITAL, INC, Fay, the Original Lender and all of their present and former parents, subsidiaries, affiliates, divisions, shareholders, partners, members, directors, officers, managers, employees, agents, servants, attorneys, accountants, advisors, and servicers; and each of their respective predecessors, successors, and assigns, and each of them, in all capacities, including individually (collectively, the **"Releasees"**), from and waive any and all actions, suits, judgments, executions, claims, counterclaims, offsets, demands, debts, liabilities, liens, damages, injuries, contracts, obligations, acts, agreements, costs and expenses (including attorneys' and expert witnesses' fees and costs), accounts, torts, causes of action, claims for relief, defenses, and equitable remedies of whatever kind or nature, whether known or unknown, suspected or unsuspected, contingent or fixed, that any of the Releasors have or may have, or that may hereafter be asserted or accrue against, any of the Releasees, including those (i) out of, related to, incidental to, appertaining to, in connection with, or emanating from the Recitals, this Agreement, the Loan, the Existing Loan Documents, the Collateral, the Existing Designated Events of Default, or any remedies that the Lender has exercised under or with respect to the Existing Loan Documents on or before the Effective Date or existing as of the Effective Date; and (ii) for the avoidance and recovery of fraudulent transfers or preferences or for equitable subordination arising out of, related to, incidental to, appertaining to, in connection with, or emanating from any of the foregoing (collectively, the **"Claims"**; and the release provided by this Section 5.1 (Release of Borrower Parties' Claims), the **"Release"**).

5.2. <u>Release Includes Unknown Claims</u>.

5.2.1. The Release applies to all the Claims that any of the Releasors have or may have, or that may hereafter arise in favor of any of them as a result of acts or omissions occurring before the Effective Date, whether or not known or suspected by the Releasors. The Releasors expressly acknowledge that although ordinarily a general release does not extend to claims that the releasing party does not know or suspect to exist in its favor, which if known by that party must have materially affected the settlement with the party released, each

*Summitridge Forbearance Agreement*

Borrower Party has carefully considered and taken into account in determining to enter into this Agreement, including the Release, the possible existence of those unknown losses or claims. Without limiting the generality of the foregoing, the Borrower, on behalf of himself and the other Releasors, expressly waive, with respect to the Claims, any and all rights conferred upon any of them by any statute or rule of law that provides that a release does not extend to claims that the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by that claimant must have materially affected its settlement with the released party, including under California Civil Code section 1542 and other similar state laws, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

5.2.2.  In connection with that waiver and relinquishment, the Borrower and the other Releasors, acknowledge that they are aware that they or their respective attorneys or agents may hereafter discover facts in addition to or different from those that they now know or believe to exist with respect to the Claims, but that it is their intention hereby fully, finally, and forever to settle and release all the Claims, known or unknown, suspected or unsuspected, that now exist or may exist hereafter between any of the Releasors and any of the Releasees, except as is otherwise expressly provided in the Release. The Release will be and remain in effect as a full and complete release notwithstanding the discovery or existence of any of those additional or different facts.

## 6.   REPRESENTATIONS AND WARRANTIES.

6.1.   Representations Themselves. As of the Effective Date, the Borrower represents and warrants to the Lender, and in entering into this Agreement, the Lender is relying thereon, as follows:

6.1.1.  Enforceable Obligations. When signed and delivered by the Borrower, this Agreement will be, and the Existing Loan Documents will remain, the legal, valid, and binding obligations of the Borrower enforceable against him in accordance with their respective terms, except as that enforcement may be limited by bankruptcy, insolvency, or other similar laws affecting creditors' rights generally and by general equitable principles.

6.1.2.  Non-Contravention. The signing and delivery of this Agreement and the full and complete performance by the Borrower of this Agreement and the Existing Loan Documents (collectively, the **"Continuing Loan Documents"**), and any acts or deliveries required hereby or thereby, does and will not contravene, constitute, or result in a default or breach under any law, regulation, order, or contractual restriction binding on or affecting the Borrower.

6.1.3.  Recitals. The Recitals are true and correct in every respect.

*Summitridge Forbearance Agreement*

6.1.4. <u>Sufficient Data and Advice</u>. The Borrower has received sufficient data and legal and other advice from attorneys, experts, and other advisors of its respective own choice independent of the Lender with respect to the advisability of entering into this Agreement, including the Release, so that it is able to exercise his respective judgment intelligently in deciding whether to enter into this Agreement, and, prior to their execution hereof, their respective attorneys and those experts and other advisors reviewed this Agreement and explained the full legal, financial, and other significance hereof to them.

6.1.5. <u>Sufficient Investigation; No Duress</u>. The Borrower and its respective attorneys, experts, and other advisors have made that investigation of the facts pertaining to this Agreement and all the matters relating hereto as they deem necessary. This Agreement has been carefully read and are freely signed without duress, and the contents hereof and thereof are known and understood, by the Borrower. The decision of the Borrower to execute this Agreement is not predicated on or influenced by any declarations, representations, or warranties of the Lender or other persons made on behalf of the Lender other than as expressly set forth in this Agreement.

6.1.6. <u>Authorized Signors</u>. Each person executing this Agreement in a representative capacity is empowered to do so by all necessary action.

6.1.7. <u>Sole Owner of Claims</u>. The Borrower is the sole and lawful owner of all right, title, and interest in, to, and in respect of the Claims and other matters that it is releasing hereby, and has not heretofore assigned or transferred, or purported to assign or transfer, in whole or in part, to any entity any of the Claims or other matters released hereby, or any interest therein.

6.1.8. <u>Finality Intended</u>. The Borrower intends that (i) this Agreement, including the Release, be final and binding between the Parties; and (ii) the Lender may expressly rely on the finality of this Agreement as a substantial, material factor inducing the Lender's execution of this Agreement.

6.2. <u>Cumulative Representations and Survival Thereof</u>. The representations, warranties, covenants, agreements, terms, and conditions set forth in this Agreement (i) are cumulative and in addition to any and all other representations, warranties, covenants, agreements, terms, and conditions that the Borrower Parties have given under the Existing Loan Documents; and (ii) will survive the execution of this Agreement.

## 7. EFFECTIVENESS.

7.1. <u>Conditions Precedent</u>. Subject to Section 7.2 (Deadline for Effective Date) below, this Agreement will become effective, if at all, on the date when all of the following conditions precedent to the effectiveness hereof (collectively, the **"Conditions Precedent"**) have occurred to Lender's satisfaction or been waived by the Lender, which satisfaction (including all necessary approvals of the Lender in connection therewith) and waivers, if any, will be evidenced by the Lender's delivery of the Lender's duly signed counterpart of this Agreement to the Borrower (the date on which this Agreement becomes effective, if at all, the **"Effective Date"**):

*Summitridge Forbearance Agreement*

7.1.1.  Lender has received the payment referenced in Section 4.3.1(1) above in good funds;

7.1.2.  The Borrower has duly signed and delivered to the Lender a duplicate original counterpart hereof; and

7.1.3.  The Lender has duly signed and delivered to the Borrower a duplicate original counterpart hereof.

7.2.    Deadline for Effective Date. This Agreement will be null and void if each of the Conditions Precedent has not occurred or been waived as provided in Section 7.1 (Conditions Precedent) above by the close of business on November 21, 2019, or that later date set by the Lender in its discretion.

**8.    FORBEARANCE EVENTS OF DEFAULTS.** Any one or more of the following shall constitute a **"Forbearance Event of Default"** under this Agreement:

8.1.    The Borrower defaults under, fails to comply with, or breaches any term, covenant, or agreement on his, her, or its part, as the case may be, to be performed or complied with under this Agreement;

8.2.    (a) Borrower makes a general assignment or general arrangement for the benefit of creditors; (b) a petition for adjudication of bankruptcy or for reorganization or rearrangement is filed by or against Borrower; (iii) a trustee or receiver is appointed to take possession of substantially all of Borrower's assets; or (iv) substantially all of Borrower's assets are subjected to attachment, execution or other judicial seizure which is not discharged within thirty (30) days;

8.3.    Any representation or warranty of the Borrower made in this Agreement or pursuant hereto proves to be untrue in any material respect as of the date of the making thereof; and

8.4.    If that term is defined thereunder, an Event of Default or a Forbearance Event of Default occurs under any Continuing Loan Document; or, if not so defined, a breach by the Borrower under any Existing Loan Document occurs, in each case (i) after giving effect to any modification thereof made by this Agreement; and (ii) beyond the period, if any, provided for the cure thereof therein; provided, however, that the continuance of the Existing Designated Events of Default will not constitute a Forbearance Event of Default under this Agreement. (For the avoidance of doubt, this Agreement is a Related Document and, hence, the occurrence of a Forbearance Event of Default will constitute an Event of Default under, or breach of or default under, the Existing Loan Documents.)

**9.    REMEDIES ON FORBEARANCE EVENT OF DEFAULT.**

9.1.    Exercise of Remedies. If there is a Forbearance Event of Default under this Agreement, (i) the Forbearance Termination Date will automatically occur, the

*Summitridge Forbearance Agreement*

Forbearance Period will automatically end, and the Forbearance will automatically terminate; (ii) all amounts due by the Borrower under the Continuing Loan Documents will be immediately payable in full to the Lender; and (iii) the Lender will immediately be entitled, without further notice to the Borrower, to proceed to enforce the Continuing Loan Documents with respect to the Borrower Indebtedness and the Collateral, and to exercise all rights and remedies available to it under applicable law and the Continuing Loan Documents to collect the Borrower Indebtedness and to realize on the Collateral, including to commence (A) civil actions against the Borrower to enforce the Continuing Loan Documents made by the Borrower; and; and (B) judicial or non-judicial foreclosure proceedings, including collections and dispositions under Division 9 of the Commercial Code, as to the Collateral; and (iv) the Borrower Parties waive any right they may have to object to the appointment of a receiver and consent to the appointment of a receiver over the Collateral (all of the foregoing, together with all Existing Remedies, collectively, the **"Remedies"**).

    9.2. <u>Remedies Cumulative</u>. The Remedies are cumulative and not exclusive. Any waiver, permit, consent, or approval of any kind by the Lender of any Forbearance Event of Default or other breach or default hereunder, of any Event of Default or other breach or default under any Continuing Loan Document, or waiver of any provisions or conditions hereof or thereof, must be in writing and shall be effective only to the extent set forth in writing.

  **10.**  **MISCELLANEOUS PROVISIONS.**

    10.1. <u>Not a Novation</u>. This Agreement is not a novation, nor, except as expressly and specifically set forth herein, is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers, or rights set forth in the Existing Loan Documents.

    10.2. <u>Merger and Integration</u>. This Agreement (i) integrates all the terms and conditions mentioned herein or therein with respect to the Forbearance and the other matters related to the Existing Designated Events of Default set forth herein; (ii) constitutes the entire agreement of the Parties with respect to those matters; (iii) is intended by the Parties as the final expression of their agreement with respect to the terms and conditions set forth herein and therein, and as the complete and exclusive statement of the terms agreed to by them in that respect; and (iv) supersedes all prior oral negotiations and prior writings, agreements, and understandings between the Parties with respect to those matters; provided, however, that, except as expressly provided in this Agreement, this Agreement does not supersede or amend any of the Existing Loan Documents. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by the Lender with respect to the subject matter hereof except as specifically set forth in or provided by this Agreement.

    10.3. <u>Reservation of Rights</u>. The Lender reserves all its rights and remedies with respect the Loan, the Existing Loan Documents, the Continuing Loan Documents, the Collateral, the Existing Designated Events of Default, any Remedies, the Borrower Indebtedness, and the Borrower that are not addressed by this Agreement.

    10.4. <u>Amendment and Waiver</u>. Neither this Agreement nor any provision hereof may be amended, modified, or supplemented except by a writing signed by the Parties to

*Summitridge Forbearance Agreement*

be charged thereby. No consent or waiver of the Lender with respect to this Agreement will be effective except by a writing signed by the Lender, and then that waiver or consent will be effective only in the specific instance and for the specific purpose for which given.

10.5.  Failure or Indulgence Not Waiver. No failure or delay on the part of the Lender in the exercise of any right, power, or privilege under this Agreement or applicable law will operate as a waiver thereof, and no single or partial exercise of any of those powers, rights, or privileges will preclude a further exercise of any of those rights, powers, or privileges or any other right, power, or privilege.

10.6.  No Further Commitment to Forbear. The Borrower acknowledges that the Lender has not agreed and has no obligation to extend the Forbearance Period or grant any further forbearance at the expiry thereof.

10.7.  Successors and Assigns. This Agreement is binding upon and will inure to the benefit of the respective successors and assigns of the Parties, except that the Borrower's rights hereunder are not assignable and the Borrower may not delegate its respective obligations hereunder except as is expressly provided herein or therein.

10.8.  Rights of Third Parties. Nothing contained in this Agreement is intended or is to be construed as giving any entity other than the Parties and their respective successors and assigns any right, power, privilege, remedy, or claim under or in respect of this Agreement except as is expressly provided herein or therein.

10.9.  Separability and Savings Clause. Each provision of this Agreement, whether or not contained in separate paragraphs or sections, is to be considered to be separable. If, for any reason, any of those provisions, or any part thereof, are determined to be invalid, unenforceable, or contrary to any existing or future applicable law or judicial ruling, that invalidity is not to impair the operation of or affect those provisions of this Agreement that are valid. If that event occurs, this Agreement is to be construed and enforced in all respects as if the invalid or unenforceable provision or provisions had been omitted from the original hereof or thereof.

10.10.  Governing Law. This Agreement is to be governed by and construed in accordance with the laws of the State of California without regard to its conflicts of law provisions.

10.11.  Mutual Contribution of Language. This Agreement is the product of the negotiation of the Parties and have been drafted on the basis of their mutual contributions of language. It is not to be construed against either Party as being the drafter or causing the drafting hereof, or strictly for or against either Party but, rather, are to be neutrally construed as a whole according to its fair meaning.

10.12.  Time. Time is of the essence under this Agreement. All deadlines and time periods provided for hereunder are ABSOLUTE AND FINAL.

*Summitridge Forbearance Agreement*

10.13. Further Assurances. The Parties shall execute and deliver those other instruments, provide that other information, and take those other actions that any Party may reasonably request of ant other Party in connection with the transactions contemplated hereby, including the delivery of any notice or other documents or instruments to any entity that may be required or be desirable in connection with this Agreement.

10.14. Terms Contractual. The terms of this Agreement are contractual and not a mere recital.

10.15. Execution; Counterparts. This Agreement may be executed and initialed by signatures and initials transmitted by facsimile or other electronic means with original signatures and initials to be provided thereafter as soon as is practicable in two or more counterparts, all of which, whether facsimile, other electronic transmittal, or original, are deemed an original, but all of which together will constitute one and the same document; provided, however, that the failure to so to provide any of those originals will not invalidate this Agreement. For all purposes, including recording, filing, and delivery of this Agreement, duplicate unsigned and unacknowledged pages of any counterparts may be discarded and the remaining pages assembled as one document.

[Signatures on Following Page]

*Summitridge Forbearance Agreement*

## SIGNATURES

**WHEREFORE,** the Parties are signing this Agreement as of the date first written above.

THE LENDER:

Civic Holdings III Trust, by Fay Servicing, LLC, its attorney in fact

By: _____

Its: _____

THE BORROWER:

Summitridge Venture Group, LLC

_____
By:   Vikram Srinivasam

Its:  Managing Member

*Summitridge Forbearance Agreement*

CIVIC APP PAGE NO. 192

# EXHIBIT H

CIVIC APP PAGE NO. 193



PAGE 1 OF 2

Bank of America
P.O. Box 15284
Wilmington, DE 19850

BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY PA6-580-04-05
SCRANTON, PA 18507

VIKRAM SRINIVASAN
45752 BRIDGEPORT DR
FREMONT CA 94539-6850

DATE: 11/15/19
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: XXXXXXXX6661

---

THE FOLLOWING WIRE WAS CREDITED TODAY: [redacted]

[redacted]

---

THE FOLLOWING WIRE WAS DEBITED TODAY: [redacted]

[redacted]

---

THE FOLLOWING WIRE WAS DEBITED TODAY: [redacted]

[redacted]

---

THE FOLLOWING WIRE WAS DEBITED TODAY: [redacted]

[redacted]

---





BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY        PA6-580-04-05
SCRANTON, PA        18507

P.O. Box 15284
Wilmington, DE 19850

VIKRAM SRINIVASAN
45752 BRIDGEPORT DR
FREMONT CA 94539-6850

DATE: 11/15/19
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: XXXXXXXX6661

THE FOLLOWING WIRE WAS DEBITED TODAY:

THE FOLLOWING WIRE WAS DEBITED TODAY:                    USD AMOUNT $250,000.00

TRANSACTION REF:      2019111500523093      SERVICE REF: 017427
RELATED REF:          280762480             IMAD: 20191115B6B7HU3R017427
ORIGINATOR:           VIKRAM SRINIVASAN     ID: XXXXXXXX6661
INSTRUCTING BANK:     CONSUMER              ID: OLBS
BENEFICIARY:          FAY SERVICING         ID: 07241022099
BENEFICIARY'S BANK:   FIFTH THIRD BANK      ID: 042000314

PAYMENT DETAIL:       1666 SUMMITRIDGE DR BEVERLY HILLS

# EXHIBIT I

CIVIC APP PAGE NO. 196

**From:** Thomas French <tfrench@hmcassets.com>
**Sent:** Thursday, January 23, 2020 2:34:26 PM
**To:** Vikram Srinivasan <vikram.srinivasan@hotmail.com>
**Cc:** FCGroup <fcgroup@hmcassets.com>
**Subject:** 1666 Summitridge Drive, Beverly Hills, CA

Hello Vikram,

The borrower has been in default of the loan that was secured by the above referenced property since March 1,2019.  The borrower has been in default of the Forbearance Agreement for the above referenced property since November 26, 2019.

Despite repeated promises and representations by the borrower to cure the outstanding defaults, borrower has failed to do so.

Accordingly, the property was sold on December 4, 2019 at a non-judicial foreclosure sale under the power granted to the trustee under the applicable deed of trust.  Pursuant to the foreclosure sale, the property reverted to the lender.

The foreclosure sale is final and will not be rescinded.  The lender will effect an orderly disposition of the property.

The lender reserves all rights, including but not limited to enforcement of the outstanding guaranty in the event of a deficiency.

Best Regards,

Tom French

HMC Assets

2015 Manhattan Beach Blvd, Ste 200

Redondo Beach, CA 90278

T. 310-640-3070 x2676



CONFIDENTIALITY NOTICE: This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, you may NOT use, disclose, copy or disseminate this information. Please contact the sender by reply e-mail immediately and destroy all copies of the original message, including all attachments. Your cooperation is greatly appreciated.

---------- Forwarded message ---------
From: **David Poitras** <dpoitras@wedgewood-inc.com>
Date: Thu, Dec 5, 2019 at 10:36 AM
Subject: RE: Summitridge Forbearance
To: Vinod Nichani <vinod@nichanilawfirm.com>
Cc: Amelia Valenzuela <avalenzuela@wedgewood-inc.com>, Thomas French <tfrench@hmcassets.com>, Ann Reed <AR@hmcassets.com>, FCGroup <fcgroup@hmcassets.com>, Barry Smith <bs@hmcassets.com>, Joanne O'Sullivan <joanne@nichanilawfirm.com>

Mr. Nichani,

For the avoidance of doubt, the **lender must actually receive** the $402,500 on or before December 6, 2019.  Not that the funds are available, en route, in the mail . . . funds must actually be received by the lender in order for there to be any further discussion.

In addition, the motion to dismiss should be filed on an emergency basis, and must request that if the court will not hear the motion on an emergency basis, at least shortened time.  Please send me a conformed copy of the motion when filed.

Thank you,


David M. Poitras
Deputy General Counsel
WEDGEWOOD
2015 Manhattan Beach Boulevard, Suite 100
Redondo Beach, California  90278

Office:  310.640.3070  Ext. 2833
Mobile: 310.720.1918
E-Fax:  310.469.0182
dpoitras@wedgewood-inc.com

**From:** Vinod Nichani <vinod@nichanilawfirm.com>
**Sent:** Wednesday, December 04, 2019 4:02 PM
**To:** David Poitras <dpoitras@wedgewood-inc.com>
**Cc:** Amelia Valenzuela <avalenzuela@wedgewood-inc.com>; Thomas French
<tfrench@hmcassets.com>; Ann Reed <AR@hmcassets.com>; FCGroup <fcgroup@hmcassets.com>;
Barry Smith <bs@hmcassets.com>; Joanne O'Sullivan <joanne@nichanilawfirm.com>
**Subject:** Re: Summitridge Forbearance

Good Afternoon,
My client has agreed to forward the funds by the required date. Further, my office will prepare and file
the required motion to dismiss on or before December 6th.

Vinod Nichani
Principal

408.800.6174 Office
408.290.9802 Direct Fax
vinod@nichanilawfirm.com

**NICHANI LAW FIRM**
111 N. Market Street, Suite 300
San Jose, California 95113
www.nichanilawfirm.com

The information contained in this email may be confidential and/or legally privileged. It has been sent
for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient,
you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or
copying of this communication, or any of its contents, is strictly prohibited. If you have received this
communication in error, please contact the sender by reply email or by phone and destroy all copies of
the original message. Thank you for your assistance and kind consideration.

 ---------- Forwarded message ---------
From: **David Poitras** <dpoitras@wedgewood-inc.com>
Date: Wed, Dec 4, 2019 at 3:58 PM
Subject: RE: Summitridge Forbearance
To: Vinod Nichani <vinod@nichanilawfirm.com>

Mr. Nichani,

We did not receive any notice that the property owner Summitridge Venture Group, LLC filed any bankruptcy case.

If you are referring to the automatic stay in place in your client's personal bankruptcy case, that stay does not apply to any FCL sale of the property, as your client does not have any ownership interest in the real property.  Your client only has a membership interest in the LLC that owns the property.  The real property itself is not property of the individual's bankruptcy estate, only the membership interest is property of the individual estate, and a stay in such individual case does not stay acts against real property titled in a third party, in this case Summitridge Venture Group, LLC.

Please let us know how your client intends to proceed.

David M. Poitras
Deputy General Counsel

WEDGEWOOD

2015 Manhattan Beach Boulevard, Suite 100
Redondo Beach, California  90278
Office:  310.640.3070  Ext. 2833
Mobile: 310.720.1918
E-Fax:  310.469.0182
dpoitras@wedgewood-inc.com

**From:** Vinod Nichani <vinod@nichanilawfirm.com>
**Sent:** Wednesday, December 04, 2019 3:41 PM
**To:** David Poitras <dpoitras@wedgewood-inc.com>
**Subject:** Re: Summitridge Forbearance

Mr. Poitras,
I will share your email with my client. Your client continued with the foreclosure with the bankruptcy automatic stay in place?

Vinod Nichani
Principal

408.800.6174 Office
408.290.9802 Direct Fax
vinod@nichanilawfirm.com

**NICHANI LAW FIRM**
111 N. Market Street, Suite 300

San Jose, California 95113
www.nichanilawfirm.com


 The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email or by phone and destroy all copies of the original message. Thank you for your assistance and kind consideration.


On Wed, Dec 4, 2019 at 3:36 PM David Poitras <dpoitras@wedgewood-inc.com> wrote:
Mr. Nichani,

I am out of the office today at a conference.  Accordingly, I am copying my client representatives.

The client advises that the required funds were not received this morning and the FCL sale went forward today and the property reverted to the beneficiary.

Notwithstanding, if the balance of the funds ($402,500) is received and a motion to dismiss the bankruptcy case is filed on or before December 6, 2019, the lender will forbear from recording the TDUS to allow for further discussion.

Please advise how your client intends to proceed.  Please also advise if you are now representing the property owner Summitridge Venture Group, LLC, or if the entity is still being represented by Mr. Wiggs.


David M. Poitras
Deputy General Counsel
WEDGEWOOD

2015 Manhattan Beach Boulevard, Suite 100
Redondo Beach, California  90278
Office:  310.640.3070  Ext. 2833
Mobile: 310.720.1918
E-Fax:  310.469.0182
dpoitras@wedgewood-inc.com


**From:** Vinod Nichani <vinod@nichanilawfirm.com>
**Sent:** Wednesday, December 04, 2019 2:01 PM
**To:** David Poitras <dpoitras@wedgewood-inc.com>
**Subject:** Re: Summitridge Forbearance

Good Afternoon Counsel,

Thank you for your email. My client was informed that the property was foreclosed on today. Is that correct?

Vinod Nichani
Principal

408.800.6174 Office
408.290.9802 Direct Fax
vinod@nichanilawfirm.com

**NICHANI LAW FIRM**
111 N. Market Street, Suite 300
San Jose, California 95113
www.nichanilawfirm.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email or by phone and destroy all copies of the original message. Thank you for your assistance and kind consideration.

On Tue, Dec 3, 2019 at 6:08 PM David Poitras <dpoitras@wedgewood-inc.com> wrote:
Mr. Nichani,

1.    If the funds are available as you say, they could be wired tomorrow morning – contrary to your assertion, banks/wires take very little time if the money is available and a proper instruction is made.  You can wire the funds to the servicer and the servicer will hold the funds in suspense until such time as the bankruptcy case is dismissed.

2.    Likewise, under the circumstances, I am relatively certain that Judge Lafferty will dismiss the case on an emergency basis upon being presented with an emergency motion by the debtor requesting such relief.

Accordingly, if the funds are actually received by the lender on or before 11:00am on Wednesday December 4, 2019 AND an emergency motion to dismiss the chapter 11 case is filed with the bankruptcy court on or before Noon on December 5, 2019, the lender will forbear from continuing with its enforcement remedies until the later of December 6, 2019, or the date of entry of an order dismissing the bankruptcy case, but in no event later than December 13, 2019.

This proposal is last and best.


David M. Poitras
Deputy General Counsel

**WEDGEWOOD**

2015 Manhattan Beach Boulevard, Suite 100
Redondo Beach, California  90278
Office:  310.640.3070  Ext. 2833
Mobile: 310.720.1918
E-Fax:   310.469.0182
dpoitras@wedgewood-inc.com



**From:** Vinod Nichani <vinod@nichanilawfirm.com>
**Sent:** Tuesday, December 03, 2019 1:56 PM
**To:** David Poitras <dpoitras@wedgewood-inc.com>
**Subject:** Re: Summitridge Forbearance

Good Afternoon,
My client has informed me that the total funds of  $515,323.87 are available, but can be wired to your
client no later than Thursday (December 5, 2019).  The bank takes time. The bankruptcy will be
dismissed if the debtor does not file the balance of the schedules within 14 days of filing. Procedurally, it
will be difficult to file a Motion to Dismiss so early in the proceeding. Further, if payment is made
within the  14 days, we may need a court order to authorize the payment while the bankruptcy is
pending.
Would your client be amenable to my office holding the funds in a trust account, with proof provided to
you pending the dismissal. Upon dismissal the funds will be wired to your client? This way your client
can rest assured the funds are available and will be wired immediately upon dismissal of the bankruptcy.
The deadline to file the balance of the bankruptcy schedules is 12-16..the order by the court will be
entered a day or two after. This is barring any other motions by creditors.



Vinod Nichani
Principal

408.800.6174 Office
408.290.9802 Direct Fax
vinod@nichanilawfirm.com

**NICHANI LAW FIRM**
111 N. Market Street, Suite 300
San Jose, California 95113

www.nichanilawfirm.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email or by phone and destroy all copies of the original message. Thank you for your assistance and kind consideration.

On Tue, Dec 3, 2019 at 12:02 PM David Poitras <dpoitras@wedgewood-inc.com> wrote:
Mr. Nichani,

The forbearance agreement you reference below required that the LLC remit $462,823.87 to the lender on or before November 26, 2019.  That payment was not timely made.  Accordingly, there is no agreement to forbear in place at this time.

In addition, the December payment in the amount of $52,500 is now due.

If the lender receives the amounts due of $515,323.87 by **5:00pm today** along with a dismissal of the pending chapter 11 case, the lender will agree to forbear on the terms and conditions set forth in the prior forbearance agreement.

For the avoidance of doubt, there is no current agreement to forbear, and the lender will delay its enforcement remedies solely on the condition that the total amount set forth above is received by 5:00pm today.

The foregoing is not a complete recitation of the lender's rights and remedies, each of which is specifically reserved.


David M. Poitras
Deputy General Counsel

WEDGEWOOD

2015 Manhattan Beach Boulevard, Suite 100
Redondo Beach, California  90278
Office:  310.640.3070  Ext. 2833
Mobile: 310.720.1918
E-Fax:   310.469.0182
dpoitras@wedgewood-inc.com

**From:** Vinod Nichani <vinod@nichanilawfirm.com>
**Sent:** Tuesday, December 03, 2019 11:24 AM
**To:** David Poitras <dpoitras@wedgewood-inc.com>
**Subject:** Summitridge Forbearance

Dear Counsel,

My office has been retained to represent Mr. Srinivasan, the managing and majority member of Summitridge Venter Group, the owner of 1666 Summitridge Drive, Beverly Hills.

As you are aware, a bankruptcy was filed yesterday to prevent the foreclosure of said property. I am new to this matter, but am of the understanding there is an outstanding payment due to your client based on a forebearance agreement? My client has the funds available to make the final payment and resolve any outstanding debt issues. What is the best way to resolve this matter?

Vinod
--
Vinod Nichani

Principal


408.800.6174 Office

408.290.9802 Direct Fax

vinod@nichanilawfirm.com


NICHANI LAW FIRM

111 N. Market Street, Suite 300

San Jose, California 95113

www.nichanilawfirm.com

# EXHIBIT J

CIVIC APP PAGE NO. 206



PAGE 1 OF 1

BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY        PA6-580-04-05
SCRANTON, PA         18507

VIKRAM SRINIVASAN
45752 BRIDGEPORT DR
FREMONT CA 94539-6850

DATE: 12/04/19
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: XXXXXXXX6661

---

THE FOLLOWING WIRE WAS CREDITED TODAY:

---

THE FOLLOWING WIRE WAS DEBITED TODAY:

---

THE FOLLOWING WIRE WAS DEBITED TODAY:                USD AMOUNT $112,823.87

TRANSACTION REF:     2019120400543988     SERVICE REF: 010393
RELATED REF:         282517252            IMAD: 20191204B6B7HU2R010393
ORIGINATOR:          VIKRAM SRINIVASAN    ID: XXXXXXXX6661
INSTRUCTING BANK:    CONSUMER             ID: OLBS
BENEFICIARY:         FAY SERVICING        ID: 07241022099
BENEFICIARY'S BANK:  FIFTH THIRD BANK, NATIONAL   ID: 042000314

PAYMENT DETAIL:      1666 SUMMITRIDGE DR BEVERLY HILLS

---

# EXHIBIT K

CIVIC APP PAGE NO. 208

 

**This page is part of your document - DO NOT DISCARD**

## 20191417929





**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**12/19/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 93.00 |



**L E A D S H E E T**



201912190210004

00017635719



010378529

**SEQ:
01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E441968

91214068-JW

RECORDING REQUESTED BY:
**ENTRA DEFAULT SOLUTIONS, LLC**

AND WHEN RECORDED TO:
**CIVIC HOLDINGS III TRUST**
**c/o FAY SERVICING LLC**
**425 S. FINANCIAL PLACE, SUITE 2000**
**CHICAGO, IL 60605**
**Forward Tax Statements to**
**the address given above**

---

<div align="right">SPACE ABOVE LINE FOR RECORDER'S USE</div>

TS #: **2019-04632**                        Order #: **91214068**
A.P.N.: **4355-009-012**

# TRUSTEE'S DEED UPON SALE

A.P.N.: **4355-009-012**                  Transfer Tax: **$0.00**
THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE,
SECTION 480.3
The Grantee Herein was the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was **$4,356,406.73**
The Amount Paid by the Grantee was **$2,380,000.00**
Said Property is in the City of **BEVERLY HILLS**, County of **Los Angeles**

**ENTRA DEFAULT SOLUTIONS, LLC**, as Trustee, (whereas so designated in the Deed of Trust hereunder more
particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

## CIVIC HOLDINGS III TRUST

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed
to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Los
Angeles**, State of California, described as follows:

THAT PORTION OF LOT 5, OF TRACT NO. 7996, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 186, PAGES 4 THROUGH 7 INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF SAID LOT 5; THENCE ALONG THE SOUTHERLY LINE OF SAID LOT 5,
SOUTH 87° 16' 45" WEST 254.19 FEET TO THE EASTERLY LINE OF SUMMITRIDGE DRIVE; THENCE ALONG SAID LAST
MENTIONED EASTERLY LINE NORTH 4° 27' 36" WEST 3.93 FEET TO THE BEGINNING OF A 157.67 FOOT RADIUS
TANGENT CURVE CONCAVE TO THE SOUTHWEST; THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE
THROUGH A CENTRAL ANGLE OF 46° 34' 30" DISTANCE OF 128.17 FEET; THENCE NORTH 63° 8' 41" EAST 346.05 FEET TO
AN ANGLE POINT IN THE EASTERLY LINE OF SAID LOT 5; THENCE ALONG SAID LAST MENTIONED EASTERLY LINE
SOUTH 0° 46' 53" EAST 258.53 FEET TO THE POINT OF BEGINNING.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by
**SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY** as
Trustor, dated **9/11/2018** and recorded on **9/25/2018**, instrument number **20180977267**, Book , Page of Official
Records in the office of the Recorder of **Los Angeles**, California under the authority and powers vested in the

# TRUSTEE'S DEED UPON SALE

TS #: **2019-04632**
Order #: **91214068**

Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **12/4/2019**. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$2,380,000.00**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **ENTRA DEFAULT SOLUTIONS, LLC**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date: **12/4/2019**

<div align="center">

**ENTRA DEFAULT SOLUTIONS, LLC**

By: _Marisa Vidrine_

**Marisa Vidrine, Foreclosure Specialist**

</div>

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF Contra Costa

On 12/4/2019 before me, Katie Milnes  Notary Public, Personally appeared, Marisa Vidrine, Foreclosure Specialist who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Name                                         (Seal)

> **KATIE MILNES**
> **Notary Public - California**
> **Contra Costa County**
> **Commission # 2189413**
> **My Comm. Expires Apr 29, 2021**

# EXHIBIT L

CIVIC APP PAGE NO. 212




**This page is part of your document - DO NOT DISCARD**

# 20200005464





**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/03/20 AT 08:00AM**

**Pages:
0003**

| | |
|---|---|
| FEES: | 30.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 105.00 |



**L E A D S H E E T**



202001033350003

**00017696623**



010411324

**SEQ:
01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E269820

0888003889 QSB

Recording requested by and
When recorded, please mail
Tax Statements to:
Civic Real Estate Holdings III, LLC
2015 Manhattan Beach Blvd #200
Redondo Beach, CA 90278
Prepared by:
Paula Chastain
Civic Real Estate Holdings III, LLC
2015 Manhattan Beach Blvd #200
Redondo Beach, CA 90278
Reference ID: 0888003889

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# QUIT CLAIM DEED

*The grantors and the grantees in this conveyance are comprised of the same parties who continue to hold the same proportionate interest in the property, R & T 11925(d). The undersigned Grantor declares Documentary Transfer Tax is $0.00, computed on full value of interest or property conveyed.*

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**This Quit Claim Deed** is made between, **Civic Holdings III Trust,** whose post office address is 2015 Manhattan Beach Blvd., #200, Redondo Beach, CA 90278, (hereinafter, referred to as **Grantor**), and **Civic Real Estate Holdings III, LLC** whose post office address is 2015 Manhattan Beach Blvd., #200, Redondo Beach, CA 90278, (hereinafter, referred to as **Grantee**):

(Whenever used herein, the terms "Grantor" and "Grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

**Witnesseth**, that said Grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to said Grantor in hand paid by said Grantee, the receipt whereof is hereby acknowledged, does hereby remise, release, and quitclaim to the said Grantee, and Grantee's heirs and assigns forever, all the right, title, interest, claim, and demand which Grantor has in and to the following described land, situate, lying, and being in **Los Angeles County, CA** to-wit:

**Property Address:**     **1666 Summitridge Drive, Beverly Hills, CA 90210**
**APN:**                           **4355-009-012**

**As further described as follows:**

Quit Claim Deed/1666 Summitridge Drive, Beverly Hills, CA 90210

That portion of Lot 5, of Tract No. 7996, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 186, Pages 4 through 7 inclusive of Maps, in the office of the County Recorder of said county, described as follows:

Beginning at the Southeast corner of said Lot 5; thence along the Southerly line of said Lot 5, South 87' 16' 45" West 254.19 feet to the Easterly line of Summitridge Drive; thence along said last mentioned Easterly line North 4' 27' 36" West 3.93 feet to the beginning of a 157.67 foot radius tangent curve concave to the Southwest; thence Northwesterly along the arc of said curve through a central angle of 46' 34' 30" distance of 128.17 feet; thence North 63' 8' 41" East 346.05 feet to an angle point in the Easterly line of said Lot 5; thence along said last mentioned Easterly line South 0' 46' 53" East 258.53 feet to the point of beginning.

APN: 4355-009-012            1666 Summitridge Drive, Beverly Hills, CA 90210

Have and to hold, the same together with all and singular the appurtenances thereto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity, and claim whatsoever of Grantors, either in law or equity, for the use, benefit, and profit of the said Grantee forever.

IN WITNESS WHEREOF, Grantor and Grantee have hereunto set their hands and seal the day and year written.

Dated: 12|30|2019

Civic Holdings H Trust

By: _____
James A. Helfrich, Member

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of        California        ) ss
County of      Los Angeles      )

On 12/30/19 , before me, **Jacqueline O'Connor**, Notary Public, personally appeared **James A. Helfrich**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

JACQUELINE O'CONNOR
Notary Public - California
Los Angeles County
Commission # 2293552
My Comm. Expires Jun 17, 2023

Quit Claim Deed/1666 Summitridge Drive, Beverly Hills, CA 90210

# PROOF OF SERVICE

(Sec. 1013(a) C.C.P.)

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 3055 Wilshire Blvd., Suite 550, Los Angeles CA, 90010.

On **October 28, 2020**, I served the foregoing documents described as **"FIRST AMENDED COMPLAINT FOR (1) BREACH OF CONTRACT; (2) PROMISSORY ESTOPPEL; (3) NEGLIGENT MISREPRESENTATION; AND (4) WRONGFUL FORECLOSURE;"** on the interested parties in this action:

☒ by placing:
☐ the original
☒ a true copy thereof enclosed in sealed envelope with first class postage affixed thereto and addressed as follows:

| | |
|---|---|
| Amelia Valenzuela, Esq.,<br>2015 Manhattan Beach Boulevard,<br>Suite 100<br>Redondo Beach, California 90278<br>Office: 310.640.3070<br>Fax:  310-730-5967<br>avalenzuela@wedgewood-inc.com<br>Attorney for WEDGEWOOD, LLC,<br>solely as Administrator of the Civic<br>Holdings III Trust; and Civic Real<br>Estate Holdings, LLC | Todd Chvat, Esq.<br>WRIGHT, FINLAY 7 ZAK, LLP<br>4665 MacArthur Court, Suite 200,<br>Newport Beach, California 92660<br>Tel: 949-477-5050<br>tchvat@wrightlegal.net<br>Attorney for Fay Servicing, LLC |

☒ BY MAIL I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ <u>STATE</u> I declare under penalty of perjury that the foregoing is true and correct.

☐ BY FACSIMILE SERVICE:  I personally faxed the document(s) listed above to the fax number/s belonging to party being served.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **October 28, 2020**, in Los Angeles, CA.

Jessica Hurtado

–1–

# EXHIBIT 12

# EXHIBIT F

CIVIC APP PAGE NO. 218

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Santa Monica Courthouse<br>1725 Main Street, Santa Monica, CA 90401 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>12/11/2020<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ S. Hwang _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Vikram Srinivasan  et al | |
| DEFENDANT/RESPONDENT:<br>Fay Servicing, LLC, a Delaware Limited Liability Company et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>20SMCV00278 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Hearing on Motion to Expunge Lis Pendens) of 12/11/2020  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Santa Monica, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Amelia B. Valenzuela
Wedgewood Inc
2015 Manhattan Beach Blvd
Redondo Beach, CA  90278

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 12/11/2020

By:  S. Hwang _____
         Deputy Clerk

**CERTIFICATE OF MAILING**          CIVIC APP PAGE NO. 219

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Santa Monica Courthouse, Department N

**20SMCV00278**
**SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA**
**LIMITED LIABILITY COMPANY vs FAY SERVICING, LLC,**
**A DELAWARE LIMITED LIABILITY COMPANY, et al.**

December 11, 2020
9:00 AM

Judge: Honorable Craig D. Karlan
Judicial Assistant: S. Hwang
Courtroom Assistant: S. Mixon

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Josue Cristobal Guerrero (Telephonic)

For Defendant(s): Amelia B. Valenzuela (Telephonic)

**NATURE OF PROCEEDINGS:** Hearing on Motion to Expunge Lis Pendens

The matter is called for hearing.

The Court has read and considered all documents filed hereto. Having heard the arguments, the Court now rules as follows:

\*\*\* RULING \*\*\*

Defendants Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust, and Civic Real Estate Holdings, LLC's Motion to Expunge Lis Pendens is GRANTED. Defendants' alternative request for a requirement for Plaintiff to post bond is DENIED, as MOOT. Defendants' request for attorneys' fees and costs is DENIED.

However, this ruling is STAYED, pending confirmation from the Bankruptcy Court: (1) that the automatic stay does not apply to Summitridge Venture Group, LLC; or (2) if, in fact, the automatic stay does apply to Summitridge Venture Group, LLC, that it does not apply to this Motion to Expunge Lis Pendens; or (3) moving parties obtain relief from the automatic stay from the Bankruptcy Court.

Defendants Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust, and Civic Real Estate Holdings, LLC, to give notice.

REASONING

Defendants Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust, and Civic Real Estate Holdings, LLC ("Defendants") move to expunge the lis pendens recorded by

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Santa Monica Courthouse, Department N

**20SMCV00278**                                          December 11, 2020
**SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA**                    9:00 AM
**LIMITED LIABILITY COMPANY vs FAY SERVICING, LLC,**
**A DELAWARE LIMITED LIABILITY COMPANY, et al.**

Judge: Honorable Craig D. Karlan            CSR: None
Judicial Assistant: S. Hwang                ERM: None
Courtroom Assistant: S. Mixon               Deputy Sheriff: None

Plaintiff Summitridge Venture Group, LLC ("Plaintiff") against the residence at 1666 Summitridge Drive in Beverly Hills. Defendants argue the only causes of action that could potentially affect title to the property are those for quiet title and declaratory relief, as Plaintiff's other causes of action seek only monetary relief, and Plaintiff cannot meet its burden of proof to demonstrate a probability of success on either real property claim.

Code of Civil Procedure section 405.30 provides that a property owner may seek to remove an improperly recorded lis pendens by filing a motion to expunge based upon any of several statutory bases. (See Kirkeby v. Superior Court (2004) 33 Cal.4th 642, 647-648.) One basis for such a motion is where "the court finds that the pleading on which the notice is based does not contain a real property claim." (Code Civ. Proc., § 405.31.) Another basis is where "the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." (Code Civ. Proc., § 405.32.) The claimant, that is, the party opposing the motion to expunge, "shall have the burden of proof" to demonstrate "the probable validity of the real property claim." (Code Civ. Proc., §§ 405.30, 405.32.) "'Probable validity,' with respect to a real property claim, means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." (Code Civ. Proc., § 405.3.)

First, the Court notes this action came on for hearing on Defendants' demurrer to Plaintiff's complaint on October 1, 2020, and the Court sustained the demurrer to all causes of action. The Court specifically sustained demurrers to the quiet title and declaratory relief claims without leave to amend, thus removing these real property claims from the present action. Further, all other claims asserted by Plaintiff were found to lack merit as stated, which resulted in the Court sustaining the demurrer as to each of the other causes of action, with two additional claims removed as a result of the Court sustaining the demurrers without leave to amend; Plaintiff was granted the opportunity to amend the remaining claims. The Court found the complaint, in its initial form, did not contain a valid real property claim. Specifically, Plaintiff failed to identify the agreement which served as the basis for the alleged breach, Plaintiff stated it had not provided the payments which would constitute performance, Plaintiff failed to allege an excuse for nonperformance, Plaintiff did not specifically alleged fraud by any Defendant and the complaint did not make clear which parties may be liable to Plaintiff.

Code of Civil Procedure section 405.31 requires the Court to expunge the notice of pendency of action "if the court finds that the pleading on which the notice is based does not contain a real property claim," and the Second District Court of Appeal has specifically stated that the Court's determination as to whether a real property claim is being asserted requires the Court to "engage

<div align="center">Minute Order</div>                    Page 2 of 5

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Santa Monica Courthouse, Department N

**20SMCV00278**
**SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA**
**LIMITED LIABILITY COMPANY vs FAY SERVICING, LLC,**
**A DELAWARE LIMITED LIABILITY COMPANY, et al.**

December 11, 2020
9:00 AM

| | |
|---|---|
| Judge: Honorable Craig D. Karlan | CSR: None |
| Judicial Assistant: S. Hwang | ERM: None |
| Courtroom Assistant: S. Mixon | Deputy Sheriff: None |

in a demurrer-like analysis," albeit a "more limited analysis of whether the pleading states a real property claim." (Park 100 Investment Group II, LLC v. Ryan (2009) 180 Cal.App.4th 795, 808.) Such a "review involves only a review of the adequacy of the pleading." (Ibid.)

This motion first came on for hearing on October 21, 2020, and the Court was not convinced Plaintiff's pleading contained a real property claim. Even if the remaining claims could be amended successfully, it was unclear whether a wrongful foreclosure claim constituted a "real property" claim such that a lis pendens was proper. As such, the Court ordered the parties to file supplemental briefs as to this specific issue. On October 28, 2020, Plaintiff amended its complaint; the First Amended Complaint includes causes of action for breach of contract, promissory estoppel, negligent misrepresentation and wrongful foreclosure.

The initial issue the Court must consider is whether a wrongful foreclosure claim constitutes a real property claim; if it does not, the viability of the cause of action is essentially irrelevant to the present motion.

It is axiomatic that a wrongful foreclosure claim is a tort, and damages are measured as they are with other torts, but a party alleging wrongful foreclosure may be entitled to remedies other than simply monetary damages, such as unwinding of a sale of property. (See Sciarratta v. U.S. Bank National Association (2016) 247 Cal.App.4th 552, 567.) A "'[r]eal property claim' means the cause or causes of action in a pleading which would, if meritorious, affect [] title to, or the right to possession of, specific real property." (Code Civ. Proc., § 405.4.) It follows that a wrongful foreclosure claim is a real property claim where the plaintiff seeks rescission of the property sale, as Plaintiff does here. (See First Am. Compl., p. 19, lines 20-25.)

Plaintiff, however, has not sufficiently stated a claim for wrongful foreclosure in the First Amended Complaint. "The elements of a wrongful foreclosure cause of action are: (1) The trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." (Citrus El Dorado, LLC v. Chicago Title Co. (2019) 32 Cal.App.5th 943, 948, quotation marks and brackets omitted.)

Plaintiff alleges wrongful foreclosure due to Defendants' alleged breach of the terms set forth in the modified Forbearance Agreement dated December 3, 2019, Defendants' violations of 11

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

## Civil Division

### West District, Santa Monica Courthouse, Department N

**20SMCV00278**
**SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA**
**LIMITED LIABILITY COMPANY vs FAY SERVICING, LLC,**
**A DELAWARE LIMITED LIABILITY COMPANY, et al.**

December 11, 2020
9:00 AM

Judge: Honorable Craig D. Karlan
Judicial Assistant: S. Hwang
Courtroom Assistant: S. Mixon

CSR: None
ERM: None
Deputy Sheriff: None

---

U.S.C. § 362, and Defendants' conducting the sale without consideration of Plaintiff's credit bid. First, there are no facts in the First Amended Complaint that Plaintiff tendered the required amount to Defendants or filed a dismissal of Plaintiff's managing member Vikram Srinvisan's personal bankruptcy case such that Plaintiff complied with the terms of the forbearance agreement. Insofar as Plaintiff contends it was not required to tender the amount due because Defendants lacked a contractual basis to exercise the power of sale, the Court is not convinced, particularly because any modification was supposed to be in writing and there is no written agreement to forbear from conducting a sale.

Plaintiff also contends the sale was improper in that Srinvisan's personal bankruptcy action was still pending, but there are no facts in the First Amended Complaint that Srinvisan owned the property; instead, Summitridge Venture Group, LLC, owned the property (First Am. Compl. ¶ 12) such that Defendants would not have been precluded from proceeding with a sale. Finally, while Plaintiff alleges the sale was made without consideration of the amount paid by Plaintiff, such that Plaintiff would have been considered to have made a higher credit bid than other potential purchasers, there are simply no facts other than a conclusory statement that the sale was "calculated to chill the bidding or depress the prices offered at the trustee's sale as they made an invalid credit bid." (First Am. Compl. ¶ 96.) Here, the trier of fact would be unable to conclude the sale was improper in this regard where Plaintiff fails to provide specific facts to support such a conclusion. Thus, Plaintiff fails to sufficiently allege a claim for wrongful foreclosure.

The Court takes care to note that if Plaintiff successfully amends the pleading after the Court issues its ruling on the pending demurrer and sufficiently cures the deficiencies, Plaintiff may record another notice of pendency of action after seeking leave of court to do so. (Code Civ. Proc., § 405.36.) That is, the initial complaint and First Amended Complaint attempted to plead certain real property claims, but none of these claims have been pled successfully to date. Should Plaintiff successfully amend the wrongful foreclosure claim and subsequently move the Court for leave to record a notice of pending action, the Court will then consider whether Plaintiff's claims provide a proper basis for recording a notice of pending action. At this juncture, though, Defendants Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust, and Civic Real Estate Holdings, LLC's Motion to Expunge Lis Pendens is GRANTED. Defendants' alternative request for a requirement for Plaintiff to post bond is DENIED, as MOOT.

Defendants move for an award of attorney's fees and costs in the amount of $2,510.00 incurred in bringing this motion. Code of Civil Procedure section 405.38 states that "[t]he court shall direct that the party prevailing on" a motion to expunge lis pendens "be awarded the reasonable

Case: 20-51735    Doc# 16-8    Filed: 12/24/20    Entered: 12/24/20 10:46:28    Page 6 of 7
CIVIC APP PAGE NO. 223

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Santa Monica Courthouse, Department N

20SMCV00278                                        December 11, 2020
**SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA**                  9:00 AM
**LIMITED LIABILITY COMPANY vs FAY SERVICING, LLC,**
**A DELAWARE LIMITED LIABILITY COMPANY, et al.**

Judge: Honorable Craig D. Karlan          CSR: None
Judicial Assistant: S. Hwang              ERM: None
Courtroom Assistant: S. Mixon             Deputy Sheriff: None

attorney's fees and costs of making or opposing the motion unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust."

Here, the Court finds an award of attorney's fees and costs to not be proper as Plaintiff acted with substantial justification in asserting its complaint contains a real property claim. If Plaintiff can successfully amend its claim for wrongful foreclosure, it would seemingly have a valid real property claim, as such a claim may affect Plaintiff's title to, or the right to possession of, the real property at 1666 Summitridge Drive. The Court, however, declines to make a finding that the wrongful foreclosure claim will necessarily constitute a real property claim, as the claim has not been properly pled, but the Court nevertheless finds Plaintiff was justified in asserting its pleading contained a real property claim. Accordingly, Defendants' request for attorney's fees and costs is DENIED.

\*\*\* END OF RULING \*\*\*

Clerk is to give notice to moving party who shall give notice to all other relevant counsel.

Certificate of Mailing is attached.

Case: 20-51735   Doc# 16-8   Filed: 12/24/20   Entered: 12/24/20 10:46:28   Page 7 of
7
CIVIC APP PAGE NO. 224

**EXHIBIT 13**

WEDGEWOOD
Office of the General Counsel
DAVID M. POITRAS P.C. (SBN 141309)
dpoitras@wedgewood-inc.com
AMELIA VALENZUELA (SBN 320428)
avalenzuela@wedgewood-inc.com
2015 Manhattan Beach Blvd., Suite 100
Redondo Beach, CA 90278
Telephone:     (310) 640-3070
Facsimile:     (310) 640-3090

Attorneys for Moving Parties,
*WEDGEWOOD, LLC, solely as*
*Administrator*
*of the Civic Holdings III Trust; and*
*Civic Real*
*Estate Holdings III, LLC*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| In re: | Chapter  11 |
| | Case No. 20-51735 |
| VIKRAM SRINIVASAN, | |
| | CERTIFICATE OF SERVICE |
| Debtor(s)_____/ | |

     I, the undersigned, declare that I am employed in the County of Los Angeles.  I am over the age of 18 years and not a party to the within entitled action.  My business address is 2015 Manhattan Beach Blvd., Suite 100, Redondo Beach, CA 90278.

     On December 24, 2020, I served the within

**RELIEF FROM STAY COVER SHEET;**

**NOTICE OF HEARING ON WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III TRUST AND CIVIC REAL ESTATE HOLDINGS III, LLC'S MOTION FOR ORDER CONFIRMING NO STAY IS IN EFFECT OR, IN THE ALTERNATIVE, FOR STAY RELIEF, WITH *IN REM* AND PROSPECTIVE RELIEF;**

**WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC**

**HOLDINGS III TRUST AND CIVIC REAL ESTATE HOLDINGS III, LLC'S MOTION FOR ORDER CONFIRMING NO STAY IS IN EFFECT OR, IN THE ALTERNATIVE, FOR STAY RELIEF, WITH *IN REM* AND PROSPECTIVE RELIEF AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF;**

**DECLARATION OF KARISSA SHUTE IN SUPPORT OF WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III TRUST AND CIVIC REAL ESTATE HOLDINGS III, LLC'S MOTION FOR ORDER CONFIRMING NO STAY IS IN EFFECT OR, IN THE ALTERNATIVE, FOR STAY RELIEF, WITH *IN REM* AND PROSPECTIVE RELIEF**

by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Redondo Beach, California, to all parties entitled to receive regularly mailed notices, addressed as follows:

| **Summitridge Venture Group, LLC**<br>142 N. Milpitas Blvd., #301<br>Milpitas, CA 95035 | **Geoff Wiggs**<br>Law Offices of Geoff Wiggs<br>1900 S. Norfolk St. #350<br>San Mateo, CA 94403 |
|---|---|
| Josue Cristobal Guerrero<br>Edna Fok<br>GOMEZ & SIMONE, APLC<br>3055 Wilshire Blvd., Ste. 550<br>Los Angeles, CA 90010 | Todd Evan Chvat<br>WRIGHT FINLAY & ZAK, LLP<br>4665 MacArthur St., Ste. 280<br>Newport Beach, CA 92660 |

**Electronic Service List:**

- **Jorge A. Gaitan**   Jorge.A.Gaitan@usdoj.gov
- **Office of the U.S. Trustee / SJ**   USTPRegion17.SJ.ECF@usdoj.gov
- **Amelia Valenzuela**   avalenzuela@wedgewood-inc.com, dmarcus@wedgewood-inc.com
- **Geoff Wiggs**   ECF@wiggslaw.com, WiggsGR82519@notify.bestcase.com

 **By Overnight Delivery:**

Hon. Stephen L. Johnson
US Bankruptcy Court
280 South First Street
San Jose, CA 95113

If the Chapter 11 Trustee is otherwise entitled to notice, she will receive such notice upon the electronic filing of the above-named document.

I declare, under penalty of perjury, that the foregoing is true and correct.  Executed on December 24, 2020 at Redondo Beach, California.


Dated: December 24, 2020                    /s/ Daniel Marcus
                                            Daniel Marcus

**EXHIBIT 14**

1  WEDGEWOOD
   Office of the General Counsel
2  DAVID M. POITRAS P.C. (SBN 141309)
   dpoitras@wedgewood-inc.com
3  AMELIA VALENZUELA (SBN 320428)
     avalenzuela@wedgewood-inc.com
4  2015 Manhattan Beach Blvd., Suite 100
   Redondo Beach, CA 90278
5  Telephone:    (310) 640-3070
   Facsimile:     (310) 640-3090
6
   Attorneys for Moving Parties,
7  *WEDGEWOOD, LLC, solely as Administrator*
   *of the Civic Holdings III Trust; and Civic Real*
8  *Estate Holdings III, LLC*

9
                  **UNITED STATES BANKRUPTCY COURT**
10                **NORTHERN DISTRICT OF CALIFORNIA**
                        **SAN JOSE DIVISION**
11

12  | In re | CASE NO.    20-51735 |
    | VIKRAM SRINIVASAN, | RS NO.    ABV-1 |
13
14  | Debtor. | Chapter 11 |
15           | Date:    February 2, 2020 |
             | Time:    10:00 a.m. |
16           | Place:   U.S. Courthouse, Crtrm 9 |
             |          280 South First Street |
17           |           San Jose, CA 95113 |
18           | Judge:  The Hon. Stephen L. Johnson |
19

20  **NOTICE OF HEARING ON WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF**
    **THE CIVIC HOLDINGS III TRUST AND CIVIC REAL ESTATE HOLDINGS III, LLC'S**
21  **MOTION FOR ORDER CONFIRMING NO STAY IS IN EFFECT OR, IN THE**
    **ALTERNATIVE, FOR STAY RELIEF, WITH *IN REM* AND PROSPECTIVE RELIEF**
22

23  **TO:    THE HONORABLE STEPHEN L. JOHNSON, THE DEBTOR, DEBTOR'S**
    **ATTORNEY, THE UNITED STATES TRUSTEE, AND ALL PARTIES-IN-**
24  **INTEREST:**
25

26          **PLEASE TAKE NOTICE** that a hearing will be held by the above-entitled Court located at

27  280 South First Street, San Jose, CA 95113, on February 2, 2021 at 10:00 a.m., before the Honorable

28  Stephen L. Johnson, bankruptcy judge presiding, on Wedgewood, LLC, solely as Administrator of

1    the Civic Holdings III Trust and Civic Real Estate Holdings III, LLC's (together, "Movants") Motion

2    for Stay Relief ("Motion"), pursuant to which Movants will and do move the Court, pursuant to 11

3    U.S.C. § 362(d)(1), (2), and (4) for an order (i) confirming no automatic stay is in place as to the real

4    property generally described as 1666 (or 1648) Summitridge Drive, Beverly Hills, CA 90210 the

5    "Property") or that otherwise prevents a state court forum from entering an order expunging a lis

6    pendens wrongfully recorded against the Property or (ii) terminating the automatic stay concerning

7    the (a) Debtor, (b) the Property and (c) the state court action filed by the Debtor against Movants.

8    **The hearing will not be conducted in the presiding judge's courtroom but will instead**

9    **be conducted by telephone or video.  All interested parties should consult the Bankruptcy**

10   **Court's website at www.canb.uscourts.gov for information about court operations during the**

11   **COVID-19 pandemic.  The Bankruptcy Court's website provides information regarding how**

12   **to arrange a telephonic or video appearance.  If you have questions regarding how to appear at**

13   **a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the**

14   **Live Chat feature on the Bankruptcy Court's website.**

15   **PLEASE TAKE FURTHER NOTICE** that Movants will seek an order granting *in rem* and

16   prospective relief whereby the order granting the Motion will be binding and effective in any

17   bankruptcy case commenced by or against any debtor who claims any interest in the Property for a

18   period of 180 days from the hearing of the Motion without further notice.

19   **PLEASE TAKE FURTHER NOTICE** that Movant will further request that the fourteen

20   (14) day stay set forth in Federal Rule of Bankruptcy Procedure 4001(a)(3) not be applicable to any

21   order entered granting the Motion.

22   The Motion is based upon § 362 (d)(1), (2), and (4) of the Bankruptcy Code, Rule 4001(a) of

23   the Federal Rules of Bankruptcy Procedure and United States Bankruptcy Court for the Northern

24   District of California Local Rules 4001-1 and 9014-1.

25   The Motion is also based upon this Notice of Hearing, the accompanying Motion for Relief

26   from the Automatic Stay, the Memorandum of Points & Authorities, the declaration of Karissa Shute

27   and this Court's Relief from Stay Cover Sheet, all filed concurrently herewith, any and all pleadings

28   on file in the above-entitled chapter 11 case, and any additional documents, evidence and arguments

- 2 -

1   of counsel as may be presented at or before the time of the hearing on the Motion.

2          Copies of the Motion, the Shute Dec. and any other related pleadings filed in support of the

3   Motion may be obtained from counsel to Movants, whose name and contact information appear in

4   the upper left hand corner of this Notice, or from the Clerk of the Bankruptcy Court.

5          **PLEASE TAKE FURTHER NOTICE** that the Debtor must appear personally or by counsel

6   at the time and place (via telephone or video as instructed by the Bankruptcy Court) specified above

7   for the hearing on this matter.  In the event that the Debtor does not appear, either personally or by

8   counsel, at the hearing on the Motion, the Motion may be granted by default and without further

9   hearing.

10         Oppositions, if any, may be presented at the hearing on the Motion.  If opposition is presented,

11   or if there is other good cause shown, the Court may continue the hearing to permit the filing of

12   evidence and briefs.

13

14                                        Respectfully submitted,

15   DATED:  December 24, 2020          WEDGEWOOD
                                        OFFICE OF THE GENERAL COUNSEL
16

17                                      By: */s/ Amelia Valenzuela*_____
                                            DAVID M. POITRAS
18                                          AMELIA B. VALENZUELA
                                        Attorneys for Wedgewood, LLC, solely as
19                                      Administrator of the Civic Holdings III Trust; and
                                        Civic Real Estate Holdings III, LLC
20

21

22

23

24

25

26

27

28

**EXHIBIT 15**

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Vikram Srinivasan** |
| | First Name · Middle Name · Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name · Middle Name · Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | **20-51735** |

☐ Check if this is an amended filing

## B 104

# For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims Against You and Are Not Insiders

12/15

If you are an individual filing for bankruptcy under Chapter 11, you must fill out this form. If you are filing under Chapter 7, Chapter 12, or Chapter 13, do not fill out this form. Do not include claims by anyone who is an insider. Insiders include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20 percent or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Also, do not include claims by secured creditors unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.

**Part 1:** List the 20 Unsecured Claims in Order from Largest to Smallest.  Do Not Include Claims by Insiders.

| | | | Unsecured claim |
|---|---|---|---|

**1**

Civic Financial
2015 Manhattan Beach Blvd
Redondo Beach, CA 90278

_____

_____

Contact

_____

Contact phone

What is the nature of the claim?

Guarantee on debt for Summitridge Venture Group, LLC owner of real property (1666 Summitridge Drive, Beverly Hills, CA 90210  )

$ **$900,000.00**

As of the date you file, the claim is: Check all that apply

■ Contingent
☐ Unliquidated
■ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?

☐ No
■ Yes. Total claim (secured and unsecured)  $ **$3,500,000.00**
    Value of security:  - $ **$2,600,000.00**
    Unsecured claim  $ **$900,000.00**

**2**

What is the nature of the claim?

Case No. RG19035010. Debtor guaranteed loan on behalf of Summitridge Venture Group, a California Limited Liability Company.

$ **$200,000.00**

B104 (Official Form 104)      For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims      Page 1

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Debtor 1    **Vikram Srinivasan**            Case number *(if known)*    **20-51735**

**Mitali Parmar**
**c/o Lubna K. Jahangiri, Esq.**
**Jahangiri Law Group, APC**
**210 Porter Drive, Suite 230**
**San Ramon, CA 94583**

**As of the date you file, the claim is:** Check all that apply
- ■   Contingent
- ■   Unliquidated
- ■   Disputed
- ☐   None of the above apply

**Does the creditor have a lien on your property?**
- ■   No
- ☐   Yes. Total claim (secured and unsecured)    $ _____

_____

_____

Contact

_____

Contact phone

                             Value of security:    - $ _____
                             Unsecured claim    $ _____

---

| Part 2: | **Sign Below** |
|---|---|

**Under penalty of perjury, I declare that the information provided in this form is true and correct.**

X   **/s/ Vikram Srinivasan** _____       X _____
    **Vikram Srinivasan**                                  Signature of Debtor 2
    Signature of Debtor 1

Date   **December 24, 2020** _____       Date _____

B 104 (Official Form 104)         For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims         Page 2

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com         Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Vikram Srinivasan** |
| | First Name            Middle Name            Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name            Middle Name            Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number | **20-51735** |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106Sum
## Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

### Part 1:   Summarize Your Assets

| | | Your assets<br>Value of what you own |
|---|---|---|
| 1. | **Schedule A/B: Property** (Official Form 106A/B) | |
| | 1a. Copy line 55, Total real estate, from Schedule A/B.......................................................... | $              0.00 |
| | 1b. Copy line 62, Total personal property, from Schedule A/B............................................... | $         3,348,483.87 |
| | 1c. Copy line 63, Total of all property on Schedule A/B........................................................ | $         3,348,483.87 |

### Part 2:   Summarize Your Liabilities

| | | Your liabilities<br>Amount you owe |
|---|---|---|
| 2. | *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D) | |
| | 2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* | $         3,500,000.00 |
| 3. | *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F) | |
| | 3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*................................ | $              0.00 |
| | 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*............................ | $          200,000.00 |
| | **Your total liabilities** | $         3,700,000.00 |

### Part 3:   Summarize Your Income and Expenses

| | | |
|---|---|---|
| 4. | *Schedule I: Your Income* (Official Form 106I)<br>Copy your combined monthly income from line 12 of *Schedule I*............................................................ | $           29,567.00 |
| 5. | *Schedule J: Your Expenses* (Official Form 106J)<br>Copy your monthly expenses from line 22c of *Schedule J*.......................................................... | $            2,994.00 |

### Part 4:   Answer These Questions for Administrative and Statistical Records

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ☑ Yes

7. **What kind of debt do you have?**

   ☐ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☑ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Official Form 106Sum           Summary of Your Assets and Liabilities and Certain Statistical Information           page 1 of 2

CIVIC APP PAGE NO. 236

Debtor 1   **Vikram Srinivasan**                              Case number *(if known)* **20-51735**

8. **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form 122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.    $ _____

9. **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ 0.00 |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ 0.00 |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ 0.00 |
| 9d. Student loans. (Copy line 6f.) | $ 0.00 |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ 0.00 |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ 0.00 |
| | |
| 9g. **Total.** Add lines 9a through 9f. | $ 0.00 |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

| Fill in this information to identify your case and this filing: | | |
|---|---|---|
| Debtor 1 | **Vikram Srinivasan** | |
| | First Name                 Middle Name                 Last Name | |
| Debtor 2 | | |
| (Spouse, if filing) | First Name                 Middle Name                 Last Name | |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA | |
| Case number | **20-51735** | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                      12/15

In each category, separately list and describe items. List an asset only once.  If an asset fits in more than one category, list the asset in the category where you think it fits best.  Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

■ No. Go to Part 2.
☐ Yes.  Where is the property?

### Part 2:   Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

■ No
☐ Yes

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5  **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here**.........................................................................=>

| | |
|---|---|
| | **$0.00** |

### Part 3:   Describe Your Personal and  Household Items

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
■ No
☐ Yes.  Describe.....

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
☐ No
■ Yes.  Describe.....

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                      Best Case Bankruptcy

CIVIC APP PAGE NO. 238

Debtor 1   **Vikram Srinivasan**                                    Case number *(if known)*   **20-51735**

| Misc items based on garage sale value.<br>2 laptops<br>1 PC<br>1 Tablet<br>2 cell phones | **$2,260.00** |

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ■ No
   ☐ Yes. Describe.....

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ■ No
   ☐ Yes. Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes. Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ■ Yes. Describe.....

    | Misc. clothing items. | **$200.00** |

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ■ Yes. Describe.....

    | 1 watch | **$200.00** |

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ■ No
    ☐ Yes. Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ■ No
    ☐ Yes. Give specific information.....

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ............................................................................

    | **$2,660.00** |

**Part 4:**  **Describe Your Financial Assets**

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own?<br>Do not deduct secured claims or exemptions. |

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
    ■ No
    ☐ Yes...................................................................................................................

Official Form 106A/B                    Schedule A/B: Property                         page 2

CIVIC APP PAGE NO. 239

| Debtor 1 | **Vikram Srinivasan** | Case number *(if known)* | **20-51735** |

**17. Deposits of money**
*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
■ Yes.......................

Institution name:

| | 17.1. | **Checking** | **Personal checking account at Bank of America *6561** | | **$45,000.00** |

**18. Bonds, mutual funds, or publicly traded stocks**
*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

■ No
☐ Yes.................

Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No
■ Yes.  Give specific information about them...................

| Name of entity: | % of ownership: | | |
|---|---|---|---|
| **Summitridge Venture Group, LLC owner of real property located at 1666 Summitridge Drive, Beverly Hills, CA 90210. Debtor is 100% owner of Summitridge Venture Group LLC.** | **100** | % | **$2,600,000.00** |
| **Maxim Holdings, LLC** | **50** | % | **$20,000.00** |
| **Zephyr Capital, LLC** | **20** | % | **$18,000.00** |
| **Paragon Holdings, LLC** | **50** | % | **$250,000.00** |
| **Zephyr Technologies, LLC** | **50** | % | **$15,000.00** |
| **Zephyr Financial, LLC** | **20** | % | **$2,000.00** |
| **Vasan Holdings** | **33.33** | % | **$33,000.00** |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

■ No
☐ Yes. Give specific information about them

Issuer name:

**21. Retirement or pension accounts**
*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

■ No
☐ Yes. List each account separately.
Type of account:            Institution name:

**22. Security deposits and prepayments**
Your share of all unused deposits you have made so that you may continue service or use from a company
*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

■ No
☐ Yes. ....................

Institution name or individual:

---

Official Form 106A/B                    Schedule A/B: Property                    page 3

| Debtor 1 | Vikram Srinivasan | Case number *(if known)* | 20-51735 |

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
- ☑ No
- ☐ Yes.............          Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
- ☑ No
- ☐ Yes.............          Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
- ☑ No
- ☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
- ☑ No
- ☐ Yes.  Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
- ☑ No
- ☐ Yes.  Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |

**28. Tax refunds owed to you**
- ☑ No
- ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
- ☑ No
- ☐ Yes. Give specific information......

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security benefits; unpaid loans you made to someone else
- ☑ No
- ☐ Yes.  Give specific information..

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
- ☑ No
- ☐ Yes. Name the insurance company of each policy and list its value.

  Company name:                    Beneficiary:                    Surrender or refund value:

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
- ☑ No
- ☐ Yes.  Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
- ☐ No
- ☑ Yes.  Describe each claim.........

---

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                        Best Case Bankruptcy

Debtor 1    **Vikram Srinivasan**                                    Case number *(if known)*    **20-51735**

---

| | |
|---|---|
| **Claim against Fay Servicing LLC, a Deleware Limited Liability company, Civic Real Estate Holdings III, LLC a Delaware Limited Liability company for amounts taken from debtor pursuant to misrepresentations made to debtor's company Summitridge Venture Group, LLC, a California Limited Liability Company that it would be provided a forebearance as to its loan.**<br><br>**Los Angeles County Superior Court case no. 20SMCV00278 Summitridge Venture Group LLC, Vikram Srinivasan v. Fay Servicing et al. Claim of $362,823.87** | **$362,823.87** |

---

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
    - ■ No
    - ☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
    - ■ No
    - ☐ Yes.  Give specific information..

36. **Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.................................................................................................................** | **$3,345,823.87** |

| **Part 5:** | **Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.** |

37. **Do you own or have any legal or equitable interest in any business-related property?**
    - ■ No. Go to Part 6.
    - ☐ Yes.  Go to line 38.

| **Part 6:** | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**<br>If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
    - ■ No. Go to Part 7.
    - ☐ Yes.  Go to line 47.

| **Part 7:** | **Describe All Property You Own or Have an Interest in That You Did Not List Above** |

53. **Do you have other property of any kind you did not already list?**
    *Examples:* Season tickets, country club membership
    - ■ No
    - ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here  ....................................** | **$0.00** |

---

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor 1   **Vikram Srinivasan**                                                    Case number *(if known)*   **20-51735**

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

55.   **Part 1: Total real estate, line 2** ....................................................................................   **$0.00**

56.   **Part 2: Total vehicles, line 5**                                                       **$0.00**

57.   **Part 3: Total personal and household items, line 15**                                 **$2,660.00**

58.   **Part 4: Total financial assets, line 36**                                             **$3,345,823.87**

59.   **Part 5: Total business-related property, line 45**                                    **$0.00**

60.   **Part 6: Total farm- and fishing-related property, line 52**                           **$0.00**

61.   **Part 7: Total other property not listed, line 54**                            +      **$0.00**

62.   **Total personal property.** Add lines 56 through 61...      **$3,348,483.87**      Copy personal property total      **$3,348,483.87**

63.   **Total of all property on Schedule A/B.** Add line 55 + line 62                              **$3,348,483.87**

Case: 20-51735    Doc# 18    Filed: 12/24/20    Entered: 12/24/20 14:50:10    Page 10 of
34
CIVIC APP PAGE NO. 243

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Vikram Srinivasan** |
| | First Name   Middle Name   Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | 20-51735 |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

**Part 1:**   Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☒ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ☐ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption.* | |
| **Checking: Personal checking account at Bank of America *6561** Line from *Schedule A/B*: **17.1** | $45,000.00 | ☒  $30,825.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | C.C.P. § 703.140(b)(5) |

3. **Are you claiming a homestead exemption of more than $170,350?** (Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☒ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       ☐ No

       ☐ Yes

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Vikram Srinivasan** |
| | First Name · Middle Name · Last Name |
| Debtor 2 (Spouse if, filing) | First Name · Middle Name · Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | 20-51735 |

☐ Check if this is an amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1: List All Secured Claims**

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim | Column C Unsecured portion If any |
|---|---|---|---|---|
| 2.1 Civic Financial | | $3,500,000.00 | $2,600,000.00 | $900,000.00 |

Creditor's Name

**Describe the property that secures the claim:**
**Summitridge Venture Group, LLC owner of real property located at 1666 Summitridge Drive, Beverly Hills, CA 90210. Debtor is 100% owner of Summitridge Venture Group LLC.**
**100 % ownership**

2015 Manhattan Beach Blvd
Redondo Beach, CA 90278

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☑ Contingent
☑ Unliquidated
☑ Disputed

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☑ Other (including a right to offset)   Guaranty

Date debt was incurred  **9-2018 First Deed of Trust**   Last 4 digits of account number

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $3,500,000.00 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $3,500,000.00 |

**Part 2: List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Vikram Srinivasan** |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number | **20-51735** |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim.  Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

### Part 1:   List All of Your PRIORITY Unsecured Claims

1.   **Do any creditors have priority unsecured claims against you?**

�■ No. Go to Part 2.

☐ Yes.

### Part 2:   List All of Your NONPRIORITY Unsecured Claims

3.   **Do any creditors have nonpriority unsecured claims against you?**

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

�■ Yes.

4.   **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

| | Total claim |
|---|---|
| | |

**4.1**   **Mitali Parmar**

Nonpriority Creditor's Name

**c/o Lubna K. Jahangiri, Esq.**
**Jahangiri Law Group, APC**
**210 Porter Drive, Suite 230**
**San Ramon, CA 94583**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

�■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

�■ No

☐ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply

�■ Contingent

�■ Unliquidated

�■ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

**Case No. RG19035010. Debtor guaranteed loan on behalf of Summitridge Venture Group, a California Limited Liability Company.**

�■ Other. Specify

**Total claim: $200,000.00**

### Part 3:   List Others to Be Notified About a Debt That You Already Listed

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                    45938                    Best Case Bankruptcy

CIVIC APP PAGE NO. 246

| Debtor 1 | **Vikram Srinivasan** | Case number (if known) | **20-51735** |

| **Part 4:** | **Add the Amounts for Each Type of Unsecured Claim** |

6. **Total the amounts of certain types of unsecured claims.** This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

| | | | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $ 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ 0.00 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ 0.00 |

| | | | | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $ 0.00 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ 0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ 200,000.00 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ 200,000.00 |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Vikram Srinivasan** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number | **20-51735** |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases                12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
   ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|
| 2.1    **Equity Residential Management, LLC**<br>       **440 Dixon Landing Rd**<br>       **Milpitas, CA 95035** | **3 year lease** |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Vikram Srinivasan** |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number | **20-51735** |
| (if known) | |

☐ Check if this is an
   amended filing

## Official Form 106H
## Schedule H: Your Codebtors

12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.

■ No
☐ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

■ No. Go to line 3.
☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| Column 1: **Your codebtor** | Column 2: **The creditor to whom you owe the debt** |
|---|---|
| Name, Number, Street, City, State and ZIP Code | Check all schedules that apply: |

| | | |
|---|---|---|
| 3.1 | | ☐ Schedule D, line _____ |
| | Name | ☐ Schedule E/F, line _____ |
| | | ☐ Schedule G, line _____ |
| | Number          Street | |
| | City          State          ZIP Code | |

| | | |
|---|---|---|
| 3.2 | | ☐ Schedule D, line _____ |
| | Name | ☐ Schedule E/F, line _____ |
| | | ☐ Schedule G, line _____ |
| | Number          Street | |
| | City          State          ZIP Code | |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                                 Best Case Bankruptcy

CIVIC APP PAGE NO. 249

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Vikram Srinivasan** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number (If known) | **20-51735** |

Check if this is:
- ☐ An amended filing
- ☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

Official Form 106I

# Schedule I: Your Income                    12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**     **Describe Employment**

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| Employment status | | ■ Employed<br>☐ Not employed | ☐ Employed<br>☐ Not employed |
| Occupation | | General Manager | |
| Employer's name | | Bluegall Inc. | |
| Employer's address | | 6200 Stoneridge Mall Road<br>Pleasanton, CA 94588 | |
| How long employed there? | | January 2019 - Present | |

**Part 2:**     **Give Details About Monthly Income**

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 54,167.00 | $ N/A |
| 3. | **Estimate and list monthly overtime pay.** | 3. | +$ 0.00 | +$ N/A |
| 4. | **Calculate gross income.** Add line 2 + line 3. | 4. | $ 54,167.00 | $ N/A |

Case: 20-51735    Doc# 18    Filed: 12/24/20    Entered: 12/24/20 14:50:10    Page 17 of 34

CIVIC APP PAGE NO. 250

Debtor 1   **Vikram Srinivasan**                                          Case number (*if known*)   **20-51735**

|  |  | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| **Copy line 4 here** | 4. | $ | **54,167.00** | $ **N/A** |

5. **List all payroll deductions:**

| | | | | | |
|---|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ | **24,600.00** | $ **N/A** |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ | **0.00** | $ **N/A** |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ | **0.00** | $ **N/A** |
| 5d. | Required repayments of retirement fund loans | 5d. | $ | **0.00** | $ **N/A** |
| 5e. | Insurance | 5e. | $ | **0.00** | $ **N/A** |
| 5f. | Domestic support obligations | 5f. | $ | **0.00** | $ **N/A** |
| 5g. | Union dues | 5g. | $ | **0.00** | $ **N/A** |
| 5h. | Other deductions. Specify: _____ | 5h.+ | $ | **0.00** + | $ **N/A** |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.   6.   $ **24,600.00**   $ **N/A**

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.   7.   $ **29,567.00**   $ **N/A**

8. **List all other income regularly received:**

8a. **Net income from rental property and from operating a business, profession, or farm**
Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income.   8a.   $ **0.00**   $ **N/A**

8b. **Interest and dividends**   8b.   $ **0.00**   $ **N/A**

8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive**
Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement.   8c.   $ **0.00**   $ **N/A**

8d. **Unemployment compensation**   8d.   $ **0.00**   $ **N/A**

8e. **Social Security**   8e.   $ **0.00**   $ **N/A**

8f. **Other government assistance that you regularly receive**
Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.
Specify: _____   8f.   $ **0.00**   $ **N/A**

8g. **Pension or retirement income**   8g.   $ **0.00**   $ **N/A**

8h. **Other monthly income. Specify: _____**   8h.+   $ **0.00** +   $ **N/A**

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.   9.   $ **0.00**   $ **N/A**

10. **Calculate monthly income.** Add line 7 + line 9.   10.   $ **29,567.00** +   $ **N/A** =   $ **29,567.00**
Add the entries in line 10 for Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify: _____   11.   +$ **0.00**

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies   12.   $ **29,567.00**
**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
☑ No.
☐ Yes. Explain: _____

Case: 20-51735   Doc# 18   Filed: 12/24/20   Entered: 12/24/20 14:50:10   Page 18 of 34
CIVIC APP PAGE NO. 251

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | **Vikram Srinivasan** |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number (If known) | **20-51735** |

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

**Official Form 106J**

# Schedule J: Your Expenses                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:   Describe Your Household

1.  **Is this a joint case?**

   ■ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**

      ☐ No
      ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2.  **Do you have dependents?**   ■ No

   Do not list Debtor 1 and Debtor 2.   ☐ Yes.   Fill out this information for each dependent..............

   Do not state the dependents names.

| | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|---|
| | _____ | _____ | ☐ No  ☐ Yes |
| | _____ | _____ | ☐ No  ☐ Yes |
| | _____ | _____ | ☐ No  ☐ Yes |
| | _____ | _____ | ☐ No  ☐ Yes |

3.  **Do your expenses include expenses of people other than yourself and your dependents?**   ■ No   ☐ Yes

## Part 2:   Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | **Your expenses** |
|---|---|

| | | |
|---|---|---|
| 4. | **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot. | 4.  $              1,800.00 |
| | **If not included in line 4:** | |
| 4a. | Real estate taxes | 4a.  $              0.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b.  $              200.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c.  $              0.00 |
| 4d. | Homeowner's association or condominium dues | 4d.  $              0.00 |
| 5. | **Additional mortgage payments for your residence,** such as home equity loans | 5.  $              0.00 |

Debtor 1  **Vikram Srinivasan**                          Case number (if known)   **20-51735**

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a.  Electricity, heat, natural gas | 6a. | $ | **200.00** |
| | 6b.  Water, sewer, garbage collection | 6b. | $ | **80.00** |
| | 6c.  Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | **400.00** |
| | 6d.  Other. Specify: | 6d. | $ | **0.00** |
| 7. | **Food and housekeeping supplies** | 7. | $ | **300.00** |
| 8. | **Childcare and children's education costs** | 8. | $ | **0.00** |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | **0.00** |
| 10. | **Personal care products and services** | 10. | $ | **0.00** |
| 11. | **Medical and dental expenses** | 11. | $ | **14.00** |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare.  Do not include car payments. | 12. | $ | **0.00** |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | **0.00** |
| 14. | **Charitable contributions and religious donations** | 14. | $ | **0.00** |
| 15. | **Insurance.**  Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a.  Life insurance | 15a. | $ | **0.00** |
| | 15b.  Health insurance | 15b. | $ | **0.00** |
| | 15c.  Vehicle insurance | 15c. | $ | **0.00** |
| | 15d.  Other insurance. Specify: | 15d. | $ | **0.00** |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20.  Specify: | 16. | $ | **0.00** |
| 17. | **Installment or lease payments:** | | | |
| | 17a.  Car payments for Vehicle 1 | 17a. | $ | **0.00** |
| | 17b.  Car payments for Vehicle 2 | 17b. | $ | **0.00** |
| | 17c.  Other. Specify: | 17c. | $ | **0.00** |
| | 17d.  Other. Specify: | 17d. | $ | **0.00** |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5,** *Schedule I, Your Income* **(Official Form 106I).** | 18. | $ | **0.00** |
| 19. | **Other payments you make to support others who do not live with you.**  Specify: | 19. | $ | **0.00** |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on** *Schedule I: Your Income.* | | | |
| | 20a.  Mortgages on other property | 20a. | $ | **0.00** |
| | 20b.  Real estate taxes | 20b. | $ | **0.00** |
| | 20c.  Property, homeowner's, or renter's insurance | 20c. | $ | **0.00** |
| | 20d.  Maintenance, repair, and upkeep expenses | 20d. | $ | **0.00** |
| | 20e.  Homeowner's association or condominium dues | 20e. | $ | **0.00** |
| 21. | **Other:** Specify: | 21. | +$ | **0.00** |
| 22. | **Calculate your monthly expenses** | | | |
| | 22a. Add lines 4 through 21. | | $ | **2,994.00** |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| | 22c. Add line 22a and 22b.  The result is your monthly expenses. | | $ | **2,994.00** |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a.  Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. | $ | **29,567.00** |
| | 23b.  Copy your monthly expenses from line 22c above. | 23b. | -$ | **2,994.00** |
| | 23c.  Subtract your monthly expenses from your monthly income.  The result is your *monthly net income.* | 23c. | $ | **26,573.00** |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.

☐ Yes.      Explain here:

**Fill in this information to identify your case:**

Debtor 1    **Vikram Srinivasan**
_____
First Name          Middle Name          Last Name

Debtor 2
(Spouse if, filing)  _____
First Name          Middle Name          Last Name

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF CALIFORNIA

Case number   **20-51735**
(if known)

☐ Check if this is an
  amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

**You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes.  Name of person _____   Attach *Bankruptcy Petition Preparer's Notice,*
                                                          *Declaration, and Signature* (Official Form 119)

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

X  **/s/ Vikram Srinivasan**                      X  _____
   **Vikram Srinivasan**                             Signature of Debtor 2
   Signature of Debtor 1

   Date   **December 24, 2020**                      Date _____

Official Form 106Dec              Declaration About an Individual Debtor's Schedules

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                      Best Case Bankruptcy

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | **Vikram Srinivasan** |
| | First Name        Middle Name        Last Name |
| Debtor 2 (Spouse if, filing) | |
| | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | **20-51735** |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy    4/19

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Give Details About Your Marital Status and Where You Lived Before

**1.   What is your current marital status?**

☐ Married
■ Not married

**2.   During the last 3 years, have you lived anywhere other than where you live now?**

■ No
☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1 Prior Address: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| | | | |

**3.   Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

■ No
☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

### Part 2    Explain the Sources of Your Income

**4.   Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | ■ Wages, commissions, bonuses, tips | **$595,833.33** | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com            Best Case Bankruptcy

Debtor 1   **Vikram Srinivasan**                                          Case number (*if known*)   **20-51735**

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| **For last calendar year:**<br>**(January 1 to December 31, 2019 )** | ■ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | **$650,000.00** | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |
| **For the calendar year before that:**<br>**(January 1 to December 31, 2018 )** | ☐ Wages, commissions, bonuses, tips<br><br>■ Operating a business | **$1,399,064.00** | ☐ Wages, commissions, bonuses, tips<br><br>☐ Operating a business | |

5.  **Did you receive any other income during this year or the two previous calendar years?**
    Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

    List each source and the gross income from each source separately. Do not include income that you listed in line 4.

    ■ No
    ☐ Yes. Fill in the details.

| Debtor 1 | | Debtor 2 | |
|---|---|---|---|
| **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions and exclusions) |

**Part 3:   List Certain Payments You Made Before You Filed for Bankruptcy**

6.  **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

    ■ No.   **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

    During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,825* or more?

    ■ No.   Go to line 7.
    ☐ Yes   List below each creditor to whom you paid a total of $6,825* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
    * Subject to adjustment on 4/01/22 and every 3 years after that for cases filed on or after the date of adjustment.

    ☐ Yes.   **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
    During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

    ☐ No.   Go to line 7.
    ☐ Yes   List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|
| | | | | |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                                Best Case Bankruptcy

| Debtor 1 | **Vikram Srinivasan** | | Case number (*if known*) | **20-51735** |
|---|---|---|---|---|

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
   *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

   ■ No
   ☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|
| | | | | |

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
   Include payments on debts guaranteed or cosigned by an insider.

   ■ No
   ☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|---|---|---|---|---|
| | | | | |

**Part 4:    Identify Legal Actions, Repossessions, and Foreclosures**

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
   List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

   ☐ No
   ■ Yes. Fill in the details.

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| In re: Vikram Srinivasan 19-42729 | Chapter 11 bankruptcy | USBC Northern District California 1300 Clay Street, Suite 300 Oakland, CA 94612 | ☐ Pending ☐ On appeal ■ Concluded  **Dismissed 12/3/2019** |
| Summitridge Venture Group v. Fay Servicing, LLC et al. 20SMCV00278 | Breach of Contract, wrongful foreclosure | CA Superior Court County of Los Angeles | ■ Pending ☐ On appeal ☐ Concluded |
| Mitali Parmar, an individual cross-complainant vs. Summitridge Venture Group, a California limited liability company, Vikram Srinivasan, an individual as Guarantor, Parthesh Brahmabatt, an individual and DOES 1 through 50 inclusive, RG19035010 | Fraud, Conversion, Conspiracy, Common Counts | Superior Court of California -Alameda 2233 Shore Line Drive Alameda, CA 94501 | ■ Pending ☐ On appeal ☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
    Check all that apply and fill in the details below.

    ■ No. Go to line 11.
    ☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property  Explain what happened | Date | Value of the property |
|---|---|---|---|
| | | | |

Debtor 1  **Vikram Srinivasan**                                    Case number *(if known)*  **20-51735**

---

11. Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?

   ■ No
   ☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

12. Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?

   ■ No
   ☐ Yes

---

**Part 5:   List Certain Gifts and Contributions**

13. Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?

   ■ No
   ☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per Person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|

14. Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?

   ■ No
   ☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that  total more than $600<br>Charity's Name<br>**Address** (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|

---

**Part 6:   List Certain Losses**

15. Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?

   ■ No
   ☐ Yes.  Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property*. | Date of your loss | Value of property lost |
|---|---|---|---|

---

**Part 7:   List Certain Payments or Transfers**

16. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

   ☐ No
   ■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Nichani Law Firm<br>111 N. Market Street, Ste. 300<br>San Jose, CA 95113<br>vinod@nichanilawfirm.com<br>Debtor | Attorney Fees re: Representation in Adversary Proceeding against Creditor. | November 18, 2020 | $20,000.00 |

---

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                    Best Case Bankruptcy

CIVIC APP PAGE NO. 258

Debtor 1   **Vikram Srinivasan**                                         Case number (*if known*)  **20-51735**

| Person Who Was Paid Address Email or website address Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| **Law Offices of Geoff Wiggs 1900 S. Norfolk St, Suite 350 San Mateo, CA 94403-1171 Geoff@wiggslaw.com** | **Attorney Fees** | **11/17/2020** | **$38,262.00** |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

■ No
☐ Yes. Fill in the details.

| Person Who Received Transfer Address Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices*.)

■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

**Part 8:**   List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

■ No
☐ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

■ No
☐ Yes. Fill in the details.

| Name of Financial Institution Address (Number, Street, City, State and ZIP Code) | Who else had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

CIVIC APP PAGE NO. 259

Debtor 1   **Vikram Srinivasan**                    Case number *(if known)*   **20-51735**

**22.  Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

☑ No
☐ Yes. Fill in the details.

| Name of Storage Facility Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

**Part 9:**   **Identify Property You Hold or Control for Someone Else**

**23.  Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

☑ No
☐ Yes.  Fill in the details.

| Owner's Name Address (Number, Street, City, State and ZIP Code) | Where is the property? (Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

**Part 10:**   **Give Details About Environmental Information**

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

**24.  Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

☑ No
☐ Yes. Fill in the details.

| Name of site Address (Number, Street, City, State and ZIP Code) | Governmental unit Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

**25.  Have you notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Fill in the details.

| Name of site Address (Number, Street, City, State and ZIP Code) | Governmental unit Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

**26.  Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No
☐ Yes. Fill in the details.

| Case Title Case Number | Court or agency Name Address (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

**Part 11:**   **Give Details About Your Business or Connections to Any Business**

**27.  Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

■ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

■ A member of a limited liability company (LLC) or limited liability partnership (LLP)

Debtor 1    **Vikram Srinivasan**                                    Case number (*if known*)    **20-51735**

☐ **A partner in a partnership**

☐ **An officer, director, or managing executive of a corporation**

☐ **An owner of at least 5% of the voting or equity securities of a corporation**

☐ **No. None of the above applies.  Go to Part 12.**

■ **Yes. Check all that apply above and fill in the details below for each business.**

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| **Summitridge Venture Group, LLC**<br>**1102 Wrigley Way**<br>**Milpitas, CA 95035** | **Real estate investments**<br><br>**Vikram Srinivasan** | **EIN:**      **82-2429855**<br><br>**From-To**   **8/12/17 - present** |
| **Maxim Holdings LLC**<br>**1001 S. Main Street, Ste. 49**<br>**Kalispell, MT 59901** | **Software research and**<br>**development**<br><br>**Vikram Srinivasan** | **EIN:**      **84-2207057**<br><br>**From-To**   **6/25/2019 - present** |
| **Zephyr Capital, LLC**<br>**47000 Warm Springs Blvd. Ste 352**<br>**Fremont, CA 94539** | **Real estate investing**<br><br>**Vikram Srinivasan** | **EIN:**      **85-1195740**<br><br>**From-To**   **5/21/2019** |
| **Paragon Holdings, LLC**<br>**1001 S. Main Street, Ste. 49**<br>**Kalispell, MT 59901** | **Real estate**<br><br>**Vikram Srinivasan** | **EIN:**      **82-3340788**<br><br>**From-To**   **6/23/2017 - present** |
| **Zephyr Technologies, LLC**<br>**47000 Warm Springs Blvd. Ste. 352**<br>**Fremont, CA 94539** | **Software and device development**<br><br>**Vikram Srinivasan** | **EIN:**      **85-1259285**<br><br>**From-To**   **5/21/2019 - Present** |
| **Zephyr Financial, LLC**<br>**47000 Warm Springs Blvd. Ste. 352**<br>**Fremont, CA 94539** | **Real estate investing**<br><br>**Vikram Srinivasan** | **EIN:**      **85-12533483**<br><br>**From-To**   **5/21/2019 - present** |
| **Vasan Holdings LLC**<br>**1001 S. Main Street, Ste. 49**<br>**Kalispell, MT 59901** | **Not yet in business.**<br><br>**Vikram Srinivasan** | **EIN:**      **82-2701950**<br><br>**From-To**   **1/11/2017 - present** |
| **Self Employed** | **Investments**<br><br>**Vikram Srinivasan** | **EIN:**<br><br>**From-To**   **- 2018** |

**28.  Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

■ **No**

☐ **Yes. Fill in the details below.**

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
|  |  |

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                              Best Case Bankruptcy

Debtor 1   __Vikram Srinivasan_____   Case number (*if known*)   __20-51735__

---

**Part 12:**   **Sign Below**

---

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
**18 U.S.C. §§ 152, 1341, 1519, and 3571.**

__/s/ Vikram Srinivasan_____                    _____
**Vikram Srinivasan**                                         **Signature of Debtor 2**
**Signature of Debtor 1**

Date   __December 24, 2020_____                    Date   _____

**Did you attach additional pages to** *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* **(Official Form 107)?**
■ No
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**
■ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

Case: 20-51735   Doc# 18   Filed: 12/24/20   Entered: 12/24/20 14:50:10   Page 29 of
34
CIVIC APP PAGE NO. 262

## Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)

This notice is for you if:

　　You are an individual filing for bankruptcy, and

　　Your debts are primarily consumer debts. *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

　　Chapter 7 - Liquidation

　　Chapter 11 - Reorganization

　　Chapter 12 - Voluntary repayment plan for family farmers or fishermen

　　Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | | Liquidation |
|---|---|---|
| | $245 | filing fee |
| | $78 | administrative fee |
| + | $15 | trustee surcharge |
| | $338 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their non-exempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

　　most taxes;

　　most student loans;

　　domestic support and property settlement obligations;

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                                                           Best Case Bankruptcy

CIVIC APP PAGE NO. 263

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

---

**Chapter 11: Reorganization**

|  | $1,167 | filing fee |
| + | $571 | administrative fee |
|  | $1,738 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

**Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)**                                                                          page **2**

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                                                      Best Case Bankruptcy

CIVIC APP PAGE NO. 264

**Read These Important Warnings**

Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.

Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.

You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.

Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

---

### Chapter 12: Repayment plan for family farmers or fishermen

|   |        |                    |
|---|--------|--------------------|
|   | $200   | filing fee         |
| + | $78    | administrative fee |
|   | $278   | total fee          |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

---

### Chapter 13: Repayment plan for individuals with regular income

|   |        |                    |
|---|--------|--------------------|
|   | $235   | filing fee         |
| + | $78    | administrative fee |
|   | $313   | total fee          |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

domestic support obligations,

most student loans,

certain taxes,

debts for fraud or theft,

debts for fraud or defalcation while acting in a fiduciary capacity,

most criminal fines and restitution obligations,

certain debts that are not listed in your bankruptcy papers,

certain debts for acts that caused death or personal injury, and

certain long-term secured debts.

---

Case: 20-51735   Doc# 18   Filed: 12/24/20   Entered: 12/24/20 14:50:10   Page 32 of 34

CIVIC APP PAGE NO. 265

## Warning: File Your Forms on Time

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/forms/bankruptcy-forms

**Bankruptcy crimes have serious consequences**

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

**Make sure the court has your mailing address**

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case*. If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

**Understand which services you could receive from credit counseling agencies**

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days **before** you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

In Alabama and North Carolina, go to: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

Software Copyright (c) 1996-2020 Best Case, LLC - www.bestcase.com                                                                Best Case Bankruptcy

CIVIC APP PAGE NO. 266

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

In re                                                    Case No.    **20-51735**

**Vikram Srinivasan**


_____  Debtor(s).  _____  /

**CREDITOR MATRIX COVER SHEET**


    I declare that the attached Creditor Mailing Matrix, consisting of __1__ sheets, contains the correct, complete and current names and addresses of all priority, secured and unsecured creditors listed in debtor's filing and that this matrix conforms with the Clerk's promulgated requirements.

DATED: **December 24, 2020**


        **/s/ Geoffrey E. Wiggs**
        _____
        Signature of Debtor's Attorney or Pro Per Debtor

**EXHIBIT 16**

Form FTP

## UNITED STATES BANKRUPTCY COURT
### California Northern Bankruptcy Court

| | |
|---|---|
| In Re: Vikram Srinivasan | Case No.: 20–51735 SLJ 11 |
| Debtor(s) | Chapter: 11 |

## ORDER AND NOTICE RE: FAILURE TO PAY FILING FEE

According to the court's records, the debtor(s) in this Chapter 11 case has failed to pay the appropriate filing fee in accordance with 28 U.S.C. §1930.

Pursuant to 11 U.S.C. §102(1), §105(a), and §707(a)(2), §1112(b)(10) or §1307(c)(2), you are hereby notified that this case will be dismissed within 14 days of the date of this order without further notice or hearing, unless within that fourteen (14) day period:

1. The debtor(s) pay in full the appropriate filing fee; or

2. The debtor(s) or a party−in−interest files a written objection to this order and requests a hearing.

PAYMENTS MUST BE MADE IN THE EXACT AMOUNTS. COURT FEES MAY BE PAID ONLINE USING A DEBIT CARD, PAYPAL, OR ACH (BANK ACCOUNT TRANSFER) VIA PAY.GOV BY USING THE LINK ON THE COURT'S WEBSITE AT WWW.CANB.USCOURTS.GOV. PAYMENTS MAY ALSO BE IN THE FORM OF A CASHIER'S CHECK OR MONEY ORDER MADE PAYABLE TO CLERK OF U.S. BANKRUPTCY COURT. NO PERSONAL CHECKS AND WE DO NOT ACCEPT CASH. PLEASE INCLUDE THE DEBTOR'S FULL NAME AND BANKRUPTCY CASE NUMBER WITH ALL PAYMENTS.

**Mailing Address:**
U.S. Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

**In person filing via Drop Box:**
U.S. Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

Dated: 12/28/20

By the Court:

Stephen L. Johnson
United States Bankruptcy Judge

# Notice Recipients

District/Off: 0971–5             User: mtartagli             Date Created: 12/28/2020

Case: 20–51735                  Form ID: FTP                Total: 4

**Recipients of Notice of Electronic Filing:**
| | | |
|---|---|---|
| ust | Office of the U.S. Trustee / SJ | USTPRegion17.SJ.ECF@usdoj.gov |
| aty | Geoff Wiggs | ECF@wiggslaw.com |
| aty | Jorge A. Gaitan | Jorge.A.Gaitan@usdoj.gov |

TOTAL: 3

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
| | | | |
|---|---|---|---|
| db | Vikram Srinivasan | 440 Dixon Landing Road G201 | Milpitas, CA 95035 |

TOTAL: 1

**CIVIC APP PAGE NO. 270**

**EXHIBIT 17**

GEOFFREY E. WIGGS (SBN 276041)
LAW OFFICES OF GEOFF WIGGS
1900 S. Norfolk St, Suite # 350
San Mateo, Ca 94403
Telephone: (650) 577-5952
Facsimile: (650) 577-5953
Email: Geoff@wiggslaw.com

(Proposed) Attorney for Debtor in Possession
VIKRAM SRINIVASAN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

|  |  |
|---|---|
| In Re:<br><br>VIKRAM SRINIVASAN,<br><br>        Debtor in Possession. | Case No.:  20-51735<br><br>Chapter 11<br><br>MOTION BY DEBTOR FOR ORDER EXTENDING THE FULL AUTOMATIC STAY AS TO ALL CREDITORS<br><br>[11 U.S.C. §362(C)(3)]<br><br>Date:<br>Time:<br>Location: Tele/videoconference<br>Judge: Hon. Stephen L. Johnson |

      VIKRAM SRINIVASAN, the Debtor in Possession in this case, hereby moves that this Court order, under 11 U.S.C. §362 (c)(3), that the full protections of the automatic stay be extended in this case until they would terminate under 11 U.S.C. §362 (c)(1) or (2), or until further order of the Court. In support of this motion, the Debtor avers:

1.   The Debtor filed this Chapter 11 bankruptcy case on December 10, 2020.  The Initial Debtor Interview is scheduled for January 15, 2021 and the 341 meeting of creditors is scheduled for January 19, 2021.  Debtor anticipates timely filing its Monthly Operating Reports.

1

2. The Debtor has filed one earlier bankruptcy case, Case No. 19-42729, in this court, and that case was dismissed on January 8, 2020, within one year before the filing of this case.

3. The prior case involved the foreclosure of real property located at 1666 Summitridge Drive, Beverly Hills, California and owned by Summitridge Venture Group, LLC, whereby Debtor is the managing member and sole owner. Debtor's interest in said property is the sole purpose of this bankruptcy and the upcoming adversary proceeding to be filed by Debtor against Fay Servicing, LLC, a Delware Company, Civic Holdings III Trust and Civic Real Estate Holdings, III LLC ("lenders").

4. The Adversary Proceeding will include causes of action to return said real property that was improperly foreclosed upon and the turnover of funds taken from debtor due to misrepresentations by said lenders.

5. Debtor's prior case was dismissed failure to comply with the court's order to file required documents.

6. The Debtor has filed the current case in good faith.

7. Due to the complexity of the matter. complete forms and schedules for the instant case were filed on December 24, 2020.  Said filing was well within the filing deadline.

8. At the time of the previous filing, Debtor was working with his lenders to negotiate certain work-out agreements.  Said negotiations continued passed the prior filing dismissal date.  Negotiations ultimately deteriorated due to misrepresentations by lenders.

9. Debtor and the lender are now engaged in state court litigation.  See State Court Complaint, Exhibit A.

10. Debtor has filed complete schedules and intends to fully prosecute this case for the benefit of the estate and the estate's creditors.

2

11. Debtor's financial circumstances have changed such that he now believes he will be able to propose a confirmable chapter 11 plan and fully prosecute the instate case.

12. The Debtor's case was not dismissed because the Debtor failed to provide adequate protection as ordered by the court.

13. The Debtor's case was not dismissed for failure to perform the terms of a confirmed plan.

WHEREFORE, the Debtor requests that this Court enter an Order extending the automatic stay as to all creditors until it would terminate under section 362(c)(1) or (2), or until further order of the court. Alternatively, Debtor requests the court continue the stay as to all creditors until the matter is heard on February 2, 2021, the date creditor Wedgewood, LLC has scheduled its motion for relief from stay.

ooOoo

Dated this December 29, 2020                                          /s/ *Geoffrey E. Wiggs, Esq.*
                                                                      **Geoffrey E. Wiggs, Esq.**
                                                                      (Proposed) Attorney for
                                                                      Debtor in Possession

3

MOTION FOR ORDER EXTENDING AUTOMATIC STAY
CIVIC APP PAGE NO. 274

1  GEOFFREY E. WIGGS (SBN 276041)
   LAW OFFICES OF GEOFF WIGGS
2  1900 S. Norfolk St, Suite # 350
   San Mateo, Ca 94403
3  Telephone: (650) 577-5952
   Facsimile: (650) 577-5953
4  Geoff@wiggslaw.com

5  (Proposed) Attorney for Debtor in Possession
   VIKRAM SRINIVASAN

6

7              UNITED STATES BANKRUPTCY COURT

8        NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

9                                    Case No.:  20-51735

10                                   Chapter 11
    In Re:
11                                   DECLARATION IN SUPPORT OF
    VIKRAM SRINIVASAN,               MOTION BY DEBTOR FOR ORDER
12                                   EXTENDING FULL AUTOMATIC STAY
              Debtor in Possession.  [11 U.S.C. §362(C)(3)]
13

14

15

16

17

18        I, VIKRAM SRINIVASAN, HEREBY DECLARE:

19     1.  I filed this Chapter 11 bankruptcy case on 12/10/2020.

20     2.  I have filed one earlier bankruptcy case, Case No. 19-42729, in this court, and that case

21         was dismissed on 1/8/2020, within one year before the filing of this case.

22

23     3.  My prior case was dismissed failure to timely file required documents.

24     4.  I have filed the current case in good faith.

25     5.  At the time of the previous filing, I was working with his lenders to negotiate certain

26         work-out agreements.  These negotiations continued passed the prior filing dismissal

27         date.  Negotiations ultimately deteriorated due to misrepresentations by lenders.

28

                                    1
    DECLARATION IN SUPPORT OF MOTION FOR ORDER EXTENDING AUTOMATIC STAY
CIVIC APP PAGE NO. 275

6. I am now engaged in state court litigation with the lender.  See State Court Complaint, Exhibit A.

7. My case was not dismissed for failure to provide adequate protection as ordered by the court.

8. My case was not dismissed from for failure to perform the terms of a confirmed plan.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this December 29, 2020 at Fremont, California.

<u>/s/ Vikram Srinivasn</u>
VIKRAM SRINIVASAN

2

DECLARATION IN SUPPORT OF MOTION FOR ORDER EXTENDING AUTOMATIC STAY
CIVIC APP PAGE NO. 276

# EXHIBIT "A"

# EXHIBIT "A"

Josué Cristóbal Guerrero, Esq. (SBN 289039)
Edna Fok, Esq. (SBN 320599)
GOMEZ & SIMONE, APLC
3055 Wilshire Boulevard., Suite 550
Los Angeles, CA 90010
Telephone (855) 219-3333
Facsimile (818) 574-6730

Attorneys for Plaintiffs, Summitridge Venture Group, LLC and Vikram Srinivasan

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| SUMMITRIDGE VENTURE GROUP, LLC, a California Limited Liability Company; and VIKRAM SRINIVASAN, an individual. <br><br> Plaintiff, <br><br> vs. <br><br> FAY SERVICING, LLC, a Delaware Limited Liability Company; CIVIC HOLDINGS III TRUST; CIVIC REAL ESTATE HOLDINGS III, LLC, a Delaware Limited Liability Company; DOES 1 through 20, inclusive, <br><br> Defendant. | Case No.: 20SMCV00278 <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> **(1) BREACH OF CONTRACT;** <br> **(2) PROMISSORY ESTOPPEL;** <br> **(3) NEGLIGENT MISREPRESENTATION; and** <br> **(4) WRONGFUL FORECLOSURE;** |

Plaintiffs, SUMMITRIDGE VENTURE GROUP, LLC and VIKRAM SRINIVASAN (collectively, "Plaintiffs") by and through their counsel, hereby brings the instant First Amended Complaint against Defendants FAY SERVICING, LLC, CIVIC HOLDINGS III TRUST, CIVIC REAL ESTATE HOLDINGS III, LLC, and DOES 1 through 20, inclusive (collectively, "Defendants"), and alleges as follows:

-1-
FIRST AMENDED COMPLAINT

1

## THE NATURE OF THE ACTION

2    1.    This Complaint arises from a series of breaches of several forbearance

3    agreements and an option to purchase agreement entered between the parties in regard to a

4    the real property located at 1648 Summitridge Dr., Beverly Hills, CA 90210 and also

5    known as 1666 Summitridge Dr., Beverly Hills, CA 90210, APN: 4355-009-012 (the

6    "Subject Property"), which is legally described as follows:

7

8    That portion of Lot 5, of Tract No. 7996, in the City of Los Angeles, County of Los
    Angeles, State of California, as per map recorded in Book 186, Pages 4 through 7
9    inclusive of Maps, in the office of the County Recorder of said county, described as
    follows:
10

11    Beginning at the Southeast corner of said Lot 5; thence along the Southerly line of
    said Lot 5, South 87° 16' 45" West 254.19 feet to the Easterly line of Summitridge
12    Drive; thence along said last mentioned Easterly line North 4° 4027' 36" West 3.93
    feet to the beginning of a 157.67 foot radius tangent curve concave to the Southwest;
13    thence Northwesterly along the arc of said curve through a central angle of 46° 34'
    30" distance of 128.17 feet; thence North 630 8' 41" East 346.05 feet to an angle
14    point in the Easterly line of said Lot 5; thence along said last mentioned Easterly
    line South 0 46' 53" East 258.53 feet to the point of beginning.
15

16

17

18    2. Defendants, and each of them, have committed wrongful acts which resulted in the

19    wrongful foreclosure of the Subject Property, despite entering into a series of forbearance

20    agreements with Plaintiffs.

21    3.    Through this action, Plaintiffs seek damages resulting from Defendants' negligent

22    and unlawful conduct.

23

24    ## THE PARTIES

25    4. Plaintiff, SUMMITRIDGE VENTURE GROUP, is a California Limited Liability

26    Company headquartered in the County of Los Angeles, State of California.

27    5. Plaintiff, VIKRAM SRINIVASAN, is an individual residing in the County of

28    Alameda, State of California and the Sole Member of Summitridge Venture Group, LLC.

6. Upon information and belief, Defendant FAY SERVICING, LLC, as Servicer for Civic Holdings III Trust, is a Delaware Limited Liability Company doing business in the County of Los Angeles, State of California.

7. Upon information and belief, Defendant CIVIC HOLDINGS III TRUST is a Delaware statutory trust.

8. Upon information and belief, Defendant CIVIC REAL ESTATE HOLDINGS III, LLC, is a Delaware Limited Liability Company doing business in the County of Los Angeles, State of California.

9. Plaintiffs are unaware of the true names and capacities, whether individual, associate, partnership, corporate or otherwise, of Defendants fictitiously designated herein as DOES 1 through 20, inclusive, and therefore sues those Defendants by such fictitious names. Plaintiffs will seek leave from the Court to amend this Complaint when the true names and capacities of such fictitiously designated Defendants have been ascertained. Plaintiffs is informed and believes and based thereon alleges that each fictitiously designated Defendant, in some way as yet unknown to Plaintiff, is and was in some manner responsible for, or a party to, the acts alleged herein.

10. Plaintiffs are informed and believe and thereon alleges that at all times mentioned herein, each of the Defendants were acting as an agent, servant, or employee of the remaining defendants and were all times acting within the course and scope of the agency, service, or employment.

11. Plaintiffs are further informed and believe, and on that basis alleges, that each of the fictitiously named defendants is responsible in some manner for the events alleged herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

12. On or about September 25, 2018, Plaintiff SUMMITRIDGE VENTURE GROUP, LLC (hereinafter, "Plaintiff SVG") purchased the Subject Property from Civic Holdings V-N Trust, a Delaware statutory trust.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>The Underlying Loan</u>

13. The purchase of the Subject Property was partially financed by a loan in the principal sum of $3,500,000 from Civic Financial Services, LLC (hereinafter, the "Subject Loan"), and secured by a Deed of Trust recorded on September 25, 2018 as Document Number 20180977267 in the Official Records of the Recorder's Office in Los Angeles County (hereinafter, the "Deed of Trust"). A true and correct copy of the said Deed of Trust is attached hereto as **Exhibit A**.

14. On or about October 19, 2018, an Assignment of Deed of Trust was recorded as Document Number 20181067508 in the Official Records of the Recorder's Office in Los Angeles County, whereby Civic Financial Services, LLC re-assigned its rights, title, and interest in the Deed of Trust to Defendant CIVIC HOLDINGS III TRUST. A true and correct copy of the said Assignment of Deed of Trust is attached hereto as **Exhibit B**.

15. On or about January 7, 2019, a second Assignment of Deed of Trust was recorded as Document Number 20190017373 in the Official Records of the Recorder's Office in Los Angeles County, whereby Defendant CIVIC HOLDINGS III TRUST re-assigned its rights, title, and interest in the Deed of Trust to DLJ Mortgage Capital, Inc. A true and correct copy of the said Assignment of Deed of Trust is attached hereto as **Exhibit C**.

16. On or about February 12, 2019, a third Assignment of Deed of Trust was recorded as Document Number 20190128721 in the Official Records of the Recorder's Office in Los Angeles County, whereby DLJ Mortgage Capital, Inc. re-assigned its rights, title, and interest in the Deed of Trust to Defendant CIVIC HOLDINGS III TRUST. A true and correct copy of the said Assignment of Deed of Trust is attached hereto as **Exhibit D**.

17. On or about May 14, 2019, Defendant CIVIC HOLDINGS III TRUST caused a Notice of Default to be recorded against the Subject Property in the amount of $219,323.87 (hereinafter, the "NOD").  A true and correct copy of the said Notice of Default is attached hereto as **Exhibit E**.

18. On or about August 19, 2019, Defendant CIVIC HOLDINGS III TRUST caused a Notice of Trustee's Sale to be recorded against the Subject Property in the amount of $3,891,080.78 and setting a foreclosure sale date of September 13, 2019 (hereinafter, the

"NTS"). A true and correct copy of the said Notice of Default is attached hereto as **Exhibit F**.

19. In or about September 2019, Plaintiff SVG filed for Chapter 7 Bankruptcy, Case No 19-51885, before the United States Bankruptcy Court, Northern District of California, San Jose Division ("Bankruptcy"), which suspended the impending foreclosure sale date of September 13, 2019.

## The First Forbearance Agreement

20. In or about November 27, 2019, Plaintiff SVG and Defendant FAY SERVICING, LLC, as servicer and attorney in fact for Defendant, CIVIC HOLDINGS III TRUST (collectively, "Lenders"), entered into a written forbearance agreement, whereby Lenders agreed to forebear from foreclosing on the Subject Property until May 1, 2020, if Plaintiff SVG makes a payment in the sum of $712,823.87 on or before November 26, 2019, and monthly interest payments commencing from December 1, 2019 in the amount of $52,500.00 (hereinafter, the "First Forbearance Agreement"). A true and correct copy of the said Forbearance Agreement is attached hereto as **Exhibit G**.

21. As a result, on November 15, 2019, Plaintiff, VIKRAM SRINIVASAN (hereinafter, "Plaintiff Srinivasan"), who is Plaintiff SVG's managing member, personally wired the sum of $250,000.00 to Defendant FAY SERVICING, LLC from his own personal bank account. See **Exhibit H**.

22. Plaintiff Srinivasan had no obligation to personally contribute any funds to SVG or Defendants and was specifically induced to do so by Defendants.

23. However, at that time, Plaintiff SVG was unable to pay the remaining sum of $462,823.87 by November 26, 2019 as Plaintiff SVG's corporate bank account was frozen due to an unrelated matter.

## The Second Forbearance Agreement

24. On or about December 2, 2019, Plaintiff Srinivasan, personally filed for Chapter 11 Bankruptcy, Case No 19-42729, before the United States Bankruptcy Court, Northern

-5-
FIRST AMENDED COMPLAINT

District of California, San Jose Division ("Member Bankruptcy"), which, again, suspended the impending foreclosure sale to December 4, 2019.

25. On December 3, 2019, Mr. David M. Poitras, counsel for Lenders, proposed a new forbearance agreement to Plaintiff SVG via email that if payment in the sum of $515,323.87 is received by 5:00 p.m. on December 3, 2019,  along with a dismissal of the pending Chapter 11 Bankruptcy case, Defendant Civic Holdings III Trust would agree to forbear on conducting a trustee's sale in accordance to the terms and conditions set forth in the November 27, 2019 Forbearance Agreement. See **Exhibit I**.

26. While Plaintiff SVG generally agreed with Mr. Poitras' proposition to enter into a new forbearance agreement through the payment of the sum of $515,323.87, Plaintiff SVG informed Mr. Poitras that the said funds could not be wired no later than December 5, 2019. See **Exhibit I**.

27. That day, Mr. Poitras subsequently represented that if the $515,323.87 payment is received on or before 11:00 a.m. on Wednesday December 4, 2019 and that an *ex parte* Motion to Dismiss the Chapter 11 Bankruptcy case is filed on or before 12:00 p.m. on December 5, 2019, Defendant Civic Holdings III Trust would forbear from conducting a trustee's sale until the later of December 6, 2019, or the date of entry of an order dismissing the Chapter 11 Bankruptcy, but, in no event later than December 13, 2019. See **Exhibit I**.

28. Thereafter, a telephone conference occurred between the parties, whereas the Lenders agreed to briefly forbear from conducting a trustee's sale until the later of December 6, 2019 to continue discussions, if a payment of $112,823.87 is received on or before 11:00 a.m. on December 4, 2019, the same day of the impending foreclosure (hereinafter, the "Second Forbearance Agreement").

29. As a result, in the morning of December 4, 2019 before 11:00 a.m., Plaintiff Srinivasan, wired an additional sum of $112,823.87 to Defendant FAY SERVICING, LLC from his own personal bank account. See **Exhibit J**.

30. Plaintiff Srinivasan had no obligation to personally contribute any funds to SVG or Defendants and was specifically induced to do so by Defendants' representations.

31. Despite the Plaintiffs' compliance with the Second Forbearance Agreement and the existence of the pending Chapter 11 Member Bankruptcy, on December 4, 2019, Defendant CIVIC HOLDINGS III TRUST proceeded with the foreclosure and caused a Trustee's Deed upon Sale to be recorded against the Subject Property in the amount of $4,356,406.73 in unpaid debt (hereinafter, the "TDUS").  A true and correct copy of the said Trustee's Deed upon Sale is attached hereto as **Exhibit K**.

32. The foreclosure on December 4, 2019 was in violation of the Chapter 11 Member Bankruptcy stay and is void as a matter of law.

<u>Representations and Events Following the Second Forbearance Agreement</u>

33. On December 4, 2019, after the foreclosure of the Subject Property, Mr. Poitras represented to Plaintiff SVG that if the remaining balance of $402,500.00 is received and a Motion to Dismiss the Chapter 11 Bankruptcy case is filed on or before December 6, 2019, Defendant Civic Holdings III Trust would forbear from recording the TDUS to allow for further discussion on the matter. See **Exhibit I**.

34. On or about January 3, 2020, a Quitclaim Deed was recorded as Document Number 20200005464 in the Official Records of the Recorder's Office in Los Angeles County, whereby Defendant CIVIC HOLDINGS III TRUST conveyed its rights, title, and interest in the Subject Property to Defendant CIVIC REAL ESTATE HOLDINGS III, LLC. A true and correct copy of the said Assignment of Deed of Trust is attached hereto as **Exhibit L**.

35. On or about January 8, 2020, the Chapter 11 Bankruptcy case was dismissed, and Plaintiff SVG was informed that its corporate bank account would be unfrozen, and as a result, would be able to make the $402,500.00 payment to Lenders.

The Option to Purchase Agreement

36.  On or about January 9, 2020, a phone call was initiated between Plaintiff SVG and Tom French, the asset manager for the Lenders and purportedly Defendant CIVIC REAL ESTATE HOLDINGS III, LLC, wherein Defendants agreed to effectively rescind

the trustee's sale by re-selling the Subject Property from Defendant CIVIC REAL ESTATE HOLDINGS III, LLC to Plaintiff SVG for: (i) the amount in default of $454,000.00, and (ii) the reinstatement or refinance of the $3,500,000 loan (hereinafter, the "Option to Purchase Agreement").

37. However, on January 23, 2020, the Lenders and Defendant CIVIC REAL ESTATE HOLDINGS III, LLC reneged on the Option to Purchase Agreement despite Plaintiff SVG's willingness and ability to perform all conditions as set forth in the Option to Purchase Agreement by making a payment of $454,000.00 and refinancing the $3,500,000 loan.

38. Moreover, despite receiving the sum of $362,823.87 from Plaintiffs, Lenders have failed to apply these payments to the outstanding balance on the Subject Loan. Upon information and belief, the said sum was sufficient to bring the Subject Loan out of default and was sufficient to cover approximately 7 monthly payments under the Subject Loan.

39. Most egregiously, Lenders have refused to return the sum of $362,823.87 to Plaintiff Srinivasan, which was paid to Defendants from his own personal funds rather than from Plaintiff SVG.

## FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
#### (Against All Defendants)

40. Plaintiffs realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

41. The elements of a cause of action for breach of contract are: (1) existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach. *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008).

42. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying,

-8-
FIRST AMENDED COMPLAINT

or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement. *Moreland Development Co. v. Gladstone Holmes, Inc.* (1982) 186 Cal.Rptr. 6, 135 Cal.App.3d 973; *Matzen v. Horwitz* (1951) 228 P.2d 841, 102 Cal.App.2d 884; *Brown v. Superior Court in and for Los Angeles County* (1950) 212 P.2d 878, 34 Cal.2d 559.

<u>Breach of the Second Forbearance Agreement</u>

43. On or about December 3, 2019, Plaintiff SVG, on the one hand, and Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST (collectively, "Lenders"), through its attorney, Mr. David M. Poitras, on the other hand, entered into the Second Forbearance Agreement, wherein the Lenders agreed to briefly forbear from conducting a trustee's sale until the later of December 6, 2019, if a payment of $112,823.87 is received on or before 11:00 a.m. on December 4, 2019, the same day of the impending foreclosure.

44. In the morning of December 4, 2019 before 11:00 a.m., Plaintiff Srinivasan, wired the sum of $112,823.87 to Defendant FAY SERVICING, LLC from his own personal bank account. See **Exhibit J**.

45. As a result, Plaintiffs have performed all of the terms and conditions of the Second Forbearance Agreement by submitting a payment of $112,823.87 prior to 11:00 a.m. on December 4, 2019.

46. Despite the Plaintiffs' full compliance with the Second Forbearance Agreement, on December 4, 2019, Defendant CIVIC HOLDINGS III TRUST proceeded with the foreclosure and caused a Trustee's Deed upon Sale to be recorded against the Subject Property in the amount of $4,356,406.73 in unpaid debt (hereinafter, the "TDUS"). A true and correct copy of the said Trustee's Deed upon Sale is attached hereto as **Exhibit K**.

47. As a result, the Lenders breached the Second Forbearance Agreement by proceeding with the foreclosure and causing a Trustee's Deed upon Sale to be recorded against the Subject Property.

### Breach of the Option to Purchase Agreement

48. On or about January 9, 2020, Plaintiff SVG, on the one hand, and Defendants FAY SERVICING, LLC, CIVIC HOLDINGS III TRUST and CIVIC REAL ESTATE HOLDINGS III, LLC, through their asset manager, Tom French, agreed to effectively rescind the trustee's sale by re-selling the Subject Property from Defendant CIVIC REAL ESTATE HOLDINGS III, LLC to Plaintiff SVG for: (i) the amount in default of $454,000.00, and (ii) the reinstatement or refinance of the $3,500,000 loan.

49. On or about January 23, 2020, Plaintiff SVG attempted to perform all terms and conditions as set forth in the Option to Purchase Agreement by making a payment of $454,000.00 and starting the process of refinancing the $3,500,000 loan.

50. However, the Lenders and Defendant CIVIC REAL ESTATE HOLDINGS III, LLC breached the Option to Purchase Agreement by reneging on terms of the Option to Purchase Agreement and refused to perform.

### Breach of the Underlying Loan Agreement

51. In or about September 25, 2018, Defendant, CIVIC HOLDINGS III TRUST's predecessor, Civic Financial Services, LLC, entered into an agreement with Plaintiff SVG wherein it would loan Plaintiff the principal sum of $3,500,000 in exchange for monthly interest and principal payments (hereinafter, the "Loan Agreement").

52. In or about February 12, 2019, the rights, title, and interest in the Subject Loan were re-assigned to Defendant CIVIC HOLDINGS III TRUST.

53. Upon information and belief, since February 12, 2019, Defendant FAY SERVICING, LLC, acted as the loan servicer and attorney in fact for Defendant, CIVIC HOLDINGS III TRUST.

54. As lenders, Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST owed a duty of good faith and fair dealing under the Loan Agreement to provide an accurate account of the Subject Loan and to properly apply loan payments made by the Plaintiffs.

55. Between November of 2019 to January of 2020, the Lenders have received the sum of $362,823.87 directly from Plaintiff Srinivasan's personal funds in reliance on the aforementioned agreements with Plaintiff SVG.

56. Upon information and belief, the sum of $362,823.87 paid to Lenders was sufficient to bring the Subject Loan out of default and was sufficient to cover approximately 7 monthly payments under the Subject Loan

57. Upon information and belief, the Lenders have breached the Loan Agreement by failing to properly apply these payments to the outstanding balance on the Subject Loan.

58. As a result of Lenders' breach of the Second Forbearance Agreement, Option to Purchase Agreement, and the underlying Loan Agreement, Plaintiff SVG has suffered general and special damages in an amount to be determined at trial.

59. Additionally, Plaintiff Srinivasan has suffered general and special damages in an amount to be determined at trial, but not less than $362,823.87, which was paid from his personal funds, to which Lenders had no right to keep or withhold from Plaintiff Srinivasan, individually.

## SECOND CAUSE OF ACTION
### PROMISSORY ESTOPPEL
### (Against All Defendants)

60. Plaintiffs realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

61. The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel

1
2

must be injured by his reliance. *Flintco Pacific, Inc. v. TEC Management Consultants, Inc.* (2016) 1 Cal.App.5th 727.

3
4
5
6

62. Courts have held that promissory estoppel claims in this context are exempt from the statute of frauds.  See *Postlewaite v. Wells Fargo Bank N.A.,* 2013 WL 2443257, at *4 (N.D. Cal. June 4, 2013); *Secrest v. Sec. Nat'l Mrtg. Loan Trust 2002-2*, 1167 Cal. App. 4th 544 (2008).

7
8
9

63. Between November of 2019 to January of 2020, Defendants FAY SERVICING, LLC, CIVIC HOLDINGS III TRUST, and CIVIC REAL ESTATE HOLDINGS III, LLC made the following representations and promises to Plaintiffs:

10
11
12
13
14
15

     a. "First Forbearance Agreement" - On or about November 27, 2019, Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST agreed to forebear from foreclosing on the Subject Property until May 1, 2020, if Plaintiff SVG makes a payment in the sum of $712,823.87 on or before November 26, 2019, and monthly interest payments commencing from December 1, 2019 in the amount of $52,500.00;

16
17
18
19
20

     b. "Second Forbearance Agreement" - On or about December 3, 2019, Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST, through its attorney, Mr. David M. Poitras, agreed to briefly forebear from conducting a trustee's sale until the later of December 6, 2019, if a payment of $112,823.87 is received on or before 11:00 a.m. on December 4, 2019;

21
22
23
24
25
26
27

     c. "Option to Purchase Agreement" - On or about January 9, 2020, Defendants FAY SERVICING, LLC, CIVIC HOLDINGS III TRUST, and CIVIC REAL ESTATE HOLDINGS III, LLC, through its asset manager, Mr. Tom French, represented to Plaintiff SVG that it would agree to effectively rescind the trustee's sale by re-selling the Subject Property from Defendant CIVIC REAL ESTATE HOLDINGS III, LLC to Plaintiff SVG for: (i) the amount in default of $454,000.00, and (ii) the reinstatement or refinance of the $3,500,000 loan.

28

64. Plaintiffs relied on the above-referenced representations and promises by:

a. Tendering the sum of $250,000.00 to Defendant FAY SERVICING, LLC from Plaintiff Srinivasan's own personal funds on November 15, 2019 as partial performance pursuant to the First Forbearance Agreement;

b. Tendering the sum of $112,823.87 to Defendant FAY SERVICING, LLC from Plaintiff Srinivasan's own funds on December 4, 2019 as full performance pursuant to the Second Forbearance Agreement; and

c. Foregoing other actions to avoid foreclosure, such as selling the Subject Property at a private sale or attempting to obtain a refinance of the Subject Loan with other lenders.

65. Defendants have made the above referenced representations without reasonable grounds of believing it to be true.

66. The purpose of the Defendants' promises was to provide Plaintiff SVG with an opportunity to cure the default on the Subject Loan. However, the Defendants never intended to provide Plaintiff SVG with a forbearance as evidenced by the subsequent foreclosure of the Subject Property despite Plaintiffs' tender of a payment in the sum of $112,823.87 pursuant to the Second Forbearance Agreement and the Defendants' knowledge that Plaintiff SVG was ready and willing to fully perform under the Option to Purchase Agreement.

67. Plaintiffs are informed and believes and thereon alleges that at the time Defendants made said representations, Defendants made such representations with the intent to induce Plaintiffs' reliance into making a total of $362,823.87 in payments without applying these payments to the outstanding balance on the Subject Loan and foregoing other actions to avoid foreclosure.

68. The actions of Defendants and its agents caused Plaintiffs to justifiably believe that their submission of payments would be accepted, and that the sale date would be postponed or that the trustee's sale would be rescinded, such that they had foregone other actions to avoid foreclosure available to them.

69. Plaintiffs did indeed rely on said misrepresentations, by providing Lenders with a total of $362,823.87 in payments from Plaintiff Srinivasan's own personal funds, to which

-13-

FIRST AMENDED COMPLAINT

Lenders had no right to keep or withhold from Plaintiff Srinivasan, individually, with the belief that the foreclosure of the Subject Property would be suspended. Had Plaintiffs known of the falsity of the Defendants' representations and omissions, they would have taken other actions to avoid such harms as set forth herein.

70. Plaintiffs' reliance upon the Defendants' misrepresentations was reasonable by the repeated oral statements and omissions of material fact by Defendants throughout the entire process, and Plaintiffs' belief that no foreclosure sale could occur while the forbearance agreements were in place.

71. As a result of Defendants' breach of the Second Forbearance Agreement and the Option to Purchase Agreement, Plaintiff SVG has suffered general and special damages in an amount to be determined at trial.

72. Additionally, Plaintiff Srinivasan has suffered general and special damages in an amount to be determined at trial, but not less than $362,823.87, which was paid from his personal funds, to which Lenders had no right to keep or withhold from Plaintiff Srinivasan, individually.

## THIRD CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
### (Against All Defendants)

73. Plaintiff realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

74. The elements of negligent misrepresentation are: (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damages. *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC,* 158 Cal.App4th 226 (2d Dist. 2007); *Century Sur. Co. v. Crosby Ins. Inc.,* 124 Cal.App4th 116 (4th Dist. 2004).

75. Between November of 2019 to January of 2020, Defendants FAY SERVICING, LLC, CIVIC HOLDINGS III TRUST, and CIVIC REAL ESTATE HOLDINGS III, LLC made the following representations and promises to Plaintiffs:

    a. "First Forbearance Agreement" - On or about November 27, 2019, Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST agreed to forebear from foreclosing on the Subject Property until May 1, 2020, if Plaintiff SVG makes a payment in the sum of $712,823.87 on or before November 26, 2019, and monthly interest payments commencing from December 1, 2019 in the amount of $52,500.00;

    b. "Second Forbearance Agreement" - On or about December 3, 2019, Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST, through its attorney, Mr. David M. Poitras, agreed to briefly forbear from conducting a trustee's sale until the later of December 6, 2019, if a payment of $112,823.87 is received on or before 11:00 a.m. on December 4, 2019;

    c. "Option to Purchase Agreement" - On or about January 9, 2020, Defendants FAY SERVICING, LLC, CIVIC HOLDINGS III TRUST, and CIVIC REAL ESTATE HOLDINGS III, LLC, through its asset manager, Mr. Tom French, represented to Plaintiff SVG that it would agree to effectively rescind the trustee's sale by re-selling the Subject Property from Defendant CIVIC REAL ESTATE HOLDINGS III, LLC to Plaintiff SVG for: (i) the amount in default of $454,000.00, and (ii) the reinstatement or refinance of the $3,500,000 loan.

76. Plaintiffs relied on the above-referenced representations and promises by:

    a. Tendering the sum of $250,000.00 to Defendant FAY SERVICING, LLC from Plaintiff Srinivasan's own personal funds on November 15, 2019 as partial performance pursuant to the First Forbearance Agreement;

    b. Tendering the sum of $112,823.87 to Defendant FAY SERVICING, LLC from Plaintiff Srinivasan's own funds on December 4, 2019 as full performance pursuant to the Second Forbearance Agreement; and

-15-
FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

c.  Foregoing other actions to avoid foreclosure, such as selling the Subject Property at a private sale or attempting to obtain a refinance of the Subject Loan with other lenders.

77. Defendants have made the above referenced representations without reasonable grounds of believing it to be true.

78. The purpose of the Defendants' promises was to provide Plaintiff SVG with an opportunity to cure the default on the Subject Loan.  However, the Defendants never intended to provide Plaintiff SVG with a forbearance as evidenced by the subsequent foreclosure of the Subject Property despite Plaintiffs' tender of a payment in the sum of $112,823.87 pursuant to the Second Forbearance Agreement and the Defendants' knowledge that Plaintiff SVG was ready and willing to fully perform under the Option to Purchase Agreement.

79. Plaintiffs are informed and believes and thereon alleges that at the time Defendants made said representations, Defendants made such representations with the intent to induce Plaintiffs' reliance into making a total of $362,823.87 in payments without applying these payments to the outstanding balance on the Subject Loan and foregoing other actions to avoid foreclosure.

80. The actions of Defendants and its agents caused Plaintiffs to justifiably believe that their submission of payments would be accepted, and that the sale date would be postponed or that the trustee's sale would be rescinded, such that they had foregone other actions to avoid foreclosure available to them.

81. Plaintiffs did indeed rely on said misrepresentations, by providing Lenders with a total of $362,823.87 in payments from Plaintiff Srinivasan's own personal funds, to which Lenders had no right to keep or withhold from Plaintiff Srinivasan, individually, with the belief that the foreclosure of the Subject Property would be suspended. Had Plaintiffs known of the falsity of the Defendants' representations and omissions, they would have taken other actions to avoid such harms as set forth herein.

82. Plaintiffs' reliance upon the Defendants' misrepresentations was reasonable by the repeated oral statements and omissions of material fact by Defendants throughout the

entire process, and Plaintiffs' belief that no foreclosure sale could occur while the forbearance agreements were in place.

83. As a result of Defendants' breach of the Second Forbearance Agreement and the Option to Purchase Agreement, Plaintiff SVG has suffered general and special damages in an amount to be determined at trial.

84. Additionally, Plaintiff Srinivasan has suffered general and special damages in an amount to be determined at trial, but not less than $362,823.87, which was paid from his personal funds, to which Lenders had no right to keep or withhold from Plaintiff Srinivasan, individually.

## **FOURTH CAUSE OF ACTION**
## **WRONGFUL FORECLOSURE**
### **(Against Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST)**

85. Plaintiffs realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

86. The elements of a wrongful foreclosure cause of action are: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering. *Citrus El Dorado, LLC v. Chicago Title Co.* (2019) 32 Cal.App.5th 943.

Wrongful Foreclosure due to Breach of the Second Forbearance Agreement

87. On or about December 3, 2019, Plaintiff SVG, on the one hand, and Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST (collectively, "Lenders"), through its attorney, Mr. David M. Poitras, on the other hand, entered into the Second Forbearance Agreement, wherein the Lenders agreed to briefly forbear from conducting a trustee's sale until the later of December 6, 2019, if a payment of $112,823.87 is received on or before 11:00 a.m. on December 4, 2019, the same day of the impending foreclosure.

88. In the morning of December 4, 2019 before 11:00 a.m., Plaintiff Srinivasan, wired the sum of $112,823.87 to Defendant FAY SERVICING, LLC from his own personal bank account. See **Exhibit J**.

89. As a result, Plaintiffs have performed all of the terms and conditions of the Second Forbearance Agreement by submitting a payment of $112,823.87 prior to 11:00 a.m. on December 4, 2019.

90. Despite the Plaintiffs' full compliance with the Second Forbearance Agreement, on December 4, 2019, Defendant CIVIC HOLDINGS III TRUST proceeded with the foreclosure and caused a Trustee's Deed upon Sale to be recorded against the Subject Property in the amount of $4,356,406.73 in unpaid debt (hereinafter, the "TDUS"). A true and correct copy of the said Trustee's Deed upon Sale is attached hereto as **Exhibit K**.

91. As a result, the Lenders breached the Second Forbearance Agreement by proceeding with the foreclosure and causing a Trustee's Deed upon Sale to be recorded against the Subject Property.

<u>Wrongful Foreclosure due to Violation of 11 U.S. Code § 362</u>

92. Moreover, the TDUS was wrongfully recorded against the Subject Property at a time while the Member Bankruptcy was still pending and an automatic stay prohibiting foreclosure of a mortgage or deed of trust pursuant to 11 U.S. Code § 362 was still in full force and effect.

93. Upon information and belief, the Defendants' wrongful recording of the TDUS was willfully and maliciously done with full knowledge of the automatic stay and the Member Bankruptcy as the Defendants had expressly requested the Plaintiffs to file an *ex parte* Motion to Dismiss the Chapter 11 Bankruptcy case on or about December 3, 2019.

<u>Wrongful Foreclosure due to Invalid Credit Bid</u>

94. On December 4, 2019, Defendant CIVIC HOLDINGS III TRUST proceeded with the foreclosure and caused a Trustee's Deed upon Sale to be recorded against the Subject Property in the amount of $4,356,406.73 in unpaid debt (hereinafter, the "TDUS"). A true and correct copy of the said Trustee's Deed upon Sale is attached hereto as **Exhibit K**.

95. Upon information and belief, the Defendants have failed to apply the sum of $362,823.87 received from Plaintiffs to the outstanding balance on the Subject Loan, which resulted in an credit bid, that was in actuality $362,823.87 higher than other potential purchasers at public auction.

96. As a result, Defendant CIVIC HOLDINGS III TRUST effectively conducted the sale in a way calculated to chill the bidding or depress the prices offered at the trustee's sale as they made an invalid credit bid.

97. Accordingly, Plaintiffs are informed and believes and thereon alleges that the foreclosure sale process was fraudulent, and/or willfully oppressive due to the invalid bid.

98. Accordingly, the foreclosure of the Subject Property on December 4, 2019 was illegal, fraudulent, or willfully oppressive given the fact that Plaintiff complied with the terms as set forth in the Second Forbearance Agreement, the TDUS was recorded in violation of 11 U.S. Code § 362, and due to the invalid credit bid made by Defendant CIVIC HOLDINGS III TRUST.

99. As a result of Defendants' tortious conduct, Plaintiff SVG has suffered general and special damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs prays for judgment against the Defendants, and each of them, as follows:

1. For the Trustee's Deed upon Sale recorded against the Subject Property on December 4, 2019 as Document Number 20191417929 in the Official Records of the County of Los Angeles to be rescinded;

2. For the Quitclaim Deed recorded against the Subject Property on January 3, 2020 as Document Number 20200005464 in the Official Records of the County of Los Angeles to be rescinded;

3. For title to the Subject Property be restored to Plaintiff SVG;

4. For compensatory, special and general damages in an amount according to proof at trial, but not less than $362,823.87;

Case: 20-51735   Doc# 23-1   Filed: 12/29/20   Entered: 12/29/20 16:04:42   Page 22 of 114
CIVIC APP PAGE NO. 296

5.   For punitive and exemplary damages in an amount to be determined by the Court;

6.   For an order compelling Defendants to disgorge the sum of $362,823.87 wrongfully taken from Plaintiff Srinivasan and returning to him the same, plus interest thereon at the statutory rate from the date the funds were first received from Plaintiff Srinivasan;

7.   For an imposition of a constructive trust on the Subject Property;

8.   For the imposition of a constructive trust in the sum of $362,823.87 paid to Defendants FAY SERVICING, LLC and CIVIC HOLDINGS III TRUST by Plaintiff Srinivasan;

9.   For reasonable attorney fees and costs in this action; and

10.  For such other and further relief as the Court may deem proper.

Dated:  October __27__, 2020

GOMEZ & SIMONE, APLC

_____
Josué Cristóbal Guerrero, Esq.
Edna Fok, Esq.
Attorney for Plaintiffs,
SUMMITRIDGE VENTURE GROUP, LLC and
VIKRAM SRINIVASAN

-20-
FIRST AMENDED COMPLAINT

# EXHIBIT A

 

**This page is part of your document - DO NOT DISCARD**



# 20180977267



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**09/25/18 AT 08:00AM**

**Pages:
0035**

| | |
|---|---|
| FEES: | 186.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 186.00 |



**L E A D S H E E T**



**201809253300018**

**00015762442**

**009361350**

**SEQ:
02**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E492668

E08_180924_6*****1

RECORDING REQUESTED BY

*Civic Financial Services, LLC*

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME **Civic Financial Services, LLC**

STREET ADDRESS 2015 Manhattan Beach Blvd., Ste. 106

CITY, STATE & ZIP CODE Redondo Beach, CA 90278

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing

**Title of Document**

**Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).**

Exempt from the fee per GC 27388.1 (a) (2); This document is subject to Documentary Transfer Tax

☑ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

USA-NTC

**Recording Requested by:**
Civic Financial Services, LLC

**And After Recording Return To:**
Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA  90278

091902235

# Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing

Loan Number: 0118072548

## 1. Definitions

Words used in multiple sections of this document are defined below and other words are defined in Sections 3.3, 3.10, 3.12, 3.17, 3.18, and 3.19.  Certain rules regarding the usage of words used in this document are also provided in Section 3.15.

"**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

"**Borrower**" is SUMMITRIDGE VENTURE GROUP, LLC , a California Limited Liability Company; BORROWER'S ADDRESS IS 1102 WRIGLEY WAY, Milpitas, CA 95035; Borrower is the trustor under this Security Instrument.

"**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

"**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfer initiated by telephone, wire transfers, and automated clearinghouse transfers.

"**Escrow Items**" means those items that are described in Section 3.3.

"**Lender**" is CIVIC FINANCIAL SERVICES, LLC; Lender is a LIMITED LIABILITY COMPANY organized and existing under the laws of CALIFORNIA; Lender's address is 2015 MANHATTAN BEACH BLVD

CIVIC APP PAGE NO. 301

STE 106, REDONDO BEACH, CALIFORNIA 90278; Lender is the beneficiary under this Security Instrument.

"**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

"**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverage described in Section 3.5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

"**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

"**Note**" means the promissory note signed by Borrower and dated September 11, 2018. The Note states that Borrower owes Lender Three Million Five Hundred Thousand Dollars and Zero Cents Dollars (US$3,500,000.00) plus interest; Borrower has promised to pay interest on this debt in regular Periodic Payments and to pay the debt in full not later than October 01, 2019.

"**Periodic Payment**" means the regularly scheduled amount due for (i) interest under the Note, plus (ii) any amounts payable under Section 3.3 of this Security Instrument.

"**Property**" means the property that is described below under the heading "Transfer of Rights in the Property".

"**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 *et seq.*) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation that governs the same subject matter. As used in this Security Instrument, "**RESPA**" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not quality as a "federally related mortgage loan" under RESPA.

"**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower:

| | |
|---|---|
| [] Condominium Rider | [] Planned Unit Development Rider |
| [] Revocable Trust Rider | [] Other: |
| [] Other: | [] Other: |

"**Security Instrument**" means this document, which is dated September 11, 2018 together with all Riders to this document.

"**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

"**Trustee**" is USA National Title Company, Inc.

1901 Orange Tree Lane # 220RedlandsSan Bernardino92374

2300-1002 / 501712.10                                    2

CIVIC APP PAGE NO. 302

## 2. Transfer of Rights in the Property

This Security Instrument secures to Lender:

- (a) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and,

- (b) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

STATE: CA

COUNTY: Los Angeles

| Type of Recording Jurisdiction | Name of Recording Jurisdiction | A.P.N. |
|---|---|---|
| County | Los Angeles | 4355-009-012 |

Which currently has the address of: 1666 Summitridge Drive, Beverly Hills, CA 90210

more fully described by the legal description attached as Exhibit A. *SEE ATTACHED HERETO AND made a part thereof exhibit A*

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the **"Property"**.

BORROWER REPRESENTS, WARRANTS AND COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

## 3. Uniform Covenants

Borrower and Lender covenant and agree as follows:

### 3.1 Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges

Borrower shall pay when due the Principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3.3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b)

3

CIVIC APP PAGE NO. 303

money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 3.14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but except as required by Applicable Law, Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

### 3.2 Application of Payments or Proceeds
Except as otherwise described in this Section 3.2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

### 3.3 Funds for Escrow Items
Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "**Funds**") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property,

CIVIC APP PAGE NO. 304

if any; (c) premiums for any and all insurance required by Lender under Section 3.5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 3.9. These items are called "**Escrow Items.**" At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and if so required, such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3.3. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 3.8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 3.8 and pay such amount and Borrower shall then be obligated under Section 3.8 to repay to Lender any such amount so paid by Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 3.14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.3. Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in

escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

### 3.4 Charges; Liens

Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 3.4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

### 3.5 Property Insurance

Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a onetime charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

CIVIC APP PAGE NO. 306

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained by Lender might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 3.5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, to the extent permitted by Applicable Law, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 3.2.

If Borrower fails to do so in a timely manner, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate

and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 5.1 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

### 3.6 Preservation, Maintenance and Protection of the Property; Inspections

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or permit waste to be committed on the Property. Notwithstanding the fact that Borrower is not residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 3.5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

### 3.7 Borrower's Loan Application

Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning the ABSENCE OF ANY OCCUPANCY OR USE OF THE PROPERTY AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER.

### 3.8 Protection of Lender's Interest in the Property and Rights Under this Security Instrument

If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has permitted the Property to remain vacant, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing

and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 3.8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 3.8.

Any amounts disbursed by Lender under this Section 3.8 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement, and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground or master lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

### 3.9 Mortgage Insurance

(a)   If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect, and Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. To the fullest extent permitted by Applicable Law, such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay

CIVIC APP PAGE NO. 309

the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender' s requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 3.9 affects Borrower's obligation to pay interest at the rate provided in the Note.

(b)     Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

(c)     Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

(d)     As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance". Further:

(1)     **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(2)     **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**3.10 Assignment of Miscellaneous Proceeds; Forfeiture**

(a)     To the fullest extent permitted by Applicable Law, all Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

(b)     If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity

to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. To the fullest extent permitted by Applicable Law, Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, then to the fullest extent permitted by Applicable Law, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 3.2.

(c)     In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

(d)     In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

(e)     In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, to the fullest extent permitted by Applicable Law, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

(f)     If Borrower fails to pursue recovery of Miscellaneous Proceeds in a diligent manner, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. **"Opposing Party"** means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

(g)     Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default if acceleration has not occurred by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender' s interest in the Property are hereby assigned and shall be paid to Lender.

(h)     All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 3.2.

### 3.11 Borrower Not Released; Forbearance By Lender Not a Waiver

Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

### 3.12 Joint and Several Liability; Co-signers; Successors and Assigns Bound

Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"):

(a)     is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument;

(b)     is not personally obligated to pay the sums secured by this Security Instrument; and

(c)     agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 3.17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 3.18) and benefit the successors and assigns of Lender.

### 3.13 Loan Charges

CIVIC APP PAGE NO. 312

Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, Property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits (and for purposes of making any such determination as to whether any interest exceeds the lawful maximum, it is understood and agreed that all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender), then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**3.14 Notices**
All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the address designated in the Note unless Borrower has designated a substitute notice address by no less than ten (10) days prior notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**3.15 Governing Law; Severability; Rules of Construction**
This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such

silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument:

(a)     words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender;

(b)     words in the singular shall mean and include the plural and vice versa; and

(c)     the word "may" gives sole discretion without any obligation to take any action.

### 3.16 Borrower's Copy
Borrower shall be given one copy of the Note and of this Security Instrument.

### 3.17 Transfer of the Property or a Beneficial Interest in Borrower
As used in this Section 3.17, **"Interest in the Property"** means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 3.14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### 3.18 Sale of Note; Change of Loan Servicer; Notice of Grievance
The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the **"Loan Servicer"**) that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party' s actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 3.14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 5.1 and the notice of acceleration given to Borrower pursuant to Section 3.17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 3.18.

### 3.19 Hazardous Substances

As used in this Section 3.19: (a) "**Hazardous Substances**" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "**Environmental Law**" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "**Environmental Cleanup**" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "**Environmental Condition**" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

### 3.20 Additional Property Subject to the Security Instrument

In addition to the Property elsewhere herein described, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument:  building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument.

### 3.21 Use of Property; Compliance with Law

Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

### 3.22 Subordinate Liens

Except as permitted by Applicable Law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

### 3.23 Rent Loss Insurance

Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 3.5.

### 3.24 Assignment of Leases

Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this Section 3.24, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

### 3.25 Assignment of Rents; Appointment of Receiver; Lender in Possession

Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 5.1 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the

CIVIC APP PAGE NO. 316

Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless Applicable Law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 3.8.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

### 3.26 Security Agreement

This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property. By executing and delivering this Security Instrument, Borrower hereby grants to Lender and Trustee, as security for Borrower's performance of its obligations under the Note, this Security Instrument and all of the other loan documents, a security interest in the items described in Section 3.20 above to the fullest extent that such items may be subject to the Uniform Commercial Code.

### 3.27 Pledge of Monies Held

Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender, including, without limitation, any sums deposited in the escrow as provided in Section 3.3 above, insurance proceeds as provided in Section 3.5 above and Miscellaneous Proceeds as provided in Section 3.10 above, as additional security for Borrower's performance of its obligations under the Note, this Security Instrument and all of the other loan documents, until expended or applied as provided in this Security Instrument.

CIVIC APP PAGE NO. 317

### 3.28 Cross-Default Provision

Any breach or default by Borrower or any Affiliate of Borrower under any note or agreement to which Lender or any Affiliate of Lender is also a party (or has an interest) shall be a breach under this Security Instrument, and Lender may invoke any of the remedies permitted by this Security Instrument.

### 4. Balloon Payment Covenant

Borrower and Lender further covenant and agree as follows:

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER WITH WHICH BORROWER HAS THIS LOAN, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER.

### 5. Non-Uniform Covenants

Borrower and Lender further covenant and agree as follows:

### 5.1 Acceleration; Remedies

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 3.17 unless Applicable Law provides otherwise) or in the Note. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand, and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 5.1, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

18

CIVIC APP PAGE NO. 318

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

This Section 5.1 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Section 6 below.

**5.2 Reconveyance**
Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

This Section 5.2 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Section 6 below.

**5.3 Substitute Trustee**
Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**5.4 Statement of Obligation Fee**
Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**5.5 Use of Property**
BORROWER WILL AT NO TIME DURING THE TERM OF THE LOAN INHABIT THE PROPERTY. THE PROPERTY IS OWNED AND HELD BY BORROWER AS AN INVESTMENT PROPERTY. NONE OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER NOW OCCUPIES OR USES THE PROPERTY, AND NONE OF THEM HAS ANY PRESENT INTENTION TO OCCUPY OR USE THE PROPERTY IN THE FUTURE AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER. EACH OF BORROWER AND ITS OWNERS, EMPLOYEES AND OTHER AFFILIATES NOW OCCUPIES AND USES

OTHER PROPERTY OR PROPERTIES AS SUCH PERSON'S PRINCIPAL OFFICE, RESIDENCE AND/OR SECOND HOME.

## 6. State Specific Provisions-California

The representations, warranties and covenants in this Section 6 shall be continuing representations, warranties and covenants that shall be deemed to be made by Borrower throughout the term of the Loan, until paid in full.

(a) The notice of acceleration pursuant to Section 5.1 shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

(b) In addition to the provisions of the Note, Borrower further agrees that, if Lender accepts a Guarantee of only a portion of the Loan, Borrower waives its right under California Civil Code Section 2822(a) to designate the portion of the Loan which shall be satisfied by a guarantor's partial payment.

(c) Except for matters covered by a duly established and implemented O&M Plan in respect of asbestos-containing materials, Borrower shall not cause or permit any lien (whether or not such lien has priority over the lien created by this Security Instrument) upon the Property imposed pursuant to any Environmental Laws.

(d) Borrower represents and warrants to Lender that, except as previously disclosed by Borrower to Lender in writing:

　　(1) at the time of acquiring the Property, Borrower undertook all appropriate inquiry into the previous ownership and uses of the Property consistent with good commercial or customary practice and no evidence or indication came to light which would suggest that the Property is subject to any Environmental Condition or Environmental Cleanup; and

　　(2) at least one of the following is true: (A) the Property is not located within 2,000 feet of a significant disposal of Hazardous Substances; or (B) if the Property is located within 2,000 feet of a significant disposal of Hazardous Substances, such Hazardous Substances do not constitute a significant existing or potential hazard to present or future public health or safety on the Property. In any case, Borrower agrees to immediately disclose to Lender any significant disposal of Hazardous Substances that occurs or exists within 2,000 feet of the Mortgaged Property.

(e) Without limiting any of the remedies provided in this Security Instrument, Borrower acknowledges and agrees that each of the provisions in this Section 6 is an environmental provision (as defined in Section 736(f)(2) of the California Code of Civil Procedure) made by Borrower relating to real property security (the "**Environmental Provisions**"), and that to the extent applicable, Borrower's failure to comply with any of the Environmental Provisions will be a breach of contract that will entitle Lender to pursue the remedies provided by Section 736 of the California Code of Civil Procedure for the recovery of damages and for the enforcement of the Environmental Provisions.

CIVIC APP PAGE NO. 320

(f) **Remedies Not Exclusive; Waiver.**  Trustee and Lender shall have all powers, rights and remedies under Applicable Law whether or not specifically or generally granted or described in this Security Instrument.  Nothing contained herein shall be construed to impair or to restrict such powers, rights and remedies or to preclude any procedures or process otherwise available to trustees or beneficiaries under deeds of trust in the State of California.  Trustee and Lender, and each of them, shall be entitled to enforce the payment and performance of any indebtedness or obligations secured hereby and to exercise all rights and powers under this Security Instrument or other agreement or any laws now or hereafter in force, notwithstanding the fact that some or all of the indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, lien, assignment or otherwise.  Neither the acceptance of this Security Instrument nor its enforcement, whether by court action or pursuant to the power of sale or other powers contained herein, shall prejudice or in any manner affect Trustee's or Lender's right to realize upon or enforce any other rights or security now or hereafter held by Trustee or Lender.  Trustee and Lender, and each of them, shall be entitled to enforce this Security Instrument and any other rights or security now or hereafter held by Lender or Trustee in such order and manner as they or either of them may in their absolute discretion determine.  No remedy herein conferred upon or reserved to Trustee or Lender is intended to be exclusive of any other remedy contained herein or by law provided or permitted, but each shall be cumulative and in addition to every other remedy given hereunder or now or hereafter existing at law or in equity.  Every power or remedy given by any of this Security Instrument to Trustee or Lender, or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Lender, and either of them may pursue inconsistent remedies.  By exercising or by failing to exercise any right, option or election hereunder, Lender shall not be deemed to have waived any provision hereof or to have released Borrower from any of the obligations secured hereby unless such waiver or release is in writing and signed by Lender.  The waiver by Lender of Borrower's failure to perform or observe any term, covenant or condition referred to or contained herein to be performed or observed by Borrower shall not be deemed to be a waiver of such term, covenant or condition or of any subsequent failure of Borrower to perform or observe the same or any other such term, covenant or condition referred to or contained herein, and no custom or practice which may develop between Borrower and Lender during the term hereof shall be deemed a waiver of or in any way affect the right of Lender to insist upon the performance by Borrower of the obligations secured hereby in strict accordance with the terms hereof.

(g) **Power of Sale**

    (1) Should Lender elect to foreclose by exercise of the power of sale contained herein, Lender shall notify Trustee and shall, if required, deposit with Trustee the Note, the original or a certified copy of this Security Instrument, and such other documents, receipts and evidences of expenditures made and secured hereby as Trustee may require.  Upon receipt of such notice from Lender, Trustee shall cause to be recorded and delivered to Borrower such notice as may then be required by law and

CIVIC APP PAGE NO. 321

by this Security Instrument. Trustee shall, without demand on Borrower, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale has been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate lots or parcels or items as Trustee shall deem expedient, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to the purchaser or purchasers at such sale its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Borrower, Trustee or Lender, may purchase at such sale, and Borrower hereby covenants to warrant and defend the title of such purchaser or purchasers.

(2) After deducting all costs, fees and expenses of Trustee and of this Security Instrument, including, without limitation, costs of evidence of title and actual and customary attorneys' fees of Trustee or Lender in connection with a sale as provided in subparagraph (1) above, Trustee shall apply the proceeds of such sale (a) first, to the payment of all sums expended by Lender under the terms of this Security Instrument and not yet repaid, together with interest on such sums at the rate of interest set forth in Section 6.1 of the Note, (b) second, to the payment of all sums expended under the terms hereof not then repaid, with accrued interest at the rate of interest equal to the rate then in effect under the Note, or if the Note has been repaid, the rate that would have been in effect under the Note, (c) third, to the payment of all other sums then secured hereby, and (d) fourth, the remainder, if any, to the person or persons legally entitled thereto.

(h) **Right of Rescission.** Lender may from time to time rescind any notice of default or notice of sale before any Trustee's sale in accordance with the laws of the State of California. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default to satisfy the obligations of this Security Instrument or secured hereby, nor otherwise affect any provision, covenant or condition of this Security Instrument or any of the rights, obligations or remedies of Trustee or Lender hereunder or thereunder.

(i) **Full Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(j) **Fixture Filing.** This Security Instrument constitutes a fixture filing under the fixture filing provisions of the UCC, Sections 9-313 and 9-402(6) as enacted and under the equivalent

CIVIC APP PAGE NO. 322

statutes in the State of California, as amended or recodified from time to time. For purposes of the fixture filing, the "debtor" is the Borrower which has as its principal place of business the address listed in the first paragraph of this Security Instrument and the "Secured Party" is Lender.

(k) **Border Zone Property.** Borrower represents and warrants that the Property has not been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq. or any regulation adopted in accordance therewith, and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Property that is reasonably likely to cause the Property or any part thereof to be designated as Border Zone Property.

(l) JUDICIAL REFERENCE IN THE EVENT OF JURY TRIAL WAIVER UNENFORCEABILITY. NOTWITHSTANDING SECTION 8.2(f) BELOW TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, GUARANTOR HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE. PURSUANT TO SUCH JUDICIAL REFERENCE, GUARANTOR AGREES TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE ITS, HIS OR HER BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES TO THE DISPUTE ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. GUARANTOR ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER AND THE AGREEMENTS CONTAINED HEREIN. GUARANTOR AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH GUARANTOR AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE GUARANTOR'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE AGREEMENTS CONTAINED HEREIN REGARDING THE APPLICATION OF JUDICIAL REFERENCE IN THE EVENT OF THE INVALIDITY OF SUCH JURY TRIAL WAIVER.

**7 Obligations and Reliance; Further Assurances**

**7.1 Obligations and Reliance**

(a) **Relationship of Borrower and Lender.** The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Note, this Security Instrument and the other loan documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

(b) **No Reliance on Lender.** The members, general partners, principals and (if Borrower is a trust) beneficial owners of Borrower are experienced in the ownership and operation of

CIVIC APP PAGE NO. 323

properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

(c)   **No Lender Obligations.** By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Note or the other loan documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

(d)   **Reliance.** Borrower recognizes and acknowledges that in accepting the Note, this Security Instrument and the other loan documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations made by Borrower herein and therein without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof; that the warranties and representations are a material inducement to Lender in accepting the Note, this Security Instrument and the other loan documents; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth herein and therein.

**7.2 Further Assurances**

(a)   **Recording of Security Instrument, etc.** Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other loan documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other loan documents, any note or deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

CIVIC APP PAGE NO. 324

**(b)**     **Further Acts, etc.**  Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender and Trustee the Property and rights hereby deeded, mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Applicable Law.  Borrower, on demand, will execute and deliver and hereby authorizes Lender, following 10 days' notice to Borrower, to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements (including, without limitation, initial financing statements, amendments thereto and continuation statements) with or without the signature of Borrower as authorized by Applicable Law, chattel mortgages or other instruments, to evidence more effectively the security interest of Lender in the Property. Borrower also ratifies its authorization for Lender to have filed any like initial financing statements, amendments thereto and continuation statements, if filed prior to the date of this Security Instrument.  Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender pursuant to this Section 7.2(b).  To the extent not prohibited by Applicable Law, Borrower hereby ratifies all acts Lender has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

**(c)**     **Changes in Tax, Debt Credit and Documentary Stamp Laws**

**(1)**     If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any.  If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the debt immediately due and payable.

**(2)**     Borrower will not claim or demand or be entitled to any credit or credits on account of the debt for any part of the taxes or other charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the debt.  If such claim, credit or deduction shall be required by law, Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the debt immediately due and payable.

CIVIC APP PAGE NO. 325

(3)     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other loan documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

**(d)**     **Replacement Documents.**  Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other loan document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other loan document, Borrower will issue, in lieu thereof, a replacement Note or other loan document, dated the date of such lost, stolen, destroyed or mutilated Note or other loan document in the same principal amount thereof and otherwise of like tenor.

## 8 Indemnification; Waivers

### 8.1 Indemnification

**(a)**     **General Indemnification.**  Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties (defined below) from and against any and all Losses (defined below) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following:  (a) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (b) any use, nonuse or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (d) any failure of the Property to be in compliance with any Applicable Law; (e) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; or (f) the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the Loan evidenced by the Note and secured by this Security Instrument.  Any amounts payable to Lender by reason of the application of this Section 8.1(a) shall become immediately due and payable and shall bear interest at the default rate from the date loss or damage is sustained by Lender until paid.

**(b)**     The term "**Losses**" shall mean any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, expenses, judgments, awards, amounts paid in settlement of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense). The term "**Indemnified Parties**" shall mean (a) Lender, (b) any prior owner or holder of the Note, (c) any servicer or prior servicer of the Loan, (d) the officers, directors, shareholders, partners, members, employees and trustees of any of the foregoing, and (e) the heirs, legal representatives, successors and assigns of each of the foregoing.

CIVIC APP PAGE NO. 326

(c) **Mortgage and/or Intangible Tax.** Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument, the Note or any of the other loan documents.

(d) **Duty to Defend; Attorneys' Fees and Other Fees and Expenses.** Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties. Notwithstanding the foregoing, any Indemnified Parties may, in their sole discretion, engage their own attorneys and other professionals to defend or assist them, and, at the option of Indemnified Parties, their attorneys shall control the resolution of any claim or proceeding. Upon demand, Borrower shall pay or, in the sole discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

## 8.2 Waivers

(a) **Waiver of Counterclaim.** Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Note, any of the loan documents, or any of Borrower's obligations thereunder.

(b) **Marshalling and Other Matters.** To the extent permitted by law, Borrower hereby expressly waives:

    (1) the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein; and,

    (2) any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all persons to the extent permitted by Applicable Law.

(c) **Waiver of Notice.** Borrower shall not be entitled to any notices of any nature whatsoever from Lender or Trustee except (a) with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Lender or Trustee to Borrower and (b) with respect to matters for which Lender or Trustee is required by Applicable Law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender or Trustee with respect to any matter for which

this Security Instrument does not specifically and expressly provide for the giving of notice by Lender or Trustee to Borrower.

(d)   **Waiver of Statute of Limitations.** Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the debt or performance of its other obligations under this Security Instrument, the Note and the other loan documents.

(e)   **Sole Discretion of Lender.** Wherever pursuant to this Security Instrument (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole discretion of Lender, except as may be otherwise expressly and specifically provided herein.

(f)   **WAIVER OF RIGHT TO TRIAL BY JURY.** BORROWER HEREBY EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THE NOTE, THIS SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH.   BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY.

## 9 Miscellaneous Provisions
### 9.1 No Oral Change
This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

### 9.2 Liability
If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several.  This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

### 9.3 Inapplicable Provisions

CIVIC APP PAGE NO. 328

If any term, covenant or condition of the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Note and this Security Instrument shall be construed without such provision.

**9.4 Duplicate Originals; Counterparts**

This Security Instrument may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Security Instrument may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Security Instrument. The failure of any party hereto to execute this Security Instrument, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower al the address set forth above.

CIVIC APP PAGE NO. 329

SUMMITRIDGE VENTURE GROUP, LLC , a California Limited Liability Company

By: _Vikram fu_   Date: _9/12/18_
Name: Vikram Srinivasan
Title: Managing Member

By: _Matthew_   Date: _9-14-18_
Name: Matthew Bahrami
Title: Member

---

## ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document.

State of California

County of _Alameda_ )

On _Sept.12,2018_ before me, _Mansoor Fazel, Notary Public_
                                                    (insert name and title of the officer)

Personally appeared _Vikram Srinivasan_ , who proved

to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____   (Seal)

MANSOOR FAZEL
COMM. # 2186609
NOTARY PUBLIC - CALIFORNIA
ALAMEDA COUNTY
My Comm. Expires April 11, 2021

---

2100-1002 / 501712.10                    30



**PETER ALDANA**
**COUNTY OF RIVERSIDE**
**ASSESSOR-COUNTY CLERK-RECORDER**

Recorder
P.O. Box 751
Riverside, CA 92502-0751
(951) 486-7000

www.riversideacr.com

# NOTARY CLARITY

Under the provisions of Government Code 27361.7, I certify under the penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary:   Manroor Fazel

Commission #:   2188609

Place of Execution:   Alameda  CA

Date Commission Expires:   April 11, 2021

Venbor  In:  5 I O I

Date:   9-24-18

Signature:

Print Name:   Peggy  Layte

ACR 186 (Rev. 07/2013)          Available in Alternate Formats

# CALIFORNIA ALL- PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California     }

County of _Orange_     }

On _9/14/18_ before me, _Miguel A Chavez, Notary Public_
(Here insert name and title of the officer)

personally appeared _Matthew Bahrami_,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_(signature)_

Notary Public Signature          (Notary Public Seal)

MIGUEL A. CHAVEZ
COMM. #2176924
NOTARY PUBLIC• CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Jan. 20, 2021

---

## ADDITIONAL OPTIONAL INFORMATION

**DESCRIPTION OF THE ATTACHED DOCUMENT**

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

**CAPACITY CLAIMED BY THE SIGNER**
- ☐ Individual (s)
- ☐ Corporate Officer
  _____
  (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

2015 Version www.NotaryClasses.com 800-873-9865

### INSTRUCTIONS FOR COMPLETING THIS FORM

*This form complies with current California statutes regarding notary wording and, if needed, should be completed and attached to the document. Acknowledgments from other states may be completed for documents being sent to that state so long as the wording does not require the California notary to violate California notary law.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document with a staple.

Exhibit A
Legal Description

Loan Number: 0118072548

That portion of Lot 5, of Tract No. 7996, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 186, Pages 4 through 7 inclusive of Maps, in the office of the County Recorder of said county, described as follows:

Beginning at the Southeast corner of said Lot 5; thence along the Southerly line of said Lot 5, South 87' 16' 45" West 254.19 feet to the Easterly line of Summitridge Drive; thence along said last mentioned Easterly line North 4' 27' 36" West 3.93 feet to the beginning of a 157.67 foot radius tangent curve concave to the Southwest; thence Northwesterly along the arc of said curve through a central angle of 46' 34' 30" distance of 128.17 feet; thence North 63' 8' 41" East 346.05 feet to an angle point in the Easterly line of said Lot 5; thence along said last mentioned Easterly line South 0' 46' 53" East 258.53 feet to the point of beginning.

APN: 4355-009-012                1666 Summitridge Drive, Beverly Hills, CA 90210

CIVIC APP PAGE NO. 333

# EXHIBIT B

CIVIC APP PAGE NO. 334



**This page is part of your document - DO NOT DISCARD**



## 20181067508



**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/19/18 AT 01:16PM**

| | |
|---|---|
| FEES: | 23.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 98.00 |



**L E A D S H E E T**



201810190130027

00015858037

009412721

**SEQ:
01**

SECURE - Daily



**THIS FORM IS NOT TO BE DUPLICATED**

E534013

0118072548 S-OLS

**Recording Requested by**:
Civic Financial Services, LLC

**And After Recording Return To:**
Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA 90278
Loan No. 0118072548

# Assignment of Deed of Trust

Loan Number: 0118072548

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to:

Civic Holdings III Trust

all its rights, title and interest in and to the Deed of Trust dated 09/11/2018 executed by SUMMITRIDGE VENTURE GROUP, LLC, a California Limited Liability Company , and recorded either concurrently herewith; or on 09/25/2018 as Instrument No. in 20180977267 book N/A, page N/A , in the Official Records in the County Recorder's office of Los Angeles County, CA, describing land therein as:

That portion of Lot 5, of Tract No. 7996, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 186, Pages 4 through 7 inclusive of Maps, in the office of the County Recorder of said county, described as follows:

Beginning at the Southeast corner of said Lot 5; thence along the Southerly line of said Lot 5, South 87' 16' 45" West 254.19 feet to the Easterly line of Summitridge Drive; thence along said last mentioned Easterly line North 4' 27' 36" West 3.93 feet to the beginning of a 157.67 foot radius tangent curve concave to the Southwest; thence Northwesterly along the arc of said curve through a central angle of 46' 34' 30" distance of 128.17 feet; thence North 63' 8' 41" East 346.05 feet to an angle point in the Easterly line of said Lot 5; thence along said last mentioned Easterly line South 0' 46' 53" East 258.53 feet to the point of beginning.

A.P.N.: 4355-009-012

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust. The original principal amount due under this note(s) is $3,500,000.00.

1

CIVIC APP PAGE NO. 336

**CIVIC FINANCIAL SERVICES, LLC , a California
Limited Liability Company**

By: Gary W. McCarthy, Authorized Agent

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of          California          ) ss
County of        Los Angeles        )

On _____**SEP 0 7 2018**_____, before me, **Gina Castillo,** Notary Public, personally appeared **Gary W.
McCarthy** , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /
are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/
her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal

Signature _____ ( Seal )

GINA CASTILLO
Notary Public - California
Los Angeles County
Commission # 2238519
My Comm. Expires Apr 19, 2022

# EXHIBIT C

CIVIC APP PAGE NO. 338



**This page is part of your document - DO NOT DISCARD**







# 20190017373

**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/07/19 AT 11:14AM**

| | |
|---|---:|
| FEES: | 80.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 305.00 |



**L E A D S H E E T**



**201901073330043**

**00016141564**

**009557387**

**SEQ:**
**01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

E502868

0888003889 ACM-CH3 to I

Document prepared by:  Paula Chastain
Recording requested by and
When recorded, please return to:
HMC Assets, LLC
2015 Manhattan Beach Blvd., Suite 200
Redondo Beach, CA 90278
Reference ID0118072548
APN: 4355-009-012

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF DEED OF TRUST

For value received, the undersigned hereby grants, assigns and transfers to

### DLJ Mortgage Capital, Inc.

all beneficial interest under that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated 09/11/2018, executed by SUMMITRIDGE VENTURE GROUP, LLC, a California Limited Liability Company, Trustor(s), to Civic Financial Services, LLC, as Beneficiary, recorded on 09/25/2018, as Doc # 20180977267 of Official Records in the office of the County Recorder of Los Angeles County, State of California (hereinafter, the "Deed of Trust"), together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust and Promissory Note.

Property Address: 1666 Summitridge Drive, Beverly Hills, CA 90210
Dated: 01/04/2019

Civic Holdings III Trust
By: HMC Assets, LLC as Administrator

By: Aaron Wright, Authorized Agent

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of          California          ) ss
County of       Los Angeles        )

On **01/04/2019**, before me, **P.M Chastain**, Notary Public, personally appeared **Aaron Wright**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

P. M. CHASTAIN
Commission # 2097847
Notary Public - California
Orange County
My Comm. Expires Feb 20, 2019

# EXHIBIT D




**This page is part of your document - DO NOT DISCARD**



# 20190128721



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**02/12/19 AT 01:04PM**

| | | |
|---|---|---|
| FEES: | | 20.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| SB2: | | 75.00 |
| PAID: | | 95.00 |



**L E A D S H E E T**



**201902120110068**

**00016259004**



**009626896**

**SEQ:**
**01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**

*E442318*

0888003889 A

Document prepared by: Laura Collins
Record and return to: HMC Assets, LLC
2015 Manhattan Beach Suite 200
Redondo Beach, CA 90278
Reference ID: 0118072548
APN ID: 4355-009-012

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## ASSIGNMENT OF DEED OF TRUST

For value received, the undersigned hereby grants, assigns and transfers to
**Civic Holdings III Trust**
all beneficial interest under that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing dated 9/11/2018 executed by SUMMITRIDGE VENTURE GROUP, LLC, a California Limited Liability Company, Trustor(s), to Civic Financial Services, LLC, as Beneficiary, recorded on 9/25/2018 as Doc # 20180977267 of Official Records in the office of the County Recorder of Los Angeles County, State of CA (hereinafter, the "Deed of Trust"), together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust and Promissory Note.

Property Address: 1666 Summitridge Drive, Beverly Hills CA 90210

**Dated : February 1, 2019**

DLJ Mortgage Capital Inc.

By: _____

Title: **David Neugebauer**
**Vice President**

_____
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of _____ _New York_____ ) ss
County of _____ _New York_____ )

On __2/1/2019__ before me, _Gloria Johnson_ Notary Public, personally appeared Aaron Wright, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is /are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ _New York_____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

GLORIA JOHNSON
Notary Public, State of New York
No. 01JO6015595
Qualified in Bronx County
Certificate Filed in New York County
Commission Expires January 9, 2023

Page 1 of 1

# EXHIBIT E

 **This page is part of your document - DO NOT DISCARD** 



## 20190436848



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**05/14/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 30.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 105.00 |



**L E A D S H E E T**

**201905140120004**

**00016604485**

**009819932**

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E464772

91214068-JW

RECORDING REQUESTED BY:
Simplifile

WHEN RECORDED MAIL TO:
**Entra Default Solutions, LLC**
**1355 Willow Way, Suite 115**
**Concord, California 94520**

# 91214068

SPACE ABOVE THIS LINE FOR RECORDER'S USE

APN: **4355-009-012**
TS No.: **2019-04632**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**[PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.]**

## IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$219,323.87** as of **5/10/2019** and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**CIVIC HOLDINGS III TRUST**
**C/O FAY SERVICING LLC**
**425 S. FINANCIAL PLACE, SUITE 2000**
**CHICAGO, IL 60605**
**Phone: 800-495-7166**

**If you have any questions, you should contact a lawyer or the governmental agency that may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.**

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That **ENTRA DEFAULT SOLUTIONS, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **9/11/2018**, executed by **SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**, as Trustor, to secure certain obligations in favor of **CIVIC FINANCIAL SERVICES LLC**, as beneficiary, recorded **9/25/2018**, as Instrument No. **20180977267**, in Book , Page ,  of Official Records in the Office of the Recorder of **Los Angeles** County, California describing land therein as: As more fully described on said Deed of Trust.

Including One Note FOR THE ORIGINAL sum of **$3,500,000.00** , that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:
   **Failure to pay the installment of principal and interest plus impounds and/or advances which became due on 2/1/2019 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

   That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written request to commence foreclosure, and has deposited with said duly appointed Trustee, copies of such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: 5/10/2019

                    Entra Default Solutions, LLC

                    BY: _____
                    Katie Milnes, Vice President

# EXHIBIT F

CIVIC APP PAGE NO. 348



**This page is part of your document - DO NOT DISCARD**



# 20190828169



**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**08/19/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 30.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 105.00 |



**L E A D S H E E T**



**201908190130007**

**00017017705**



**010050359**

**SEQ:
01**

**SECURE - 8:00AM**

**THIS FORM IS NOT TO BE DUPLICATED**

E534013

91214068-JW

RECORDING REQUESTED BY
**Entra Default Solutions, LLC**

AND WHEN RECORDED MAIL TO:
**Entra Default Solutions, LLC**
**1355 Willow Way, Suite 115**
**Concord, California 94520**

APN: 4355-009-012

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: **2019-04632**
A.P.N.: **4355-009-012**
# 91214068

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**[PURSUANT TO CIVIL CODE 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO ABOVE**
**IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES**
**PROVIDED TO THE TRUSTOR.]**

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 9/11/2018. UNLESS**
**YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A**
**PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE**
**PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

**A PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH, CASHIER'S**
**CHECK/CASH EQUIVALENT** or other form of payment authorized by 2424h(b), (payable at the time of
sale in lawful money of the United States), will be held by the duly appointed trustee as shown below, of all right,
title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant
to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied,
regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed
of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of
Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial
publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day
of sale.

Trustor: **SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY**
Duly Appointed Trustee: **ENTRA DEFAULT SOLUTIONS, LLC 1355 Willow Way, Suite 115, Concord, California 94520 Phone: (925)272-4993**
Deed of Trust Recorded **9/25/2018** as Instrument No. **20180977267** in book , page  of Official Records in the office of the Recorder of **Los Angeles** County, California,
Date of Sale: **9/13/2019** at **11:00 AM**
Place of Sale:     **By the fountain located at 400 Civic Center Plaza, Pomona, CA 91766**
Amount of unpaid balance and other charges: **$3,891,080.78**
Street Address or other common designation of real property:     **1666 SUMMITRIDGE DRIVE**
                                                                  **(BEVERLY HILLS AREA)LOS ANGELES ,**
                                                                  **CA 90210**

 to be sold:
 A.P.N.: **4355-009-012**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. **We are attempting to collect a debt and any information we obtain will be used for that purpose.**

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 or visit this Internet Web site www.servicelinkASAP.com, using the file number assigned to this case 2019-04632. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

Date: 8/15/2019                              ENTRA DEFAULT SOLUTIONS, LLC


                                             Katie Milnes, Vice President

# EXHIBIT G

# FORBEARANCE AGREEMENT

**THIS FORBEARANCE AGREEMENT** dated as of November 21, 2019 (this **"Agreement"**), is made by (i) Fay Servicing, LLC (**"Fay"**) as servicer for Civic Holdings III Trust (**"Trust"**), (Trust and Fay are collectively referred to hereinafter as the **"Lender"**); and (ii) Summitridge Venture Group, LLC, a California limited liability company (the **"Borrower"**), with reference to and in consideration of the facts set forth in the following paragraphs lettered A through H below (collectively, the **"Recitals"**). The Lender and the Borrower are collectively referred to hereinafter as the **"Parties"**).

## RECITALS

### A.   LOAN AND NOTE.

1.   Loan. On 9/24/18 the Lender's predecessor, Civic Financial Services, LLC (the **"Original Lender"**), made a loan to the Borrower in the amount of $3,500,000 (the **"Loan"**). The Loan is internally referenced by the Trust as Loan No. 0118072548 and by Fay as Loan No. 0888003889.

2.   Note. To evidence and govern the Loan, the Borrower made and delivered to the Original Lender the *Note* dated 9/11/18 (the **"Loan Date"**), in that original principal amount, payable to the order of the Original Lender (the **"Note"**).

3.   Disbursement and Maturity Date. The Loan was disbursed on 09/25/18. The maturity date of the Note is/was 10/1/2019 (the **"Maturity Date"**).

### B.   DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING; PERFECTION.

1.   Deed of Trust. In order to secure repayment of the Loan, the Note, and all other then-existing or thereafter incurred indebtedness of the Borrower to the Original Lender, the Borrower made and delivered to the Original Lender a *Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing* dated the Loan Date (collectively the **"Security Agreement"**), which, *inter alia*, granted the Lender a lien against and first priority security interest in the Collateral (as defined therein) and generally described as 1666 Summitridge Drive Beverly Hills, California 90210 (the **"Property"**).

2.   Perfection. The liens and security interests granted the Original Lender by the Borrower under the Security Agreement were perfected by the recording of the Deed of Trust in the OFFICIAL RECORDS OF LOS ANGELES COUNTY, CALIFORNIA (the **"Official Records"**) identifying the Borrower as the debtor thereunder, the Original Lender as the secured party

*Summitridge Forbearance Agreement*

thereunder, the Collateral as the collateral covered thereby, on September 25, 2018, as Document No. 20180977267.

      **C.**      **SUCCESSOR LENDER.** On 1/7/19, the Original Lender sold the Loan to DLJ MORTGAGE CAPITAL, INC. On 2/12/19, the DLJ MORTGAGE CAPITAL, INC sold the Loan to the Trust, and the Lender thereby succeeded to all the rights and interests of the Original Lender to, under, and with respect to (i) the Loan, the Note and all other indebtedness; and (ii) the Security Agreement (collectively, the **"Existing Loan Documents"**; and all amounts due by the Borrower as of any time under or with respect to the Existing Loan Documents, the **"Borrower Indebtedness"**), and is now the holder of all the foregoing.

      **D.**      **EVENTS OF DEFAULT.** Multiple Events of Default have occurred under the Existing Loan Documents, including (i) multiple failures of the Borrower timely to pay, or to pay in full, monthly installments of interest payable to the Lender and the failure to pay real property taxes; (ii) the failure of the Borrower to pay the outstanding principal of and all accrued but unpaid interest under the Note, and all other amounts due under the Existing Loan Documents made by the Borrower, on the Maturity Date (these Events of Default, collectively, the **"Designated Events of Default"**).

      **E.**      **LENDER EXPENSES.** In connection with the Events of Default, including the formulation, negotiation, preparation, and implementation of this Agreement, the Lender has incurred and expects to continue to incur fees, costs, and expenses, including attorneys' fees and costs in connection with those matters, for all of which the Borrower is indebted to the Lender pursuant to the Existing Loan Documents and will be indebted to the Lender pursuant to this Agreement (all those actual fees, costs, and expenses, whether incurred prior to, on, or after the Effective Date (defined below), and as set forth below (collectively, the **"Lender Expenses"**).

      **F.**      **AMOUNTS OUTSTANDING.** As of November 13, 2019 (the **"Statement Date"**), the Borrower Indebtedness consisted of the following:

      1.      <u>Outstanding Principal</u>. The principal amount outstanding under the Note of $3,500,000;

      2.      <u>Accrued Interest</u>. The amount of accrued but unpaid interest due under the Note at the applicable rates of interest thereof of $521,470.83 (for the avoidance of doubt, interest has accrued and will continue to accrue on the Note from time to time applicable from the Statement Date);

      3.      <u>Property Tax</u>. The amount of accrued but unpaid property tax due of $71,699.34; and

      4.      <u>Lender Expenses</u>. The amount of Lender Expenses incurred or agreed to be incurred by the Lender of $14,653.70.

      **G.**      **LOAN PRESENTLY PAYABLE; RIGHT TO ENFORCE EXISTING LOAN DOCUMENTS.** As a result of, *inter alia*, the Designated Events of Default, (i) all amounts

*Summitridge Forbearance Agreement*

due by the Borrower under the Note and the other Existing Loan Documents made by the Borrower (that is, the Borrower Indebtedness); are presently immediately payable in full to the Lender; and (ii) the Lender is entitled, under the Existing Loan Documents and applicable law, to proceed to enforce the Existing Loan Documents with respect to the Borrower Indebtedness and the Collateral under the Security Agreement, and to exercise all rights and remedies available to it under applicable law and the Existing Loan Documents to collect the Borrower Indebtedness and to realize on the Collateral, including to foreclose on the real property collateral described in the Deed of Trust (all rights and remedies the Lender has or may have under the Existing Loan Documents and applicable law or with respect thereto, the **"Existing Remedies"**).

**H.      REQUEST FOR FORBEARANCE.** The Borrower has requested that the Lender forbear from exercising the Existing Remedies for a period of time. As is more specifically set forth in this Agreement, the Lender is willing so to forbear on the terms and conditions of this Agreement.

<div align="center">

**TERMS**

</div>

**THEREFORE,** the Parties agree as follows:

**1.      TRUTH OF RECITALS.** The Borrower acknowledges and agrees that (i) the Recitals are true and correct in every respect; and (ii) the Lender is relying on that acknowledgment and agreement with respect to the Recitals in entering into this Agreement pursuant.

**2.      CONTINUING FORCE AND REAFFIRMATION OF EXISTING LOAN DOCUMENTS.**

2.1.      Continuing Force. Except as specifically modified, amended, replaced, or supplemented by this Agreement, all the terms, conditions, and provisions of the Existing Loan Documents existing immediately prior to the Effective Date are and will remain in full force and effect as originally written and theretofore modified, amended, replaced, or supplemented as set forth in the Recitals.

2.2.      Borrower Reaffirmation. The Borrower reaffirms, confirms, ratifies, agrees, and acknowledges (i) it signed and delivered to the Original Lender each of the Existing Loan Documents that purport to be made by it; (ii) all its obligations and all the grants of security interests in or liens on the Collateral as set forth in those Existing Loan Documents; and (iii) that all those obligations, as and to the extent modified by this Agreement, and all those grants of security interests and liens, are now owing to and held by the Lender.

2.3.      No Defenses. The Borrower acknowledges and agrees that, as of the Effective Date, it has (i) no claims, setoffs, defenses, or causes of action of any kind or nature whatsoever that can be asserted against the Lender or the Original Lender, including to reduce or eliminate all or any part of its liability, under the Existing Loan Documents or this Agreement; and (ii) no legal rights or theories whatsoever on which to invoke legal or equitable relief, whether injunctive relief or otherwise, in order to abate, postpone, or terminate enforcement by the Lender

*Summitridge Forbearance Agreement*

of its obligations under the Existing Loan Documents or exercise of any Existing Remedies by the Lender (other than to the extent that the Lender agrees pursuant hereto to forbear therefrom).

**3.   ACKNOWLEDGMENTS.** The Borrower hereby unconditionally acknowledges and agrees that, as of the Effective Date—

3.1.   Indebtedness. The amounts set out in Recital Paragraph F (Amounts Outstanding) above are part of the Borrower Indebtedness and owed by the Borrower to the Lender in accordance with the Existing Loan Documents; and the amounts that constitute or will constitute the Lender Expenses are or will be part of the Borrower Indebtedness and are or will be owed by the Borrower to the Lender in accordance with the Existing Loan Documents;

3.2.   Certain Default and Other Matters. (i) The Existing Designated Events of Default exist, are continuing, and have not been cured or waived; and (ii) there is no agreement currently existing to extend any further credit or other financial accommodations to or for the benefit of the Borrower, or, except as set forth in this Agreement, to restructure, extend, or otherwise modify the terms of the Existing Loan Documents;

3.3.   Lender's Right to Immediate Exercise of Existing Remedies. But for this Agreement, as a result of the Existing Designated Events of Default, the Lender has the right under the Existing Loan Documents and applicable law immediately to exercise any or all of the Existing Remedies (subject to compliance with applicable law and rules of court in so doing);

3.4.   No Modification of Existing Loan Documents. The Existing Loan Documents are not modified, amended, replaced, or supplemented by this Agreement except as expressly set forth herein, and have not heretofore been modified, amended, replaced, or supplemented except as set forth in the Recitals;

3.5.   No Waiver of Other Defaults. Other than the Existing Designated Events of Default, no other Events of Default and no other defaults of the Borrower under or breaches by the Borrower of the Existing Loan Documents made by the Borrower are cured or waived by this Agreement except as expressly set forth herein, and none of those other Events of Default, defaults, or breaches have heretofore been cured or waived; and

3.6.   No Other Agreement to Forbear. The Lender has not agreed to forbear or further forbear from exercising any Existing Remedy, or exercising or taking any other right, remedy, or action with respect to the Existing Loan Documents, the Collateral, the Borrower Indebtedness, or the Borrower, except as expressly set forth in this Agreement.

**4.   FORBEARANCE TERMS.**

4.1.   Forbearance During Forbearance Period. The Lender shall forebear from exercising any Remedies during the period (i) commencing on the Effective Date; and ending on the earlier of (A) 5/1/2020, so long as there is no post Effective Date event of default under the Continuing Loan Documents (defined below) or this Agreement (the **"Forbearance Termination Date"**); or (B) the occurrence of a Forbearance Event of Default (defined in Section 8 (Forbearance

*Summitridge Forbearance Agreement*

Events of Defaults) below) (that period, the **"Forbearance Period"**; the last day of the Forbearance Period, the **"Forbearance Termination Date"**; and that forbearance, the **"Forbearance"**).

       4.2.    Interest. During the Forbearance Period, interest will continue to accrue under the Note at the rate set forth in the Note.

       4.3.    Forbearance Agreements and Payments.

       4.3.1.  Amounts and Schedule. During the Forbearance Period, the Borrower shall make the following payments to the Lender (collectively, the **"Forbearance Payments"**):

       (1)    On or before November 26, 2019, Borrower shall pay Lender, through Fay, the sum of $712,823.87, which sum represents late charges, lender expenses, delinquent property taxes, extension fee, non-refundable forbearance fee and the accrued and unpaid interest under the Loan at the default rate under the Note from the date of default through 11/13/2019;

       (2)    Thereafter, commencing 12/1/2019 and throughout the Forbearance Period, Borrower will make monthly interest payments to Lender, through Fay, in the amount of $52,500 on the first day of each month, which sum represents interest under the Loan at the non-default rate. Any interest payment due under this Agreement which is not received by Fay in good funds by the fifth day of any month during the Forbearance Period shall be an event of default under this Agreement and the Continuing Loan Documents;

       (3)    On the Effective Date of this Agreement, an extension fee of one percent (1%) of the unpaid principal balance of the Loan and a non-refundable forbearance fee of two percent (2%) of the unpaid principal balance of the Loan will be added to the Borrower Indebtedness;

       (4)    During the Forbearance Period (i) interest will continue to accrue under the Loan at the default rate of interest (18% per annum)(**"Default Interest"**), and (ii) Lender Expenses will continue to accrue; and

       (5)    On the Forbearance Termination Date, pay the entire remaining amount of the Borrower Indebtedness, if any, including all remaining principal outstanding under the Note, all accrued unpaid interest due under the Note, all accrued but unpaid late charges on the Note, and all unpaid Lender Expenses.

       4.3.2.  Application of Payments. The Forbearance Payments will be applied by the Lender to the Borrower Indebtedness in the order and manner determined by the Lender in its discretion; provided, however, that in the absence of an election of the Lender to

*Summitridge Forbearance Agreement*

CIVIC APP PAGE NO. 357

apply any Forbearance Payment differently, each Forbearance Payment will be applied to the Borrower Indebtedness in the following order:

        (1)    First, to accrued unpaid interest due under the Note, as may be modified herein;

        (2)    Next, to the principal outstanding under the Note;

        (3)    Next, to accrued but unpaid late charges on the Note, and

        (4)    Last, to accrued but unpaid Lender Expenses.

## 5. RELEASE OF CLAIMS.

5.1. <u>Release of Borrower Claims</u>. Effective as of the Effective Date, the Borrower; and each of its managers, members and respective predecessors, successors, and assigns (collectively, the **"Releasors"**), hereby forever, finally, fully, and completely releases, relieves, acquits, remises, and discharges Lender, DLJ MORTGAGE CAPITAL, INC, Fay, the Original Lender and all of their present and former parents, subsidiaries, affiliates, divisions, shareholders, partners, members, directors, officers, managers, employees, agents, servants, attorneys, accountants, advisors, and servicers; and each of their respective predecessors, successors, and assigns, and each of them, in all capacities, including individually (collectively, the **"Releasees"**), from and waive any and all actions, suits, judgments, executions, claims, counterclaims, offsets, demands, debts, liabilities, liens, damages, injuries, contracts, obligations, acts, agreements, costs and expenses (including attorneys' and expert witnesses' fees and costs), accounts, torts, causes of action, claims for relief, defenses, and equitable remedies of whatever kind or nature, whether known or unknown, suspected or unsuspected, contingent or fixed, that any of the Releasors have or may have, or that may hereafter be asserted or accrue against, any of the Releasees, including those (i) out of, related to, incidental to, appertaining to, in connection with, or emanating from the Recitals, this Agreement, the Loan, the Existing Loan Documents, the Collateral, the Existing Designated Events of Default, or any remedies that the Lender has exercised under or with respect to the Existing Loan Documents on or before the Effective Date or existing as of the Effective Date; and (ii) for the avoidance and recovery of fraudulent transfers or preferences or for equitable subordination arising out of, related to, incidental to, appertaining to, in connection with, or emanating from any of the foregoing (collectively, the **"Claims"**; and the release provided by this Section 5.1 (Release of Borrower Parties' Claims), the **"Release"**).

5.2. <u>Release Includes Unknown Claims</u>.

5.2.1. The Release applies to all the Claims that any of the Releasors have or may have, or that may hereafter arise in favor of any of them as a result of acts or omissions occurring before the Effective Date, whether or not known or suspected by the Releasors. The Releasors expressly acknowledge that although ordinarily a general release does not extend to claims that the releasing party does not know or suspect to exist in its favor, which if known by that party must have materially affected the settlement with the party released, each

*Summitridge Forbearance Agreement*

Borrower Party has carefully considered and taken into account in determining to enter into this Agreement, including the Release, the possible existence of those unknown losses or claims. Without limiting the generality of the foregoing, the Borrower, on behalf of himself and the other Releasors, expressly waive, with respect to the Claims, any and all rights conferred upon any of them by any statute or rule of law that provides that a release does not extend to claims that the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by that claimant must have materially affected its settlement with the released party, including under California Civil Code section 1542 and other similar state laws, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

5.2.2.   In connection with that waiver and relinquishment, the Borrower and the other Releasors, acknowledge that they are aware that they or their respective attorneys or agents may hereafter discover facts in addition to or different from those that they now know or believe to exist with respect to the Claims, but that it is their intention hereby fully, finally, and forever to settle and release all the Claims, known or unknown, suspected or unsuspected, that now exist or may exist hereafter between any of the Releasors and any of the Releasees, except as is otherwise expressly provided in the Release. The Release will be and remain in effect as a full and complete release notwithstanding the discovery or existence of any of those additional or different facts.

### 6.   REPRESENTATIONS AND WARRANTIES.

6.1.   Representations Themselves. As of the Effective Date, the Borrower represents and warrants to the Lender, and in entering into this Agreement, the Lender is relying thereon, as follows:

6.1.1.   Enforceable Obligations. When signed and delivered by the Borrower, this Agreement will be, and the Existing Loan Documents will remain, the legal, valid, and binding obligations of the Borrower enforceable against him in accordance with their respective terms, except as that enforcement may be limited by bankruptcy, insolvency, or other similar laws affecting creditors' rights generally and by general equitable principles.

6.1.2.   Non-Contravention. The signing and delivery of this Agreement and the full and complete performance by the Borrower of this Agreement and the Existing Loan Documents (collectively, the **"Continuing Loan Documents"**), and any acts or deliveries required hereby or thereby, does and will not contravene, constitute, or result in a default or breach under any law, regulation, order, or contractual restriction binding on or affecting the Borrower.

6.1.3.   Recitals. The Recitals are true and correct in every respect.

*Summitridge Forbearance Agreement*

6.1.4. <u>Sufficient Data and Advice</u>. The Borrower has received sufficient data and legal and other advice from attorneys, experts, and other advisors of its respective own choice independent of the Lender with respect to the advisability of entering into this Agreement, including the Release, so that it is able to exercise his respective judgment intelligently in deciding whether to enter into this Agreement, and, prior to their execution hereof, their respective attorneys and those experts and other advisors reviewed this Agreement and explained the full legal, financial, and other significance hereof to them.

6.1.5. <u>Sufficient Investigation; No Duress</u>. The Borrower and its respective attorneys, experts, and other advisors have made that investigation of the facts pertaining to this Agreement and all the matters relating hereto as they deem necessary. This Agreement has been carefully read and are freely signed without duress, and the contents hereof and thereof are known and understood, by the Borrower. The decision of the Borrower to execute this Agreement is not predicated on or influenced by any declarations, representations, or warranties of the Lender or other persons made on behalf of the Lender other than as expressly set forth in this Agreement.

6.1.6. <u>Authorized Signors</u>. Each person executing this Agreement in a representative capacity is empowered to do so by all necessary action.

6.1.7. <u>Sole Owner of Claims</u>. The Borrower is the sole and lawful owner of all right, title, and interest in, to, and in respect of the Claims and other matters that it is releasing hereby, and has not heretofore assigned or transferred, or purported to assign or transfer, in whole or in part, to any entity any of the Claims or other matters released hereby, or any interest therein.

6.1.8. <u>Finality Intended</u>. The Borrower intends that (i) this Agreement, including the Release, be final and binding between the Parties; and (ii) the Lender may expressly rely on the finality of this Agreement as a substantial, material factor inducing the Lender's execution of this Agreement.

6.2. <u>Cumulative Representations and Survival Thereof</u>. The representations, warranties, covenants, agreements, terms, and conditions set forth in this Agreement (i) are cumulative and in addition to any and all other representations, warranties, covenants, agreements, terms, and conditions that the Borrower Parties have given under the Existing Loan Documents; and (ii) will survive the execution of this Agreement.

## 7. EFFECTIVENESS.

7.1. <u>Conditions Precedent</u>. Subject to Section 7.2 (Deadline for Effective Date) below, this Agreement will become effective, if at all, on the date when all of the following conditions precedent to the effectiveness hereof (collectively, the **"Conditions Precedent"**) have occurred to Lender's satisfaction or been waived by the Lender, which satisfaction (including all necessary approvals of the Lender in connection therewith) and waivers, if any, will be evidenced by the Lender's delivery of the Lender's duly signed counterpart of this Agreement to the Borrower (the date on which this Agreement becomes effective, if at all, the **"Effective Date"**):

*Summitridge Forbearance Agreement*

7.1.1.   Lender has received the payment referenced in Section 4.3.1(1) above in good funds;

7.1.2.   The Borrower has duly signed and delivered to the Lender a duplicate original counterpart hereof; and

7.1.3.   The Lender has duly signed and delivered to the Borrower a duplicate original counterpart hereof.

7.2.   Deadline for Effective Date. This Agreement will be null and void if each of the Conditions Precedent has not occurred or been waived as provided in Section 7.1 (Conditions Precedent) above by the close of business on November 21, 2019, or that later date set by the Lender in its discretion.

8.   **FORBEARANCE EVENTS OF DEFAULTS.** Any one or more of the following shall constitute a **"Forbearance Event of Default"** under this Agreement:

8.1.   The Borrower defaults under, fails to comply with, or breaches any term, covenant, or agreement on his, her, or its part, as the case may be, to be performed or complied with under this Agreement;

8.2.   (a) Borrower makes a general assignment or general arrangement for the benefit of creditors; (b) a petition for adjudication of bankruptcy or for reorganization or rearrangement is filed by or against Borrower; (iii) a trustee or receiver is appointed to take possession of substantially all of Borrower's assets; or (iv) substantially all of Borrower's assets are subjected to attachment, execution or other judicial seizure which is not discharged within thirty (30) days;

8.3.   Any representation or warranty of the Borrower made in this Agreement or pursuant hereto proves to be untrue in any material respect as of the date of the making thereof; and

8.4.   If that term is defined thereunder, an Event of Default or a Forbearance Event of Default occurs under any Continuing Loan Document; or, if not so defined, a breach by the Borrower under any Existing Loan Document occurs, in each case (i) after giving effect to any modification thereof made by this Agreement; and (ii) beyond the period, if any, provided for the cure thereof therein; provided, however, that the continuance of the Existing Designated Events of Default will not constitute a Forbearance Event of Default under this Agreement. (For the avoidance of doubt, this Agreement is a Related Document and, hence, the occurrence of a Forbearance Event of Default will constitute an Event of Default under, or breach of or default under, the Existing Loan Documents.)

9.   **REMEDIES ON FORBEARANCE EVENT OF DEFAULT.**

9.1.   Exercise of Remedies. If there is a Forbearance Event of Default under this Agreement, (i) the Forbearance Termination Date will automatically occur, the

*Summitridge Forbearance Agreement*

Forbearance Period will automatically end, and the Forbearance will automatically terminate; (ii) all amounts due by the Borrower under the Continuing Loan Documents will be immediately payable in full to the Lender; and (iii) the Lender will immediately be entitled, without further notice to the Borrower, to proceed to enforce the Continuing Loan Documents with respect to the Borrower Indebtedness and the Collateral, and to exercise all rights and remedies available to it under applicable law and the Continuing Loan Documents to collect the Borrower Indebtedness and to realize on the Collateral, including to commence (A) civil actions against the Borrower to enforce the Continuing Loan Documents made by the Borrower; and; and (B) judicial or non-judicial foreclosure proceedings, including collections and dispositions under Division 9 of the Commercial Code, as to the Collateral; and (iv) the Borrower Parties waive any right they may have to object to the appointment of a receiver and consent to the appointment of a receiver over the Collateral (all of the foregoing, together with all Existing Remedies, collectively, the **"Remedies"**).

        9.2.   <u>Remedies Cumulative</u>. The Remedies are cumulative and not exclusive. Any waiver, permit, consent, or approval of any kind by the Lender of any Forbearance Event of Default or other breach or default hereunder, of any Event of Default or other breach or default under any Continuing Loan Document, or waiver of any provisions or conditions hereof or thereof, must be in writing and shall be effective only to the extent set forth in writing.

      **10.**    **MISCELLANEOUS PROVISIONS.**

        10.1.   <u>Not a Novation</u>. This Agreement is not a novation, nor, except as expressly and specifically set forth herein, is it to be construed as a release or modification of any of the terms, conditions, warranties, waivers, or rights set forth in the Existing Loan Documents.

        10.2.   <u>Merger and Integration</u>. This Agreement (i) integrates all the terms and conditions mentioned herein or therein with respect to the Forbearance and the other matters related to the Existing Designated Events of Default set forth herein; (ii) constitutes the entire agreement of the Parties with respect to those matters; (iii) is intended by the Parties as the final expression of their agreement with respect to the terms and conditions set forth herein and therein, and as the complete and exclusive statement of the terms agreed to by them in that respect; and (iv) supersedes all prior oral negotiations and prior writings, agreements, and understandings between the Parties with respect to those matters; provided, however, that, except as expressly provided in this Agreement, this Agreement does not supersede or amend any of the Existing Loan Documents. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by the Lender with respect to the subject matter hereof except as specifically set forth in or provided by this Agreement.

        10.3.   <u>Reservation of Rights</u>. The Lender reserves all its rights and remedies with respect the Loan, the Existing Loan Documents, the Continuing Loan Documents, the Collateral, the Existing Designated Events of Default, any Remedies, the Borrower Indebtedness, and the Borrower that are not addressed by this Agreement.

        10.4.   <u>Amendment and Waiver</u>. Neither this Agreement nor any provision hereof may be amended, modified, or supplemented except by a writing signed by the Parties to

*Summitridge Forbearance Agreement*

be charged thereby. No consent or waiver of the Lender with respect to this Agreement will be effective except by a writing signed by the Lender, and then that waiver or consent will be effective only in the specific instance and for the specific purpose for which given.

10.5.   Failure or Indulgence Not Waiver. No failure or delay on the part of the Lender in the exercise of any right, power, or privilege under this Agreement or applicable law will operate as a waiver thereof, and no single or partial exercise of any of those powers, rights, or privileges will preclude a further exercise of any of those rights, powers, or privileges or any other right, power, or privilege.

10.6.   No Further Commitment to Forbear. The Borrower acknowledges that the Lender has not agreed and has no obligation to extend the Forbearance Period or grant any further forbearance at the expiry thereof.

10.7.   Successors and Assigns. This Agreement is binding upon and will inure to the benefit of the respective successors and assigns of the Parties, except that the Borrower's rights hereunder are not assignable and the Borrower may not delegate its respective obligations hereunder except as is expressly provided herein or therein.

10.8.   Rights of Third Parties. Nothing contained in this Agreement is intended or is to be construed as giving any entity other than the Parties and their respective successors and assigns any right, power, privilege, remedy, or claim under or in respect of this Agreement except as is expressly provided herein or therein.

10.9.   Separability and Savings Clause. Each provision of this Agreement, whether or not contained in separate paragraphs or sections, is to be considered to be separable. If, for any reason, any of those provisions, or any part thereof, are determined to be invalid, unenforceable, or contrary to any existing or future applicable law or judicial ruling, that invalidity is not to impair the operation of or affect those provisions of this Agreement that are valid. If that event occurs, this Agreement is to be construed and enforced in all respects as if the invalid or unenforceable provision or provisions had been omitted from the original hereof or thereof.

10.10.   Governing Law. This Agreement is to be governed by and construed in accordance with the laws of the State of California without regard to its conflicts of law provisions.

10.11.   Mutual Contribution of Language. This Agreement is the product of the negotiation of the Parties and have been drafted on the basis of their mutual contributions of language. It is not to be construed against either Party as being the drafter or causing the drafting hereof, or strictly for or against either Party, but, rather, are to be neutrally construed as a whole according to its fair meaning.

10.12.   Time. Time is of the essence under this Agreement. All deadlines and time periods provided for hereunder are ABSOLUTE AND FINAL.

*Summitridge Forbearance Agreement*

CIVIC APP PAGE NO. 363

10.13. Further Assurances. The Parties shall execute and deliver those other instruments, provide that other information, and take those other actions that any Party may reasonably request of ant other Party in connection with the transactions contemplated hereby, including the delivery of any notice or other documents or instruments to any entity that may be required or be desirable in connection with this Agreement.

10.14. Terms Contractual. The terms of this Agreement are contractual and not a mere recital.

10.15. Execution; Counterparts. This Agreement may be executed and initialed by signatures and initials transmitted by facsimile or other electronic means with original signatures and initials to be provided thereafter as soon as is practicable in two or more counterparts, all of which, whether facsimile, other electronic transmittal, or original, are deemed an original, but all of which together will constitute one and the same document; provided, however, that the failure to so to provide any of those originals will not invalidate this Agreement. For all purposes, including recording, filing, and delivery of this Agreement, duplicate unsigned and unacknowledged pages of any counterparts may be discarded and the remaining pages assembled as one document.

[Signatures on Following Page]

*Summitridge Forbearance Agreement*

## SIGNATURES

**WHEREFORE,** the Parties are signing this Agreement as of the date first written above.

THE LENDER:

Civic Holdings III Trust, by Fay Servicing, LLC, its attorney in fact

By: _____

Its: _____

THE BORROWER:

Summitridge Venture Group, LLC

By:   Vikram Srinivasam

Its:  Managing Member

*Summitridge Forbearance Agreement*

# EXHIBIT H

CIVIC APP PAGE NO. 366



Bank of America
P.O. Box 15284
Wilmington, DE 19850

BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY PA6-580-04-05
SCRANTON, PA 18507

VIKRAM SRINIVASAN
45752 BRIDGEPORT DR
FREMONT CA 94539-6850

DATE: 11/15/19
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: XXXXXXXX6661

---

THE FOLLOWING WIRE WAS CREDITED TODAY: [redacted]

[redacted]

---

THE FOLLOWING WIRE WAS DEBITED TODAY: [redacted]

[redacted]

---

THE FOLLOWING WIRE WAS DEBITED TODAY: [redacted]

[redacted]

---

THE FOLLOWING WIRE WAS DEBITED TODAY: [redacted]

[redacted]

---





PAGE 2 OF 2

BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY        PA6-580-04-05
SCRANTON, PA        18507

P.O. Box 15284
Wilmington, DE 19850

VIKRAM SRINIVASAN
45752 BRIDGEPORT DR
FREMONT CA 94539-6850

DATE: 11/15/19
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: XXXXXXXX6661

THE FOLLOWING WIRE WAS DEBITED TODAY:

THE FOLLOWING WIRE WAS DEBITED TODAY:        USD AMOUNT $250,000.00

TRANSACTION REF:     2019111500523093       SERVICE REF: 017427
RELATED REF:         280762480              IMAD: 20191115B6B7HU3R017427
ORIGINATOR:          VIKRAM SRINIVASAN      ID: XXXXXXXX6661
INSTRUCTING BANK:    CONSUMER               ID: OLBS
BENEFICIARY:         FAY SERVICING          ID: 07241022099
BENEFICIARY'S BANK:  FIFTH THIRD BANK       ID: 042000314

PAYMENT DETAIL:      1666 SUMMITRIDGE DR BEVERLY HILLS

# EXHIBIT I

**From:** Thomas French <tfrench@hmcassets.com>
**Sent:** Thursday, January 23, 2020 2:34:26 PM
**To:** Vikram Srinivasan <vikram.srinivasan@hotmail.com>
**Cc:** FCGroup <fcgroup@hmcassets.com>
**Subject:** 1666 Summitridge Drive, Beverly Hills, CA

Hello Vikram,

The borrower has been in default of the loan that was secured by the above referenced property since March 1,2019.  The borrower has been in default of the Forbearance Agreement for the above referenced property since November 26, 2019.

Despite repeated promises and representations by the borrower to cure the outstanding defaults, borrower has failed to do so.

Accordingly, the property was sold on December 4, 2019 at a non-judicial foreclosure sale under the power granted to the trustee under the applicable deed of trust.  Pursuant to the foreclosure sale, the property reverted to the lender.

The foreclosure sale is final and will not be rescinded.  The lender will effect an orderly disposition of the property.

The lender reserves all rights, including but not limited to enforcement of the outstanding guaranty in the event of a deficiency.

Best Regards,

Tom French

HMC Assets

2015 Manhattan Beach Blvd, Ste 200

Redondo Beach, CA 90278

T. 310-640-3070 x2676



CONFIDENTIALITY NOTICE: This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, you may NOT use, disclose, copy or disseminate this information. Please contact the sender by reply e-mail immediately and destroy all copies of the original message, including all attachments. Your cooperation is greatly appreciated.

---------- Forwarded message ---------
From: **David Poitras** <dpoitras@wedgewood-inc.com>
Date: Thu, Dec 5, 2019 at 10:36 AM
Subject: RE: Summitridge Forbearance
To: Vinod Nichani <vinod@nichanilawfirm.com>
Cc: Amelia Valenzuela <avalenzuela@wedgewood-inc.com>, Thomas French <tfrench@hmcassets.com>, Ann Reed <AR@hmcassets.com>, FCGroup <fcgroup@hmcassets.com>, Barry Smith <bs@hmcassets.com>, Joanne O'Sullivan <joanne@nichanilawfirm.com>

Mr. Nichani,

For the avoidance of doubt, the **lender must actually receive** the $402,500 on or before December 6, 2019.  Not that the funds are available, en route, in the mail . . . funds must actually be received by the lender in order for there to be any further discussion.

In addition, the motion to dismiss should be filed on an emergency basis, and must request that if the court will not hear the motion on an emergency basis, at least shortened time.  Please send me a conformed copy of the motion when filed.

Thank you,


David M. Poitras
Deputy General Counsel
WEDGEWOOD
2015 Manhattan Beach Boulevard, Suite 100
Redondo Beach, California  90278

Office:  310.640.3070  Ext. 2833
Mobile: 310.720.1918
E-Fax:  310.469.0182
dpoitras@wedgewood-inc.com

**From:** Vinod Nichani <vinod@nichanilawfirm.com>
**Sent:** Wednesday, December 04, 2019 4:02 PM
**To:** David Poitras <dpoitras@wedgewood-inc.com>
**Cc:** Amelia Valenzuela <avalenzuela@wedgewood-inc.com>; Thomas French
<tfrench@hmcassets.com>; Ann Reed <AR@hmcassets.com>; FCGroup <fcgroup@hmcassets.com>;
Barry Smith <bs@hmcassets.com>; Joanne O'Sullivan <joanne@nichanilawfirm.com>
**Subject:** Re: Summitridge Forbearance

Good Afternoon,
My client has agreed to forward the funds by the required date. Further, my office will prepare and file
the required motion to dismiss on or before December 6th.

Vinod Nichani
Principal

408.800.6174 Office
408.290.9802 Direct Fax
vinod@nichanilawfirm.com

**NICHANI LAW FIRM**
111 N. Market Street, Suite 300
San Jose, California 95113
www.nichanilawfirm.com

 The information contained in this email may be confidential and/or legally privileged. It has been sent
for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient,
you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or
copying of this communication, or any of its contents, is strictly prohibited. If you have received this
communication in error, please contact the sender by reply email or by phone and destroy all copies of
the original message. Thank you for your assistance and kind consideration.

 ---------- Forwarded message ---------
From: **David Poitras** <dpoitras@wedgewood-inc.com>
Date: Wed, Dec 4, 2019 at 3:58 PM
Subject: RE: Summitridge Forbearance
To: Vinod Nichani <vinod@nichanilawfirm.com>

Mr. Nichani,

We did not receive any notice that the property owner Summitridge Venture Group, LLC filed any bankruptcy case.

If you are referring to the automatic stay in place in your client's personal bankruptcy case, that stay does not apply to any FCL sale of the property, as your client does not have any ownership interest in the real property.  Your client only has a membership interest in the LLC that owns the property.  The real property itself is not property of the individual's bankruptcy estate, only the membership interest is property of the individual estate, and a stay in such individual case does not stay acts against real property titled in a third party, in this case Summitridge Venture Group, LLC.

Please let us know how your client intends to proceed.


David M. Poitras
Deputy General Counsel

WEDGEWOOD

2015 Manhattan Beach Boulevard, Suite 100
Redondo Beach, California  90278
Office:  310.640.3070  Ext. 2833
Mobile: 310.720.1918
E-Fax:  310.469.0182
dpoitras@wedgewood-inc.com

**From:** Vinod Nichani <vinod@nichanilawfirm.com>
**Sent:** Wednesday, December 04, 2019 3:41 PM
**To:** David Poitras <dpoitras@wedgewood-inc.com>
**Subject:** Re: Summitridge Forbearance

Mr. Poitras,
I will share your email with my client. Your client continued with the foreclosure with the bankruptcy automatic stay in place?


Vinod Nichani
Principal

408.800.6174 Office
408.290.9802 Direct Fax
vinod@nichanilawfirm.com

**NICHANI LAW FIRM**
111 N. Market Street, Suite 300

San Jose, California 95113
www.nichanilawfirm.com


 The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email or by phone and destroy all copies of the original message. Thank you for your assistance and kind consideration.



On Wed, Dec 4, 2019 at 3:36 PM David Poitras <dpoitras@wedgewood-inc.com> wrote:
Mr. Nichani,

I am out of the office today at a conference.  Accordingly, I am copying my client representatives.

The client advises that the required funds were not received this morning and the FCL sale went forward today and the property reverted to the beneficiary.

Notwithstanding, if the balance of the funds ($402,500) is received and a motion to dismiss the bankruptcy case is filed on or before December 6, 2019, the lender will forbear from recording the TDUS to allow for further discussion.

Please advise how your client intends to proceed.  Please also advise if you are now representing the property owner Summitridge Venture Group, LLC, or if the entity is still being represented by Mr. Wiggs.


David M. Poitras
Deputy General Counsel
WEDGEWOOD
2015 Manhattan Beach Boulevard, Suite 100
Redondo Beach, California  90278
Office:  310.640.3070  Ext. 2833
Mobile: 310.720.1918
E-Fax:  310.469.0182
dpoitras@wedgewood-inc.com


**From:** Vinod Nichani <vinod@nichanilawfirm.com>
**Sent:** Wednesday, December 04, 2019 2:01 PM
**To:** David Poitras <dpoitras@wedgewood-inc.com>
**Subject:** Re: Summitridge Forbearance

Good Afternoon Counsel,

Thank you for your email. My client was informed that the property was foreclosed on today. Is that correct?

Vinod Nichani
Principal

408.800.6174 Office
408.290.9802 Direct Fax
vinod@nichanilawfirm.com

**NICHANI LAW FIRM**
111 N. Market Street, Suite 300
San Jose, California 95113
www.nichanilawfirm.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email or by phone and destroy all copies of the original message. Thank you for your assistance and kind consideration.

On Tue, Dec 3, 2019 at 6:08 PM David Poitras <dpoitras@wedgewood-inc.com> wrote:
Mr. Nichani,

1.   If the funds are available as you say, they could be wired tomorrow morning – contrary to your assertion, banks/wires take very little time if the money is available and a proper instruction is made.  You can wire the funds to the servicer and the servicer will hold the funds in suspense until such time as the bankruptcy case is dismissed.

2.   Likewise, under the circumstances, I am relatively certain that Judge Lafferty will dismiss the case on an emergency basis upon being presented with an emergency motion by the debtor requesting such relief.

Accordingly, if the funds are actually received by the lender on or before 11:00am on Wednesday December 4, 2019 AND an emergency motion to dismiss the chapter 11 case is filed with the bankruptcy court on or before Noon on December 5, 2019, the lender will forbear from continuing with its enforcement remedies until the later of December 6, 2019, or the date of entry of an order dismissing the bankruptcy case, but in no event later than December 13, 2019.

This proposal is last and best.


David M. Poitras
Deputy General Counsel

WEDGEWOOD

2015 Manhattan Beach Boulevard, Suite 100
Redondo Beach, California  90278
Office:  310.640.3070  Ext. 2833
Mobile: 310.720.1918
E-Fax:   310.469.0182
dpoitras@wedgewood-inc.com


**From:** Vinod Nichani <vinod@nichanilawfirm.com>
**Sent:** Tuesday, December 03, 2019 1:56 PM
**To:** David Poitras <dpoitras@wedgewood-inc.com>
**Subject:** Re: Summitridge Forbearance

Good Afternoon,
My client has informed me that the total funds of  $515,323.87 are available, but can be wired to your
client no later than Thursday (December 5, 2019).  The bank takes time. The bankruptcy will be
dismissed if the debtor does not file the balance of the schedules within 14 days of filing. Procedurally, it
will be difficult to file a Motion to Dismiss so early in the proceeding. Further, if payment is made
within the  14 days, we may need a court order to authorize the payment while the bankruptcy is
pending.
Would your client be amenable to my office holding the funds in a trust account, with proof provided to
you pending the dismissal. Upon dismissal the funds will be wired to your client? This way your client
can rest assured the funds are available and will be wired immediately upon dismissal of the bankruptcy.
The deadline to file the balance of the bankruptcy schedules is 12-16..the order by the court will be
entered a day or two after. This is barring any other motions by creditors.


Vinod Nichani
Principal

408.800.6174 Office
408.290.9802 Direct Fax
vinod@nichanilawfirm.com

**NICHANI LAW FIRM**
111 N. Market Street, Suite 300
San Jose, California 95113

www.nichanilawfirm.com

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please contact the sender by reply email or by phone and destroy all copies of the original message. Thank you for your assistance and kind consideration.

On Tue, Dec 3, 2019 at 12:02 PM David Poitras <dpoitras@wedgewood-inc.com> wrote:
Mr. Nichani,

The forbearance agreement you reference below required that the LLC remit $462,823.87 to the lender on or before November 26, 2019.  That payment was not timely made.  Accordingly, there is no agreement to forbear in place at this time.

In addition, the December payment in the amount of $52,500 is now due.

If the lender receives the amounts due of $515,323.87 by **5:00pm today** along with a dismissal of the pending chapter 11 case, the lender will agree to forbear on the terms and conditions set forth in the prior forbearance agreement.

For the avoidance of doubt, there is no current agreement to forbear, and the lender will delay its enforcement remedies solely on the condition that the total amount set forth above is received by 5:00pm today.

The foregoing is not a complete recitation of the lender's rights and remedies, each of which is specifically reserved.


David M. Poitras
Deputy General Counsel
WEDGEWOOD
2015 Manhattan Beach Boulevard, Suite 100
Redondo Beach, California  90278
Office:  310.640.3070  Ext. 2833
Mobile: 310.720.1918
E-Fax:   310.469.0182
dpoitras@wedgewood-inc.com

**From:** Vinod Nichani <vinod@nichanilawfirm.com>
**Sent:** Tuesday, December 03, 2019 11:24 AM
**To:** David Poitras <dpoitras@wedgewood-inc.com>
**Subject:** Summitridge Forbearance

Dear Counsel,

My office has been retained to represent Mr. Srinivasan, the managing and majority member of Summitridge Venter Group, the owner of 1666 Summitridge Drive, Beverly Hills.

As you are aware, a bankruptcy was filed yesterday to prevent the foreclosure of said property. I am new to this matter, but am of the understanding there is an outstanding payment due to your client based on a forebearance agreement? My client has the funds available to make the final payment and resolve any outstanding debt issues. What is the best way to resolve this matter?

Vinod
--
Vinod Nichani

Principal


408.800.6174 Office

408.290.9802 Direct Fax

vinod@nichanilawfirm.com


NICHANI LAW FIRM

111 N. Market Street, Suite 300

San Jose, California 95113

www.nichanilawfirm.com

# EXHIBIT J

CIVIC APP PAGE NO. 379



PAGE 1 OF 1

**Bank of America**

P.O. Box 15284
Wilmington, DE 19850

BANK OF AMERICA, N.A.
WIRE TRANSFER ADVICE
1 FLEET WAY          PA6-580-04-05
SCRANTON, PA          18507

VIKRAM SRINIVASAN
45752 BRIDGEPORT DR
FREMONT CA 94539-6850

DATE: 12/04/19
DIRECT INQUIRIES TO:
800.729.9473 OPTION 2
ACCOUNT: XXXXXXXX6661

---

THE FOLLOWING WIRE WAS CREDITED TODAY:

---

THE FOLLOWING WIRE WAS DEBITED TODAY:

---

THE FOLLOWING WIRE WAS DEBITED TODAY:          USD AMOUNT $112,823.87

| | | |
|---|---|---|
| TRANSACTION REF: | 2019120400543988 | SERVICE REF: 010393 |
| RELATED REF: | 282517252 | IMAD: 20191204B6B7HU2R010393 |
| ORIGINATOR: | VIKRAM SRINIVASAN | ID: XXXXXXXX6661 |
| INSTRUCTING BANK: | CONSUMER | ID: OLBS |
| BENEFICIARY: | FAY SERVICING | ID: 07241022099 |
| BENEFICIARY'S BANK: | FIFTH THIRD BANK, NATIONAL | ID: 042000314 |

PAYMENT DETAIL:          1666 SUMMITRIDGE DR BEVERLY HILLS

---

# EXHIBIT K

CIVIC APP PAGE NO. 381


**This page is part of your document - DO NOT DISCARD**




## 20191417929



**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/19/19 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 93.00 |

**Pages:**
**0003**



**L E A D S H E E T**



201912190210004

00017635719



010378529

**SEQ:**
**01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

91214068-JW

E441968

RECORDING REQUESTED BY:
**ENTRA DEFAULT SOLUTIONS, LLC**

AND WHEN RECORDED TO:
**CIVIC HOLDINGS III TRUST**
**c/o FAY SERVICING LLC**
**425 S. FINANCIAL PLACE, SUITE 2000**
**CHICAGO, IL 60605**
**Forward Tax Statements to**
**the address given above**

---

SPACE ABOVE LINE FOR RECORDER'S USE

TS #: **2019-04632**                                    Order #: **91214068**
A.P.N.: **4355-009-012**

# TRUSTEE'S DEED UPON SALE

A.P.N.: **4355-009-012**                          Transfer Tax: **$0.00**
THIS TRANSACTION IS EXEMPT FROM THE REQUIREMENTS OF THE REVENUE AND TAXATION CODE,
SECTION 480.3
The Grantee Herein was the Foreclosing Beneficiary.
The Amount of the Unpaid Debt was **$4,356,406.73**
The Amount Paid by the Grantee was **$2,380,000.00**
Said Property is in the City of **BEVERLY HILLS**, County of **Los Angeles**

**ENTRA DEFAULT SOLUTIONS, LLC,** as Trustee, (whereas so designated in the Deed of Trust hereunder more
particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

## CIVIC HOLDINGS III TRUST

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed
to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **Los
Angeles**, State of California, described as follows:

**THAT PORTION OF LOT 5, OF TRACT NO. 7996, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 186, PAGES 4 THROUGH 7 INCLUSIVE OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:**

**BEGINNING AT THE SOUTHEAST CORNER OF SAID LOT 5; THENCE ALONG THE SOUTHERLY LINE OF SAID LOT 5,
SOUTH 87° 16' 45" WEST 254.19 FEET TO THE EASTERLY LINE OF SUMMITRIDGE DRIVE; THENCE ALONG SAID LAST
MENTIONED EASTERLY LINE NORTH 4° 27' 36" WEST 3.93 FEET TO THE BEGINNING OF A 157.67 FOOT RADIUS
TANGENT CURVE CONCAVE TO THE SOUTHWEST; THENCE NORTHWESTERLY ALONG THE ARC OF SAID CURVE
THROUGH A CENTRAL ANGLE OF 46° 34' 30" DISTANCE OF 128.17 FEET; THENCE NORTH 63° 8' 41" EAST 346.05 FEET TO
AN ANGLE POINT IN THE EASTERLY LINE OF SAID LOT 5; THENCE ALONG SAID LAST MENTIONED EASTERLY LINE
SOUTH 0° 46' 53" EAST 258.53 FEET TO THE POINT OF BEGINNING.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by
**SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY** as
Trustor, dated **9/11/2018** and recorded on **9/25/2018**, instrument number **20180977267**, Book , Page  of Official
Records in the office of the Recorder of **Los Angeles**, California under the authority and powers vested in the

# TRUSTEE'S DEED UPON SALE

TS #: **2019-04632**
Order #: **91214068**

Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on **12/4/2019**. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being **$2,380,000.00**, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **ENTRA DEFAULT SOLUTIONS, LLC**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

Date: **12/4/2019**

ENTRA DEFAULT SOLUTIONS, LLC

By: _Marisa Vidrine_

**Marisa Vidrine, Foreclosure Specialist**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF California
COUNTY OF Contra Costa

On 12/4/2019 before me, Katie Milnes  Notary Public, Personally appeared, Marisa Vidrine, Foreclosure Specialist who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Name

(Seal)

KATIE MILNES
Notary Public - California
Contra Costa County
Commission # 2189413
My Comm. Expires Apr 29, 2021

# EXHIBIT L




**This page is part of your document - DO NOT DISCARD**

## 20200005464





**Pages:
0003**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/03/20 AT 08:00AM**

| | |
|---|---|
| FEES: | 30.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 105.00 |



**L E A D S H E E T**



202001033350003

**00017696623**



010411324

**SEQ:
01**

SECURE - 8:00AM

**THIS FORM IS NOT TO BE DUPLICATED**

E269820

0888003889 QCD

Recording requested by and
When recorded, please mail
Tax Statements to:
Civic Real Estate Holdings III, LLC
2015 Manhattan Beach Blvd #200
Redondo Beach, CA 90278
Prepared by:
Paula Chastain
Civic Real Estate Holdings III, LLC
2015 Manhattan Beach Blvd #200
Redondo Beach, CA 90278
Reference ID: 0888003889

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# QUIT CLAIM DEED

*The grantors and the grantees in this conveyance are comprised of the same parties who continue to hold the same proportionate interest in the property, R & T 11925(d). The undersigned Grantor declares Documentary Transfer Tax is $0.00, computed on full value of interest or property conveyed.*

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**This Quit Claim Deed** is made between, **Civic Holdings III Trust,** whose post office address is 2015 Manhattan Beach Blvd., #200, Redondo Beach, CA 90278, (hereinafter, referred to as **Grantor**), and **Civic Real Estate Holdings III, LLC** whose post office address is 2015 Manhattan Beach Blvd., #200, Redondo Beach, CA 90278, (hereinafter, referred to as **Grantee**):

(Whenever used herein, the terms "Grantor' and "Grantee" include all the parties to this instrument and the heirs, legal representatives, and assigns of individuals, and the successors and assigns of corporations, trusts and trustees)

**Witnesseth**, that said Grantor, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to said Grantor in hand paid by said Grantee, the receipt whereof is hereby acknowledged, does hereby remise, release, and quitclaim to the said Grantee, and Grantee's heirs and assigns forever, all the right, title, interest, claim, and demand which Grantor has in and to the following described land, situate, lying, and being in **Los Angeles County, CA** to-wit:

**Property Address:**     **1666 Summitridge Drive, Beverly Hills, CA 90210**
**APN:**                          **4355-009-012**

**As further described as follows:**

Quit Claim Deed/1666 Summitridge Drive, Beverly Hills, CA 90210

CIVIC APP PAGE NO. 387

That portion of Lot 5, of Tract No. 7996, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 186, Pages 4 through 7 inclusive of Maps, in the office of the County Recorder of said county, described as follows:

Beginning at the Southeast corner of said Lot 5; thence along the Southerly line of said Lot 5, South 87' 16' 45" West 254.19 feet to the Easterly line of Summitridge Drive; thence along said last mentioned Easterly line North 4' 27' 36" West 3.93 feet to the beginning of a 157.67 foot radius tangent curve concave to the Southwest; thence Northwesterly along the arc of said curve through a central angle of 46' 34' 30" distance of 128.17 feet; thence North 63' 8' 41" East 346.05 feet to an angle point in the Easterly line of said Lot 5; thence along said last mentioned Easterly line South 0' 46' 53" East 258.53 feet to the point of beginning.

APN: 4355-009-012          1666 Summitridge Drive, Beverly Hills, CA 90210

Have and to hold, the same together with all and singular the appurtenances thereto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity, and claim whatsoever of Grantors, either in law or equity, for the use, benefit, and profit of the said Grantee forever.

IN WITNESS WHEREOF, Grantor and Grantee have hereunto set their hands and seal the day and year written.

Dated: __12/30/2019__

Civic Holdings III Trust

By:_____
    James A. Helfrich, Member

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of      California      ) ss
County of     Los Angeles     )

On __12/30/19__, before me, **Jacqueline O'Connor**, Notary Public, personally appeared **James A. Helfrich**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

JACQUELINE O'CONNOR
Notary Public - California
Los Angeles County
Commission # 2293552
My Comm. Expires Jun 17, 2023

Quit Claim Deed/1666 Summitridge Drive, Beverly Hills, CA 90210

**EXHIBIT 18**

GEOFFREY E. WIGGS (SBN 276041)
LAW OFFICES OF GEOFF WIGGS
1900 S. Norfolk St, Suite # 350
San Mateo, Ca 94403
Telephone: (650) 577-5952
Facsimile: (650) 577-5953
Geoff@wiggslaw.com

(Proposed) Attorney for Debtor in Possession
VIKRAM SRINIVASAN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| | Case No.:  20-51735 |
| In Re: | Chapter 11 |
| VIKRAM SRINIVASAN, | EX PARTE APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON MOTION BY DEBTOR FOR ORDER EXTENDING FULL AUTOMATIC STAY AS TO ALL CREDITORS |
| Debtor in Possession. | [11 U.S.C. §362(C)(3)] |

TO THE HONORABLE STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY JUDGE:

VIKRAM SRINIVASAN, the debtor in possession in the above-entitled bankruptcy case (the "Debtor") hereby applies to the Court for an order shortening time for and setting a hearing as soon as the Court may hear the matter on the Motion by Debtor for Order Extending Full Automatic Stay [11 U.S.C. §362(C)(3)] ("Motion") on or before January 8, 2021. In its Motion, the Debtor seeks an extension of the full protections of the automatic stay until they would terminate under 11 U.S.C. §362 (c)(1) or (2), or until further order of the Court.

The Debtor respectfully represents as follows in support of this Ex Parte Application:

1

1. December 10, 2020, the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.

2. The Debtor is seeks an extension of the full protections of the automatic stay until they ould terminate under 11 U.S.C. §362 (c)(1) or (2), or until further order of the Court.

3. The Motion complies with all applicable Guidelines.

4. Debtor's counsel has conferred by email the U.S. Trustee on December 29, 2020 to confirm that the U.S. Trustee does not oppose an order shortening time.

WHEREFORE, the Debtor respectfully requests that the Court enter an order setting a hearing on the Motion by Debtor for Order Extending Full Automatic Stay [11 U.S.C. §362(C)(3)] on or before January 8, 2021, or at the earliest time convenient to the Court prior to that date, and for such other and further relief as the Court deems just and proper.

oo0oo

Dated this December 29, 2020                    /s/ Geoffrey E. Wiggs, Esq.
                                                **Geoffrey E. Wiggs, Esq.**
                                                (Proposed) Attorney for
                                                Debtor in Possession

2

EX PARTE APPLICATION FOR ORDER SHORTENING TIME
CIVIC APP PAGE NO. 391

1    GEOFFREY E. WIGGS (SBN 276041)
     LAW OFFICES OF GEOFF WIGGS
2    1900 S. Norfolk St, Suite # 350
     San Mateo, Ca 94403
3    Telephone: (650) 577-5952
     Facsimile: (650) 577-5953
4    Geoff@wiggslaw.com

5    (Proposed) Attorney for Debtor in Possession
     VIKRAM SRINIVASAN

6                  UNITED STATES BANKRUPTCY COURT

7         NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

8
                                        Case No.:  20-51735
9
     In Re:                             Chapter 11
10
     VIKRAM SRINIVASAN,                 DECLARATION OF GEOFFREY WIGGS
11                                      IN SUPPORT OF EX PARTE
                                        APPLICATION FOR ORDER
12           Debtor in Possession.      SHORTENING TIME FOR HEARING ON
                                        MOTION BY DEBTOR FOR ORDER
13                                      EXTENDING FULL AUTOMATIC STAY
                                        AS TO ALL CREDITORS
14
15
                                        [11 U.S.C. §362(C)(3)]
16

17

18   I, Geoffrey Wiggs, hereby declare:

19      1.  I am an attorney licensed to practice by the State of California and admitted to practice

20          before the above-entitled Court. I am the proposed attorney for the Debtor Vikram

21          Srinivasan ("Debtor") in the above-referenced case and I make this Declaration in

22
            support of my client.
23
        2.  I have personal knowledge of the matters contained herein, except as to those matters
24
25          alleged upon information and belief and, as to those matters, I believe them to be true. If

26          called upon as a witness, I could and would testify as follows.

27

28

                                            1

     DECLARATION IN SUPPORT OF EX PARTE APPLICATION FOR ORDER SHORTENING TIME
CIVIC APP PAGE NO. 392

3.   The Debtor has applied to the Court for an order shortening time for and setting a hearing as soon as the Court may hear the matter on the Motion for Order Extending Full Automatic Stay As To All Creditors on January 12, 2021, or at the earliest time convenient to the Court thereafter. In its Motion the Debtor seeks an extension of the full protections of the automatic stay until they would terminate under 11 U.S.C. §362 (c)(1) or (2), or until further order of the Court.

4.   The instant Chapter 11 bankruptcy case was filed on December 10, 2020.  Debtor has had one prior bankruptcy matter pending within the prior year.

5.   The 30-day automatic stay will expire by statute on January 9, 2020.

6.   I have communicated with the United States Trustee trial attorney assigned to this case and he has informed me he has no objection to this motion being heard on shortened time.

Executed on December 29, 2020 at San Mateo, California. I declare under penalty of perjury that the foregoing is true and correct.

oo0oo

Dated this December 29, 2020                    /s/ Geoffrey E. Wiggs, Esq.
                                                **Geoffrey E. Wiggs, Esq.**
                                                Attorney for (Proposed) Debtor In
                                                Possession

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3

DECLARATION IN SUPPORT OF EX PARTE APPLICATION FOR ORDER SHORTENING TIME
CIVIC APP PAGE NO. 394

**EXHIBIT 19**

**Entered on Docket**
**December 30, 2020**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1   GEOFFREY E. WIGGS (SBN 276041)
    LAW OFFICES OF GEOFF WIGGS
2   1900 S. Norfolk St, Suite # 350
    San Mateo, Ca 94403
3   Telephone: (650) 577-5952
    Facsimile: (650) 577-5953
4   Geoff@wiggslaw.com

5   (Proposed) Attorney for Debtor in Possession
    VIKRAM SRINIVASAN

**The Relief Sought in the following order is DENIED.**
**Signed: December 30, 2020**

*Stephen Johnson*
_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

6   **Motions requesting an order shortening time must comply with**
7   **B.L.R. 9006-1. Should Debtor refile the motion, it should, among**
    **other things, explain the delay in filing the motion and request**
8   **permission from the real party in interest to the underlying motion**
    **to extend the automatic stay. The court also notes there is no**
9   **available calendar date prior to January 9, 2021.**

9            UNITED STATES BANKRUPTCY COURT

10       NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

11                                          |  Case No.:  20-51735
12   In Re:                                 |
                                            |  Chapter 11
13   VIKRAM SRINIVASAN,                     |
                                            |  ORDER SHORTENING TIME
14                                          |
              Debtor in Possession.         |  Date:
15                                          |  Time:
                                            |  Location: Tele/videoconference
16                                          |  Judge: Hon. Stephen L. Johnson
17
18
19

20       The EX PARTE APPLICATION FOR ORDER SHORTENING TIME FOR HEARING

21   ON MOTION BY DEBTOR FOR ORDER EXTENDING FULL AUTOMATIC STAY AS TO

22   ALL CREDITORS [11 U.S.C. §362(C)(3)] ("Application") of the Debtor and Debtor-in-

23   Possession Vikram Srinivasan ("Debtor") having been presented and good cause appearing,

24

25       IT IS HEREBY ORDERED that:

26       1. The Application is approved. An interim hearing shall be held on the MOTION BY

27   DEBTOR FOR ORDER EXTENDING FULL AUTOMATIC STAY AS TO ALL CREDITORS

28

**CIVIC APP PAGE NO. 396**

[11 U.S.C. §362(C)(3)] ("Motion") on _____ at _____.

    2. Good and sufficient notice of the hearing on the Motion shall be deemed given if served upon all creditors listed on the Debtor's list of creditors holding the 20 largest unsecured claims, the Office of the United States Trustee, all secured creditors and their known counsel and any party that has served the Debtor with a request for special notice. Where the Debtor has an email address for any of the above parties, the Debtor may serve such parties by email delivery. Otherwise, service shall be by overnight mail or similar delivery.

    3. Any opposition to the Motion may be filed electronically or presented orally at the time of the hearing.

<p align="center">**END OF ORDER**</p>

SERVICE LIST

*NONE

**EXHIBIT 20**

GEOFFREY E. WIGGS (SBN 276041)
LAW OFFICES OF GEOFF WIGGS
1900 S. Norfolk St, Suite # 350
San Mateo, Ca 94403
Telephone: (650) 577-5952
Facsimile: (650) 577-5953
Geoff@wiggslaw.com

(Proposed) Attorney for Debtor in Possession
VIKRAM SRINIVASAN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

|  |  |
|---|---|
| In Re:<br><br>VIKRAM SRINIVASAN,<br><br>          Debtor in Possession. | Case No.:  20-51735<br><br>Chapter 11<br><br>AMENDED APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON MOTION BY DEBTOR FOR ORDER EXTENDING FULL AUTOMATIC STAY AS TO ALL CREDITORS<br><br>[11 U.S.C. §362(C)(3)] |

TO THE HONORABLE STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY

JUDGE:

Pursuant to Bankruptcy Local Rule 9006-1 for the Northern District of California,

VIKRAM SRINIVASAN (the "Debtor"), the Debtor in the above-captioned case, hereby applies

(the "Application") for an Order Shortening Time for a hearing on the Debtor's *MOTION BY*

*DEBTOR FOR ORDER EXTENDING FULL AUTOMATIC STAY AS TO ALL CREDITORS*

*[U.S.C. §362 (C)(3)*(the "Motion") See Docket #23 such that the Motion may be heard on or

before January 8, 2021. Alternatively, an order imposing the stay beyond its expiration date of

January 9, 2021 to allow the matter to be heard at the convenience of the Court.

1

APPLICATION FOR ORDER SHORTENING TIME

CIVIC APP PAGE NO. 400

This Application is based upon the matters set forth herein and in the accompanying Declaration of Geoff Wiggs (the "Declaration") filed concurrently herewith, as well as on the matters set forth in the Motion and its accompanying Declarations.

In further support of this Application, the Plaintiff states as follows:

**Necessity For Order Shortening Time**

As is set forth in greater detail in the Motion and supporting Declaration, the instant Chapter 11 case was filed on December 10, 2020. Debtor has had one prior bankruptcy matter pending within the prior year. The automatic stay will expire on January 9, 2021.

14 days notice for a hearing on the motion is generally required. In that the motion was filed on December 29, 2020, 14 days would go beyond the expiration date of the automatic stay.

For the above reasons, the Debtor respectfully submits that it would be appropriate to shorten time for a hearing on the Motion may be heard on or before January 8, 2021. Alternatively, an order imposing the stay beyond its expiration date of January 9, 2021 to allow the matter to be heard at the convenience of the Court.

Debtor's Motion to Extend Stay was delayed due to Debtor's being in the process of negotiation with the Creditor.  Debtor was hoping for an out-of-court resolution.  Further, Debtor required until December 24, 2020, to complete filing of all of his required forms and schedules.  After filing the documents, additional time was required to fully evaluate the situation.  Due to the emergency filing, it has taken additional time to analyze the Debtor's situation and the initial 30-day period of the automatic stay was insufficient.

**Previous time Modifications**

None

2

APPLICATION FOR ORDER SHORTENING TIME

**Effect of the Requested Time Modification**

If this Application is granted, the period to notice a hearing on the Motion may be heard on or before January 8, 2021. Alternatively, an order imposing the stay beyond its expiration date of January 9, 2021 to allow the matter to be heard at the convenience of the Court.

**Proposed Schedule For Opposing the Motion**

The Plaintiff proposes that any opposition or response to the Motion may be made orally at the hearing, if the opposing party so chooses.

**Communication with other interested parties**

As set forth in the Declaration, on or about December 29, 2020 proposed counsel for the estate Geoffrey Wiggs communicated with counsel via telephone and e-mail for the United States Trustee regarding his possible opposition to a hearing on shortened time. Counsel for the United States Trustee has responded and stated he has no objection.

As set forth in the Declaration, on or about December 31, 2020 proposed counsel for the Debtor, Geoffrey Wiggs, communicated with counsel via telephone, Amelia Valenzuela, counsel for Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust; and Civic Real Estate Holdings III, LLC, regarding her possible opposition to hearing on shortened time. Ms. Valenzuela has not yet responded.

**Notice**

To maximize the extent of notice, concurrent with filing of this Amended Application on January 2, 2021, Debtor will serve this Application and its supporting papers (with a copy of the Motion and its supporting papers) by electronic mail, facsimile or overnight delivery upon all parties, including counsel to creditors.

3

APPLICATION FOR ORDER SHORTENING TIME
**CIVIC APP PAGE NO. 402**

Promptly after the Court considers this Application, the Plaintiff will serve notice of entry of Court's order by electronic mail, facsimile, or overnight delivery upon the same parties.

**WHEREFORE,** the Plaintiff respectfully requests that the Court grant this Application in its entirety and enter an Order:

1. Motion may be heard on or before January 8, 2021. Alternatively, an order imposing the stay beyond its expiration date of January 9, 2021 to allow the matter to be heard at the convenience of the Court.

2. Providing that any opposition to the Motion may be made orally at the hearing; and

3. Directing the Debtor to serve notice of the entry of the order approving this Application upon counsel to the United States Trustee and Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust; and Civic Real Estate Holdings III, LLC.

Dated this January 2, 2021                    /s/ Geoffrey E. Wiggs, Esq.

                                                  **Geoffrey E. Wiggs, Esq.**
                                                  (Proposed) Attorney for
                                                  Debtor in Possession

APPLICATION FOR ORDER SHORTENING TIME
**CIVIC APP PAGE NO. 403**

GEOFFREY E. WIGGS (SBN 276041)
LAW OFFICES OF GEOFF WIGGS
1900 S. Norfolk St, Suite # 350
San Mateo, Ca 94403
Telephone: (650) 577-5952
Facsimile: (650) 577-5953
Geoff@wiggslaw.com

(Proposed) Attorney for Debtor in Possession
VIKRAM SRINIVASAN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

|  |  |
|---|---|
| In Re:<br><br>VIKRAM SRINIVASAN,<br><br>                Debtor in Possession. | Case No.: 20-51735<br><br>Chapter 11<br><br>DECLARATION IN SUPPORT OF AMENDED APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON MOTION BY DEBTOR FOR ORDER EXTENDING FULL AUTOMATIC STAY AS TO ALL CREDITORS<br><br>[11 U.S.C. §362(C)(3)] |

I, GEOFFREY E. WIGGS, HEREBY DECLARE:

I am an attorney at law duly licensed to practice in the State of California and admitted to practice before this Court and counsel to Debtor, Vikram Srinivasan. The following is true of my personal knowledge and, if called as a witness, I could and would testify competently thereto. The Debtor seeks expedited consideration for its *Motion for Order Extending Full Automatic Stay as to All Creditors.*

In further support of this Application, I state as follows:

The Debtor has applied to the Court for an order shortening time for and setting a hearing as soon as the Court may hear the matter on the Motion for Order Extending Full

1

DECLARATION IN SUPPORT OF APPLICATION FOR ORDER SHORTENING TIME

**CIVIC APP PAGE NO. 404**

Automatic Stay As To All Creditors on January 12, 2021, or at the earliest time convenient to the Court thereafter. In his Motion Debtor seeks an extension of the full protections of the automatic stay until the stay would otherwise terminate under 11 U.S.C. §362 (c)(1) or (2), or until further order of the Court.

The instant Chapter 11 bankruptcy case was filed on December 10, 2020. Debtor has had one prior bankruptcy matter pending within the prior year.

**Communication with other interested parties**

On or about December 29, 2020 I communicated with counsel through telephone and e-mail for the United States Trustee regarding his possible opposition to a hearing on shortened time. Counsel for the United States Trustee informed me that he has no objection.

On December 31, 2020, I attempted to communicate with counsel by telephone. Amelia Valenzuela, counsel for Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust; and Civic Real Estate Holdings III, LLC, regarding her possible opposition to hearing on shortened time. Ms. Valenzuela has not yet responded. I have also sent an email to Ms. Valenzuela, but have not had a response.

Respectfully submitted on January 2, 2021, in San Mateo, California. I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Dated this <u>January 2, 2021</u>                    <u>/s/ *Geoffrey E. Wiggs, Esq.*</u>
                                                                      **Geoffrey E. Wiggs, Esq.**
                                                                      (Proposed) Attorney for
                                                                      Debtor in Possession

2

GEOFFREY E. WIGGS (SBN 276041)
LAW OFFICES OF GEOFF WIGGS
1900 S. Norfolk St, Suite # 350
San Mateo, Ca 94403
Telephone: (650) 577-5952
Facsimile: (650) 577-5953
Geoff@wiggslaw.com

(Proposed) Attorney for Debtor in Possession
VIKRAM SRINIVASAN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

|  |  |
|---|---|
| In Re:<br><br>VIKRAM SRINIVASAN,<br><br>       Debtor in Possession. | Case No.:  20-51735<br><br>Chapter 11<br><br>CERTIFICATE OF SERVICE |

I, the undersigned, state that I am employed in the City of San Mateo, County of San

Mateo, in the State of California; that I am over the age of eighteen years and not a party to the

within action; that my business address is 1900 S. Norfolk St., Ste 350, San Mateo, Ca 94403.

On the date hereon, I served the foregoing documents described as:

[AMENDED] APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON
MOTION BY DEBTOR FOR ORDER EXTENDING FULL AUTOMATIC STAY AS TO ALL
CREDITORS;

DECLARATION OF GEOFFREY WIGGS IN SUPPORT OF [AMENDED] APPLICATION
FOR ORDER SHORTENING TIME FOR HEARING ON MOTION BY DEBTOR FOR
ORDER EXTENDING FULL AUTOMATIC STAY AS TO ALL CREDITORS;

And this CERTIFICATE OF SERVICE;

1

By causing a true copy of said document(s), enclosed in a sealed envelope and addressed as shown to the party or parties below by overnight mail delivery with U.S. Postal Service or Federal Express with postage fully prepaid thereon and depositing it in the mail at San Mateo, California to the following parties:

WEDGEWOOD
2015 Manhattan Beach Blvd., Suite 100
Redondo Beach, CA 90278.

Synchrony Bank
c/o PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541

On this same date, I further caused these documents to be emailed to the following email addresses:

adettelbach@wedgewood-inc.com    //Email address of ALAN M. DETTELBACH
scox@wedgewood-inc.com            // Email address of SETH P. COX
jchoi@wedgewood-inc.com           // Email address of JULIE A. CHOI
eyang@wedgewood-inc.com           // Email address of ELAINE YANG
avalenzuela@wedgewood-inc.com // Email address of AMELIA B. VALENZUELA
Claims_RMSC@PRAGroup.com    // Special Notice Recipient

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge. Executed on January 2, 2021in San Mateo, California.

*/s/ Geoffrey E. Wiggs*
Geoffrey E. Wiggs

2

**EXHIBIT 21**

1   WEDGEWOOD
    Office of the General Counsel
2   DAVID M. POITRAS P.C. (SBN 141309)
    dpoitras@wedgewood-inc.com
3   AMELIA VALENZUELA (SBN 320428)
    avalenzuela@wedgewood-inc.com
4   2015 Manhattan Beach Blvd., Suite 100
    Redondo Beach, CA 90278
5   Telephone:     (310) 640-3070
    Facsimile:     (310) 640-3090
6
    Attorneys for Moving Parties,
7   *WEDGEWOOD, LLC, solely as Administrator*
    *of the Civic Holdings III Trust; and Civic Real*
8   *Estate Holdings III, LLC*

9
                **UNITED STATES BANKRUPTCY COURT**
10               **NORTHERN DISTRICT OF CALIFORNIA**
                      **SAN JOSE DIVISION**
11

12  In re                          | CASE NO.      20-51735

    VIKRAM SRINIVASAN,             | Chapter 11
13
                     Debtor.
14

15                                 | Judge:  The Hon. Stephen L. Johnson

16

17  **WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III**
    **TRUST AND CIVIC REAL ESTATE HOLDINGS III, LLC'S OPPOSITION TO**
18  **AMENDED APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON**
    **MOTION BY DEBTOR FOR ORDER EXTENDING FULL AUTOMATIC STAY AS TO**
19                       **ALL CREDITORS**

20
            Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust and Civic Real
21
    Estate Holdings III, LLC (together the "**Civic Parties**") hereby file their Opposition to the *Amended*
22
    *Application for Order Shortening Time for Hearing on Motion by Debtor for Order Extending Full*
23
    *Automatic Stay as to all Creditors* (Docket No. 28) ("**Amended Application**"), filed by VIKRAM
24
    SRINIVASAN (the "**Debtor**").
25
            The Civic Parties oppose the Debtor's request to hear the Debtor's *Motion by Debtor for Order*
26
    *Extending the Full Automatic Stay as to all Creditors* (Docket No. 23) (the "**Motion To Extend**") on
27
    shortened time as the Debtor has not demonstrated good cause to shorten time.  The Debtor filed this
28
    Bankruptcy Case on December 10, 2020 yet failed to file his Motion To Extend until December 29,

1    2020, over two weeks after the case was filed.  The Debtor provides no reason as to why the Motion

2    To Extend could not be filed on the petition date.  Further, the Debtor failed to provide counsel for

3    the Civic Parties with proper notice of its Amended Application prior to filing and has misrepresented

4    facts in the Declaration of Geoffrey Wiggs and the Certificate of Service attached to the Amended

5    Application.  (Declaration of Amelia Valenzuela, ¶¶ 2-7.)  For the reasons stated herein, the Motion

6    should be denied.

7         In the alternative, if the Court is inclined to grant the Amended Application, the Civic Parties

8    respectfully request that the hearing date on their *Motion for Relief from Stay* (Docket No. 16), which

9    is currently set for February 2, 2021 at 10:00 a.m., be advanced and set for the same date and time as

10   the hearing on the Motion To Extend.

11                                 Respectfully submitted,

12   DATED:  January 4, 2021           WEDGEWOOD

13                                  OFFICE OF THE GENERAL COUNSEL

14                         By: */s/ Amelia Valenzuela*_____

15                               DAVID M. POITRAS

                                    AMELIA B. VALENZUELA

16                         WEDGEWOOD, LLC, solely as Administrator of the

                           Civic Holdings III Trust and Civic Real Estate

17                         Holdings III, LLC

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 22**

1   WEDGEWOOD
    Office of the General Counsel
2   DAVID M. POITRAS P.C. (SBN 141309)
    dpoitras@wedgewood-inc.com
3   AMELIA VALENZUELA (SBN 320428)
    avalenzuela@wedgewood-inc.com
4   2015 Manhattan Beach Blvd., Suite 100
    Redondo Beach, CA 90278
5   Telephone:     (310) 640-3070
    Facsimile:      (310) 640-3090
6
7   Attorneys for Moving Parties,
    *WEDGEWOOD, LLC, solely as Administrator*
    *of the Civic Holdings III Trust; and Civic Real*
8   *Estate Holdings III, LLC*

9                    **UNITED STATES BANKRUPTCY COURT**
10                   **NORTHERN DISTRICT OF CALIFORNIA**
                     **SAN JOSE DIVISION**
11

12  In re                              CASE NO.     20-51735

13  VIKRAM SRINIVASAN,                 Chapter 11

                         Debtor.       Judge:  The Hon. Stephen L. Johnson
14

15

16

17

18  <u>**DECLARATION OF AMELIA B. VALENZUELA, ESQ. IN SUPPORT OF WEDGEWOOD,**</u>
19  <u>**LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III TRUST AND**</u>
    <u>**CIVIC REAL ESTATE HOLDINGS III, LLC'S OPPOSITION TO AMENDED**</u>
20  <u>**APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON MOTION BY**</u>
    <u>**DEBTOR FOR ORDER EXTENDING FULL AUTOMATIC STAY AS TO ALL**</u>
21  <u>**CREDITORS**</u>

22
        I, Amelia Valenzuela, declare:
23
        1.      I have personal knowledge of the matters set forth in this declaration and, if called
24
    upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have
25
    knowledge regarding Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust and
26
    Civic Real Estate Holdings III, LLC's (together the "**Civic Parties**") Opposition to the *Amended*
27
    *Application for Order Shortening Time for Hearing on Motion by Debtor for Order Extending Full*
28
    *Automatic Stay as to all Creditors* (Docket No. 28) ("**Amended Application**") in my capacity as an

1   the attorney of record for Movant.

2        2.      On January 2, 2021, Geoffrey E. Wiggs, attorney for VIKRAM SRINIVASAN (the

3   "**Debtor**"), submitted his *Declaration in Support of Amended Application for Order Shortening Time*

4   *for Hearing on Motion by Debtor for Order Extending Full Automatic Stay as to all Creditors* (Docket

5   No. 28-1) ("**Wiggs Dec.**").

6        3.      In the Wiggs Dec., Mr. Wiggs attested that on December 31, 2020, "I have also sent

7   an email to Ms. Valenzuela [regarding her possible opposition to the hearing on shortened time], but

8   have not had a response."

9        4.      On December 31, 2020, I did not receive an email from Mr. Wiggs regarding the

10  Amended Application nor my position on the request to hold the hearing on shortened time.  I did not

11  receive an email from Mr. Wiggs regarding my position at any other time prior to Mr. Wiggs filing

12  the Amended Application.

13       5.      In the Declaration, Mr. Wiggs also attests that he "attempted to communicate with

14  counsel by telephone."  On December 31, 2020 at 2:15 p.m., I received a voicemail from an individual

15  who represented she worked at Mr. Wiggs' law firm regarding the Amended Application.  As it was

16  New Year's Eve, my department had already closed for the weekend when the voicemail was

17  received.

18       6.      In the Certificate of Service attached to the Amended Application, which is signed by

19  Mr. Wiggs, Mr. Wiggs states that on January 2, 2021, he emailed the Amended Application to my

20  email at avalenzuela@wedgewood-inc.com.  I did not receive an email from Mr. Wiggs on January

21  2, 2021 and nor has any other attorney at my office.

22       7.      Instead, I received an ECF notification through the Court's PACER system that Mr.

23  Wiggs had filed the Amended Application.  Accordingly, on January 3, 2021, I emailed Mr. Wiggs

24  to inform him that my client opposed the Debtor's request to hear the motion on shortened time.  I

25  further informed Mr. Wiggs that I had not received an email from him prior to his filing of the

26  Amended Application.  Mr. Wiggs did not respond to my email.  A true and correct copy of the this

27  email correspondence is attached hereto as **"Exhibit 1"**.

28

- 2 -

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct and that this declaration is executed this 4th day of January 2021, in

3    Redondo Beach, California.

4

5    _____

6    AMELIA B. VALENZUELA

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

**From:** Amelia Valenzuela
**Sent:** Sunday, January 3, 2021 10:40 AM
**To:** Geoff Wiggs
**Cc:** David Poitras
**Subject:** RE: FW: In re Srinivasan
**Attachments:** 2021-01-02 - Amended Application to Shorten Time [28].pdf

**Follow Up Flag:** Follow up
**Due By:** Monday, January 4, 2021 4:00 PM
**Flag Status:** Flagged

Geoff, I saw that you filed an amended application to shorten time to hear a motion to extend the stay.  Please note that we oppose this request to shorten time.  Further, contrary to the statements made in your sworn declaration, you did not send me an email seeking my position as to this ex parte application.

Amelia Valenzuela
Associate General Counsel



2015 Manhattan Beach Boulevard, Suite 100
Redondo Beach, California 90278
Office: 310.640.3070 x 2821
Fax:  310-730-5967
avalenzuela@wedgewood-inc.com

**From:** Geoff Wiggs <geoff@wiggslaw.com>
**Sent:** Tuesday, December 29, 2020 6:38 PM
**To:** Amelia Valenzuela <avalenzuela@wedgewood-inc.com>
**Subject:** Re: FW: In re Srinivasan

**[External Sender]**

Thank you,  Amelia. Something must have gone wrong when I copied from the pdf document.

--
Geoff Wiggs, MBA, Esquire
Main: (650) 577-5952
Fax: (650) 577-5953
Geoff@WiggsLaw.com

Law Offices of Geoff Wiggs
1900 S. Norfolk St, Ste 350
San Mateo, Ca 94403-1171

NOTICE: The information contained in this transmission may be privileged and confidential. If you are not the intended recipient of this message, please delete the message and destroy any printed copies and DO NOT copy, forward or otherwise disseminate this message.

NOTICE TO CLIENTS: The attorney-client privilege may be lost if you disclose, copy or forward this message to someone else. Therefore, you SHOULD NOT forward or distribute this message to anyone else without the author's permission.

On Tue, Dec 29, 2020, 6:34 PM Amelia Valenzuela <avalenzuela@wedgewood-inc.com> wrote:

> Geoff, your email was forwarded to me.  We are handling this matter.  Please note that you misspelled my email below.
>
>
> Thank you,
>
>
> Amelia Valenzuela
>
> Associate General Counsel



> 2015 Manhattan Beach Boulevard, Suite 100
>
> Redondo Beach, California 90278
>
> Office: 310.640.3070 x 2821
>
> Fax:  310-730-5967
>
> avalenzuela@wedgewood-inc.com

---

**From:** Geoff Wiggs <geoff@wiggslaw.com>
**Sent:** Tuesday, December 29, 2020 4:41 PM
**To:** avalenzeuala@wedgewood-inc.com; Elaine Yang <EYang@wedgewood-inc.com>; Julie Choi <jchoi@wedgewood-inc.com>; Seth Cox <scox@wedgewood-inc.com>; Alan Dettelbach <adettelbach@wedgewood-inc.com>; Claims_RMSC@PRAGroup.com
**Subject:** In re Srinivasan

**[External Sender]**

---

Hello,

I represent Mr. Srinivasan in his Chapter 11 bankruptcy filing.  I have filed a Motion to Extend the Automatic Stay and requested that the Motion be heard on shortened time for notice.

The Court has not set a hearing date on the motion, nor granted the Order Shortening Time.

I am attaching both the Application for Order Shortening Time and the Motion to Extend the Automatic Stay to this email.

The Motion will also be served by regular mail this evening.

Best regards,

Geoff

--

**Geoff Wiggs, MBA**
Main: (650) 577-5952
Fax: (650) 577-5953
Geoff@WiggsLaw.com

Law Offices of Geoff Wiggs
1900 S. Norfolk St, Ste 350
San Mateo, Ca 94403-1171

NOTICE: The information contained in this transmission may be privileged and confidential. If you are not the intended recipient of this message, please delete the message and destroy any printed copies and DO NOT copy, forward or otherwise disseminate this message.

CONFIDENTIALITY NOTICE: This e-mail message, including all attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, you may NOT use, disclose, copy or disseminate this information. Please contact the sender by reply e-mail immediately and destroy all copies of the original message, including all attachments. Your cooperation is greatly appreciated.

WEDGEWOOD
Office of the General Counsel
DAVID M. POITRAS P.C. (SBN 141309)
dpoitras@wedgewood-inc.com
AMELIA VALENZUELA (SBN 320428)
avalenzuela@wedgewood-inc.com
2015 Manhattan Beach Blvd., Suite 100
Redondo Beach, CA 90278
Telephone:     (310) 640-3070
Facsimile:     (310) 640-3090

Attorneys for Moving Parties,
*WEDGEWOOD, LLC, solely as*
*Administrator of the Civic Holdings III*
*Trust; and Civic Real Estate Holdings*
*III, LLC*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

In re:

VIKRAM SRINIVASAN,

Chapter 11
Case No. 20-51735

CERTIFICATE OF SERVICE

Debtor(s)_____/

        I, the undersigned, declare that I am employed in the County of Los Angeles.  I am over the age of 18 years and not a party to the within entitled action.  My business address is 2015 Manhattan Beach Blvd., Suite 100, Redondo Beach, CA 90278.

        On January 4, 2021, I served the within

**WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III TRUST AND CIVIC REAL ESTATE HOLDINGS III, llC'S OPPOSITION TO AMENDED APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON MOTION BY DEBTOR FOR ORDER EXTENDING FULL AUTOMATIC STAY AS TO ALL CREDITORS;**

**DECLARATION OF AMELIA B. VALENZUELA, ESQ. IN SUPPORT OF WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III TRUST AND CIVIC REAL ESTATE HOLDINGS III, llC'S OPPOSITION TO AMENDED APPLICATION FOR ORDER SHORTENING**

CIVIC APP PAGE NO. 419

**TIME FOR HEARING ON MOTION BY DEBTOR FOR ORDER EXTENDING FULL AUTOMATIC STAY AS TO ALL CREDITORS**

by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Redondo Beach, California, to all parties entitled to receive regularly mailed notices, addressed as follows:

| | |
|---|---|
| **Summitridge Venture Group, LLC**<br>142 N. Milpitas Blvd., #301<br>Milpitas, CA 95035 | **Geoff Wiggs**<br>Law Offices of Geoff Wiggs<br>1900 S. Norfolk St. #350<br>San Mateo, CA 94403 |
| Josue Cristobal Guerrero<br>Edna Fok<br>GOMEZ & SIMONE, APLC<br>3055 Wilshire Blvd., Ste. 550<br>Los Angeles, CA 90010 | Todd Evan Chvat<br>WRIGHT FINLAY & ZAK, LLP<br>4665 MacArthur St., Ste. 280<br>Newport Beach, CA 92660 |
| Mitali Parmar<br>c/o Lubna K. Jahangiri, Esq.<br>JAHANGIRI LAW GROUP, APC<br>210 Porter Drive, Ste 230<br>San Ramon, CA 94583 | Vikram Srinivasan<br>1651 Green Valley Road<br>Danville, CA 94526 |

**Electronic Service List:**

- **Jorge A. Gaitan**   Jorge.A.Gaitan@usdoj.gov
- **Office of the U.S. Trustee / SJ**   USTPRegion17.SJ.ECF@usdoj.gov
- **Amelia Valenzuela**   avalenzuela@wedgewood-inc.com, dmarcus@wedgewood-inc.com
- **Geoff Wiggs**   ECF@wiggslaw.com, WiggsGR82519@notify.bestcase.com

**By Overnight Delivery:**

Hon. Stephen L. Johnson
US Bankruptcy Court
280 South First Street
San Jose, CA 95113

If the Chapter 11 Trustee is otherwise entitled to notice, she will receive such notice upon the electronic filing of the above-named document.

I declare, under penalty of perjury, that the foregoing is true and correct.  Executed on January 4, 2021 at Redondo Beach, California.

Dated: January 4, 2021                         /s/ Daniel Marcus
                                               Daniel Marcus

# EXHIBIT 23

**Entered on Docket
January 04, 2021**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: January 4, 2021

_____

**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re **VIKRAM SRINIVASAN**, | Case No. 20-51735 SLJ |
| Debtor. | Chapter 11 |

### ORDER ON APPLICATION TO SET
### MATTER FOR HEARING AND FOR AN ORDER
### SHORTENING TIME FOR NOTICE

On December 29, 2020, Debtor Vikram Srinivasan filed a motion to extend the automatic stay, ECF 23, as well as an application requesting the motion be noticed and heard on shortened time, ECF 24. I denied the application on December 30, 2020 because it did not comply with B.L.R. 9006-1.[1] ECF 26. Debtor refiled the application on January 2, 2021, correcting the omissions I identified previously. ECF 28.

Debtor having satisfied the requirements of B.L.R. 9006-1, and good cause appearing, the application to shorten time for notice and hearing is GRANTED. Due to the courthouse

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure. "Civil L.R." and "B.L.R." references refer to the applicable Civil Local Rules and Bankruptcy Local Rules.

ORDER ON APPLICATION TO SET
MATTER FOR HEARING AND FOR AN ORDER
SHORTENING TIME FOR NOTICE                                    1/3

1  being closed on account of the COVID-19 pandemic, and that no open calendars are

2  available in the time frame requested, I will consider Debtor's motion to extend the

3  automatic stay on the papers, as a substitute for an in-person or telephonic hearing.

4       It is therefore ORDERED that Debtor file notice of the motion and serve such

5  notice <u>and this order</u> on secured creditor Wedgewood LLC by **January 4, 2021 <u>by e-mail</u>** to

6  its counsel. Debtor shall promptly file a certificate of service of those papers.

7       IT IS FURTHER ORDERED that any **written response** by Wedgewood shall be

8  filed and served by e-mail by **January 7, 2021**. The matter will then be submitted.

9       IT IS FURTHER ORDERED that should I grant Debtor's motion to extend the

10  stay, such an order shall only extend the stay to the date of Wedgewood's pending motion

11  for relief from stay, now set for hearing on **February 2, 2021**.

12       IT IS SO ORDERED.

13                          **END OF ORDER**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  ORDER ON APPLICATION TO SET
    MATTER FOR HEARING AND FOR AN ORDER
    SHORTENING TIME FOR NOTICE                                    2/3

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

CIVIC APP PAGE NO. 423

# COURT SERVICE LIST

[ECF recipients only]

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

ORDER ON APPLICATION TO SET
MATTER FOR HEARING AND FOR AN ORDER
SHORTENING TIME FOR NOTICE

3/3

CIVIC APP PAGE NO. 424

# EXHIBIT 24

1  Geoffrey E. Wiggs (SBN 276041)
LAW OFFICES OF GEOFF WIGGS
2  1900 South Norfolk Street, Suite 350
3  San Mateo, California 94403-1171
Telephone Number: (650) 577-5952
4  Facsimile Number: (650) 577-5953
5  Email Address: geoff@wiggslaw.com

6  (Proposed) Attorney for Debtor in Possession
7  VIKRAM SRINIVASAN

8           UNITED STATES BANKRUPTCY COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

11
                                          Case No.:  20-51735
12
                                          Chapter 11
13  In Re:

14  VIKRAM SRINIVASAN,                    NOTICE OF MOTION BY DEBTOR FOR
                                          ORDER EXTENDING FULL AUTOMATIC
15          Debtor in Possession.         STAY
                                          [11 U.S.C. §362(C)(3)]
16

17

18

19

20       TO THE 20 LARGEST UNSECURED CREDITORS, SECURED CREDITORS, THE

21  UNITED STATES TRUSTEE AND PARTIES REQUESTING SPECIAL NOTICE:

22       PLEASE TAKE NOTICE that the Motion by Debtor For Order Extending the Full

23  Automatic Stay As To All Creditors [11 U.S.C. §362(C)(3)] (the "Motion"), brought by Debtor

24  Vikram Srinivasan, Debtor in Possession in this case, will be considered by the Court on

25  shortened time pursuant to the Order on Application To Set Matter For Hearing and For an Order

26  Shortening Time for Notice (Doc. #30) (the "Order"). Further pursuant to the Order, the Motion

27

28  shall be considered on the papers, as a substitute for an in-person or telephonic hearing.

1

NOTICE OF MOTION FOR ORDER EXTENDING AUTOMATIC STAY
CIVIC APP PAGE NO. 426

By the Motion, the Debtor seeks an extension of the automatic stay as to all creditors until it would terminate under section 362(c)(1) or (2), or until further order of the court.

The Motion is based on the Motion by Debtor For Order Extending the Full Automatic Stay As to All Creditors [11 U.S.C. §362(C)(3)]; and the Declaration In Support of Motion by Debtor For Order Extending Full Automatic Stay [11 U.S.C. §362(C)(3)].

**Pursuant to the Order: any written response by secured creditor Wedgewood LLC shall be filed and served by e-mail by January 7, 2021. The matter will then be submitted.**

Dated: January 4, 2021

GEOFFREY E. WIGGS
(Proposed) Attorney for
Debtor in Possession

2

NOTICE OF MOTION FOR ORDER EXTENDING AUTOMATIC STAY
CIVIC APP PAGE NO. 427

# EXHIBIT 25

CIVIC APP PAGE NO. 428

1   WEDGEWOOD
    Office of the General Counsel
2   DAVID M. POITRAS P.C. (SBN 141309)
    dpoitras@wedgewood-inc.com
3   AMELIA VALENZUELA (SBN 320428)
    avalenzuela@wedgewood-inc.com
4   2015 Manhattan Beach Blvd., Suite 100
    Redondo Beach, CA 90278
5   Telephone:    (310) 640-3070
    Facsimile:    (310) 640-3090
6
7   Attorneys for *WEDGEWOOD, LLC, solely as Administrator*
    *of the Civic Holdings III Trust; and Civic Real*
    *Estate Holdings III, LLC*
8

9                  **UNITED STATES BANKRUPTCY COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
10                         **SAN JOSE DIVISION**

11  In re                              | CASE NO.      20-51735

12  VIKRAM SRINIVASAN,                 | Chapter 11

13                          Debtor.    | [No hearing]

14                                     | Judge:  The Hon. Stephen L. Johnson

15

16  **WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III**
    **TRUST AND CIVIC REAL ESTATE HOLDINGS III, LLC'S AMENDED OPPOSITION**
17  **TO MOTION BY DEBTOR EXTENDING THE FULL AUTOMATIC STAY AS TO ALL**
    **CREDITORS (11 U.S.C. § 362(C)(3))**

18

19          Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust and Civic Real

20  Estate Holdings III, LLC (together, the "**Civic Parties**") hereby file their Opposition to the *Motion by*

21  *Debtor for Order Extending the Full Automatic Stay as to All Creditors* (Docket No. 23) ("**Motion**"),

22  filed by VIKRAM SRINIVASAN (the "**Debtor**").  For the reasons stated herein, the Motion should

23  be denied.

24                          **MEMORANDUM OF POINTS & AUTHORITIES**

25                               **The Debtor's Serial Filings**

26          1.      On December 10, 2020 (the "**Petition Date**"), the Debtor filed a voluntary petition for

27  relief under Chapter 11 of the Bankruptcy Code at Case No. 20-51735 (the "**Bankruptcy Case**").

28          2.      The instant Bankruptcy Case was filed as a bare bones petition.  The Debtor recently

filed his Schedules and Statement of Financial Affairs on December 24, 2020, which was the last day the Debtor was given to file such required documents.

3.     As set forth herein, the Debtor filed his Bankruptcy Case one day prior to the State Court's hearing on the Civic Parties' Motion to Expunge a lis pendens that was wrongfully recorded against real property that is not part of the Debtor's bankruptcy estate.  Upon information and belief, the Debtor filed the Bankruptcy Case solely as an attempt to forestall the State Court's entry of an Order granting the Motion to Expunge.

4.     On December 28, 2020, the Court entered its Order and Notice regarding the Debtor's failure to file his filing fees.

5.     The Bankruptcy Case is the second personal bankruptcy case filed by the Debtor within a preceding one-year period and is at least the third time in the past year that the Debtor has caused a bankruptcy case to be filed in order to forestall foreclosure proceedings and/or enforcement of the Civic Parties' rights as to the Property (as defined herein).

6.     Specifically, on December 2, 2019, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code at Case No. 19-42729 (the "**First Bankruptcy Case**"). The First Bankruptcy Case was also a bare bones filing.  The Debtor failed to timely file his required documents and on January 8, 2020, the First Bankruptcy Case was dismissed.

7.     On December 29, 2020, the Debtor filed the Motion, seeking to extend the automatic stay as to all creditors.

**The Loan, the Forbearance Agreement, and the Foreclosure Sale**

8.     Prior to the Petition Date, on or around September 11, 2018, non-debtor Summitridge Venture Group, LLC ("**Summitridge**") executed a promissory note (the "**Note**") in the original principal amount of $3,500,000, in favor of Civic Financial Services, LLC ("**Original Lender**"). Declaration of Karissa Shute (the "**Shute Dec.**"), ¶ 3.  The Note was secured by a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "**DOT**" and together with the Note, the "**Loan**").  Shute Dec., ¶ 3.  The DOT was a first position lien on real property commonly known as 1666 (or 1648) Summitridge Drive, Beverly Hills, CA 90210 (the "**Property**"). (*Id.*)

9. Civic Holdings III Trust ("**Civic Holdings Trust**") was the beneficiary under the DOT. Shute Dec., ¶ 4.

10. The Debtor is the 100% owner of Summitridge. Schedule A/B, ¶ 19.

11. Summitridge defaulted under the Loan by, among other things, failing to make the monthly contractual payments due under the Loan. Shute Dec., ¶ 5.

12. Summitridge continued in its default and a foreclosure sale date of the Property was originally set for September 13, 2019. Shute Dec., ¶ 6.

13. One day prior to the September 13, 2019 foreclosure sale date, the Debtor caused Summitridge filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code as Case No. 19-51885 (the "**Summitridge Bankruptcy Case**"). Shute Dec., ¶ 7.

14. As such, the September 13, 2019 foreclosure sale date was postponed due to the automatic stay. Shute Dec., ¶ 8.

15. On November 12, 2019, the Bankruptcy Court for the Northern District of California entered its Order Dismissing Case with 90-Day Bar (the "**Summitridge Dismissal Order**"), which dismissed the Summitridge Bankruptcy Case and barred Summitridge from re-filing for bankruptcy until February 10, 2020. *See* Order Dismissing Case with 90-Day Bar, Docket No. 17.

16. After the dismissal of the Bankruptcy Case, Summitridge and Civic Holdings Trust entered into that certain Forbearance Agreement dated as of November 27, 2019. Shute Dec., ¶ 9.

17. Civic Holdings Trust agreed to forbear from exercising its remedies under the Loan so long as there was no additional event of default under the Loan and Summitridge did not default under the terms of the Forbearance Agreement. Shute Dec., ¶ 10.

18. The Debtor is not a party to the Forbearance Agreement. Shute Dec., ¶ 11.

19. Summitridge defaulted under the terms of the Forbearance Agreement by, among other things, failing to pay the amounts due thereunder. Shute Dec., ¶ 12.

20. After Summitridge defaulted under the terms of the Forbearance Agreement, the Debtor filed his First Bankruptcy Case. Summitridge, not the Debtor, was the owner of the Property at the time the First Bankruptcy Case was filed. Shute Dec., ¶ 13.

- 3 -

21.      On December 4, 2019, Civic Holdings Trust held and completed a foreclosure sale of the Property. Shute Dec., ¶ 14.

22.      Civic Holdings Trust was the winning bidder at the foreclosure sale and received a Trustee's Deed Upon Sale to the Property. Shute Dec., ¶ 15.

23.      On or around January 3, 2020, Civic Holdings Trust transferred the Property to Movant Civic Real Estate Holdings, LLC ("**Civic Real Estate**") via a Quit Claim Deed. Shute Dec., ¶ 16.

### The State Court Lawsuit

**i.**      ***The Complaints and the Demurrers***

24.      On February 20, 2020, Summitridge filed a Verified Complaint against, among other parties, Civic Parties in the Superior Court of the State of California County of Los Angeles as Case No. 20SMCV00278 (the "**State Court Lawsuit**").  Shute Dec., ¶ 17.

25.      In the State Court Lawsuit, Summitridge alleges it is the rightful owner of the Property. Shute Dec., ¶ 18.

26.      On April 17, 2020, Civic Parties filed their Demurrer to the Complaint. Shute Dec., ¶ 19.

27.      On October 1, 2020, the State Court sustained Civic Parties' Demurrer with leave to amend as to the causes of action for breach of contract, promissory estoppel, negligent misrepresentation, and wrongful foreclosure.  The State Court sustained Civic Parties' Demurrer without leave to amend as to the causes of action for quiet title, declaratory relief, accounting, and unjust enrichment.  In its ruling, the State Court also held that "[Summitridge] may amend its complaint only as authorized by the court's order." Shute Dec., ¶ 20.

28.      On October 27, 2020, Summitridge and the Debtor filed a First Amended Complaint ("**FAC**") for breach of contract, promissory estoppel, negligent misrepresentation, and wrongful foreclosure.  Summitirdge was not granted leave to amend its Complaint to add the Debtor as a plaintiff to the action.  In the FAC, Summitridge and the Debtor allege that Summitridge is the rightful owner of the Property.  Neither plaintiff alleges that the Debtor holds any ownership interest in the Property. Shute Dec., ¶ 21.

29.     On November 17, 2020, Civic Parties filed a Demurrer to the FAC as to all causes of action and a Motion to Strike the improper addition of the Debtor as a plaintiff to the State Court Lawsuit.  The hearing on the Demurrer and Motion to Strike is September 9, 2021. Shute Dec., ¶ 22.

### ii.     The Motion to Expunge and the Stayed State Court Order

30.     On May 21, 2020, Civic Parties filed their Motion to Expunge the Lis Pendens ("**Motion to Expunge**"), seeking an order from the State Court to expunge a lis pendens that had been wrongfully recorded against the Property by Summitridge on February 28, 2020 (the "**Lis Pendens**").  Shute Dec., ¶ 23.

31.     On December 11, 2020, the Court held a hearing on the Motion to Expunge.  At the hearing, counsel for Summitridge and the Debtor asserted to the State Court and counsel for Civic Parties, for the first time, that the Debtor had filed the instant Bankruptcy Case the day before the hearing.  Shute Dec., ¶ 24.

32.     In light of this last minute filing, the State Court entered an order <u>granting</u> the Motion to Expunge (**State Court Order**"), however, stated that,

> [T]his ruling is STAYED, pending confirmation from the Bankruptcy Court: (1) that the automatic stay does not apply to Summitridge Venture Group, LLC; or (2) if, in fact, the automatic stay does apply to Summitridge Venture Group, LLC, that it does not apply to this Motion to Expunge Lis Pendens; or (3) moving parties obtain relief from the automatic stay from the Bankruptcy Court.

Shute Dec. ¶ 25.

### iii.     The Sale of the Property to Third Parties

33.     On or around September 21, 2020, Civic Real Estate and Anthony Nadalin and Lisa Nadalin (together, "**Buyers**") entered into that certain Residential Purchase Agreement and Joint Escrow Instructions ("**Purchase Contract**") for the sale of the Property.  Shute Dec., ¶ 26.

34.     On or around October 22, 2020, escrow closed and the sale of the Property to the Buyers was finalized.  Shute Dec., ¶ 27.

35.     This Bankruptcy Case was filed in bad faith as it was filed solely to forestall the State Court's entry of an order granting the Motion to Expunge.  The Debtor has no ownership in the Property and has never alleged or asserted otherwise.  Shute Dec., ¶ 28.

1          *iv.*      ***The Disingenuous Motion to Reconsider***

2          36.      On January 6, 2021, counsel for the Civic Parties was served with the Motion to

3  Reconsider the Court's Order on Defendant's Motion to Expunge Lis Pendens (the "**Motion To**

4  **Reconsider**").  A true and correct copy of the Motion To Reconsider is attached hereto as **"Exhibit**

5  **A"**.

6          37.      In the Motion To Reconsider, the Debtor and Summitridge assert that the Court should

7  reconsider its <u>stayed</u> State Court Order.  In the Motion To Reconsider, Summitridge and the Debtor

8  incorrectly assert that the Property is owned by Summitridge, despite the fact that the foreclosure sale

9  occurred over one year ago, and that the Property is part of the Debtor's estate.  Both assertions are

10  clearly wrong.  Further, Summitridge and the Debtor acknowledge that the State Court Order is stayed

11  pending resolution of the matter in the Bankruptcy Case.

12

13                              **LEGAL ARGUMENT**

14  **A.  <u>The Legal Standard Under 11 U.S.C. § 362(c)(3)(A)</u>**

15          Under 11 U.S.C. 362(c)(3)(A), if a single or joint case is filed by a debtor who is an individual

16  in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the

17  preceding 1-year period but was dismissed, the automatic stay terminates by operation of law upon

18  the 30th day after the filing of the later case.  11 U.S.C. § 362(c)(3)(A); *In re Reswick*, 446 B.R. 362,

19  372 (B.A.P. 9th Cir. 2011).

20          A court may extend the stay beyond the 30 days as to all creditors where the debtor

21  "demonstrates that the filing of the later case is in good faith as to the creditors to be stayed." 11

22  U.S.C. § 362(c)(3)(B).  However, a case is presumptively filed not in good faith as to all creditors if,

23  (1) the debtor filed more than one prior case in the preceding year, (2) the debtor failed to file or

24  amend the petition or other documents without substantial excuse, provide adequate protection as

25  ordered by the court, or perform the terms of a confirmed plan, or (3) the debtor has not had a

26  substantial change in their financial or personal affairs since the dismissal, or there is other reason to

27  believe that the current case will result in a discharge or fully performed plan.   11  U.S.C.

28

- 6 -

1   § 362(c)(3)(C).   The burden of establishing the presence of presumptive bad faith rests upon the

2   opponent to the motion.  *In re Montoya*, 342 B.R. 312, 316 (Bankr. S.D. Cal. 2006).

3          The presumption of bad faith may be rebutted by the moving party only with clear and

4   convincing evidence.   11 U.S.C. § 362(c)(3)(C).   Under the clear and convincing standard, the

5   evidence presented by the movant must "place in the ultimate factfinder an abiding conviction that

6   the truth of its factual contentions are 'highly probable.'"  *Emmert v. Taggard (In re Taggart)*, 548

7   B.R. 275, 288, n.11 (B.A.P. 9th Cir. 2016) (citations omitted), *overruled on other grounds* by *Taggart*

8   *v. Lorenzen*, 139 S. Ct. 1795 (2019).  Factual contentions are "highly probable" if the evidence offered

9   in support of them "instantly titl[s] the evidentiary scales in the affirmative when weighed against the

10  evidence [the non-moving party] offered in opposition."  *Id.*

11      **B.  The Debtor's Bankruptcy Case Was Presumptively Filed in Bad Faith and the**

12          **Debtor Has Not Presented Clear and Convincing Evidence to Rebut this**

13          **Presumption**

14          In the Motion, the Debtor wholly ignores the legal standard to extend the automatic stay under

15  11 U.S.C. § 362(c).  Instead, the Debtor states that the purpose of the Bankruptcy Case is the Debtor's

16  alleged interest in the Property – Property which the Debtor has never owned, was sold to third parties

17  in October 2020, and is not part of the Debtor's bankruptcy estate.  The Debtor also asserts he will

18  file an adversary case relating to the foreclosure of the Property, despite the fact that the Debtor

19  already filed, and is prosecuting, the State Court Lawsuit against the Civic Parties relating to the same

20  subject matter.  As is made plain by the facts recited above, the Debtor only filed this Bankruptcy

21  Case in order to delay the State Court's entry of the State Court Order granting the Motion to Expunge.

22  This fact is only made more clear with the Debtor's disingenuous filing of its Motion To Reconsider,

23  which was obviously done to cause further delay to the entry of a valid State Court Order without any

24  legitimate legal or factual basis.

25          It is clear that all three presumptive bad faith factors are present.  First, the Debtor filed more

26  than one prior case in the preceding year.  Second, the Debtor failed to prosecute the First Bankruptcy

27  Case in any meaningful way when he allowed the case to be dismissed due to his failure to file any

28  required documents.  Third, the Debtor has not had a substantial change in his financial or personal

- 7 -

1   affiles since the dismissal of the First Bankruptcy Case and presents no evidence to the contrary.   In

2   the Motion, the Debtor makes no argument beyond unsupported conclusory statements, much less

3   any argument based on clear and convincing evidence, that the presumption of a bad faith filing under

4   11 U.S.C. § 362(c)(3)(C)(i) is overcome as to all creditors.  As such, the Debtor has failed to meet his

5   burden to demonstrate that he should be afforded an extension of the stay in this case, and based

6   thereon, the Motion must be denied.

7                                                    **<u>CONCLUSION</u>**

8          Movant prays for relief in accordance with the foregoing, and for such other and further relief

9   as this Court may deem just and proper.

10   ///

11   ///

12

13

14                                          Respectfully submitted,

15   DATED:  January 7, 2020                WEDGEWOOD
                                             OFFICE OF THE GENERAL COUNSEL
16

17                                          By: */s/ Amelia Valenzuela_____*
                                                DAVID M. POITRAS
18                                              AMELIA B. VALENZUELA
                                             WEDGEWOOD, LLC, solely as Administrator of the
19                                           Civic Holdings III Trust and Civic Real Estate
                                             Holdings III, LLC
20

21

22

23

24

25

26

27

28

- 8 -

# EXHIBIT A

stamps.
endicia

Gomez & Simone, APLC
3055 Wilshire Blvd., Suite 550
Los Angeles, CA 90010

Amelia Valenzuela, Esq.
2015 Mnht Beach Boulevard, Suite 100
Redondo Beach CA 90278-1230

CIVIC APP PAGE NO. 438

1  Josué Cristóbal Guerrero, Esq. (SBN 289039)
   Edna Fok, Esq. (SBN 320599)
2  GOMEZ & SIMONE,
   A Professional Law Corporation
3  3055 Wilshire Blvd., Suite 550
   Los Angeles, CA 90010
4  Telephone (855) 219-3333
   Facsimile (818) 574-6730
5

6  Attorneys for Plaintiffs, Summitridge Venture Group, LLC and Vikram Srinivasan

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA
                       COUNTY OF LOS ANGELES
8

9  SUMMITRIDGE VENTURE GROUP,          Case No.: 20SMCV00278
   LLC, a California Limited Liability
10 Company                              MOTION TO RECONSIDER THE
                                        COURT'S ORDER ON DEFENDANT'S
11                Plaintiff,            MOTION TO EXPUNGE *LIS PENDENS*
12      v.                              **Complaint Filed**: February 20, 2020
13
   FAY SERVICING, LLC, a Delaware       Date: TBD By Court
14 Limited Liability Company; CIVIC     Time: TBD By Court
   HOLDINGS III TRUST; CIVIC REAL       Dept.: N
15 ESTATE HOLDINGS III, LLC, a Delaware
   limited liability company; DOES 1 through
16 20 inclusive,
17                Defendants.
18

19 **TO DEFENDANTS AND THEIR ATTORNEY OF RECORD:**

20      Plaintiff will, and hereby does, move under Code of Civil Procedure section 1008 for

21 reconsideration of the Court's Order on Defendants' Motion to Expunge *Lis Pendens*, for which the court

22 issued a ruling Tentatively Granting the Motion December 11, 2020.  Movant filed a Notice of Entry of

23 Order on December 17, 2020.

24      This motion is made on the grounds that the Court's Order in the instant matter is premature, as it

25

26 relates to real property affected by the Automatic Stay in Plaintiff's personal bankruptcy matter.  Because

27 the prospective grant of the Motion could be in violation of the bankruptcy automatic stay (11 U.S.C.

28

MEMORANDUM OF POINTS AND AUTHORITIES              – 1 –
IN SUPPORT OF PLAINTIFF'S MOTION TO
RECONSIDER THE COURT'S ORDER GRANTING        Case Number 20SMCV00278
DEFENDANTS' MOTION TO EXPUNGE *LIS PENDENS*

362), Plaintiff respectfully requests that the Court refrain from issuing any order that might later be contested on these grounds.

Pursuant to 11 U.S.C. Section 362(a), a voluntary petition filed "operates as a stay, applicable to all entities, of - (1) the commencement or continuation…of a judicial, administrative, or other proceeding against the debtor that was…commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

In the Ninth Circuit, violations of the automatic stay in Bankruptcy are not merely *voidable,* but *void.* *In re Schwartz* (1992) 954 F.2d 569, 571.

The real property affected by the Order is owned by Plaintiff, Summitridge Venture Group, LLC ("Summitridge"). Summitridge's sole managing member is Vikram Srinivasan. On December 10, 2020, Mr. Srinivasan filed a Voluntary Petition for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Northern District of California, San Jose Division, Case No. 20-57135. A true and correct copy of the Notice of Bankruptcy Filing is attached hereto as **Exhibit A**. The bankruptcy automatic stay is in place in the bankruptcy case.

On December 11, 2020, after Mr. Srinivasan filed his voluntary petition for bankruptcy, a hearing on Defendants' Motion to Expunge *Lis Pendens* was held by this Court. This hearing was held despite Mr. Srinivasan having the protection of the Automatic Stay.

The Court granted Defendants' motion but stayed its ruling pending confirmation from the Bankruptcy Court that the automatic stay does not apply to Summitridge Venture Group, LLC; or that it does not apply to this Motion to Expunge *Lis Pendens*; or Defendants obtain relief from the automatic stay.

---

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION TO
RECONSIDER THE COURT'S ORDER GRANTING
DEFENDANTS' MOTION TO EXPUNGE *LIS PENDENS*

– 2 –

Case Number 20SMCV00278

1    Further, on December 24, 2020, Defendants filed a Motion for Relief from Stay in the U.S.

2    Bankruptcy Court, San Jose Division. **Docket #16.** Failure to recognize the automatic stay in the

3    instant matter could result in this Order later being challenged and may pose the risk of inconsistent

4    rulings.

5        Plaintiff respectfully requests that the Court reconsider its earlier ruling and stay the instant

6

7    matter until after Plaintiff's automatic stay in its bankruptcy proceeding is no longer in effect.

8        Plaintiff's motion is based on based on this Motion, the provisions of Code of Civil Procedure

9    Section 1008, 11 U.S.C. Section 362, Rule 4001(a) of the Federal Rules of Bankruptcy Procedure,

10   United States Bankruptcy Court for the Northern District of California Local Rules 4001-1 and 9014-1,

11   the attached Notice of Bankruptcy Filing, and the complete files and records of this case.

12

13

14

15   Dated: December 28, 2020                          LAW OFFICES OF GEOFF WIGGS

16

17                                                     By: _Edna Fok_____

18                                                         **Edna Fok, Esq.**
                                                         Attorney for Plaintiffs,
19                                                       Summitridge Venture Group, LLC and
                                                         Vikram Srinivasan
20

21

22

23

24

25

26

27

28

---

MEMORANDUM OF POINTS AND AUTHORITIES                          – 3 –
IN SUPPORT OF PLAINTIFF'S MOTION TO
RECONSIDER THE COURT'S ORDER GRANTING                 Case Number 20SMCV00278
DEFENDANTS' MOTION TO EXPUNGE *LIS PENDENS*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On December 11, 2020 Defendants sought an Order of this Court granting its Motion to Expunge *Lis Pendens* recorded by Plaintiff against the real property located at 1666 Summitridge Drive in Beverly Hills, CA 90210.

California Code of Civil Procedure Section 1008 allows for any party affected by an Order, "within 10 days after service upon the party of written notice of entry of order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order." Code Civ. Proc. § 1008. Plaintiff respectfully requests that the Court reconsider its prior order and stay the matter until after Plaintiff's automatic stay in his personal bankruptcy proceeding is no longer in effect.

### A.  Timeliness

Plaintiff's motion to reconsider is timely as the order granting Defendant's Motion to Expunge *Lis Pendens* was entered December 17, 2020. Plaintiff's motion to reconsider has been filed within the 10-day time period.

### B.  Prior History

On May 22, 2020, Defendants filed a Motion to Expunge *Lis Pendens*. On December 11, 2020, Defendants moved the Court for an Order granting their Motion and Judge Craig D. Karlan granted the motion. The Court's decision stated Plaintiff has not sufficiently stated a claim for wrongful foreclosure in the First Amended Complaint. The Court noted that its ruling was stayed, pending confirmation from the Bankruptcy court that the automatic stay does not apply to Summitridge Venture Group, LLC; or that it does not apply to this Motion to Expunge *Lis Pendens*; or Defendants' obtain relief from the automatic stay from the Bankruptcy Court.

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION TO
RECONSIDER THE COURT'S ORDER GRANTING
DEFENDANTS' MOTION TO EXPUNGE *LIS PENDENS*

– 4 –

Case Number 20SMCV00278

### C.  Reconsideration is Justified in this Instance

On December 10, 2020, Mr. Srinivasan filed a Voluntary Petition for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Northern District of California, San Jose Division, Case No. 20-57135.  At the time Defendants' Motion was heard, Vikram Srinivasan, the sole managing member of Summitridge Venture Group, LLC, was under the protection of an Automatic Stay

Plaintiff asserts that revocation of the Court's Order granting Defendants' Motion to Expunge *Lis Pendens* is appropriate in this matter as the Order was procedurally premature and a failure to recognize the automatic stay in the instant matter could result in this Order later being challenged on those grounds.  No prior motion to reconsider has been brought in this matter.

### II.    CONCLUSION

In light of the automatic stay in his bankruptcy case, Plaintiff respectfully request that the court reconsider granting its prior order.

Dated: December 28, 2020                                    LAW OFFICES OF GEOFF WIGGS

By: *Edna Fok*
_____
**Edna Fok, Esq.**
Attorney for Plaintiffs,
Summitridge Venture Group, LLC and
Vikram Srinivasan

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFF'S MOTION TO
RECONSIDER THE COURT'S ORDER GRANTING
DEFENDANTS' MOTION TO EXPUNGE *LIS PENDENS*

– 5 –

Case Number 20SMCV00278

Josué Cristóbal Guerrero, Esq. (SBN 289039)
Edna Fok, Esq. (SBN 320599)
GOMEZ & SIMONE,
A Professional Law Corporation
3055 Wilshire Blvd., Suite 550
Los Angeles, CA 90010
Telephone (855) 219-3333
Facsimile (818) 574-6730

Attorneys for Plaintiffs, Summitridge Venture Group, LLC and Vikram Srinivasan

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF LOS ANGELES

| | |
|---|---|
| SUMMITRIDGE VENTURE GROUP, LLC, a California Limited Liability Company,<br><br>            Plaintiff,<br><br>    v.<br><br>FAY SERVICING, LLC, a Delaware Limited Liability Company; CIVIC HOLDINGS III TRUST; CIVIC REAL ESTATE HOLDINGS III, LLC, a Delaware limited liability company; DOES 1 through 20 inclusive<br><br>            Defendants. | **Case No.: 20SMCV00278**<br><br>**DECLARATION OF GEOFFREY E. WIGGS IN SUPPORT OF PLAINTIFF'S MOTION TO RECONSIDER THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO EXPUNGE *LIS PENDENS***<br><br>**Complaint Filed:** February 20, 2020 |

I, Geoffrey E. Wiggs, declare as follows:

1.  I am an attorney at law, licensed to practice before the courts of the State of California.  I am an attorney with the Law Offices of Geoff Wiggs, counsel for Vikram Srinivasan , sole managing member of Summitridge Venture Group, LLC, the Plaintiff in this action.  I have personal, first-hand knowledge of the facts set forth herein, and if called to testify as a witness, I could and would testify competently thereto.

DECLARATION OF ATTORNEY GEOFFREY E. WIGGS
IN SUPPORT OF PLAINTIFF'S MOTION TO
RECONSIDER THE COURT'S ORDER
GRANTING DEFENDANTS' MOTION TO EXPUNGE
*LIS PENDENS*

– 1 –

Case Number 20SMCV00278

2. I am counsel for Vikram Srinivasan in his active Chapter 11 Bankruptcy Matter (United States Bankruptcy Court, San Jose Division, case number 20-57135, *In re Srinivasan*). See **Exhibit A**.

3. This declaration is submitted in support of Plaintiff's Motion to Reconsider the Court's Order Granting Defendants' Motion to Expunge *Lis Pendens*.

4. On May 22, 2020 Defendants' filed a Motion to Expunge *Lis Pendens*. The *Lis Pendens* was recorded by Plaintiff against the residence at 1666 Summitridge Drive in Beverly Hills, CA.

5. Vikram Srinivasan is the sole managing member of Summitridge Venture Group, LLC.

6. On December 10, 2020, Vikram Srinivasan filed a Voluntary Petition for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Northern District of California, San Jose Division, Case No. 20-57135.

7. On December 11, 2020, after Mr. Srinivasan filed for bankruptcy, Judge Craig D. Karlan granted Defendants' Motion to Expunge *Lis Pendens*. This ruling was stayed pending confirmation from the Bankruptcy Court that the automatic stay does not apply to Summitridge Venture Group, LLC; or that it does not apply to the Motion to Expunge *Lis Pendens*; or Defendants obtain relief from the automatic stay from the Bankruptcy Court.

8. A true and correct copy of the Court's ruling is attached hereto as **Exhibit B**.

9. No prior motion to reconsider has been filed in this matter.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: December 28, 2020                    Law Offices of Geoff Wiggs

By: _____
**Geoffrey E. Wiggs**

DECLARATION OF ATTORNEY GEOFFREY E. WIGGS
IN SUPPORT OF PLAINTIFF'S MOTION TO
RECONSIDER THE COURT'S ORDER
GRANTING DEFENDANTS' MOTION TO EXPUNGE
*LIS PENDENS*

- 2 —

Case Number 20SMCV00278

# EXHIBIT "A"

# EXHIBIT "A"

CIVIC APP PAGE NO. 446

CANB Live Database

United States Bankruptcy Court
California Northern Bankruptcy Court

## Notice of Bankruptcy Case Filing



A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 11 of the United States Bankruptcy Code, entered on 12/10/2020 at 4:53 PM and filed on 12/10/2020.

**Vikram Srinivasan**
440 Dixon Landing Road G201
Milpitas, CA 95035
SSN / ITIN: xxx-xx-6812

The debtor's attorney is:          The case was filed by the debtor's attorney:

**Geoff Wiggs**
Law Offices of Geoff Wiggs
1900 South Norfolk St. #350
San Mateo, CA 94403
(650)577-5952

The case was assigned case number 20-51735.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page https://ecf.canb.uscourts.gov/ or at the Clerk's Office, 280 South First Street, Room 3035, San Jose, CA 95113.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

Edward J. Emmons
Clerk, U.S. Bankruptcy Court

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/10/2020 16:55:18 | | | |
| PACER Login: | GeoffWiggs:3781553:0 | Client Code: | |
| Description: | Notice of Filing | Search Criteria: | 20-51735 |
| Billable Pages: | 1 | Cost: | 0.10 |

1/2

Case: 20-51735   Doc# 40   Filed: 01/07/21   Entered: 01/07/21 16:30:43   Page 20 of
27
CIVIC APP PAGE NO. 448

# EXHIBIT "B"

# EXHIBIT "B"

CIVIC APP PAGE NO. 449

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**Civil Division**
West District, Santa Monica Courthouse, Department N

20SMCV00278                                              December 11, 2020
**SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA**        9:00 AM
**LIMITED LIABILITY COMPANY vs FAY SERVICING, LLC,**
**A DELAWARE LIMITED LIABILITY COMPANY, et al.**

Judge: Honorable Craig D. Karlan              CSR: None
Judicial Assistant: S. Hwang                  ERM: None
Courtroom Assistant: S. Mixon                 Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Josue Cristobal Guerrero (Telephonic)

For Defendant(s): Amelia B. Valenzuela (Telephonic)

**NATURE OF PROCEEDINGS:** Hearing on Motion to Expunge Lis Pendens

The matter is called for hearing.

The Court has read and considered all documents filed hereto. Having heard the arguments, the
Court now rules as follows:

*** RULING ***

Defendants Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust, and Civic
Real Estate Holdings, LLC's Motion to Expunge Lis Pendens is GRANTED. Defendants'
alternative request for a requirement for Plaintiff to post bond is DENIED, as MOOT.
Defendants' request for attorneys' fees and costs is DENIED.

However, this ruling is STAYED, pending confirmation from the Bankruptcy Court: (1) that the
automatic stay does not apply to Summitridge Venture Group, LLC; or (2) if, in fact, the
automatic stay does apply to Summitridge Venture Group, LLC, that it does not apply to this
Motion to Expunge Lis Pendens; or (3) moving parties obtain relief from the automatic stay from
the Bankruptcy Court.

Defendants Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust, and Civic
Real Estate Holdings, LLC, to give notice.

REASONING

Defendants Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust, and Civic
Real Estate Holdings, LLC ("Defendants") move to expunge the lis pendens recorded by

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Santa Monica Courthouse, Department N

20SMCV00278

December 11, 2020
9:00 AM

**SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY vs FAY SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY, et al.**

Judge: Honorable Craig D. Karlan
Judicial Assistant: S. Hwang
Courtroom Assistant: S. Mixon

CSR: None
ERM: None
Deputy Sheriff: None

Plaintiff Summitridge Venture Group, LLC ("Plaintiff") against the residence at 1666 Summitridge Drive in Beverly Hills. Defendants argue the only causes of action that could potentially affect title to the property are those for quiet title and declaratory relief, as Plaintiff's other causes of action seek only monetary relief, and Plaintiff cannot meet its burden of proof to demonstrate a probability of success on either real property claim.

Code of Civil Procedure section 405.30 provides that a property owner may seek to remove an improperly recorded lis pendens by filing a motion to expunge based upon any of several statutory bases. (See Kirkeby v. Superior Court (2004) 33 Cal.4th 642, 647-648.) One basis for such a motion is where "the court finds that the pleading on which the notice is based does not contain a real property claim." (Code Civ. Proc., § 405.31.) Another basis is where "the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." (Code Civ. Proc., § 405.32.) The claimant, that is, the party opposing the motion to expunge, "shall have the burden of proof" to demonstrate "the probable validity of the real property claim." (Code Civ. Proc., §§ 405.30, 405.32.) "'Probable validity,' with respect to a real property claim, means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." (Code Civ. Proc., § 405.3.)

First, the Court notes this action came on for hearing on Defendants' demurrer to Plaintiff's complaint on October 1, 2020, and the Court sustained the demurrer to all causes of action. The Court specifically sustained demurrers to the quiet title and declaratory relief claims without leave to amend, thus removing these real property claims from the present action. Further, all other claims asserted by Plaintiff were found to lack merit as stated, which resulted in the Court sustaining the demurrer as to each of the other causes of action, with two additional claims removed as a result of the Court sustaining the demurrers without leave to amend; Plaintiff was granted the opportunity to amend the remaining claims. The Court found the complaint, in its initial form, did not contain a valid real property claim. Specifically, Plaintiff failed to identify the agreement which served as the basis for the alleged breach, Plaintiff stated it had not provided the payments which would constitute performance, Plaintiff failed to allege an excuse for nonperformance, Plaintiff did not specifically alleged fraud by any Defendant and the complaint did not make clear which parties may be liable to Plaintiff.

Code of Civil Procedure section 405.31 requires the Court to expunge the notice of pendency of action "if the court finds that the pleading on which the notice is based does not contain a real property claim," and the Second District Court of Appeal has specifically stated that the Court's determination as to whether a real property claim is being asserted requires the Court to "engage

Minute Order

Page 2 of 5

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
Civil Division
West District, Santa Monica Courthouse, Department N

20SMCV00278                                           December 11, 2020
SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA            9:00 AM
LIMITED LIABILITY COMPANY vs FAY SERVICING, LLC,
A DELAWARE LIMITED LIABILITY COMPANY, et al.

Judge: Honorable Craig D. Karlan          CSR: None
Judicial Assistant: S. Hwang              ERM: None
Courtroom Assistant: S. Mixon             Deputy Sheriff: None

in a demurrer-like analysis," albeit a "more limited analysis of whether the pleading states a real
property claim." (Park 100 Investment Group II, LLC v. Ryan (2009) 180 Cal.App.4th 795,
808.) Such a "review involves only a review of the adequacy of the pleading." (Ibid.)

This motion first came on for hearing on October 21, 2020, and the Court was not convinced
Plaintiff's pleading contained a real property claim. Even if the remaining claims could be
amended successfully, it was unclear whether a wrongful foreclosure claim constituted a "real
property" claim such that a lis pendens was proper. As such, the Court ordered the parties to file
supplemental briefs as to this specific issue. On October 28, 2020, Plaintiff amended its
complaint; the First Amended Complaint includes causes of action for breach of contract,
promissory estoppel, negligent misrepresentation and wrongful foreclosure.

The initial issue the Court must consider is whether a wrongful foreclosure claim constitutes a
real property claim; if it does not, the viability of the cause of action is essentially irrelevant to
the present motion.

It is axiomatic that a wrongful foreclosure claim is a tort, and damages are measured as they are
with other torts, but a party alleging wrongful foreclosure may be entitled to remedies other than
simply monetary damages, such as unwinding of a sale of property. (See Sciarratta v. U.S. Bank
National Association (2016) 247 Cal.App.4th 552, 567.) A "'[r]eal property claim' means the
cause or causes of action in a pleading which would, if meritorious, affect [] title to, or the right
to possession of, specific real property." (Code Civ. Proc., § 405.4) It follows that a wrongful
foreclosure claim is a real property claim where the plaintiff seeks rescission of the property sale,
as Plaintiff does here. (See First Am. Compl., p. 19, lines 20-25.)

Plaintiff, however, has not sufficiently stated a claim for wrongful foreclosure in the First
Amended Complaint. "The elements of a wrongful foreclosure cause of action are: (1) The
trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property
pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale
(usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases
where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount
of the secured indebtedness or was excused from tendering." (Citrus El Dorado, LLC v. Chicago
Title Co. (2019) 32 Cal.App.5th 943, 948, quotation marks and brackets omitted.)

Plaintiff alleges wrongful foreclosure due to Defendants' alleged breach of the terms set forth in
the modified Forbearance Agreement dated December 3, 2019, Defendants' violations of 11

Minute Order                                          Page 3 of 5

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

Civil Division

West District, Santa Monica Courthouse, Department N

20SMCV00278

SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY vs FAY SERVICING, LLC,
A DELAWARE LIMITED LIABILITY COMPANY, et al.

December 11, 2020
9:00 AM

Judge: Honorable Craig D. Karlan                    CSR: None
Judicial Assistant: S. Hwang                        ERM: None
Courtroom Assistant: S. Mixon                       Deputy Sheriff: None

U.S.C. § 362, and Defendants' conducting the sale without consideration of Plaintiff's credit bid.
First, there are no facts in the First Amended Complaint that Plaintiff tendered the required
amount to Defendants or filed a dismissal of Plaintiff's managing member Vikram Srinvisan's
personal bankruptcy case such that Plaintiff complied with the terms of the forbearance
agreement. Insofar as Plaintiff contends it was not required to tender the amount due because
Defendants lacked a contractual basis to exercise the power of sale, the Court is not convinced,
particularly because any modification was supposed to be in writing and there is no written
agreement to forbear from conducting a sale.

Plaintiff also contends the sale was improper in that Srinvisan's personal bankruptcy action was
still pending, but there are no facts in the First Amended Complaint that Srinvisan owned the
property; instead, Summitridge Venture Group, LLC, owned the property (First Am. Compl. ¶
12) such that Defendants would not have been precluded from proceeding with a sale. Finally,
while Plaintiff alleges the sale was made without consideration of the amount paid by Plaintiff,
such that Plaintiff would have been considered to have made a higher credit bid than other
potential purchasers, there are simply no facts other than a conclusory statement that the sale was
"calculated to chill the bidding or depress the prices offered at the trustee's sale as they made an
invalid credit bid." (First Am. Compl. ¶ 96.) Here, the trier of fact would be unable to conclude
the sale was improper in this regard where Plaintiff fails to provide specific facts to support such
a conclusion. Thus, Plaintiff fails to sufficiently allege a claim for wrongful foreclosure.

The Court takes care to note that if Plaintiff successfully amends the pleading after the Court
issues its ruling on the pending demurrer and sufficiently cures the deficiencies, Plaintiff may
record another notice of pendency of action after seeking leave of court to do so. (Code Civ.
Proc., § 405.36.) That is, the initial complaint and First Amended Complaint attempted to plead
certain real property claims, but none of these claims have been pled successfully to date. Should
Plaintiff successfully amend the wrongful foreclosure claim and subsequently move the Court for
leave to record a notice of pending action, the Court will then consider whether Plaintiff's claims
provide a proper basis for recording a notice of pending action. At this juncture, though,
Defendants Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust, and Civic
Real Estate Holdings, LLC's Motion to Expunge Lis Pendens is GRANTED. Defendants'
alternative request for a requirement for Plaintiff to post bond is DENIED, as MOOT.

Defendants move for an award of attorney's fees and costs in the amount of $2,510.00 incurred
in bringing this motion. Code of Civil Procedure section 405.38 states that "[t]he court shall
direct that the party prevailing on" a motion to expunge lis pendens "be awarded the reasonable

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

## Civil Division

West District, Santa Monica Courthouse, Department N

20SMCV00278
**SUMMITRIDGE VENTURE GROUP, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY vs FAY SERVICING, LLC,
A DELAWARE LIMITED LIABILITY COMPANY, et al.**

December 11, 2020
9:00 AM

Judge: Honorable Craig D. Karlan
Judicial Assistant: S. Hwang
Courtroom Assistant: S. Mixon

CSR: None
ERM: None
Deputy Sheriff: None

attorney's fees and costs of making or opposing the motion unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust."

Here, the Court finds an award of attorney's fees and costs to not be proper as Plaintiff acted with substantial justification in asserting its complaint contains a real property claim. If Plaintiff can successfully amend its claim for wrongful foreclosure, it would seemingly have a valid real property claim, as such a claim may affect Plaintiff's title to, or the right to possession of, the real property at 1666 Summitridge Drive. The Court, however, declines to make a finding that the wrongful foreclosure claim will necessarily constitute a real property claim, as the claim has not been properly pled, but the Court nevertheless finds Plaintiff was justified in asserting its pleading contained a real property claim. Accordingly, Defendants' request for attorney's fees and costs is DENIED.

**\*\*\* END OF RULING \*\*\***

Clerk is to give notice to moving party who shall give notice to all other relevant counsel.

Certificate of Mailing is attached.

PROOF OF SERVICE

(Sec. 1013(a) C.C.P.)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 3055 Wilshire Blvd., Suite 550, Los Angeles CA, 90010.

On **December 28, 2020**, I served the foregoing documents described as **"MOTION TO RECONSIDER THE COURT'S ORDER ON DEFENDANT'S MOTION TO EXPUNGE LIS PENDENS"** on the interested parties in this action:

&#9746; by placing:
&#9744; the original
&#9746; a true copy thereof enclosed in sealed envelope with first class postage affixed thereto and addressed as follows:

| | |
|---|---|
| Amelia Valenzuela, Esq.,<br>2015 Manhattan Beach Boulevard,<br>Suite 100<br>Redondo Beach, California 90278<br>Office: 310.640.3070<br>Fax:  310-730-5967<br>avalenzuela@wedgewood-inc.com<br>Attorney for WEDGEWOOD, LLC,<br>solely as Administrator of the Civic<br>Holdings III Trust; and Civic Real<br>Estate Holdings, LLC | Todd Chvat, Esq.<br>WRIGHT, FINLAY 7 ZAK, LLP<br>4665 MacArthur Court, Suite 200,<br>Newport Beach, California 92660<br>Tel: 949-477-5050<br>tchvat@wrightlegal.net<br>Attorney for Fay Servicing, LLC |

&#9746; BY MAIL I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

&#9746; <u>STATE</u> I declare under penalty of perjury that the foregoing is true and correct.

&#9744; BY FACSIMILE SERVICE:  I personally faxed the document(s) listed above to the fax number/s belonging to party being served.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **December 28, 2020**, in Los Angeles, CA.

Zulema Maldonado

–1–

CIVIC APP PAGE NO. 455

# EXHIBIT 26

1   WEDGEWOOD
Office of the General Counsel
2   DAVID M. POITRAS P.C. (SBN 141309)
dpoitras@wedgewood-inc.com
3   AMELIA VALENZUELA (SBN 320428)
avalenzuela@wedgewood-inc.com
4   2015 Manhattan Beach Blvd., Suite 100
Redondo Beach, CA 90278
5   Telephone:     (310) 640-3070
Facsimile:      (310) 640-3090

6

7   Attorneys for *WEDGEWOOD, LLC, solely as Administrator*
*of the Civic Holdings III Trust; and Civic Real*
*Estate Holdings III, LLC*

8

9                    **UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
10                         **SAN JOSE DIVISION**

11   In re                                  CASE NO.     20-51735

12   VIKRAM SRINIVASAN,                      RS NO.      ABV-1

13                                           Chapter 11
                              Debtor.
14                                           [No hearing]

15                                           Judge:  The Hon. Stephen L. Johnson

16

17   **DECLARATION OF KARISSA SHUTE IN SUPPORT OF WEDGEWOOD, LLC, SOLELY**
**AS ADMINISTRATOR OF THE CIVIC HOLDINGS III TRUST AND CIVIC REAL**
18   **ESTATE HOLDINGS III, LLC'S OPPOSITION TO MOTION BY DEBTOR EXTENDING**
**THE FULL AUTOMATIC STAY AS TO ALL CREDITORS (11 U.S.C. § 362(C)(3))**

19

20          I, Karissa Shute, declare:

21          1.  I have personal knowledge of the matters set forth in this declaration and, if called

22   upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have

23   knowledge regarding Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust and

24   Civic Real Estate Holdings III, LLC's (together, the "**Civic Parties**"),[1] interest in the real property

25   that is the subject of the above Opposition in my capacity as an authorized agent of Civic Parties.

26

27   _____

[1]        Unless otherwise defined herein, all capitalized terms shall have the same meaning as set
28   forth in the Opposition.

2.   I am authorized to submit this Declaration.  In my capacity as an authorized agent for Civic Parties, I have custody and control of Civic Parties' files with respect to the real property located at 1666 (or 1648) Summitridge Drive, Beverly Hills, CA 90210 (the "**Property**") which is the subject of the instant Opposition.  I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Civic Parties on behalf of Civic Parties.  These books, records and files were made at or about the times of the events recorded, and are maintained in the ordinary course of Civic Parties' business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Civic Parties by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records of Civic Parties applicable to the Property are available for inspection and copies can be submitted to the Court if required.  The documents, records, information and other things referred to herewith were prepared and/or maintained in the ordinary course of business by Civic Parties or their authorized agents.  The sources of the information and method of preparation of the records referred herein were such as to indicate their trustworthiness.

**The Loan, the Forbearance Agreement, and the Foreclosure Sale**

3.   Prior to the Petition Date, on or around September 11, 2018, non-debtor Summitridge Venture Group, LLC ("**Summitridge**") executed a promissory note (the "**Note**") in the original principal amount of $3,500,000, in favor of Civic Financial Services, LLC ("**Original Lender**").  The Note was secured by a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "**DOT**" and together with the Note, the "**Loan**").  The DOT was a first position lien on the Property.

4.   Civic Holdings III Trust ("**Civic Holdings Trust**") was the beneficiary under the DOT.

5.   Summitridge defaulted under the Loan by, among other things, failing to make the monthly contractual payments due under the Loan.

6.   Summitridge continued in its default and a foreclosure sale date of the Property was

- 2 -

originally set for September 13, 2019.

7. One day prior to the September 13, 2019 foreclosure sale date, the Debtor caused Summitridge filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code as Case No. 19-51885 (the "**Summitridge Bankruptcy Case**").

8. As such, the September 13, 2019 foreclosure sale date was postponed due to the automatic stay.

9. After the dismissal of the Bankruptcy Case, Summitridge and Civic Holdings Trust entered into that certain Forbearance Agreement dated as of November 27, 2019.

10. Civic Holdings Trust agreed to forbear from exercising its remedies under the Loan so long as there was no additional event of default under the Loan and Summitridge did not default under the terms of the Forbearance Agreement.

11. The Debtor is not a party to the Forbearance Agreement.

12. Summitridge defaulted under the terms of the Forbearance Agreement by, among other things, failing to pay the amounts due thereunder.

13. After Summitridge defaulted under the terms of the Forbearance Agreement, the Debtor filed his First Bankruptcy Case. Summitridge, not the Debtor, was the owner of the Property at the time the First Bankruptcy Case was filed.

14. On December 4, 2019, Civic Holdings Trust held and completed a foreclosure sale of the Property.

15. Civic Holdings Trust was the winning bidder at the foreclosure sale and received a Trustee's Deed Upon Sale to the Property.

16. On or around January 3, 2020, Civic Holdings Trust transferred the Property to Civic Real Estate Holdings III, LLC ("**Civic Real Estate**") via a Quit Claim Deed.

**The State Court Lawsuit**

        *i.*     *The Complaints and the Demurrers*

17. On February 20, 2020, Summitridge filed a Verified Complaint against, among other parties, Civic Parties in the Superior Court of the State of California County of Los Angeles as Case

- 3 -

1    No. 20SMCV00278 (the "**State Court Lawsuit**").

2          18. In the State Court Lawsuit, Summitridge alleges it is the rightful owner of the Property.

3          19. On April 17, 2020, Civic Parties filed their Demurrer to the Complaint.

4          20. On October 1, 2020, the State Court sustained Civic Parties' Demurrer with leave to

5    amend as to the causes of action for breach of contract, promissory estoppel, negligent

6    misrepresentation, and wrongful foreclosure.  The State Court sustained Civic Parties' Demurrer

7    without leave to amend as to the causes of action for quiet title, declaratory relief, accounting, and

8    unjust enrichment.  In its ruling, the State Court also held that "[Summitridge] may amend its

9    complaint only as authorized by the court's order."

10          21. On October 27, 2020, Summitridge and the Debtor filed a First Amended Complaint

11    ("**FAC**") for breach of contract, promissory estoppel, negligent misrepresentation, and wrongful

12    foreclosure.  Summitirdge was not granted leave to amend its Complaint to add the Debtor as a

13    plaintiff to the action.  In the FAC, Summitridge and the Debtor allege that Summitridge is the rightful

14    owner of the Property.  Neither plaintiff alleges that the Debtor holds any ownership interest in the

15    Property.

16          22. On November 17, 2020, Civic Parties filed a Demurrer to the FAC as to all causes of

17    action and a Motion to Strike the improper addition of the Debtor as a plaintiff to the State Court

18    Lawsuit.  The hearing on the Demurrer and Motion to Strike is September 9, 2021.

19              ***ii.       The Motion to Expunge and the Stayed State Court Order***

20          23. On May 21, 2020, Civic Parties filed their Motion to Expunge the Lis Pendens

21    ("**Motion to Expunge**"), seeking an order from the State Court to expunge a lis pendens that had

22    been wrongfully recorded against the Property by Summitridge on February 28, 2020 (the "**Lis**

23    **Pendens**").

24          24. On December 11, 2020, the Court held a hearing on the Motion to Expunge.  At the

25    hearing, counsel for Summitridge and the Debtor asserted to the State Court and counsel for Civic

26    Parties, for the first time, that the Debtor had filed the instant Bankruptcy Case the day before the

27    hearing.

28                                             - 4 -

25. In light of this last minute filing, the State Court entered an order <u>granting</u> the Motion to Expunge (**State Court Order**"), however, stated that,

> [T]his ruling is STAYED, pending confirmation from the Bankruptcy Court: (1) that the automatic stay does not apply to Summitridge Venture Group, LLC; or (2) if, in fact, the automatic stay does apply to Summitridge Venture Group, LLC, that it does not apply to this Motion to Expunge Lis Pendens; or (3) moving parties obtain relief from the automatic stay from the Bankruptcy Court.

### *iii.*     *The Sale of the Property to Third Parties*

26. On or around September 21, 2020, Civic Real Estate and Anthony Nadalin and Lisa Nadalin (together, "**Buyers**") entered into that certain Residential Purchase Agreement and Joint Escrow Instructions ("**Purchase Contract**") for the sale of the Property.

27. On or around October 22, 2020, escrow closed and the sale of the Property to the Buyers was finalized

28. Upon information and belief, this Bankruptcy Case was filed in bad faith as it was filed solely to forestall the State Court's entry of an order granting the Motion to Expunge. The Debtor has no ownership in the Property and has never alleged or asserted otherwise.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed this 6th day of January 2021 in Redondo Beach, California.

_____

KARISSA SHUTE

# EXHIBIT 27

WEDGEWOOD
Office of the General Counsel
DAVID M. POITRAS P.C. (SBN 141309)
dpoitras@wedgewood-inc.com
AMELIA VALENZUELA (SBN 320428)
avalenzuela@wedgewood-inc.com
2015 Manhattan Beach Blvd., Suite 100
Redondo Beach, CA 90278
Telephone:     (310) 640-3070
Facsimile:     (310) 640-3090

Attorneys for Moving Parties,
*WEDGEWOOD, LLC, solely as*
*Administrator of the Civic Holdings III*
*Trust; and Civic Real Estate Holdings*
*III, LLC*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

In re:

VIKRAM SRINIVASAN,

Debtor(s)_____/

Chapter  11
Case No. 20-51735

**CERTIFICATE OF SERVICE**

      I, the undersigned, declare that I am employed in the County of Los Angeles.  I am over the age of 18 years and not a party to the within entitled action.  My business address is 2015 Manhattan Beach Blvd., Suite 100, Redondo Beach, CA 90278.

      On January 7, 2021, I served the within

**WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III TRUST AND CIVIC REAL ESTATE HOLDINGS III, LLC'S NOTICE OF WITHDRAWAL OF DOCKET ENTRY NUMBERS 37 AND 38**

**WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III TRUST AND CIVIC REAL ESTATE HOLDINGS III, LLC'S OPPOSITION TO MOTION BY DEBTOR EXTENDING THE FULL AUTOMATIC STAY AS TO ALL CREDITORS (11 U.S.C. § 362(C)(3));**

**DECLARATION OF KARISSA SHUTE IN SUPPORT OF WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III TRUST AND**

**CIVIC REAL ESTATE HOLDINGS III, LLC'S OPPOSITION TO MOTION BY DEBTOR EXTENDING THE FULL AUTOMATIC STAY AS TO ALL CREDITORS (11 U.S.C. § 362(C)(3))**

by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Redondo Beach, California, to all parties entitled to receive regularly mailed notices, addressed as follows:

| **Summitridge Venture Group, LLC**<br>142 N. Milpitas Blvd., #301<br>Milpitas, CA 95035 | **Geoff Wiggs**<br>Law Offices of Geoff Wiggs<br>1900 S. Norfolk St. #350<br>San Mateo, CA 94403 |
|---|---|
| Josue Cristobal Guerrero<br>Edna Fok<br>GOMEZ & SIMONE, APLC<br>3055 Wilshire Blvd., Ste. 550<br>Los Angeles, CA 90010 | Todd Evan Chvat<br>WRIGHT FINLAY & ZAK, LLP<br>4665 MacArthur St., Ste. 280<br>Newport Beach, CA 92660 |
| Mitali Parmar<br>c/o Lubna K. Jahangiri, Esq.<br>JAHANGIRI LAW GROUP, APC<br>210 Porter Drive, Ste 230<br>San Ramon, CA 94583 | Vikram Srinivasan<br>1651 Green Valley Road<br>Danville, CA 94526 |

**Electronic Service List:**

- **Jorge A. Gaitan**    Jorge.A.Gaitan@usdoj.gov
- **Office of the U.S. Trustee / SJ**    USTPRegion17.SJ.ECF@usdoj.gov
- **Amelia Valenzuela**    avalenzuela@wedgewood-inc.com, dmarcus@wedgewood-inc.com
- **Geoff Wiggs**    ECF@wiggslaw.com, WiggsGR82519@notify.bestcase.com

If the Chapter 11 Trustee is otherwise entitled to notice, she will receive such notice upon the electronic filing of the above-named document.

I declare, under penalty of perjury, that the foregoing is true and correct.  Executed on January 7, 2021 at Redondo Beach, California.

Dated: January 7, 2021                    /s/ Daniel Marcus
                                          Daniel Marcus

CIVIC APP PAGE NO. 464

# EXHIBIT 28

Entered on Docket
January 08, 2021
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: January 8, 2021

_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re **VIKRAM SRINIVASAN**,

               Debtor.

Case No. 20-51735 SLJ
Chapter 11

## ORDER DENYING MOTION TO
## EXTEND THE AUTOMATIC STAY

    Debtor Vikram Srinivasan moves for an extension of the automatic stay in the above-captioned bankruptcy case, which is set to expire on January 9, 2021, 30 days after the filing of this case, because Debtor had a pending bankruptcy case within one year of this case's filing. Objecting parties argue Debtor is presumed to have filed this case not in good faith because Debtor's prior case was dismissed for failure to timely file required documents. In their view, Debtor fails to show a substantial justification for this, and also fails to provide evidence rebutting the presumption that this case was filed in bad faith.

    I agree with the objecting parties and deny Debtor's motion. Because Debtor failed to file required documents in that prior case, and does not show a substantial excuse for such failure in this motion, I must presume he filed this case in bad faith. Moreover, nothing in Debtor's motion, or the underlying docket, allows me to find he rebuts the presumption. Indeed, the record in this case, stretching across individual and corporate bankruptcies, as

Case: 20-51735   Doc# 41   Filed: 01/08/21   Entered: 01/08/21 18:08:53   Page 1 of 8
CIVIC APP PAGE NO. 466

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1    well as a State court action, persuade me this is a bad faith filing meant to further a scheme

2    of frustrating creditors' attempts to foreclose on and sell a real property that was sold at a

3    foreclosure sale in 2020.

4    **I.   BACKGROUND**

5         Debtor filed this Chapter 11[1] bankruptcy case on December 10, 2020. But he

6    previously filed a Chapter 11 case on December 2, 2019, which was dismissed for failure to

7    timely file his schedules. Case No. 19-42729, ECF 15.

8         Debtor states the sole purpose of this bankruptcy case is to assert his interest in real

9    property located at 1666 Summitridge Drive, Beverly Hills, California ("Property"). ECF 23,

10   p. 2. He further states the Property is owned by Summitridge Venture Group, LLC

11   ("Summitridge"); Debtor is the managing member and sole owner.

12        Summitridge executed a promissory note in favor of Civic Financial Services, LLC,

13   secured by a deed of trust against the Property. ECF 40, p. 2. The beneficiary on that deed

14   of trust was Civic Holdings III Trust ("Civic Trust"). *Id.* at 3. In 2019 Summitridge defaulted

15   on the note, resulting in a scheduled September 13, 2019 foreclosure of the Property. *Id.*

16        But on September 12, 2019, Summitridge filed a Chapter 7 bankruptcy case, which

17   stayed the foreclosure sale. Case No. 19-51855. On November 12, 2019, the bankruptcy

18   court entered an order dismissing the case, with a 90-day bar on refiling, pursuant to a

19   motion by creditors alleging the case was filed in bad faith. *Id.* ECF 9, 17.

20        After the case was dismissed, Summitridge and Civic Holdings entered into a

21   forbearance agreement, but Summitridge later defaulted under that agreement as well, for

22   failure to make certain payments required by the agreement. ECF 40, p. 3. Debtor then filed

23   his December 2, 2019 bankruptcy case. But because Summitridge, not Debtor, owned the

24

25        [1] Unless specified otherwise, all chapter and code references are to the Bankruptcy

26   Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil
     Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy

27   Procedure. "Civil L.R." and "B.L.R." references refer to the applicable Civil Local Rules and
     Bankruptcy Local Rules.

28   ORDER DENYING MOTION TO
     EXTEND THE AUTOMATIC STAY                                                      2/8

Property, Civic Trust held and completed a foreclosure sale of the Property on December 4, 2019. *Id.* at 4. Civic Trust then transferred the Property to Civic Real Estate Holdings LLC ("Civic Real Estate") by quit claim deed on January 3, 2020. *Id.*

Summitridge then filed a State court lawsuit against Civic Trust and Civic Real Estate on February 20, 2020, alleging it was the rightful owner of the Property. The Civic parties filed a demurrer to the complaint on April 17, 2020, which was sustained on October 1, 2020. Specifically, the State court dismissed with prejudice Summitridge's quiet title, declaratory relief, accounting, and unjust enrichment claims, but granted leave to amend as to Summitridge's breach of contract, promissory estoppel, negligent misrepresentation, and wrongful foreclosure claims. The State court's order stated Summitridge could amend its complaint "only as authorized by the court's order." *Id.*

In response, Summitridge filed a first amended complaint on October 27, 2020, which reasserted breach of contract, promissory estoppel, negligent misrepresentation, and wrongful foreclosure claims. The first amended complaint also added Debtor as a plaintiff. The Civic parties filed a demurrer to that complaint on November 17, 2020; a hearing on that demurrer is currently set for September 9, 2021. *Id.* at 4–5.

On May 21, 2020, the Civic parties also filed a motion to expunge a *lis pendens* Summitridge recorded against the Property. The State court held a hearing on that motion on December 11, 2020, and issued an order granting the motion, but staying it in light of Debtor filing this bankruptcy case.

Debtor filed this motion to extend the automatic stay on December 29, 2020. ECF 23. He also filed an application to shorten notice and hearing on the motion the same day, ECF 24, which I denied on December 30, 2020 because the application did not comply with B.L.R. 9006-1, ECF 26. Debtor refiled that application on January 2, 2021, ECF 28, which I granted the same day, ECF 30.

Wedgwood, LLC ("Wedgwood"), administrator of Civic Trust and Civic Real Estate, timely filed an opposition to Debtor's motion on January 7, 2021. ECF 40. Wedgwood

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY                                        3/8

CIVIC APP PAGE NO. 468

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

argues this case was presumptively filed in bad faith, and Debtor's motion fails to present evidence sufficient to show otherwise.

One point of clarification is worthy of mention. Wedgwood, on behalf of the Civic entities, represents the parties who once owned the promissory note, foreclosed and purchased the Property, and later conveyed it to a third party. They were, at various points in the proceedings, creditors, owners, conveyancers, and defendants in lawsuits Debtor brought. If for no other reason, they have standing to oppose the Motion because their request for relief in state court was held in abeyance based on Debtor's argument that their actions were barred by the automatic stay.

## II.    DISCUSSION

Section 362(c)(3)(A) provides that if a debtor files a bankruptcy case under Chapter 11, but another bankruptcy case of that debtor was pending within one year of such filing, the automatic stay terminates "with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor" thirty days after the later case was filed. In turn, § 362(c)(3)(B) allows me, upon notice and hearing "completed before the expiration of the 30-day period," to grant a motion to extend the automatic stay, but "only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed." A case is presumed to be filed not in good faith if, among other things, the debtor's prior bankruptcy case was dismissed because debtor failed to "file or amend the petition or other documents as required by this title or the court without substantial excuse." § 362(c)(3)(C)(i)(II)(aa). "The burden of establishing the presence of presumptive bad faith rests upon the opponent to the motion." *In re Montoya*, 342 B.R. 312, 316 (Bankr. S.D. Cal. 2006) (citation omitted). I find Wedgwood shows this case was presumptively filed not in good faith, and that Debtor fails to rebut that presumption by clear and convincing evidence.

Debtor states he filed the current case in good faith because: (1) his financial situation has changed to allow for a confirmable Chapter 11 plan; and (2) the prior was not dismissed

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY                                                          4/8

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

for failure to provide adequate protection or failure to perform under the terms of a confirmed plan. ECF 23, p. 2–3. Debtor also notes that, when the previous case was filed, he was negotiating work-out agreements with certain lenders, and those negotiations eventually deteriorated. But Debtor also admits his prior case was dismissed for failure to file required documents. The docket in the prior case confirms this. Moreover, Debtor does not appear to provide a justification for this failure. At best, I can infer Debtor believes his negotiations with lenders during the prior case was what caused his failure to file, and that this constitutes a substantial excuse. Assuming this is so, Debtor does not explain why these negotiations caused the failure to file required documents. Also, if such failure was the result of Debtor's counsel's negligence – a point Debtor's motion does not address – then the presumption would apply, even if those negotiations provided him a substantial excuse. Because Debtor was dismissed for failure to timely file required documents, and Debtor's motion provides no basis for me to find he was substantially justified in his failure, or that the failure was not the result of Debtor's counsel's negligence, I find Wedgwood shows the presumption that Debtor did not file this case in good faith under § 362(c)(3)(C)(i)(II)(aa) applies.

To rebut the presumption, Debtor must show by clear and convincing evidence that this case was filed in good faith. *In re Castaneda*, 342 B.R. 90, 96 (Bankr. S.D. Cal. 2006). His evidence must give me "a firm belief or conviction that the allegations sought to be established are true; it is 'evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.'" *Id.* Bankruptcy courts apply the totality of the circumstances test to see whether a case was filed in good faith, *id.*, considering the following factors: (1) whether the debtor misrepresented facts in his petition, unfairly manipulated the Code, or otherwise filed his petition in an inequitable manner; (2) the debtor's history of filings and dismissals (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present. *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999) (citations and alterations omitted). "A finding of bad faith does not require fraudulent intent by the debtor." *Id.*

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY

First, I find Debtor's petition was filed in an inequitable manner. After the State court dismissed Summitridge's original complaint, Summitridge added Debtor as a plaintiff to the action, despite the State court's order providing that Summitridge could only amend the complaint to the extent allowed in that order, which did not provide for Summitridge adding additional plaintiffs. ECF 40-1, p. 4. The goal in adding Debtor to that action appears to be allowing Debtor to stay the action by filing an individual bankruptcy case. Debtor admits as much in his motion by stating his interest in the Property "is the sole purpose of this bankruptcy case[.]" ECF 23, p. 2. The problem with this statement is Debtor also admits in his schedules that he has no interest in the Property; instead, he owns Summitridge, which in turn alleges it has an interest in the Property. In my view, this shows Debtor's bankruptcy case is intended, not to effect a reorganization, but to frustrate the efforts of others to assert their interests in the Property. Debtor's motion provides no evidence to show otherwise.

Second, Debtor filed a previous Chapter 11 petition slightly over a year from the filing of this case. But since Debtor's current case appears premised on conflating the alleged interest Summitridge has in the Property as his own, I also find relevant the Chapter 7 case Summitridge filed on September 12, 2019. Case No. 19-51855. That case was dismissed on November 12, 2019 with a 90-day bar to filing, pursuant to a § 707(a) motion to dismiss the case for being filed in bad faith. *Id.* ECF 9, 17. The facts underpinning that motion appear to relate to the same Property that Debtor admits is the sole purpose of this bankruptcy case, making Summitridge's dismissal for filing in bad faith even more relevant to this case. This factor also points to Debtor filing this case in bad faith.

Third, I find the only purpose of this case is to defeat State court litigation. The record of the State court action shows that, but for the automatic stay, Debtor's *lis pendens* on the Property would be expunged. Moreover, the causes of action Debtor states he intends to assert in his to-be-filed adversary proceeding – claims alleging wrongful foreclosure and misrepresentation by lenders – appear functionally identical to those asserted in the State court action. And Debtor's statement that the Property, and the adversary proceeding he

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY                                                6/8

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

intends to file to assert his alleged interest in it, is the sole purpose of this bankruptcy, is in my view an admission that this factor points towards this case being filed in bad faith. Debtor's motion provides no evidence to show otherwise.

Finally, I find Debtor's actions to be egregious. After defaulting on the note securing the Property, Debtor and Summitridge appear to have embarked on a years-long scheme to frustrate attempts by creditors to foreclose on the Property. This scheme involved multiple bankruptcy filings, both corporate and individual, as well as a State court action that has yet to proceed beyond the demurrer stage. And while the State court action is only in its early stages, the fact that Summitridge and Debtor have lost every substantive motion brought against them allows me to infer that action is not well-founded. This practice of frustrating lawful foreclosure efforts through dubious legal proceedings, in my view, meets the standard for egregious conduct.

The totality of the circumstances here persuade me that Debtor filed this case in bad faith, and that he is not entitled to an extension of the automatic stay. Accordingly, I will deny Debtor's motion.

## III. CONCLUSION

Because Debtor presumptively filed this case in bad faith, and failed to present evidence to the contrary, his motion to extend the automatic stay is DENIED.

IT IS SO ORDERED.

**END OF ORDER**

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY                                    7/8

# COURT SERVICE LIST

[ECF recipients only]

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY

8/8

# EXHIBIT 29

Geoffrey E. Wiggs (SBN 276041)
LAW OFFICES OF GEOFF WIGGS
1900 South Norfolk Street, Suite 350
San Mateo, California 94403-1171
Telephone Number: (650) 577-5952
Facsimile Number: (650) 577-5953
Email Address: geoff@wiggslaw.com

(Proposed) Attorney for Debtor in Possession
VIKRAM SRINIVASAN

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

|  |  |
|---|---|
| In Re: | Case No.:  20-51735 |
| | Chapter 11 |
| **VIKRAM SRINIVASAN**, | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| Debtor in Possession. | |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    <u>INTRODUCTION</u>

Debtor files this motion for reconsideration pursuant to Federal Rule of Civil Procedure 60 ("Rule 60") (incorporated, for relevant purposes, by Federal Rule of Bankruptcy Procedure 9024) and this Court's inherent authority, for the reconsideration of its Order denying Debtor's Motion for Order Extending the Full Automatic Stay as to All Creditors, Docket No. 41 ("Order").

Debtor seeks reconsideration of the Court's Order Denying Extension of the Automatic Stay as it was made without affording Debtor an opportunity to reply to extensive and detailed

1

allegations made against Debtor in Creditor's Opposition to the Motion.  Debtor respectfully requests that the Court reconsider its prior ruling on this matter; or, in the alternative, allow Debtor the opportunity to fully brief his response to the extensive and self-serving allegations made by Objecting Creditor.

## II.   JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.   TIMELINESS

Federal Rule of Civil Procedure section 60, incorporated for relevant purposes, by Federal Rule of Bankruptcy Procedure section 9024, requires a motion for reconsideration be made within a reasonable time and no more than a year after the entry of order.  Here, the Court entered the Order on January 8, 2021, making this Motion timely.  Further, should the Court consider this Motion under Federal Rule of Civil Procedure section 59, incorporated by Federal Rule of Bankruptcy Procedure 9023, this Motion was filed within the 14 day time limit proscribed by that Rule.

## IV.   BACKROUND AND FACTS

Debtor filed the instant Chapter 11 bankruptcy case December 10, 2020.  Debtor has filed one earlier personal Chapter 11 case in this Court.  The prior case was dismissed January 8, 2020 for failure to comply with the Court's order to file required documents.  Case No. 19-42729.  Debtor's prior case involved the foreclosure of real property located at 1666 Summitridge Drive, Beverly Hills, California ("Property"), owned by Summitridge Venture Group, LLC, an entity wholly owned by Debtor, as both managing member and personal guarantor of the mortgage against the Property.   Debtor is subject to a personal guarantee of this mortgage held by Creditor

2

MEMORANDUM OF POINTS AND AUTHORITIES                     Case No.:  20-51735
**CIVIC APP PAGE NO. 476**

Civic Holdings, (represented by Objector Wedgewood LLC) against this property.  Litigation contemplated to recover Debtor's interest in the Property is the principal purpose of this bankruptcy.

Debtor filed complete schedules in this matter on December 24, 2020.  On December 29, 2020, Debtor filed a Motion for Order Extending the Full Automatic Stay as to All Creditors ("Motion"), Docket No. 23.  Accompanying Debtor's Motion to Extend the Automatic Stay was an Application for Debtor's Motion to be heard on shortened time for notice.  The Application was rejected due to by the Court for non-compliance with the Court's procedures and rules governing such Applications.

Debtor and Counsel corrected these deficiencies and re-filed the Application for Hearing on Shortened Time January 2, 2021.  On January 4, 2021, the Court granted Debtor's Application for Shortened Time.  The Court's Order established notice requirements for the Motion and Order Shortening Time and established a briefing schedule requiring Objector Wedgewood LLC to file and serve any opposition in writing by January 7, 2021.  The Court then stated that the matter would be considered submitted.

Objector Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust and Civic Real Estate Holdings III, LLC ("Wedgewood"), filed an extensive opposition to Debtor's Motion on January 7, 2021.  Wedgewood's Opposition made extensive allegations and produced evidence supporting Objector's argument that Debtor's case was presumptively filed in bad faith. On January 8, 2021, the Court entered an Order Denying Debtor's Motion to Extend the Automatic Stay.

The Court's Order Denying the Extension was made without permitting Debtor the opportunity to reply to the allegations made Objector's Opposition.

3

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No.: 20-51735
**CIVIC APP PAGE NO. 477**

Debtor now files the instant Motion to Reconsider, asserting that he was improperly denied the opportunity to respond to the allegations raised in the Opposition to his motion to extend the automatic stay and seeking the Court's reconsideration of the Order to allow him the opportunity to respond.

## V.  ARGUMENT

### A. This Court Has Authority to Reconsider the Order Denying Debtor's Motion to Extend the Automatic Stay

Neither the Bankruptcy Code, nor the Federal Rules of Bankruptcy Procedure ("FRBP") contemplate motions for reconsideration. *In re Captain Blythers, Inc.*, 311 B.R. 530, 539 (9th Cir. 2004).  However, as a court of equity, this Court has broad discretion under Federal Rule of Civil Procedure section 60(b) to reconsider, vacate, or modify past orders so long as no intervening rights have become vested in reliance of the Order.  *Myer v. Lenox (In re Lenox)*, 902 F.2d 737, 739-740 (9th Cir. 1990).

Under FRCP 60(b), incorporated for relevant purposes by FRBP 9024, a court may relieve a party from a final judgment or order based on any of the following grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) **any other reason that justifies relief**.

Fed. R. Civ. P. 60(b) (**emphasis added**).

This provision "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."  *Klapprott v. United States*, 335 U.S. 601, 615 (1949).  FRCP 60(b)(6) gives the Court a "grand reservoir of equitable power to do

4

MEMORANDUM OF POINTS AND AUTHORITIES

Case No.:  20-51735

**CIVIC APP PAGE NO. 478**

1   justice in a particular case." *In re Singh,* 553 B.R. 404, 406 (Bankr. E.D. Cal. 2016).  FRCP

2   60(b) is intended to be used "as an equitable remedy to prevent manifest injustice." *United*

3   *States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir.), cert. denied, 510 U.S.

4   813, 114 S.Ct. 60 (1993).  Debtor respectfully asserts relief is justified in this instance as he was

5   improperly deprived of his due process rights by the Court's ruling.

6

7   **B. Relief is Justified Because Defendant's Procedural Due Process Rights Were Violated**

8          Debtor has a constitutional right to due process in the bankruptcy court.  *See, e.g.*, *Lewis*

9   *v. Zermano (In re Stevinson)*, 194 B.R. 509, 512 (D.Colorado 1996) (**emphasis added**) [to

10  satisfy due process in a trial procedure in bankruptcy court, **a party must have the opportunity**

11  **to submit its evidence to an impartial arbiter**].  In *Mullane v. Central Hanover Bank & Trust*

12  *Co.*, the Supreme Court explained that due process requires "notice reasonably calculated, under

13  all the circumstances, to apprise the interested parties of the pendency of the action and **afford**

14  **them an opportunity to present their objections**."  *Mullane v. Cent. Hanover Bank & Tr. Co.*,

15  339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (**emphasis added**).  Where a debtor makes

16  a due process claim, debtor must show resulting prejudice.  *See City Equities Anaheim, Ltd. v.*

17

18  *Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.)*, 22 F.3d 954, 959 (9th Cir. 1994)

19  (rejecting Debtor's due process claim where Debtor was unable to demonstrate that an additional

20  or different argument would have been presented had the court timely approved a petition for

21  new counsel).

22

23         In the instant matter, the Court denied Debtor procedural due process in that Debtor was

24  improperly denied the opportunity to reply to the Opposition to his Motion.  Debtor filed his

25  motion for order extending the full automatic stay as to all creditors on December 29, 2020.  In

26  the Motion, Debtor explained that the instant case revolved around the foreclosure of real

27

28

5

MEMORANDUM OF POINTS AND AUTHORITIES          Case No.:  20-51735
                                              **CIVIC APP PAGE NO. 479**

1  property owned by Debtor's alter ego, Summitridge Venture Group, LLC.  Debtor further

2  explained that an Adversary Proceeding to attempt to recover this property was planned and

3  would be filed to support Debtor's claims against Objector Wedgewood.  *See Motion to Extend*

4  *the Automatic Stay*, Docket #23, ¶¶ 3 and 4.

5      On January 7, 2021, Objector filed a lengthy Opposition to Debtor's Motion.  In its

6  opposition, Wedgewood alleged Debtor's case was presumptively filed in bad faith because he

7  filed a previous bankruptcy case, failed to prosecute it, and lacks substantial change in his

8  financial or personal affairs since the prior case's dismissal.  Without giving Debtor an

9  opportunity to respond to these allegations, the Court entered an Order denying the Motion to

10  Extend Stay in which the Court appeared to consider Objector's evidence dispositive and without

11  allowing Debtor to reply to the allegations.

12

13      Although the opponent bears the burden of establishing the presence of presumptive bad

14  faith, **the presumption may be rebutted by the moving party with clear and convincing**

15  **evidence**.  *In re Montoya,* 342 B.R. 312, 316 (Bankr. S.D. Cal. 2006); 11 U.S.C. § 362(c)(3)(C)

16  (**emphasis added**).  However, Debtor was not allowed the opportunity to rebut the allegations

17  and presumptions made by Wedgewood as the Court entered its order denying the Motion

18  without allowing for a Reply.   Debtor notes that entry of the Order in this fashion was in accord

19  with the Court's prior order shortening time for hearing on the Motion.

20

21      Had Debtor been allowed the opportunity to rebut these allegations, Debtor could have

22  presented the history of his prior case, regarding the dismissal for failure to file required

23  documents as ordered by the court.  The prior case involved foreclosure of the same Property

24  currently contested by Debtor.  The Property was owned by Summitridge Venture Group, LLC,

25  with Debtor as the managing member and sole owner.  Debtor's interest in the Property also

26

27

28

6

MEMORANDUM OF POINTS AND AUTHORITIES              Case No.: 20-51735
**CIVIC APP PAGE NO. 480**

includes a personal guarantee of the underlying mortgages.  Debtor's prior filing was dismissed due to failure to file complete schedules.  The resulting administrative dismissal was the byproduct of negotiations between Debtor and Wedgewood, regarding a work-out of the underlying mortgage, which Debtor pursued in good faith.

At the time of the previous filing, Debtor was negotiating with Wedgewood, to negotiate a work-out agreement related to the mortgage on the Property and the underlying personal guarantee.  Prior to dismissal, Debtor was assured by Wedgewood that, should he dismiss his chapter 11 filing, Wedgewood would continue to negotiate in good-faith and cooperate with Debtor in making payments to forestall the planned foreclosure sale.  *Declaration Of Debtor Vikram Srinivasan*.

Debtor's negotiations with Wedgewood continued after the dismissal date.  However; due to significant misrepresentations by Wedgewood , negotiations broke down.  Debtor is now engaged in state court litigation with Wedgewood over these misrepresentations and Creditor's failure to negotiate in good faith.

Recovery of Debtor's interest in the Property is the sole purpose of the instant bankruptcy and Debtor has planned to file an adversary proceeding against Fay Servicing, LLC, a Delaware Company, Civic Holdings III Trust and Civic Real Estate Holdings, III, LLC, seeking recovery of the Property to the Estate.

There have been substantial changes in Debtor's financial condition since the filing of Debtor's prior case and the instant case.  The subject property was foreclosed upon and Debtor now has the ability to reorganize and present a confirmable plan for the benefit of the estate by seeking debtor-in-possession financing from EFO Financial Group.  *See Declaration of Renzo*

7

MEMORANDUM OF POINTS AND AUTHORITIES                      Case No.:  20-51735

**CIVIC APP PAGE NO. 481**

*Renzi*.  Debtor has already secured a commitment for this financing and seeks confirmation of a plan of reorganization to allow him to recover this interest.

Debtor's interests were prejudiced by denial of an opportunity to rebut the allegations presented by Objector.  Through this denial he was deprived of his right to due process and the protection of the Automatic Stay.  Without the Bankruptcy Stay Debtor will not be afforded the opportunity to reorganize without continuing pressure from Wedgewood.

The immediate consequence of enforcement against Summitridge Venture Group, LLC will lead to instant adverse economic consequences for the debtor.  Because of the personal guarantee of the underlying mortgages on the Property, Debtor will suffer a loss upon any subsequent attempt to enforce the personal guarantee.

**C. Relief is Justified As Actions Taken Against the Entity Will Lead to Inequitable Results Against Debtor and Impair Debtor's Attempt to Reorganize**

In the case *Queenie, Ltd. v. Nygard Intern* (321 F.3d 282 (2d Circ. 2003) the Court stated an automatic stay "can apply to non-debtors but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate. Examples are a claim to establish an obligation of which the debtor is a guarantor..." *Queenie, Ltd. v. Nygard Intern*, 321 F.3d 282, 287.  This reasoning has been adopted in the Ninth Circuit in cases such as *BMO Harris Bank N.A. v. Marken Enterprise LLC*. (No. 3:17-cv-00091-GPC-NLS, 2017 U.S. Dist. LEXIS 149430 (S.D. Cal. Sep. 14, 2017).

Similar to the situations in *Queenie* and *BMO Harris Bank N.A*, Debtor will bear later liability and significant negative consequences, because of the personal guarantee of the entity's mortgages.  These negative financial consequences will significantly impair Debtor's ability to reorganize.

8

MEMORANDUM OF POINTS AND AUTHORITIES                    Case No.:  20-51735
**CIVIC APP PAGE NO. 482**

Debtor will argue that the Bankruptcy Stay should apply to both his personal chapter 11 and to those interests of Debtor in the entities of which he is wholly in control, whose interests are inseparable from Debtor's, and which negative and inequitable financial impact would accrue directly to Debtor.

## VI.   <u>CONCLUSION</u>

Accordingly, Debtor respectfully requests that the Court reconsider the Order denying his Motion to Extend the automatic stay or in the alternative, allow Defendant to present a Reply to the evidence and allegations raised by Creditor's Opposition, and grant such other and further relief as the Court may deem just and proper under the facts and circumstances of this case.

oo0oo

Respectfully submitted,

Dated: January 19, 2021                LAW OFFICES OF GEOFF WIGGS


 _/s/ Geoffrey E. Wiggs_____
Geoffrey E. Wiggs (Proposed) Attorney
for Debtor in Possession
VIKRAM SRINIVASAN

9

MEMORANDUM OF POINTS AND AUTHORITIES                Case No.:  20-51735
**CIVIC APP PAGE NO. 483**

# EXHIBIT 30

GEOFFREY E. WIGGS (SBN 276041)
LAW OFFICES OF GEOFF WIGGS
1900 S. Norfolk St, Suite # 350
San Mateo, Ca 94403
Telephone: (650) 577-5952
Facsimile: (650) 577-5953
Geoff@wiggslaw.com

(Proposed) Attorney for Debtor in Possession
VIKRAM SRINIVASAN

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| In Re: | Case No.:  20-51735 |
| **VIKRAM SRINIVASAN,** | Chapter 11 |
| Debtor in Possession. | **DECLARATION OF DEBTOR VIKRAM SRINIVASAN** |

I, VIKRAM SRINIVASAN, declare under penalty of perjury under the laws of the United States that the following statements are true:

1. I am the Debtor-in-Possession in the above-captioned case.  I have personal knowledge of the matters stated herein and, if called upon, I could and would testify to the truth thereof.

2. I filed the instant Chapter 11 bankruptcy case December 10, 2020.

3. I filed one earlier personal bankruptcy case in this court.  My prior case was dismissed January 8, 2020 for failure to comply with the Court's order to file required documents.  Case No.: 19-42729.

4. My prior case was not dismissed for failure to provide ordered adequate protection or for failure to perform the terms of a confirmed plan.

1

DECLARATION

CIVIC APP PAGE NO. 485

20-51735

5. My prior case involved the foreclosure of real property located at 1666 Summitridge Drive, Beverly Hills, California and owned by Summitridge Venture Group, LLC.

6. There are unusual circumstances which establish both significant identity and unity of interest between me and my wholly owned limited liability company.

7. I am the managing member, sole owner, and personal guarantor of the underlying mortgage against the property.

8. Recovery of my interest in said property is the principal purpose of the instant bankruptcy and upcoming adversary proceeding against Fay Servicing, LLC, a Delaware Company, Civic Holdings III Trust and Civic Real Estate Holdings, III, LLC.

9. At the time of the previous filing, I was working with the Creditor to negotiate a work-out agreement related to the mortgage on the Property and the underlying personal guarantee.

10. Prior to, and in support of, the dismissal, I was assured by Creditor that, should I dismiss my chapter 11 filing, Creditor would continue to negotiate in good faith, cooperate with me, and allow me to make payments to forestall the planned foreclosure sale.

11. My negotiations with Creditor continued after the dismissal date.

12. Due to significant misrepresentations by Creditor, negotiations broke down.

13. I am now engaged in state court litigation with Wedgewood LLC over these misrepresentations and Creditor's failure to negotiate in good faith.

14. I filed complete schedules in this matter on December 24, 2020.

15. There have been substantial changes in my financial condition since the filing of my prior case and the instant case. The subject property was foreclosed upon; however, I now have the ability to reorganize and present a confirmable plan for the benefit of the estate.

2

16. I have secured a commitment for debtor-in-possession financing from EFO Financial Group. See *Declaration of Renzo Renzi*.

**Motion to Extend the Automatic Stay**

17. On December 29, 2020, I filed a Motion for Order Extending the Full Automatic Stay as to All Creditors.

18. Accompanying my motion to extend the automatic stay was an Application for the motion to be heard on shortened time for notice.  The initial Application was rejected for non-conformance with Court rules on these matters.

19. I re-filed my application on January 2, 2021 and on January 4, 2021, the Court granted my Application for Shortened Time.

20. On January 7, 2021, objecting creditor Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust and Civic Real Estate Holdings III, LLC ("Wedgewood, LLC"), filed an opposition to my Motion to Extend the Automatic Stay.  Wedgewood, LLC alleged my case was presumptively filed in bad faith.

21. On January 8, 2021, the Court entered an Order denying my Motion to Extend the Automatic Stay.

22. I had no opportunity to rebut the allegations made against me in Wedgewood, LLC's objection.

23. The immediate consequence of enforcement against Summitridge Venture Group, LLC will cause me to suffer immediate adverse economic consequences.  As a result of the denial of the extension of the stay, I will suffer a loss due to the existence of my personal guarantee of the underlying mortgages on the Property.

I declare this statement is true and correct under penalty of perjury.

3

DECLARATION
CIVIC APP PAGE NO. 487

1

oo0oo

2

Respectfully submitted,

3

4

Dated this <u>January 19, 2021</u>

<u>/s/ *Vikram Srinivasan*</u>

5

Vikram Srinivasan

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

# EXHIBIT 31

GEOFFREY E. WIGGS (SBN 276041)
LAW OFFICES OF GEOFF WIGGS
1900 S. Norfolk St, Suite # 350
San Mateo, Ca 94403
Telephone: (650) 577-5952
Facsimile: (650) 577-5953
Geoff@wiggslaw.com

(Proposed) Attorney for Debtor in Possession
VIKRAM SRINIVASAN

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

Case No.:  20-51735

In Re:

Chapter 11

**VIKRAM SRINIVASAN,**

**DECLARATION OF RENZO RENZI**

Debtor in Possession.

I, RENZO RENZI, declare under penalty of perjury under the laws of the United States that the following statements are true:

1.  I am the principal of EFO Financial Group, LLC.  I have personal knowledge of the matters stated herein and, if called upon, I could and would testify to the truth thereof.

2.  EFO Financial Group, LLC, is a provider of debtor-in-possession loans across the United States and specializes in real estate-based lending.

3.  On October 27, 2020, I spoke with Mr. Vikram Srinivasan, Debtor in the above-captioned case, regarding the events leading up to the filing of the instant chapter 11 bankruptcy.

4.  We discussed the possibility of extending credit either directly to Mr. Srinivasan, or, for his benefit to his wholly-owned company, Summitridge Venture Group, LLC, to be secured

1

DECLARATION

against the property 1666 Summitridge Dr., Beverly Hills, California 90210 to facilitate the reorganization effort of the estate.

5. We discussed various scenarios including the possibility of making a debtor-in-possession loan, refinancing the existing debt on the property, and purchasing the senior note on the property.

6. Being in receipt of appraisals, photos, and a construction budget, I would be willing to provide a commitment letter to the debtor for financing.

I declare this statement is true and correct under penalty of perjury.

oo0oo

Respectfully submitted,

Dated this January 19, 2021

Renzo Renzi

# EXHIBIT 32

Geoffrey E. Wiggs (SBN 276041)
LAW OFFICES OF GEOFF WIGGS
1900 South Norfolk Street, Suite 350
San Mateo, California 94403-1171
Telephone Number: (650) 577-5952
Facsimile Number: (650) 577-5953
Email Address: geoff@wiggslaw.com

(Proposed) Attorney for Debtor in Possession
VIKRAM SRINIVASAN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In Re:<br><br>**VIKRAM SRINIVASAN**,<br><br>     Debtor in Possession. | Case No.:  20-51735<br><br>Chapter 11<br><br>**NOTICE OF MOTION FOR RECONSIDERATION OF ORDER DENYING DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY**<br><br>**Date: February 16, 2021**<br>**Time: 2:00 pm** |

**TO THE HONORABLE STEPHEN L. JOHNSON, 20 LARGEST UNSECURED CREDITORS, SECURED CREDITORS, THE UNITED STATES TRUSTEE AND PARTIES REQUESTING SPECIAL NOTICE:**

PLEASE TAKE NOTICE that on **February 16, 2021** at **2:00 pm** in **Courtroom 9**

located at **280 South First Street, San Jose, California 95113 (Please note that no personal**

**appearances are allowed due to COVID-19 restrictions.  For appearance information**

**please see below.)** Debtor will and hereby does Move for Reconsideration of the Order Denying

Debtor's Motion to Extend the Automatic Stay ("Motion").

1

NOTICE OF MOTION

CIVIC APP PAGE NO. 493

Debtor makes this Motion pursuant to Rule 60 of the Federal Rules of Civil Procedure, made applicable to the above-captioned case by Rule 9024 of the Federal Rules of Bankruptcy Procedure.  By this Motion, Debtor respectfully requests that the Court reconsider its Order denying Debtor's Motion to Extend the Automatic Stay, which was entered by the Court on January 8, 2021.

A copy of this Notice and Motion, the Memorandum of Points and Authorities, Declaration of Debtor-in-Possession, and Declaration of Renzo Renzi are filed and served concurrently herewith.  The Motion requests that the Court reconsider its Order denying Debtor's Motion to Extend the Automatic Stay.

**PURSUANT TO FOURTH AMENDED GENERAL ORDER 38, Dated SEPTEMBER 23, 2020**

All interested parties should consult the Bankruptcy Court's website at www.canb.uscourts.gov for information about court operations during the COVID-19 pandemic. The Bankruptcy Court's website provides information regarding how to arrange a telephonic or video appearance. If you have any questions regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9014-1(b)(3) of the United States Bankruptcy Court for the Northern District of California that Debtor Vikram Srinivasan hereby moves for the Court to reconsider its Order denying Debtor's Motion to Extend the Automatic stay.

Any objection to the requested relief or request for a hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing the notice;

2

Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;

If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default.

**WHEREFORE**, Debtor respectfully requests that the Court reconsider its Order denying Debtor's Motion to Extend the Automatic Stay and further relief as the Court may deem just and proper under the facts and circumstances of this case.

Dated: January 19, 2021

/s/ Geoffrey E. Wiggs_
GEOFFREY E. WIGGS
(Proposed) Attorney for
Debtor in Possession

3

NOTICE OF MOTION

# EXHIBIT 33

1  Geoffrey E. Wiggs (SBN 276041)
   LAW OFFICES OF GEOFF WIGGS
2  1900 South Norfolk Street, Suite 350
3  San Mateo, California 94403-1171
   Telephone Number: (650) 577-5952
4  Facsimile Number: (650) 577-5953
5  Email Address: geoff@wiggslaw.com

6  (Proposed) Attorney for Debtor in Possession
7  VIKRAM SRINIVASAN

8               UNITED STATES BANKRUPTCY COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11
                                    | Case No.: 20-51735
12
13  In Re:                          | Chapter 11

14  **VIKRAM SRINIVASAN**,          | **MOTION FOR RECONSIDERATION OF ORDER DENYING DEBTOR'S MOTION TO EXTEND THE AUTOMATIC STAY**
15          Debtor in Possession.

16                                  | **Date: February 16, 2021**
17                                  | **Time: 2:00 pm**
18

19      Debtor hereby moves for Reconsideration of the Court's Order Denying Debtor's Motion
20
21  to Extend the Automatic Stay. Debtor makes this Motion pursuant to Rule 60 of the Federal

22  Rules of Civil Procedure, made applicable to the above-captioned case by Rule 9024 of the

23  Federal Rules of Bankruptcy Procedure.

24      By this Motion, Debtor respectfully requests that the Court reconsider its Order denying
25
    Debtor's Motion to Extend the Automatic Stay, which was entered by the Court on January 8,
26
27  2021.

28      **WHEREFORE**, Debtor respectfully requests that the Court reconsider the Order

1

1   denying his Motion to Extend the automatic stay or in the alternative, allow Defendant to present

2   a Reply to the evidence and allegations raised by Creditor's Opposition, and grant such other and

3   further relief as the Court may deem just and proper under the facts and circumstances of this

4   case.

5

6                                           oo0oo

7

8   Dated this <u>January 20, 2021</u>                    <u>/s/ Geoffrey E. Wiggs, Esq.</u>

9                                              **Geoffrey E. Wiggs, Esq.**

10                                               (Proposed) Attorney for Debtor

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">2</div>

MOTION FOR RECONSIDERATION

CIVIC APP PAGE NO. 498

# EXHIBIT 34

1  GEOFFREY E. WIGGS (SBN 276041)
   LAW OFFICES OF GEOFF WIGGS
2  1900 S. Norfolk St, Suite # 350
   San Mateo, Ca 94403
3  Telephone: (650) 577-5952
   Facsimile: (650) 577-5953
4  Geoff@wiggslaw.com

5  (Proposed) Attorney for Debtor in Possession
   VIKRAM SRINIVASAN

6

7                  UNITED STATES BANKRUPTCY COURT

8         NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

9
                                    Case No.:  20-51735
10
   In Re:                           Chapter 11
11
   VIKRAM SRINIVASAN,               NOTICE OF APPEAL AND STATEMENT
12                                  OF ELECTION
              Debtor in Possession.
13

14

15

16

17            **NOTICE OF APPEAL AND STATEMENT OF ELECTION**

18  **Part 1:  Identify the appellant (s)**

19
20  1.      Name(s) of appellant(s):   VIKRAM SRINIVASAN

21  2.      Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject
22  of this appeal:

23  For appeals in an adversary          For appeals in a bankruptcy case and not in an
    proceeding:                          adversary proceeding:
24
25  ☐ Plaintiff                          ■ Debtor
    ☐ Defendant                          ☐ Creditor
26  ☐ Other(describe)_____    ☐ Trustee
                                         ☐ Other(describe)_____
27

28

                                   1
NOTICE OF APPEAL AND STATEMENT OF ELECTION
CIVIC APP PAGE NO. 500

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order or decree appealed from: **ORDER DENYING MOTION TO EXTEND THE AUTOMATIC STAY**

State the date on which the judgment, order, or decree was entered:
**Doc # 41, entered 01/08/2021.** A true and correct copy of the Order is attached hereto as **Exhibit 1**.

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

*1. Party:*                                      *Attorney:*

WEDGEWOOD, LLC, SOLELY AS                        Amelia B. Valenzuela
ADMINISTRATOR OF THE CIVIC HOLDINGS III          David M. Poitras
TRUST; CIVIC REAL ESTATE HOLDINGS III,           WEDGEWOOD
LLC,                                             Office of the General Counsel
                                                 2015 Manhattan Beach Blvd. Ste.100
Defendants.                                      Redondo Beach, CA 90278

**Part 4:  Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5. Sign below**

/s/ *Geoffrey E. Wiggs*                                  Date:  January 22, 2021
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

///

2

NOTICE OF APPEAL AND STATEMENT OF ELECTION
**CIVIC APP PAGE NO. 501**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

///

Name, address, and telephone number of attorney (or appellant(s) if not represented by an attorney):

GEOFFREY E. WIGGS
LAW OFFICES OF GEOFF WIGGS
1900 S. Norfolk St, Suite # 350
San Mateo, Ca 94403
Telephone: (650) 577-5952
Facsimile: (650) 577-5953
Geoff@wiggslaw.com

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

3

NOTICE OF APPEAL AND STATEMENT OF ELECTION

CIVIC APP PAGE NO. 502

# EXHIBIT "1"

# EXHIBIT "1"

Entered on Docket
January 08, 2021
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: January 8, 2021

_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re **VIKRAM SRINIVASAN**,

Debtor.

Case No. 20-51735 SLJ
Chapter 11

## ORDER DENYING MOTION TO
## EXTEND THE AUTOMATIC STAY

Debtor Vikram Srinivasan moves for an extension of the automatic stay in the above-captioned bankruptcy case, which is set to expire on January 9, 2021, 30 days after the filing of this case, because Debtor had a pending bankruptcy case within one year of this case's filing. Objecting parties argue Debtor is presumed to have filed this case not in good faith because Debtor's prior case was dismissed for failure to timely file required documents. In their view, Debtor fails to show a substantial justification for this, and also fails to provide evidence rebutting the presumption that this case was filed in bad faith.

I agree with the objecting parties and deny Debtor's motion. Because Debtor failed to file required documents in that prior case, and does not show a substantial excuse for such failure in this motion, I must presume he filed this case in bad faith. Moreover, nothing in Debtor's motion, or the underlying docket, allows me to find he rebuts the presumption. Indeed, the record in this case, stretching across individual and corporate bankruptcies, as

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY

1/8

well as a State court action, persuade me this is a bad faith filing meant to further a scheme of frustrating creditors' attempts to foreclose on and sell a real property that was sold at a foreclosure sale in 2020.

## I.    BACKGROUND

Debtor filed this Chapter 11[1] bankruptcy case on December 10, 2020. But he previously filed a Chapter 11 case on December 2, 2019, which was dismissed for failure to timely file his schedules. Case No. 19-42729, ECF 15.

Debtor states the sole purpose of this bankruptcy case is to assert his interest in real property located at 1666 Summitridge Drive, Beverly Hills, California ("Property"). ECF 23, p. 2. He further states the Property is owned by Summitridge Venture Group, LLC ("Summitridge"); Debtor is the managing member and sole owner.

Summitridge executed a promissory note in favor of Civic Financial Services, LLC, secured by a deed of trust against the Property. ECF 40, p. 2. The beneficiary on that deed of trust was Civic Holdings III Trust ("Civic Trust"). *Id.* at 3. In 2019 Summitridge defaulted on the note, resulting in a scheduled September 13, 2019 foreclosure of the Property. *Id.*

But on September 12, 2019, Summitridge filed a Chapter 7 bankruptcy case, which stayed the foreclosure sale. Case No. 19-51855. On November 12, 2019, the bankruptcy court entered an order dismissing the case, with a 90-day bar on refiling, pursuant to a motion by creditors alleging the case was filed in bad faith. *Id.* ECF 9, 17.

After the case was dismissed, Summitridge and Civic Holdings entered into a forbearance agreement, but Summitridge later defaulted under that agreement as well, for failure to make certain payments required by the agreement. ECF 40, p. 3. Debtor then filed his December 2, 2019 bankruptcy case. But because Summitridge, not Debtor, owned the

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure. "Civil L.R." and "B.L.R." references refer to the applicable Civil Local Rules and Bankruptcy Local Rules.

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY                                             2/8

Property, Civic Trust held and completed a foreclosure sale of the Property on December 4, 2019. *Id.* at 4. Civic Trust then transferred the Property to Civic Real Estate Holdings LLC ("Civic Real Estate") by quit claim deed on January 3, 2020. *Id.*

Summitridge then filed a State court lawsuit against Civic Trust and Civic Real Estate on February 20, 2020, alleging it was the rightful owner of the Property. The Civic parties filed a demurrer to the complaint on April 17, 2020, which was sustained on October 1, 2020. Specifically, the State court dismissed with prejudice Summitridge's quiet title, declaratory relief, accounting, and unjust enrichment claims, but granted leave to amend as to Summitridge's breach of contract, promissory estoppel, negligent misrepresentation, and wrongful foreclosure claims. The State court's order stated Summitridge could amend its complaint "only as authorized by the court's order." *Id.*

In response, Summitridge filed a first amended complaint on October 27, 2020, which reasserted breach of contract, promissory estoppel, negligent misrepresentation, and wrongful foreclosure claims. The first amended complaint also added Debtor as a plaintiff. The Civic parties filed a demurrer to that complaint on November 17, 2020; a hearing on that demurrer is currently set for September 9, 2021. *Id.* at 4–5.

On May 21, 2020, the Civic parties also filed a motion to expunge a *lis pendens* Summitridge recorded against the Property. The State court held a hearing on that motion on December 11, 2020, and issued an order granting the motion, but staying it in light of Debtor filing this bankruptcy case.

Debtor filed this motion to extend the automatic stay on December 29, 2020. ECF 23. He also filed an application to shorten notice and hearing on the motion the same day, ECF 24, which I denied on December 30, 2020 because the application did not comply with B.L.R. 9006-1, ECF 26. Debtor refiled that application on January 2, 2021, ECF 28, which I granted the same day, ECF 30.

Wedgwood, LLC ("Wedgwood"), administrator of Civic Trust and Civic Real Estate, timely filed an opposition to Debtor's motion on January 7, 2021. ECF 40. Wedgwood

CIVIC APP PAGE NO. 506

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  argues this case was presumptively filed in bad faith, and Debtor's motion fails to present

2  evidence sufficient to show otherwise.

3       One point of clarification is worthy of mention. Wedgwood, on behalf of the Civic

4  entities, represents the parties who once owned the promissory note, foreclosed and

5  purchased the Property, and later conveyed it to a third party. They were, at various points in

6  the proceedings, creditors, owners, conveyancers, and defendants in lawsuits Debtor

7  brought. If for no other reason, they have standing to oppose the Motion because their

8  request for relief in state court was held in abeyance based on Debtor's argument that their

9  actions were barred by the automatic stay.

10  ## II.   DISCUSSION

11       Section 362(c)(3)(A) provides that if a debtor files a bankruptcy case under Chapter

12  11, but another bankruptcy case of that debtor was pending within one year of such filing,

13  the automatic stay terminates "with respect to any action taken with respect to a debt or

14  property securing such debt or with respect to any lease shall terminate with respect to the

15  debtor" thirty days after the later case was filed. In turn, § 362(c)(3)(B) allows me, upon

16  notice and hearing "completed before the expiration of the 30-day period," to grant a

17  motion to extend the automatic stay, but "only if the party in interest demonstrates that the

18  filing of the later case is in good faith as to the creditors to be stayed." A case is presumed to

19  be filed not in good faith if, among other things, the debtor's prior bankruptcy case was

20  dismissed because debtor failed to "file or amend the petition or other documents as

21  required by this title or the court without substantial excuse." § 362(c)(3)(C)(i)(II)(aa). "The

22  burden of establishing the presence of presumptive bad faith rests upon the opponent to the

23  motion." *In re Montoya*, 342 B.R. 312, 316 (Bankr. S.D. Cal. 2006) (citation omitted). I find

24  Wedgwood shows this case was presumptively filed not in good faith, and that Debtor fails

25  to rebut that presumption by clear and convincing evidence.

26       Debtor states he filed the current case in good faith because: (1) his financial situation

27  has changed to allow for a confirmable Chapter 11 plan; and (2) the prior was not dismissed

28

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY          4/8

CIVIC APP PAGE NO. 507

1   for failure to provide adequate protection or failure to perform under the terms of a

2   confirmed plan. ECF 23, p. 2–3. Debtor also notes that, when the previous case was filed, he

3   was negotiating work-out agreements with certain lenders, and those negotiations eventually

4   deteriorated. But Debtor also admits his prior case was dismissed for failure to file required

5   documents. The docket in the prior case confirms this. Moreover, Debtor does not appear

6   to provide a justification for this failure. At best, I can infer Debtor believes his negotiations

7   with lenders during the prior case was what caused his failure to file, and that this constitutes

8   a substantial excuse. Assuming this is so, Debtor does not explain why these negotiations

9   caused the failure to file required documents. Also, if such failure was the result of Debtor's

10  counsel's negligence – a point Debtor's motion does not address – then the presumption

11  would apply, even if those negotiations provided him a substantial excuse. Because Debtor

12  was dismissed for failure to timely file required documents, and Debtor's motion provides

13  no basis for me to find he was substantially justified in his failure, or that the failure was not

14  the result of Debtor's counsel's negligence, I find Wedgwood shows the presumption that

15  Debtor did not file this case in good faith under § 362(c)(3)(C)(i)(II)(aa) applies.

16       To rebut the presumption, Debtor must show by clear and convincing evidence that

17  this case was filed in good faith. *In re Castaneda*, 342 B.R. 90, 96 (Bankr. S.D. Cal. 2006). His

18  evidence must give me "a firm belief or conviction that the allegations sought to be

19  established are true; it is 'evidence so clear, direct and weighty and convincing as to enable

20  the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise

21  facts of the case.'" *Id.* Bankruptcy courts apply the totality of the circumstances test to see

22  whether a case was filed in good faith, *id.*, considering the following factors: (1) whether the

23  debtor misrepresented facts in his petition, unfairly manipulated the Code, or otherwise filed

24  his petition in an inequitable manner; (2) the debtor's history of filings and dismissals (3)

25  whether the debtor only intended to defeat state court litigation; and (4) whether egregious

26  behavior is present. *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999) (citations and alterations

27  omitted). "A finding of bad faith does not require fraudulent intent by the debtor." *Id.*

28

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY                                                      5/8

First, I find Debtor's petition was filed in an inequitable manner. After the State court dismissed Summitridge's original complaint, Summitridge added Debtor as a plaintiff to the action, despite the State court's order providing that Summitridge could only amend the complaint to the extent allowed in that order, which did not provide for Summitridge adding additional plaintiffs. ECF 40-1, p. 4. The goal in adding Debtor to that action appears to be allowing Debtor to stay the action by filing an individual bankruptcy case. Debtor admits as much in his motion by stating his interest in the Property "is the sole purpose of this bankruptcy case[.]" ECF 23, p. 2. The problem with this statement is Debtor also admits in his schedules that he has no interest in the Property; instead, he owns Summitridge, which in turn alleges it has an interest in the Property. In my view, this shows Debtor's bankruptcy case is intended, not to effect a reorganization, but to frustrate the efforts of others to assert their interests in the Property. Debtor's motion provides no evidence to show otherwise.

Second, Debtor filed a previous Chapter 11 petition slightly over a year from the filing of this case. But since Debtor's current case appears premised on conflating the alleged interest Summitridge has in the Property as his own, I also find relevant the Chapter 7 case Summitridge filed on September 12, 2019. Case No. 19-51855. That case was dismissed on November 12, 2019 with a 90-day bar to filing, pursuant to a § 707(a) motion to dismiss the case for being filed in bad faith. *Id.* ECF 9, 17. The facts underpinning that motion appear to relate to the same Property that Debtor admits is the sole purpose of this bankruptcy case, making Summitridge's dismissal for filing in bad faith even more relevant to this case. This factor also points to Debtor filing this case in bad faith.

Third, I find the only purpose of this case is to defeat State court litigation. The record of the State court action shows that, but for the automatic stay, Debtor's *lis pendens* on the Property would be expunged. Moreover, the causes of action Debtor states he intends to assert in his to-be-filed adversary proceeding – claims alleging wrongful foreclosure and misrepresentation by lenders – appear functionally identical to those asserted in the State court action. And Debtor's statement that the Property, and the adversary proceeding he

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY                                    6/8

intends to file to assert his alleged interest in it, is the sole purpose of this bankruptcy, is in my view an admission that this factor points towards this case being filed in bad faith. Debtor's motion provides no evidence to show otherwise.

Finally, I find Debtor's actions to be egregious. After defaulting on the note securing the Property, Debtor and Summitridge appear to have embarked on a years-long scheme to frustrate attempts by creditors to foreclose on the Property. This scheme involved multiple bankruptcy filings, both corporate and individual, as well as a State court action that has yet to proceed beyond the demurrer stage. And while the State court action is only in its early stages, the fact that Summitridge and Debtor have lost every substantive motion brought against them allows me to infer that action is not well-founded. This practice of frustrating lawful foreclosure efforts through dubious legal proceedings, in my view, meets the standard for egregious conduct.

The totality of the circumstances here persuade me that Debtor filed this case in bad faith, and that he is not entitled to an extension of the automatic stay. Accordingly, I will deny Debtor's motion.

## III.   CONCLUSION

Because Debtor presumptively filed this case in bad faith, and failed to present evidence to the contrary, his motion to extend the automatic stay is DENIED.

IT IS SO ORDERED.

**END OF ORDER**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY                                                          7/8

Case: 20-51735   Doc# 47-1   Filed: 01/08/21   Entered: 01/08/21 18:05:31   Page 7 of 9

CIVIC APP PAGE NO. 510

# COURT SERVICE LIST

[ECF recipients only]

ORDER DENYING MOTION TO
EXTEND THE AUTOMATIC STAY

8/8

# EXHIBIT 35

CIVIC APP PAGE NO. 512

**Entered on Docket**
**January 25, 2021**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: January 25, 2021

_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re **VIKRAM SRINIVASAN**,

                Debtor.

Case No. 20-51735 SLJ

Chapter 11

## ORDER DENYING MOTION FOR RECONSIDERATION

On December 29, 2020, Debtor Vikram Srinivasan filed a motion to extend the automatic stay. ECF 23. I set a briefing schedule on shortened time, ECF 30, and after receiving the opposition of real party in interest Wedgwood, LLC on January 7, 2021, ECF 40, denied Debtor's motion on January 8, 2021, ECF 41. Then, on January 19, 2021, Debtor filed a motion for reconsideration of the order denying his motion to extend the automatic stay. ECF 43. But on January 22, 2021, Debtor also filed a notice of appeal of that same order. ECF 47.[1]

The timely filing of a notice of appeal to either a district court or bankruptcy appellate panel will typically divest a bankruptcy court of jurisdiction "over those aspects of

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure. "Civil L.R." and "B.L.R." references refer to the applicable Civil Local Rules and Bankruptcy Local Rules.

ORDER DENYING MOTION FOR RECONSIDERATION

the case involved in the appeal." *In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000); *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). The bankruptcy court retains jurisdiction over all other matters that it must undertake to implement or enforce the judgment or order but it "may not alter or expand upon the judgment." *Padilla*, 222 F.3d at 1190.

By filing a notice of appeal of my order denying his motion to extend the automatic stay, Debtor divested me of jurisdiction over that order. Stated another way, Debtor's motion for reconsideration asks me to alter an order that is now on appeal, which I cannot do while the appeal of that order is pending. As such, I must DENY Debtor's motion for lack of jurisdiction. I will also VACATE the February 16, 2021 hearing at 2:00 p.m. on the motion. No appearances are necessary in this matter at that date and time.

IT IS SO ORDERED.

**END OF ORDER**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

ORDER DENYING MOTION FOR RECONSIDERATION
2/3

# COURT SERVICE LIST

[ECF recipients only]

ORDER DENYING MOTION FOR RECONSIDERATION
3/3

CIVIC APP PAGE NO. 515

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

# EXHIBIT 36

GEOFFREY E. WIGGS (SBN 276041)
LAW OFFICES OF GEOFF WIGGS
1900 S. Norfolk St, Suite # 350
San Mateo, Ca 94403
Telephone: (650) 577-5952
Facsimile: (650) 577-5953
Email: Geoff@wiggslaw.com

Attorney for Debtor
VIKRAM SRINIVASAN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

In re:

VIKRAM SRINIVASAN,

Debtor in Possession.

BAP No.: NC-21-1018

Bankr. Case No.:  20-51735

Chapter 11

**APPELLANT'S STATEMENT OF
ISSUES ON APPEAL**

<u>STATEMENT OF ISSUES ON APPEAL</u>

Pursuant to Rule 8006-1 of the United States Bankruptcy Appellate Panel and other

applicable rules, Appellant and Debtor in Possession VIKRAM SRINIVASAN (hereinafter

"Debtor") hereby submits its Statement of Issues on Appeal and Designation of Record on

Appeal.

**A. Statement of Issues on Appeal**

On December 10, 2020, Debtor filed the present Chapter 11 bankruptcy matter.  Debtor

filed a previous personal Chapter 11 bankruptcy, which was dismissed on January 8, 2020 due to

his failure to file required documents.  Case No.: 19-42729.

Within the instant Chapter 11 bankruptcy, Debtor filed a Motion to Extend Automatic

Stay as to All Creditors on December 29, 2020.  Debtor sought to have the motion heard on

1

Case: 20-51735   Doc# 66   Filed: 02/08/21   Entered: 02/08/21 19:42:40   Page 1 of 3
STATEMENT OF ISSUES AND DESIGNATION OF RECORD

CIVIC APP PAGE NO. 517

shortened time for notice, pursuant to Bankruptcy Local Rule 9006-1.  Debtor's initial motion to shorten time for notice was denied for failure to comply with several elements of the Local Rule.

On January 2, 2021, Debtor filed a second Motion for shortened time on his Motion to Extend the Automatic Stay.  Debtor's second filing corrected the previous Motion's shortcomings.  On January 4, 2021, the Court granted Debtor's Motion for Shortened Time for hearing, establishing a briefing schedule that allowed Interested Creditor Wedgewood LLC the opportunity to file a written opposition to Debtor's Motion by January 7, 2021, but denying Debtor the opportunity to reply to the Interested Creditor's opposition.

On January 7, 2021, an interested Creditor filed an extensive opposition to Debtor's Motion to Extend, arguing that the bankruptcy was presumptively filed in bad faith.

On January 8, 2021, the Court entered an Order Denying the Motion to Extend Automatic Stay and making a finding that Debtor's case had been filed in bad faith.

Debtor was not granted the opportunity to rebut the presumption, nor to refute the allegations made in the Interested Creditor's opposition.  The issues presented for review are:

1.  Whether the Bankruptcy Court erred in denying Debtor's Motion to Extend Automatic Stay, on the grounds that there existed a presumption of bad faith with respect to his Chapter 11 filing.

2. Whether Debtor was denied due process through the Bankruptcy Court's failure to allow Debtor to respond to the arguments and opposition made by the Interested Creditor prior to making its finding that Debtor's case was filed in bad faith.

3. Whether Debtor was entitled to an opportunity to respond to the allegations of Interested Creditor Wedgewood, LLC to defend himself against the allegations of Interested

STATEMENT OF ISSUES AND DESIGNATION OF RECORD

Creditor that Debtor filed his bankruptcy case in bad faith, or to present contrary

evidence rebutting the bad faith presumption.

4.  Whether the Bankruptcy Court erred in denying Debtor's Motion to Extend Automatic

Stay as to All Creditors, based on a presumption of bad faith filing, without allowing

Debtor opportunity to rebut said presumption.

**oo0oo**

Respectfully Submitted,

Dated: February 8, 2021

/s/ *Geoffrey E. Wiggs*
**Geoffrey E. Wiggs, Esq.**
(Proposed) Attorney for
Debtor in Possession

3

# EXHIBIT 37

CIVIC APP PAGE NO. 520

GEOFFREY E. WIGGS (SBN 276041)
LAW OFFICES OF GEOFF WIGGS
1900 S. Norfolk St, Suite # 350
San Mateo, Ca 94403
Telephone: (650) 577-5952
Facsimile: (650) 577-5953
Email: Geoff@wiggslaw.com

Attorney for Debtor
VIKRAM SRINIVASAN

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

|  |  |
|---|---|
| In re: | BAP No.: NC-21-1018 |
| | Bankr. Case No.:  20-51735 |
| VIKRAM SRINIVASAN, | Chapter 11 |
| Debtor in Possession. | **DESIGNATION OF RECORD ON APPEAL** |

**DESIGNATION OF RECORD ON APPEAL**

Pursuant to Rule 8009(a) of the Federal Rules of Bankrutpcy Procedure and other

applicable rules, Appellant and Debtor in Possession VIKRAM SRINIVASAN (hereinafter

"Debtor") hereby designates the following items to be included in the record on appeal:

| Documents Relating to Bankr. Case No.:  20-51735 | | |
|---|---|---|
| File Date | Dkt. No. | Description |
| 12/11/2020 | | Notice of Debtor's Prior Filings |
| 12/24/2020 | 16 | Motion for Relief from Stay by Creditor Wedgewood, LLC |
| 12/24/2020 | 16-1 | Motion for Relief from Stay Cover Sheet |
| 12/24/2020 | 16-2 | Motion for Relief from Stay - Declaration of Karissa Shute in Support of Motion |

1

| 12/24/2020 | 16-3 | Motion for Relief from Stay - **Exhibit A**, Note |
| 12/24/2020 | 16-4 | Motion for Relief from Stay - **Exhibit B**, Order Dismissing Case with 90-Day Bar |
| 12/24/2020 | 16-5 | Motion for Relief from Stay - **Exhibit C** - Trustee's Deed Upon Sale |
| 12/24/2020 | 16-6 | Motion for Relief from Stay - **Exhibit D** - Quit Claim Deed |
| 12/24/2020 | 16-7 | Motion for Relief from Stay - **Exhibit E** - First Amended Complaint |
| 12/24/2020 | 16-8 | Motion for Relief from Stay - **Exhibit F** - Ruling on Hearing to Expunge Lis Pendens |
| 12/24/2020 | 16-9 | Motion for Relief from Stay - Certificate of Service |
| 12/24/2020 | 17 | Notice of Hearing on Motion for Relief from Stay |
| 12/29/2020 | 23 | Motion to Extend Automatic Stay as to All Creditors |
| 12/29/2021 | 23-1 | Motion to Extend Automatic Stay as to All Creditors - Declaration by Debtor in Support of Motion |
| 12/29/2020 | 24 | Ex Parte Motion to Shorten Time on Debtor's Motion to Extend the Automatic Stay |
| 12/29/2020 | 24-1 | Ex Parte Motion to Shorten Time on Debtor's Motion to Extend the Automatic Stay – Declaration in Support |
| 12/30/2020 | 26 | Order Denying Shortening Time |
| 01/02/2021 | 28 | Amended Motion to Shorten Time |
| 01/02/2021 | 28-1 | Amended Motion to Shorten Time - Declaration |
| 01/04/2021 | 30 | Order on Application to Set Matter for Hearing and for an Order Shortening Time for Notice |
| 01/07/2021 | 40 | Opposition Brief Memorandum - Amended Opposition to Motion by Debtor to Extend Automatic Stay |
| 01/07/2021 | 40-1 | Opposition Brief Memorandum - Declaration of Karissa Shute in Support of Opposition Brief |
| 01/07/2021 | 40-2 | Certificate of Service - Opposition Brief Memorandum |
| 01/08/2021 | 41 | Order on Motion to Extend Automatic Stay - Order Denying Motion |
| 01/22/2021 | 47 | Notice of Appeal and Statement of Election |
| 01/22/2021 | 47-1 | Notice of Appeal and Statement of Election - **Exhibit 1** - Order Denying Motion to Extend the Automatic Stay |
| 01/22/2021 | 48 | Certificate of Service - Notice of Appeal and Statement of Election |

2

STATEMENT OF ISSUES AND DESIGNATION OF RECORD

**CIVIC APP PAGE NO. 522**

| 01/25/2021 | 49 * | Notice of Referral of Appeal to BAP |
|---|---|---|
| 01/25/2021 | 50 * | Service of Notice and Appeal |
| 01/28/2021 | 58 | Transmission of Notice of Appeal to BAP |
| 01/28/2021 | 58-1 | Transmission of Notice of Appeal to BAP - Certificate of Notice |

| Documents Relating to Bankr. Case No.: 19-42729 | | |
|---|---|---|
| File Date | Dkt. No. | Description |
| 12/03/2019 | 6 | Order to File Missing Documents |
| 01/18/2020 | 15 | Order and Notice of Dismissal for Failure to Comply |

**A. No Transcripts Required**

Appellants have not identified any transcripts relevant to the issues being presented on appeal. No oral hearings were held regarding the matters on appeal in this instance.

**oo0oo**

Respectfully Submitted,

Dated: February 8, 2021

/s/ *Geoffrey E. Wiggs*
**Geoffrey E. Wiggs, Esq.**
(Proposed) Attorney for
Debtor in Possession

3

STATEMENT OF ISSUES AND DESIGNATION OF RECORD
**CIVIC APP PAGE NO. 523**

# EXHIBIT 38

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
(626) 229-7220

**In Re:** VIKRAM SRINIVASAN                    **BAP No.:** NC-21-1018

**Bk. Ct. No.:** 20-51735                        **ADV. NO.:**

## NOTICE OF TRANSFER OF APPEAL TO DISTRICT COURT

A party to the appeal has timely filed an objection to the disposition of this matter by the Bankruptcy Appellate Panel. See 28 USC Section 158. Consequently, this appeal is herewith transferred to San Jose.

Please acknowledge receipt of the case file listed above by signing and returning a copy of this transmittal form.

Susan M Spraul, BAP Clerk

By: Cecil Lizandro Silva, Deputy Clerk
Date: February 9, 2021

Please acknowledge receipt of
the case file listed above.
Dated:_____

Signed:_____
        District Court Deputy

Assigned District Court No.

_____

cc: Bankruptcy Court
    All Parties

# EXHIBIT 39

1  WEDGEWOOD
   Office of the General Counsel
2  DAVID M. POITRAS P.C. (SBN 141309)
   dpoitras@wedgewood-inc.com
3  AMELIA VALENZUELA (SBN 320428)
   avalenzuela@wedgewood-inc.com
4  2015 Manhattan Beach Blvd., Suite 100
   Redondo Beach, CA 90278
5  Telephone:    (310) 640-3070
   Facsimile:    (310) 640-3090
6
   Attorneys for Appellees,
7  *WEDGEWOOD, LLC, solely as Administrator*
   *of the Civic Holdings III Trust; and Civic Real*
8  *Estate Holdings III, LLC*

9
                    **UNITED STATES BANKRUPTCY COURT**
10                   **NORTHERN DISTRICT OF CALIFORNIA**
                          **SAN JOSE DIVISION**
11
12  | In re | CASE NO.    20-51735 |
    | VIKRAM SRINIVASAN, | Chapter 11 |
13  | Debtor. | |
14

15
16  **WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III**
    **TRUST AND CIVIC REAL ESTATE HOLDINGS III, LLC'S DESIGNATION OF**
17  **ADDITIONAL ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL AND**
    **LIMITED OBJECTION TO APPELLANT DESIGNATION OF RECORD**
18

19       Wedgewood, LLC, solely as Administrator of the Civic Holdings III Trust and Civic Real

20  Estate Holdings III, LLC (together, "**Appellees**") hereby file their Designation of Additional Items to

21  be Included in the Record on Appeal and Limited Objection to Appellant Designation ("**Additional**

22  **Designation**").  Appellees file this Additional Designation pursuant to Bankruptcy Rule 8009.  This

23  Additional Designation is filed with respect to Vikram Srinivasan's ("**Debtor**" or "**Appellant**")

24  appeal from the *Order Denying Motion to Extend the Automatic Stay* (Docket No. 41) (the "**Order**"),

25  entered on the Bankruptcy Docket on January 8, 2021.

26       On February 8, 2021, Appellant filed his Designation of Record on Appeal (Docket No. 67)

27  ("**Appellant Designation**").  Included in the Appellant Designation are two items filed in Bankruptcy

28  Case No. 19-42729, which is not the bankruptcy case at issue.  Accordingly, Appellee hereby objects

1  to the inclusion of the Order to File Missing Documents (Docket No. 6) and the Order and Notice of

2  Dismissal for Failure to Comply (Docket No. 15) filed in Bankruptcy Case No. 19-42729 as they are

3  not part of the record of the instant bankruptcy case and are not properly included in the record on

4  appeal.

5

6  **APPELLEE DESIGNATION OF RECORD**

| Bankruptcy Case No. 20-51735 | | |
|---|---|---|
| **Filing Date** | **Docket No.** | **Docket Text** |
| 12/10/2020 | 1 | Chapter 11 Voluntary Petition |
| 12/11/2020 | 4 | Notice of Chapter 11 Bankruptcy Case |
| 12/11/2020 | 5 | Order to File Required Documents and Notice of Automatic Dismissal |
| 12/11/2020 | 6 | Request for Notice |
| 12/11/2020 | 7 | Order and Notice of Chapter 11 Status Conference |
| 12/11/2020 | 8 | Notice of Appearance and Request for Notice |
| 12/11/2020 | 9 | Order for Payment State and Federal Taxes |
| 12/22/2020 | 15 | Substitution of Attorney |
| 12/24/2020 | | Receipt of Filing fee for Motion for Relief from Stay |
| 12/24/2020 | 18 | For Individual List of Creditors Who Have 20 Largest Unsecured Claims Against You |
| 12/24/2020 | 19 | Chapter 11 Statement of Monthly Income |
| 12/24/2020 | 20 | Disclosure of Compensation of Attorney |
| 12/28/2020 | 21 | Amended Certificate of Service |
| 12/28/2020 | 22 | Order and Notice Regarding Failure to Pay Filing Fee |
| 12/29/2020 | 25 | Certificate of Service |
| 1/4/2021 | 29 | Brief/Memorandum in Opposition |
| 1/4/2021 | 29-1 | Declaration of Amelia Valenzuela |

- 2 -

| 1/4/2021 | 29-2 | Certificate of Service |
|---|---|---|
| 1/4/2021 | 31 | Notice Regarding Debtor's Motion to Extend Full Stay as to All Creditors |
| 1/4/2021 | 32 | Certificate of Service |
| 1/4/2021 | 33 | Supplemental Certificate of Service |
| 1/6/2021 | 34 | Application to Employ |
| 1/6/2021 | 34-1 | Declaration of Geoffrey E. Wiggs |
| 1/6/2021 | 34-2 | Exhibit A |
| 1/6/2021 | 35 | Notice and Opportunity for Hearing |
| 1/6/2021 | 36 | Certificate of Service |
| 1/7/2021 | 37 | Brief/Memorandum In Opposition |
| 1/7/2021 | 37-1 | Declaration of Karissa Shute |
| 1/7/2021 | 37-2 | Certificate of Service |
| 1/7/2021 | 38 | Amended Brief/Memorandum in Opposition |
| 1/7/2021 | 38-1 | Certificate of Service |
| 1/7/2021 | 39 | Withdrawal of Documents |
| 1/19/2021 | 43 | Motion to Reconsider |
| 1/19/2021 | 43-1 | Declaration of Vikram Srinivasan |
| 1/19/2021 | 43-2 | Declaration of Renzi |
| 1/19/2021 | 44 | Notice of Hearing |
| 1/20/2021 | 45 | Motion to Reconsider |
| 1/20/2021 | 46 | Certificate of Service |
| 1/25/2021 | 51 | Amended Schedule E/F |
| 1/25/2021 | 52 | Order Denying Motion to Reconsider |
| 1/25/2021 | | Hearing Dropped per order entered on 1/25/2021 |
| 1/25/2021 | 53 | Application to Employ Vinod Nachani |
| 1/25/2021 | 53-1 | Declaration |
| 1/25/2021 | 53-2 | Declaration of Vinod Nachani |

- 3 -

| | | |
|---|---|---|
| 1/25/2021 | 54 | Certificate of Service |
| 1/28/2021 | 57 | Request for Entry of Default |
| 1/28/2021 | 59 | Amended Transmission of Notice of Appeal |
| 1/28/2021 | 59-1 | Notice of Appeal |
| 1/28/2021 | 59-2 | Notice of Referral |
| 1/28/2021 | 59-3 | Appeal Documents |
| 1/28/2021 | 60 | Status Conference Statement |
| 1/29/2021 | 61 | Acknowledgement of Receipt by BAP |
| 1/29/2021 | 62 | Operating Report |
| 2/02/2021 | | Hearing Held |
| 2/08/2021 | 63 | Order Authorizing Employment of Counsel |
| 2/08/2021 | 64 | Order Authorizing Employment of Special Counsel |
| 2/08/2021 | 65 | Order After Status Conference |
| 2/08/2021 | 66 | Statement of Issues on Appeal |
| 2/08/2021 | 67 | Appellant Designation of Contents for Inclusion in Record on Appeal |
| 2/08/2021 | 68 | Certificate of Service |
| 2/08/2021 | 69 | Notice of Transfer of Appeal to District Court |
| 2/08/2021 | 70 | Brief/Memorandum in Opposition |
| 2/08/2021 | 70-1 | Certificate of Service |
| 2/12/2021 | 71 | Exhibit A |
| 2/19/21 | 72 | Reply in Support of Request for In Rem Relief |
| 2/19/21 | 72-1 | Exhibit A |
| 2/19/21 | 72-2 | Certificate of Service |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DATED:  February 19, 2021

WEDGEWOOD
OFFICE OF THE GENERAL COUNSEL


By: */s/ Amelia Valenzuela*
    DAVID M. POITRAS
    AMELIA B. VALENZUELA
WEDGEWOOD, LLC, solely as Administrator of the
Civic Holdings III Trust and Civic Real Estate
Holdings III, LLC

- 5 -

CIVIC APP PAGE NO. 531

WEDGEWOOD
Office of the General Counsel
DAVID M. POITRAS P.C. (SBN 141309)
dpoitras@wedgewood-inc.com
AMELIA VALENZUELA (SBN 320428)
avalenzuela@wedgewood-inc.com
2015 Manhattan Beach Blvd., Suite 100
Redondo Beach, CA 90278
Telephone:      (310) 640-3070
Facsimile:      (310) 640-3090

Attorneys for Appellees,
*WEDGEWOOD, LLC, solely as*
*Administrator of the Civic Holdings III*
*Trust; and Civic Real Estate Holdings*
*III, LLC*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

In re:

VIKRAM SRINIVASAN,

Chapter  11
Case No. 20-51735

**CERTIFICATE OF SERVICE**

Debtor(s)_____/

     I, the undersigned, declare that I am employed in the County of Los Angeles.  I am over the age of 18 years and not a party to the within entitled action.  My business address is 2015 Manhattan Beach Blvd., Suite 100, Redondo Beach, CA 90278.

     On February 19, 2021, I served the within

**WEDGEWOOD, LLC, SOLELY AS ADMINISTRATOR OF THE CIVIC HOLDINGS III TRUST AND CIVIC REAL ESTATE HOLDINGS III, LLC'S DESIGNATION OF ADDITIONAL ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL AND LIMITED OBJECTION TO APPELLANT DESIGNATION OF RECORD**

by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Redondo Beach, California, to all parties entitled to receive regularly mailed notices, addressed as follows:

| Geoff Wiggs<br>Law Offices of Geoff Wiggs<br>1900 S. Norfolk St. #350<br>San Mateo, CA 94403 | Vikram Srinivasan<br>1651 Green Valley Road<br>Danville, CA 94526 |
|---|---|
| **Vikram Srinivasan**<br>440 Dixon Landing Road G201<br>Milpitas, CA 95035<br>SANTA CLARA-CA | |

**Electronic Service List:**

- **Jorge A. Gaitan**   Jorge.A.Gaitan@usdoj.gov
- **Vinod Nichani**   vinod@nichanilawfirm.com, NichaniVR98323@notify.bestcase.com
- **Office of the U.S. Trustee / SJ**   USTPRegion17.SJ.ECF@usdoj.gov
- **David M. Poitras**   dpoitras@jmbm.com, dpoitras@wedgewood-inc.com
- **Amelia Valenzuela**   avalenzuela@wedgewood-inc.com, dmarcus@wedgewood-inc.com
- **Geoff Wiggs**   ECF@wiggslaw.com, WiggsGR82519@notify.bestcase.com

**Overnight Delivery:**

Hon. Stephen L. Johnson
US Courthouse, Room 3035
280 South First Street
San Jose, CA 95113

If the Chapter 11 Trustee is otherwise entitled to notice, she will receive such notice upon the electronic filing of the above-named document.

        I declare, under penalty of perjury, that the foregoing is true and correct.  Executed on February 19, 2021 at Redondo Beach, California.

Dated: February 19, 2021                         /s/ Daniel Marcus
                                                 Daniel Marcus

# EXHIBIT 40

CIVIC APP PAGE NO. 534

**Entered on Docket
February 23, 2021**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: February 23, 2021

_____
**Stephen L. Johnson
U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| In re **VIKRAM SRINIVASAN**, | Case No. 20-51735 SLJ |
|---|---|
| Debtor. | Chapter 11 |

## ORDER DENYING MOTION FOR
## IN REM RELIEF FROM THE AUTOMATIC STAY

Wedgwood, LLC moves for an order confirming the automatic stay in this case does not apply to it, the entities it acts as administrator for, and certain real property Debtor asserts he has an interest in. Such property is the subject of a long-running dispute between Wedgwood, Debtor, and a company wholly owned by Debtor that originally purchased the property. Alternatively, Wedgwood moves for relief from the automatic stay, on grounds that such property is not part of the bankruptcy estate. Wedgwood also moves for *in rem* relief from the automatic stay as to such property, arguing this case is part of a scheme by Debtor Vikram Srinivasan to prevent Wedgwood and the entities it administers to from asserting their rights in such property. Debtor responds I should deny *in rem* relief because Debtor did not file this case to subvert Wedgwood's rights in the property, but to preserve what he alleges are his own rights in the property.

ORDER DENYING MOTION FOR
IN REM RELIEF FROM THE AUTOMATIC STAY
1/6

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  I find Wedgwood's motion is moot to the extent it seeks relief from the automatic

2  stay, as the stay in this case terminated 30 days after filing on account of Debtor having a

3  prior case pending in the previous year. I also find Wedgwood's request for *in rem* relief must

4  be denied, as Wedgwood's own admissions show that one of the entities it administers was

5  the highest bidder at a foreclosure sale it held, extinguishing the very security interest that

6  might have made it eligible for *in rem* relief.

7  ## I.   BACKGROUND

8  Debtor filed this Chapter 11[1] bankruptcy case on December 10, 2020. Then, on

9  December 29, 2020, Debtor filed a motion to extend the automatic stay under § 362(c)(3)(B)

10  as Debtor had a prior bankruptcy case pending within one year of this case's filing, which

11  was dismissed for failure to file necessary documents. ECF 23; *see* Case No. 19-42729,

12  ECF 15. I denied Debtor's motion to extend the automatic stay on January 8, 2021, finding

13  Debtor failed to rebut the presumption that this case was not filed in good faith. ECF 41.

14  My order denying Debtor's motion to extend the stay is currently on appeal. ECF 47.

15  Prior to Debtor's motion to extend the automatic stay, Wedgwood filed this motion

16  on December 24, 2020. ECF 16. Wedgwood is the administrator of the Civic Holdings III

17  Trust and Civic Real Estate Holdings III, LLC ("Civic Entities"), who Wedgwood alleges are

18  the owners of the real property located at 1666 Summitridge Drive, Beverly Hills, California

19  ("Property"). Wedgwood requests an order that: (1) either states the automatic stay does not

20  apply to the Property or Wedgwood and the Civic Entities or grants relief from the stay; and

21  (2) grants *in rem* relief from the automatic stay as to the Property for 180 days from the

22  hearing on this motion.

23

24  ─────────────────

25  [1] Unless specified otherwise, all chapter and code references are to the Bankruptcy
Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil

26  Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy
Procedure. "Civil L.R." and "B.L.R." references refer to the applicable Civil Local Rules and

27  Bankruptcy Local Rules.

28  ORDER DENYING MOTION FOR
IN REM RELIEF FROM THE AUTOMATIC STAY

2/6

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The relevant history of the Property is this: Debtor caused his wholly owned company Summitridge Venture Group, LLC ("Summitridge") to purchase the Property on September 25, 2018. *Id.* at 2–3. The purchase was in part financed by a $3,500,000 note, executed by Summitridge in favor of Civic Financial Services, LLC and secured by a deed of trust constituting a first position lien on the Property. *Id.* at 3. The deed of trust was assigned to Civic Holdings III Trust, and recorded on February 12, 2019. *Id.*

Summitridge later defaulted on the note, and Civic Holdings III Trust recorded a notice of default and election to sell under the deed of trust on May 14, 2019. *Id.* Civic Holdings III Trust recorded a notice of trustee's sale on June 14, 2019, and a trustee's sale was scheduled for September 13, 2019. *Id.* at 3–4. But on September 12, 2019, Summitridge filed a Chapter 11 bankruptcy case; while the case was later dismissed with a 90-day bar on refiling, the foreclosure sale was postponed in light of the automatic stay. *Id.* at 4.

After Summitridge's bankruptcy was dismissed, Summitridge and Civic Holdings III Trust entered into a forbearance agreement where, among other things, Civic Holdings III Trust agreed not to foreclose on the Property so long as Summitridge did not default on the terms of the forbearance agreement. *Id.* But Summitridge eventually did default on the forbearance agreement, and Civic Holdings III Trust held a foreclosure sale on December 4, 2019, where it was the winning bidder and received a trustee's deed upon sale. *Id.* at 4–5. Then, on January 3, 2020, Civic Holdings III Trust transferred the Property to Civic Real Estate Holdings III, LLC. *Id.* at 5.

## II.   DISCUSSION

### A.   The Automatic Stay in this Case Terminated on January 9, 2021

First, I find the automatic stay in this case terminated on January 9, 2021. Section 362(c)(3)(A) provides that if a debtor files a bankruptcy case under Chapter 11, but another bankruptcy case of that debtor was pending within one year of such filing, the automatic stay terminates "with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor" thirty days after

ORDER DENYING MOTION FOR
IN REM RELIEF FROM THE AUTOMATIC STAY

CIVIC APP PAGE NO. 537

the later case was filed. This case was filed on December 10, 2020. Thirty days from that date is January 9, 2021. In addition, I denied Debtor's motion to extend the stay, so there was nothing to prevent § 362(c)(3)(A) from automatically terminating the stay. I therefore find that the automatic stay in this case, to the extent it applied to Wedgwood, the Civic Entities, or the Property at all, terminated on January 9, 2021. This finding moots the motion to the extent it seeks relief from stay, or confirmation the stay does not apply.

B. <u>Wedgwood and the Civic Entities are Ineligible for *in rem* Relief from Stay</u>

Wedgwood also requests *in rem* relief from stay as to the Property for 180 days after the hearing date on this motion. Section 362(d)(4)(B) provides that, on request of a creditor whose claim is secured by an interest in real property, the court shall grant relief from the § 362(a) automatic stay with respect to acts against that real property, where the court finds the petition was filed as part of a scheme to delay, hinder, or defraud creditors that involved multiple bankruptcy filings affecting that real property. An order entering relief under § 362(d)(4) is binding on all other bankruptcy cases filed within two years of the order's entry, and prohibits § 362(a) from staying the enforcement of a lien against that real property while the order is in effect. *In re Alakozai*, 499 B.R. 698, 703 (B.A.P. 9th Cir. 2013) (citing §§ 362(b)(20), (d)(4)). "[A] party seeking in rem relief under § 362(d)(4) must establish, and the bankruptcy court must find, that the movant is a creditor whose claim is secured by an interest in the property in question." *In re Ellis*, 523 B.R. 673, 678 (B.A.P. 9th Cir. 2014) (citations omitted). I must deny this request, as Wedgwood fails to show it or the Civic Entities have a claim secured by an interest in the Property.

Wedgwood does not allege it or the Civic Entities have a secured interest in the Property at any point in its papers. What Wedgwood does say is that Civic Holdings Trust completed a foreclosure sale of the Property on December 4, 2019, that Civic Holdings Trust was the winning bidder and received the trustee's deed upon sale, and that the Property was then transferred to Civic Real Estate Holdings, LLC on January 3, 2020. ECF 5. Accepting Wedgwood's allegations as true, Civic Holdings Trust completed a

ORDER DENYING MOTION FOR
IN REM RELIEF FROM THE AUTOMATIC STAY

4/6

CIVIC APP PAGE NO. 538

foreclosure sale, which caused Civic Holdings Trust to take title to the Property, thereby extinguishing its security interest. *Alliance Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1235 (1995) ("[M]erger of the lien and ownership of the property in one person or entity extinguishes the lien . . . ."). Because *in rem* relief under § 362(d)(4) is only available to creditors with claims secured by the property in question, the successful foreclosure sale extinguishing Civic Holdings Trust's lien on the Property means neither Wedgwood nor the Civic Entities are eligible for *in rem* relief.

## III.   CONCLUSION

The automatic stay in this case terminated automatically on January 9, 2021, so the motion is moot to the extent it requests for relief from stay, or a confirmation the stay does not apply. But because Wedgwood fails to show it or the Civic Entities hold a security interest in the Property, the motion's request for § 362(d)(4) *in rem* relief is denied.

IT IS SO ORDERED.

### END OF ORDER

ORDER DENYING MOTION FOR
IN REM RELIEF FROM THE AUTOMATIC STAY

5/6

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**COURT SERVICE LIST**

[ECF recipients only]

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

ORDER DENYING MOTION FOR
IN REM RELIEF FROM THE AUTOMATIC STAY

6/6